IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DARRELL HINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05cv971-D |
| | ) | (WO) |
| WEBSTER INDUSTRIES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Before the court is Plaintiff Darrell Hinson's ("Plaintiff") motion for default judgment. (Doc. No. 12.) Responding to the court's directive (Doc. No. 13), Plaintiff submitted a brief enumerating his damages and evidentiary support. (Doc. No. 14.) In this lawsuit, Plaintiff, an African-American male, has sued his former employer on a claim of unlawful termination on the basis of race asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981"). Defendant Webster Industries, Inc. ("Defendant") failed to answer the complaint or otherwise appear in this lawsuit. Having obtained an entry of default from the clerk, pursuant to Rule 55(a), Plaintiff has invoked Rule 55(b)(2) of the Federal Rules of Civil Procedure, requesting the court to enter default judgment against Defendant for its failure to defend this action. After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that the

entry of a default judgment is warranted on the issue of liability on the written record, but that an evidentiary hearing is necessary on the issue of damages.

## II. JURISDICTION AND VENUE

This is a civil rights employment discrimination action brought pursuant to federal statutes. The court exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). (Compl. ¶ 2.) The court finds adequate allegations of personal jurisdiction.

## III. STANDARD OF REVIEW

There are two steps to obtaining a default pursuant to Rule 55 of the Federal Rules of Civil Procedure: the entry of a default and the subsequent entry of a judgment by default. See Fed. R. Civ. P. 55(a) & (b). The first step has been achieved, as the clerk has entered default against Defendant. (See Doc. No. 11.) As to the second step, if the damages are not for a "sum certain," as is the case here, Rule 55(b)(2) governs. Pursuant to Rule 55(b)(2), "the party entitled to a judgment by default shall apply to the court therefor" and

> [i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or

> order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

Fed. R. Civ. P. 55(b)(2).

Upon the entry of a default judgment, allegations which are "well pleaded," except those pertaining to the amount of damages, are taken as true the same as if they had been proven by evidence, see Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3rd Cir. 1990) and Fed. R. Civ. P. 8(d), and a defendant cannot later seek to contradict those allegations. See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). On the other hand, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu Const. Co., Ltd., 515 F.2d at 1206; see also DIRECTV, Inc. v. Huynh, 318 F. Supp.2d 1122, 1127 (M.D. Ala. 2004).

## IV. FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts Alleged in the Complaint

Plaintiff alleges in his Complaint (Doc. No. 1) that he was hired by Defendant on or about March 18, 2002, as a full-time local truck driver. (Doc. No. 1, ¶ 11.) On or about April 14, 2004, Plaintiff was suspended from his job because of an error that constituted a “safety violation.” (Id. ¶ 12.) Six days later, on or about April 20, 2004, Plaintiff’s employment was terminated as a result of the safety violation; the decisionmaker was a Caucasian male. (Id. ¶¶ 13, 18.) Plaintiff alleges that at least one

other similarly-situated Caucasian employee committed the same violation as Plaintiff, but was not terminated, and that the only apparent reason for the disparity in treatment was Plaintiff's race. (Id. ¶¶ 14-16.)

Plaintiff timely filed this lawsuit on October 11, 2005, seeking redress from Defendant for his termination. (Id. ¶¶ 8, 20.) Plaintiff's Complaint contains two counts. Count 1 alleges a claim of discriminatory discharge based on race, in violation of § 1981. (Id. at 4-5.) Count 2 seeks redress for the same wrong pursuant to Title VII. In his Complaint, Plaintiff requests declaratory relief, an injunction, compensatory damages in the amount of $300,000, punitive damages, reinstatement/front pay, back pay, costs and attorneys' fees. (Id. at 2, 5-6.)

A summons, together with a copy of the Complaint, was served on Defendant on October 31, 2005, and was accepted by J. Keodouangdy on behalf of Defendant. (Doc. Nos. 5-6.) Defendant's answer was due on November 21, 2005. Defendant did not file an answer or otherwise respond to the Complaint by the November 21 deadline. Consequently, on December 23, 2005, Plaintiff filed and obtained from the clerk an entry of default. (Doc. Nos. 9, 11.) Plaintiff then filed a motion for default judgment on December 27, 2005. (Doc. No. 12.) Because Plaintiff represented to the court that the damages sought in this employment discrimination lawsuit are not for a sum certain, the court directed Plaintiff to file a brief as to the requested damages, together with evidence to support the requested amount. (Doc. No. 13.) Therein, the court noted that it would review the submitted materials and decide whether to schedule an evidentiary hearing.

(Id. at 2. n.1.) Plaintiff complied with the court's order and submitted evidence of the damages sought. (Doc. No. 14.) Therein, Plaintiff requests the court to enter judgment in his favor in the amount of $47,370 in back pay, $34,967 in front pay, $300,000 in compensatory damages, attorneys' fees in the amount of $6,801.00, and costs in the amount of $272.20.

## V. DISCUSSION

### A. The Entry of a Default Judgment on the Issue of Liability

The Federal Rules of Civil Procedure require that a defendant respond to a complaint within twenty days of the date of service of the complaint, see Fed. R. Civ. P. 12(a), or risk entry of default against him or her pursuant to Rule 55 of the Federal Rules of Civil Procedure. Defendant's deadline for filing an answer, i.e., November 21, 2005, has long passed, yet to date Defendant has not answered or otherwise made any appearance in this lawsuit.

Default by the clerk has been entered in accordance with Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. No. 11.) A default judgment, however, may not be entered solely on the basis of the clerk's entry of default. Rather, the allegations in the complaint must present a "sufficient basis" to support the default judgment on the issue of liability. Nishimatsu Const. Co., Ltd., 515 F.2d at 1206. A sufficient basis exists where the "well pleaded" allegations support the causes of action alleged. Id.

Plaintiff now requests a default judgment on Counts 1 and 2 of his Complaint. In Count 1, Plaintiff alleges that he was discharged because of his race in violation of § 1981. Moreover, in Count 2, because Plaintiff timely exhausted all of his administrative remedies, he seeks relief for the same facts pursuant to Title VII.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." See 42 U.S.C. § 2000e-2(a)(1). 42 U.S.C. § 1981, in turn, protects against discrimination in private employment on the basis of race. Johnson v. Railway Express Agency, 421 U.S. 454, 460-61 (1975). Both statutes may be invoked to redress racial discrimination in employment, and the elements of proof under Title VII and § 1981 are the same. Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002); see also Fonseca v. Sysco Food Serv. of Arizona, Inc., 374 F.3d 840, 850 (9th Cir. 2004) ("Both [Title VII and § 1981] require proof of discriminatory treatment and the same set of facts can give rise to both claims."). The "essence of a disparate treatment claim," as is alleged in this case, is that an employee is "intentionally singled out for adverse treatment on the basis of a prohibited criterion," such as race. Henson v. City of Dundee, 682 F.2d 897, 903 (11th Cir. 1982).

The court carefully has reviewed the Complaint. The court finds that Plaintiff's Complaint contains "well pleaded" allegations of racial discrimination in termination and provides a "sufficient basis" for finding violations of Title VII and § 1981. In the

Complaint, Plaintiff, an African-American male, alleges that, on April 20, 2004, Defendant terminated him for a "safety violation," while permitting a "similarly situated" Caucasian employee who committed the same infraction to remain employed, and that the decisionmaker was Caucasian. (Doc. No. 1 ¶¶ 13, 14, 15, 16, 18.) These averments adequately plead a Title VII/§ 1981 race discrimination claim and support a finding of liability against Defendant. Cf. Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002) (holding that petitioner satisfied notice pleading by alleging "that he had been terminated on account of his national origin . . . and on account of his age," by "detail[ing] the events leading to his termination, provid[ing] relevant dates, and includ[ing] the ages and nationalities of at least some of the relevant persons involved with his termination"). The court, thus, concludes that Defendant is liable to Plaintiff because Defendant discriminated intentionally and unlawfully against Plaintiff because of his race in violation of Title VII and § 1981. The court, therefore, finds that a default judgment on the issue of liability is due to be entered in Plaintiff's favor on Counts 1 and 2.[1]

[1] Plaintiff has not requested a hearing on the issue of liability, and the court finds that one is not necessary. See Fed. R. Civ. P. 55(b)(2); Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) (holding that in default judgment proceedings "district court did not abuse its discretion in determining that a hearing on the truth of any allegation relating to liability was unnecessary").

B. Relief

Having determined that Plaintiff is entitled to a default judgment on Counts 1 and 2 as to liability, the court turns to the issue of relief. Rule 54(c) provides that the party requesting the default judgment may not seek a judgment in excess of the relief demanded in the complaint. See Fed. R. Civ. P. 54(c). Here, Plaintiff has requested compensatory damages, back pay, front pay, attorneys' fees and costs; the relief he seeks is not different in kind and does not exceed in amount that prayed for in the Complaint.[2]

As discussed below, the relief requested by Plaintiff is available under both Title VII and § 1981. At this juncture, brief discussion on the interplay between Title VII and § 1981 damages is appropriate. "[T]he remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct and independent." Johnson, 421 U.S. at 461. Plaintiff, however, will not be permitted a double recovery, as he seeks redress for the same wrong pursuant to both statutes. See Chellen v. John Pickle Co., Inc., 434 F. Supp.2d 1069, 1103-04 (N.D. Okla. 2006) (discussing damages available under Title VII and § 1981). In some aspects, the remedies available under Title VII are more limited than those available under § 1981. For example, a Title VII plaintiff may recover compensatory damages under Title VII, but damages are subject to a statutory cap; the cap, however, does not affect § 1981 compensatory damages awards. See id.

---

[2] Although the Complaint contains a request for punitive damages, Plaintiff does not seek punitive damages in these default judgment proceedings.

*1. Hearing*

Although liability may be established without proof based upon the well-pleaded allegations of the complaint, the measure of damages must be proved. See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Here, as discussed *supra*, because the damages sought are not for a "sum certain," Rule 55(b)(2) of the Federal Rules of Civil Procedure governs the determination of damages. Rule 55(b)(2) provides that on the matter of damages "the court may conduct such hearings or order such references as it deems necessary and proper." Fed. R. Civ. P. 55(b)(2). Although not a "*per se* requirement" under Rule 55(b)(2), which "speaks of evidentiary hearings in a permissive tone," typically a hearing should be conducted to determine the quantum of damages "except where all essential evidence is already of record." S.E.C. v. Smyth, 420 F.3d 1225, 1231-32 & n.13 (11th Cir. 2005).

Plaintiff has requested a "trial by jury" for a determination of damages. (Doc. No. 12 ¶ 10.) However, except in limited circumstances, which are not applicable here, see Wright, Miller & Kane, Federal Practice & Procedure § 2668 (3d ed. 1998), a plaintiff is not entitled by right to a trial by jury on the issues of damages, and the court declines to order a discretionary jury trial on the issue of damages. See Fed. R. Civ. P. 55(b)(2); Benz v. Skiba, Skiba & Glmski, 164 F.R.D. 115 (D.C. Me. 1995).

Although the court declines to hold a *jury* trial on the issue of damages, the court finds that the written record is inadequate for a complete determination of damages. The court finds that an evidentiary hearing is warranted for the purpose of receiving Plaintiff's

evidence, in particular Plaintiff's testimony, as to the extent of damages resulting from Defendant's liability. The below principles should guide Plaintiff's preparation for said hearing.

*2. Back Pay*

Plaintiff requests back bay in the amount of $47,370, commencing on the date of his termination on April 20, 2004. A plaintiff whose rights have been violated under Title VII and § 1981 is entitled to recover back pay. See 42 U.S.C. § 2000e-5(g) (permitting awards of back pay, with the limitation that liability "shall not accrue from a date more than two years prior to the filing of a charge with the [Equal Employment Opportunity] Commission"); Wright v. Circuit City Stores, Inc., 82 F. Supp.2d 1279, 1286 (N.D. Ala. 2000) ("Section 1981 allows for back pay for an unlimited period of time (subject only to statutes of limitation)[.]").

The purpose of awarding back pay is to make whole the individual who is the victim of unlawful employment discrimination. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 419 (1975). "An award of [back pay] is the rule, not the exception." Carrero v. New York City Housing Auth., 890 F.2d 569, 580 (2d Cir. 1989). Back pay generally is awarded from the date of the discriminatory action until the date of judgment, less any amounts which the plaintiff actually earned or could have earned through reasonable diligence in the interim. Suggs v. Servicemaster Educ. Food Mgmt., 72 F.3d 1228, 1233 (6th Cir. 1996) ("general rule is to award back pay through the date of judgment"); 42

U.S.C. § 2000e-5(g)(1) ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."); Williams v. City of Montgomery, 550 F. Supp. 662, 668 (M.D. Ala. 1982), aff'd, 742 F.2d 586 (11th Cir. 1984); Sims v. Montgomery County Commission, 544 F. Supp. 420, 427 (M.D. Ala. 1982). Back pay "is normally computed at the rate the individual was paid at the time of discharge." Taylor v. Central Pennsylvania Drug and Alcohol Serv. Corp., 890 F. Supp. 360 371 (M.D. Pa. 1995).

Furthermore, a back pay award is not reduced by taxes that would have been paid on the income, by unemployment compensation benefits or by social security benefits. Dominguez v. Tom James Co., 113 F.3d 1188, 1190-91 (11th Cir. 1997) (unemployment compensation and social security); Taylor, 890 F. Supp. at 371 (federal, state and local income taxes). A back pay award also may include overtime. U.S. v. City of Warren, 138 F.3d 1083, 1096-97 (6th Cir. 1998).

The period of back pay in this case begins on April 20, 2004, the date Plaintiff was terminated, and Plaintiff has submitted some evidence to support a back pay award from

the date of termination through the year 2005.[3] Plaintiff appropriately has computed back pay based upon the difference in the income he would have earned had he remained employed with Defendant and the income he actually earned. (See Doc. No. 14 at 3 n.1.) At the hearing, however, Plaintiff should be prepared to present to the court, in mathematical detail, through evidence and a chart, the total back pay requested from the time of termination to the date of the hearing.

*3. Front Pay*

Plaintiff also requests front pay. The Eleventh Circuit has held that, "[i]n addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay." Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1528 (11th Cir. 1991) (superseded by statute on other grounds); see also 42 U.S.C. § 2000e-5(g)(1). Front pay also is permitted under § 1981. See Barbour v. Merrill, 48 F.3d 1270, 1278-80 (D.C. Cir. 1995) (discussing § 1981 front pay award).

---

[3] Plaintiff has presented evidence that when he was terminated from Defendant's employ, he was working a scheduled 60 hours per week at a base hourly rate of $11.97 for the first 40 hours and $17.96 for 20 overtime hours, resulting in an annual pay of $46,804, during calendar year 2003, meaning that his average monthly pay was approximately $3,900.33. The evidence further establishes that, during the nine months in 2004, following his termination, he held various jobs and generated self-employment income by operating his own truck, earning approximately $9,111. Also, during 2005, Plaintiff worked for Alabama Food Service and Pemberton Truck Line, earning a total of $29,326.00 for the year.

"[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001). Front pay is "the difference (after proper discounting to present value) between what the plaintiff would have earned in the future had he been reinstated at the time of trial and what he would have earned in the future in his next best employment." Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1231 (7th Cir. 1995). Reinstatement is presumed to be the best remedy in a wrongful discharge case, but in certain circumstances, the court may award a plaintiff front pay in lieu of reinstatement. See U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 619 (11th Cir. 2000). In deciding whether to award front pay, courts have considered factors, such as whether "discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy," whether the plaintiff has been subjected to threats or intimidation by Defendant's management, or whether "termination had harmed the plaintiff's emotional well-being." Id. (citations omitted).

The court can speculate as to why front pay may be appropriate in lieu of reinstatement, but Plaintiff has not presented any argument or evidence on this point. Nor has Plaintiff provided an explanation or presented case law in support of his position as to the duration of the requested front pay. He should be prepared to do so at the hearing. Plaintiff also should ensure that the record is complete as to all evidence necessary to support the requested front pay award.

*4. Compensatory Damages*

Plaintiff seeks compensatory damages for pain and suffering and mental and emotional stress he suffered as a result of race discrimination. Plaintiff complains that the loss of income he suffered as a result of his unlawful termination has forced him into bankruptcy. Concomitant to his financial distress, he asserts that he has endured physical and emotional strain which he describes as follows: "I have had trouble sleeping[;] I have gained weight. I find myself distracted, sad, and angry, successively. I have trouble focusing on my job, and I find that I am more sensitive than I was to perceived discriminatory events. I would now describe myself as hypervigilant." (Pl. Aff. at 2.)

42 U.S.C. § 1981a(a)(1) permits a Title VII plaintiff to recover compensatory damages, "provided that the complaining party cannot recover under section 1981 of this title." Id. The effect of this provision in this litigation, in addition to preventing a double recovery for Plaintiff under Title VII and § 1981,[4] is that Plaintiff is not limited to the statutory caps of Title VII in seeking compensatory damages. See 42 U.S.C. § 1981a(b)(4) (capping damages under Title VII, but expressly providing that "[n]othing in this section shall be construed to limit the scope of relief available under . . . [42 U.S.C. § 1981]"); see also Johnson, 421 U.S. at 460 (holding that the legal relief for an employment discrimination case arising under 42 U.S.C. § 1981 includes compensatory

[4] See Dunning v. General Electric Co., 892 F. Supp. 1424, 1430 (M.D. Ala. 1995) (concluding that Title VII permits plaintiffs to recover damages, but not "duplicative damage awards").

damages); Chellen, 434 F. Supp.2d at 1103-04 (observing that the Title VII compensatory damages cap does not apply to § 1981 compensatory damages awards).

Compensatory damages in civil rights cases may include damages for emotional distress and mental anguish. Stallworth v. Shuler, 777 F.2d 1431, 1435 (11th Cir. 1985); 42 U.S.C. § 1981a(b)(3) (describing compensatory damages as including damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"). Compensatory damages for mental anguish should be awarded in an amount that reasonably and fairly compensates the victim of discrimination for his or her injuries. Hearn v. General Elec. Co., 927 F. Supp. 1486, 1500 (M.D. Ala. 1996). Such damages may be proved solely by a plaintiff's testimony if the testimony is sufficiently detailed. See, e.g., Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998) (holding that plaintiff's "testimony of anxiety, sleeplessness, stress, marital hardship and loss of self-esteem was sufficiently detailed" to support Title VII compensatory damages award); cf. Price v. City of Charlotte, N.C., 93 F.3d 1241, 1254 (4th Cir. 1996) (holding that while "a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation," the testimony must show "demonstrable emotional distress, which must be sufficiently articulated"; "conclusory statements" are insufficient).

The court finds that issues surrounding Plaintiff's pain and suffering and emotional distress, as outlined in Plaintiff's affidavit, are more appropriate for resolution on the basis of Plaintiff's testimony at a hearing, rather than upon Plaintiff's affidavit

alone. Accordingly, Plaintiff should be prepared to present testimony and other evidence, if necessary, regarding the basis for Plaintiff's compensatory damages' request.

*5. Attorneys' Fees and Costs*

Finally, Plaintiff requests attorneys' fees and costs incurred as result of this litigation. A prevailing party is entitled to an award of costs, including reasonable attorneys' fees. See 42 U.S.C. § 2000e-5(k). Plaintiff bears the burden of demonstrating entitlement to an award of attorneys' fees in an amount which comports with the standards set forth in Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988). A "'prevailing party' is one that 'succeed[ed] on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit.'" Torres v. Metropolitan Life Ins. Co., 189 F.3d 331, 332 (3d Cir. 1999) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). The court concludes that Plaintiff is a prevailing party in this action in light of the default judgment. At the hearing, Plaintiff may supplement the record with any evidence of additional attorneys' fees and/or costs incurred.

**VI. ORDER**

In accordance with the foregoing, it is CONSIDERED and ORDERED as follows:

(1) Plaintiff's motion for default judgment be and the same is hereby GRANTED on the issue of liability; and

(2) an evidentiary hearing on the issue of damages is hereby set on the 22nd day of August, 2006, at 1:00 p.m., Courtroom 2-B, in the United States Courthouse, One Church Street, Montgomery, Alabama.[5]

DONE this 17th day of August, 2006.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE

[5] After determination of damages, the court will enter a final judgment in this matter.