IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DARRELL HINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 2:05cv971-ID |
| | ) |
| WEBSTER INDUSTRIES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE AND VACATE ENTRY OF DEFAULT**

**COMES NOW** Defendant Chelsea Industries, Inc., improperly identified in the Complaint as Webster Industries, and submits this memorandum of law in support of its Motion to Set Aside and Vacate Entry of Default filed separately herewith in the above-styled cause of action. In support thereof, the Defendant offers the following:

**I.    General Background**

On or about October 13, 2004, Darrell Hinson ("Hinson"), a black male, filed a Charge of Discrimination against Webster Industries, Inc. ("Webster") with the Equal Employment Opportunity Commission ("EEOC"). He alleged that he had been discriminated against on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.*, as amended, and on the basis of disability in violation of the American Disabilities Act.  Specifically, he argued that he was wrongfully terminated for a safety violation while other Caucasian employees that committed the same violation and were not discharged. Additionally, Mr. Hinson asserted that he was discriminated against because of a perceived disability.

Webster Industries retained Haskell Slaughter to handle the EEOC proceedings.

(See Affidavit of Clevette Ellis, attached hereto as Exhibit "A") On May 3, 2005, Haskell Slaughter presented to the EEOC Webster's Position Statement. On August 4, 2005, the EEOC issued a dismissal and notice of rights. (See Dismissal and Notice of Rights, attached hereto as Exhibit "B") The Dismissal was sent to the Plaintiff and copied to Jamie Johnston with Haskell Slaughter as counsel for Webster. (Exhibit "B")

On or about October 11, 2005, Plaintiff filed the above-styled cause of action against Defendant. On October 31, 2005, Marvin Leef retired as the Executive Vice-President of the Montgomery operations of Chelsea Industries, Inc. (¶ 3, Exhibit "A") In his capacity as the Executive Vice President, for nearly ten years, Mr. Leef was responsible for coordinating legal matters with legal counsel. (¶ 4, Exhibit "A"). The record indicates by copy of the certified mail return receipt card, that the Summons and Statement of the Claim was served on the Defendant on October 31, 2005 and signed for by Jennifer Keodouangdy. (Attached hereto as Exhibit "C"). The Complaint was not served upon counsel for Webster despite the clear knowledge of the Plaintiff of Haskell Slaughter's representation of Webster during the EEOC investigation. (See Affidavit of Jamie A. Johnston, Esq., ¶ 2, attached hereto as Exhibit "D") On December 21, 2005, the Plaintiff filed a Motion for Default; however, the Plaintiff did not serve the Motion for Default Judgment upon the Defendant at either their home office in Peabody, Massachusetts or at their operations office in Montgomery, Alabama. (¶ 5, Exhibit "A"). Further, the Plaintiff did not serve a copy of the Motion for Default upon Webster's counsel, Haskell Slaughter, Young & Gallion, LLC. (¶ 3, Exhibit "D") A copy of this Court's August 17, 2006 Order and Memorandum of Opinion was served upon the Defendant at the Montgomery division of Chelsea Industries on August 22, 2006. (¶ 6,

Exhibit "A"). Upon receipt of the Order, the Human Resource Manager and Mr. Leef's replacement, for the first time, found the Complaint in Mr. Leef's files and was alerted to the fact that Mr. Hinson had filed a lawsuit against the Defendant. (¶ 7, Exhibit "A"). On the same date, the Defendant then retained counsel, who in turn prepared and filed a Motion to Set Aside Default and supporting memorandum. A hearing on damages is scheduled for August 29, 2006.

## II.    Factual Background

The facts, in the light most favorable to Hinson, are as follows:

On or about November 28, 2001, Hinson applied for a truck driver's position with the Defendant at its Montgomery operation. (¶ 9, Exhibit "A"; See also Driver's Application for Employment, attached hereto, as Exhibit "E"). On or about March 18, 2002, Hinson began employment with the Defendant.

On or about February 19, 2004, Hinson was stabbed in his neighborhood. Hinson required medical treatment for the injuries he suffered as a result of the stabbing. (¶ 10, Exhibit "A"; See also Short Term Disability Form attached hereto, as Exhibit "F") On or about February 24, 2004, Hinson completed a Leave of Absence Request Form, which stated he was expected to be out for approximately two months because of the injuries he suffered as a result of the stabbing. Hinson received short-term disability in accordance with Webster's policy. Hinson returned to work **without any limitations** on or about April 10, 2004. (¶ 11, Exhibit "A"; See also April 8, 2004 Email Correspondence, attached hereto, as Exhibit "G").

On or about April 11, 2004, Hinson drove his truck and pulled a trailer away from a loading dock while a forklift driver was inside his trailer. (¶ 12, Exhibit "A") Hinson

3

clearly violated safety procedures that require all drivers to check his trailer before driving away from the loading dock. (¶ 12, Exhibit "A") This was a serious safety violation that could have severely injured the forklift driver and/or done extensive property damage (¶ 12, Exhibit "A"). Hinson was suspended while the incident is under investigation. (¶ 13, Exhibit "A"; See Personnel Documentation for Employee Progressive Disciplinary Action dated April 14, 2004, attached hereto as Exhibit "H"). On or about April 20, 2004, the Defendant completed the investigation and determined that consistent with Defendant's policy Hinson was terminated for violation of the safety procedures. (¶ 14 Exhibit "A"; See Personnel Documentation for Employee Progressive Disciplinary Action dated April 20, 2004, attached hereto, as Exhibit "I"). Upon termination, Hinson's position was posted internally. (¶ 15, Exhibit "A"). Alvin Pugh, an African American male, was awarded the job bid and replaced Hinson as a truck driver. (¶ 15, Exhibit "A").

### III. Argument

Pending before this Court is Defendant's Motion to Set Aside and Vacate Entry of Default. Rule 55 of the Federal Rules of Civil Procedure governs entry and vacation of defaults. Specifically, Rule 55(c) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> "For good cause shown, the court may set aside an entry of default…"

This Court is cloaked with the discretion to enter defaults and can pursuant to Rule 55(c) vacate prior entries of default for good cause shown.[1] Entry of judgment by

---

[1] The Eleventh Circuit has ruled that the "good cause standard" for setting aside an entry of default is "less rigorous" for the movant than the "excusable neglect standard" for setting aside a default judgment. *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

default is an extreme remedy, which should be used on a limited basis and only in extreme situations. *Gill v. Tillman,* F.Supp.2d, 2001 WL 395051 (S.D. Ala. 2001)(quoting *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir. 1985)(citing *Flaska v. Little River Marine Construction Co.,* 389 F.2d 885, 887 (5th Cir. 1968), cert. Denied, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed. 2d 1387 (1968)); *accord Davis v. Parkhill-Goodloe Co.,* 302 F.2d 489, 495 (5th Cir. 1962)("We need only briefly mention that we concur fully in the trial Judge's refusal to grant the plaintiff a default judgment… Where there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the defendant to the end of securing a trial upon the merits.")(citing 6 Moore, Federal Practice 55.01(1) at 1829)). Generally, defaults are disfavored because of the strong public policy of deciding cases on the merits. *See Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.,* 740 F.2d 1499 (11th Cir. 1984).

Noting that other considerations may also be appropriate, the Court generally considers the following factors in order to determine whether "good cause" under Rule 55(c) exists: "(1) whether the defaulting party took prompt action to vacate default; (2) whether the defaulting party provided plausible excuse for default; (3) whether the defaulting party presented meritorious defense; and (4) whether the party not in default will be prejudiced if default is set aside." *In re Tires and Terms of Columbus, Inc. v. Wallace A. Kitchen, et* al, 262 B.R. 885 (M.D. Ga, 2000)(See also, *Compania Interamericana Export-Import v. Compania Dominicana de Aviacion,* 88 F.3d 948, 951 (11th Cir. 1996)). As the Defendant will demonstrate herein, consideration of the good cause shown standard and consideration of the foregoing factors, the entry of the default is due to be set aside.

### A.    Defendant Took Prompt Action to Vacate Default

Under the first factor, Defendant need only act to set aside the default within a reasonable time after the entry of default. *In re Tires and Terms of Columbus, Inc., supra.* (citing *Rogers v. Allied Media, Inc. (In re Rogers)*, 160 B.R. 249, 251-52 (Bankr.N.D.Ga. 1993)(citing *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 527-28 (11th Cir.1990)). In the present case, this Court entered default on August 17, 2006. The Defendant received a copy of the default on August 22, 2006 and on the same day notified the undersigned. (¶ 17, Exhibit "A"). The Defendant, by and through its counsel, filed the Motion to Set Aside Entry of Default on August 24, 2006. It is clear the Defendant acted promptly after actual knowledge of the default to set it aside. Thus, the first factor of good cause shown has unquestionably been established.

### B.    Defendant Has Plausible Excuse for the Default

Under the second factor, this Court must decide whether the Defendant has a plausible excuse for the default. As set forth above, the Executive Vice-President of Operations in the Montgomery office retired on or about October 31, 2005, the same date the Defendant received the Complaint. During his approximately 10 years of service with the Defendant, Mr. Leef was responsible and in fact handled the assignment of lawsuits, claims and other legal matters, to outside legal counsel. (¶ 16, Exhibit "A"). At the time of service of the Complaint, the procedure in place was for all certified mail to be signed by senior management only so that appropriate action could be taken for any time sensitive mailings. (¶ 6 Affidavit of Bruce Linson attached hereto as Exhibit "J"). The Complaint was received by Jennifer Keodouangdy, a clerk in the accounting department at the Montgomery division of Chelsea Industries, not a member of senior

management. (¶ 17, Exhibit "A").[2] The Complaint was placed inside Mr. Leef's files, where it remained until the Defendant received the Order of this Court. (¶ 16, Exhibit "A"). The Defendant never received any Motion for Default or other pleading beyond the Complaint between October 31, 2005 and August 22, 2006. (¶ 17, Exhibit "A"). Neither the Human Resource Manager nor the General Manager was aware of the lawsuit until receipt of the Entry of Default. (¶ 18, Exhibit "A", ¶ 4, Exhibit "J"). The Defendant would have answered the Complaint had it known of its existence. (¶ 18, Exhibit "A", ¶ 5, Exhibit "J") Mr. Leef handled the Hinson EEOC filing prior to his retirement. (¶ 7, Exhibit "J") The Defendant was aware that the EEOC had dismissed the EEOC claim. (¶ 7, Exhibit "J") Having not seen the Complaint nor any other documentation on this file beyond the EEOC dismissal, the Defendant erroneously assumed the matter had been closed. Furthermore, counsel for Webster, was not served with the lawsuit, the Motion for Default, nor was counsel for Webster contacted by Plaintiff since the filing of this lawsuit. (¶ 4, Exhibit "D") Also, the Plaintiff previously worked for the trucking division of the Defendant. All matters involving the trucking department were sent to corporate office in Peabody, Massachusetts. (¶ 7, Exhibit "J") The Defendant further, albeit erroneously, assumed that if it was not resolved the corporate office in Massachusetts handled it as they handle trucking matters from their office. (¶ 7, Exhibit "J")

The absence of a timely answer was not the willful conduct of the Defendant in an effort to disregard the judicial process. In fact, the Defendant recognizes and respects the judicial process, as exhibited in the fact that the Defendant timely filed all appropriate responses to Hinson's EEOC charges prior to the institution of this lawsuit. The

---

[2] The Complaint was not sent to the proper defendant, Chelsea Industries, at its principal place of business.

timeliness and appropriateness of the Defendants' actions are exhibited by the findings of the EEOC in its decision of August 4, 2005. (See Exhibit "E"). The Defendant has clearly established a plausible excuse for failing to file an answer; thereby satisfying the second factor of the "good cause" standard.

The Defendant's internal procedure for handling the receipt of certified mail was violated and in doing so the lawsuit was never brought to Mr. Leef's replacement's attention. Secondly, the Defendant was served on the same day that Mr. Leef, the man responsible for almost ten (10) years for handling assignment of legal matters, retired. The Complaint was placed with Mr. Leef's files and never provided to other management after his retirement. Furthermore, Mr. Leef's replacement and the Human Resources Manager erroneously, yet with good cause, thought that the Hinson matter was resolved because of the dismissal from the EEOC. Lastly, Webster's counsel during the EEOC matter was the undersigned. The Plaintiff knew of the representation and never served upon the undersigned the Complaint, any filings with the Court, including but not limited to the Motion for Default.

Accordingly, the Defendant has satisfied and shown that the absence of an answer was not willful conduct of the Defendant. There was clearly a plausible excuse for failing to timely answer the Complaint. Mr. Leef retired on or about the same date the Complaint was received and during the transition of Mr. Leef with his replacement, it was not brought to Mr. Leef's replacement's attention for appropriate handling. An unauthorized clerk signed for the Complaint, rather than a member of senior management, who would have been aware of the time sensitive nature of the Complaint. Neither the undersigned nor Webster was served with the Motion for Default, despite the

knowledge of the Plaintiff of the involvement of the undersigned. The existence of each of these plausible excuses satisfies this factor of the good cause standard.

### C. The Defendant Has A Meritorious Defense

The Defendant has a meritorious defense to the claims presented by Hinson in his Complaint as required under the third factor of the "good cause" shown standard. The Defendant's defenses are set forth below. Furthermore, the EEOC confirmed the existence of the meritorious defense when they determined that they "were unable to conclude that the information obtained establishes violations of the statutes." (Exhibit "B") Specifically, the following shall address the meritorious defenses available to the Defendant against all of the Plaintiff's claims:

#### 1. Race Discrimination

The Plaintiff asserts a claim of race discrimination. A Title VII plaintiff who desires to bring a claim for disparate treatment can bring a suit on either direct or circumstantial evidence. *See E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920 (11th Cir. 1990). In a direct evidence case, the plaintiff must produce direct testimony that the employer acted with discriminatory motive, and must convince a trier of fact to accept the testimony. Such direct evidence can be comprised of statements by supervisory employees, which display race bias. Hinson does not attempt to prove his claim by direct evidence. Thus, we will direct our analysis to whether circumstantial evidence of disparate treatment exists.

In *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set forth one method of establishing a prima facie Title VII case utilizing circumstantial evidence. The complainant in a Title VII case must

carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This is satisfied by showing: (i) that he belongs to a racial minority; (ii) that he was qualified for the position; (iii) that, despite his qualification, he was subject to an adverse employment decision; and (iv) that, after the adverse employment decision, a white person replaced him. 411 U.S. at 802, 93 S.Ct. at 1824. Success in this regard creates a presumption of discrimination, which the employer may rebut by producing evidence Hinson was terminated for a legitimate non-discriminatory reason. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Upon such a showing, the presumption is rebutted, and the burden is on Hinson to show that the proffered justifications were merely pretextual, with the ultimate burden of persuasion remaining at all times with Hinson to prove intentional discrimination. *Id.* at 253, 101 S.Ct. 1089.

The first element has been satisfied. It is undisputed Hinson is African American and in a racial minority. The second element of a racial discrimination prima facie case is whether Hinson was qualified for the position. The second element has also been satisfied because it is undisputed Hinson was qualified for the trucking position he held until the gross safety violation set forth above was committed.

The third element of a prima facie case is that he was subjected to an adverse employment decision. Again, it is undisputed Hinson was terminated. The final element of a prima facie case is that Hinson was replaced by a non-minority. Webster replaced Hinson with Alvin Pugh, an African American male. Therefore, Hinson cannot satisfy the fourth prong of a prima facie case.

For discussion purposes, we will assume Hinson can satisfy a prima facie case.

10

The burden then shifts to Webster to establish a legitimate non-discriminatory reason for Hinson's termination. Hinson was terminated because of a gross safety violation. (¶ 14, Exhibit "A"). On April 11, 2004, Hinson pulled a trailer away from the loading dock without following the prescribed safety procedures. (¶ 12, Exhibit "A"). This action was compounded by the fact that a Webster employee in the process of loading the trailer was actually inside the trailer when Hinson pulled away from the dock. (¶ 12, Exhibit "A"). Further, when Hinson discovered that an employee was inside the trailer, he returned it to the loading dock with the forklift driver still inside. (¶ 12, Exhibit "A"). Additionally, Hinson pulled away with the wrong trailer. Hinson's actions were all gross violations of several safety procedures implemented by Webster. (¶ 12, Exhibit "A"). These gross violations could have resulted in serious injury and/or death of a Webster employee and/or substantial property damage. (¶ 12, Exhibit "A"). Accordingly, Webster had a legitimate and non-discriminatory reason for Hinson's termination.

Once Webster offers and supports a legitimate and non-discriminatory reason for its decision, the burden then shifts to Hinson to establish Webster's reason was pretextual. The ultimate burden lies with Hinson to prove intentional discrimination. Based on the above, Hinson is unable to maintain a charge against Webster for race discrimination under Title VII of the Civil Rights Act of 1964.

### 2.  American with Disabilities Act

Hinson also claims that Webster violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101-12213, when it terminated his employment. A prima facie case of discrimination under ADA in an employment termination situation is established by showing that: (1) the employee was disabled; (2) the employee is qualified to perform,

with or without accommodation; (3) the employer terminated the employee because of her disability. *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996).

An employee is considered to have a "disability" under the ADA if (1) he is substantially limited in one or more major life activities due to a physical or mental impairment, (2) he has a record of such impairment, or (3) she is regarded as having such impairment. 42 U.S.C. 12102(2). The regulations of the Rehabilitation Act, which have been adopted by the EEOC in interpreting the ADA, define a physical or mental impairment as being a physiological disorder or condition, which affects at least one body system or as being a mental or psychological disorder. 29 C.F.R Pt. 1630, App. 1630.2(h). When the impairment substantially limits a person in one or more of her major life activities, it rises to the level of a disability. 29 C.F.R. Pt. 1630.2(j). Basic life activities which the average person in the community can perform with little or no difficulty – such as lifting, reaching, standing, sitting, working, walking, performing manual tasks, and caring for oneself – are considered major life activities. 29 C.F.R. Pt.1630, App. 1630.2(i).

Hinson was stabbed in his neighborhood. (¶ 10, Exhibit "A"). As a result of the stabbing, Hinson suffered certain medical injuries, which ultimately required surgery. Hinson was absent from Webster for a period of approximately two months. Thereafter, Hinson returned to Webster's employment **without** any limitations. (¶ 11, Exhibit "A"). He did not have a disability nor was he perceived to have a disability given his complete recovery and the fact he returned to his employment without any limitation. Thus, Hinson cannot maintain an ADA claim.

Based upon the foregoing, the Defendant has clearly provided this Court with a meritorious defense based, not on general denials, but, rather, on a clear factual predicate. Accordingly, the third factor for "good cause" has been established.

### D. The Plaintiff Will Not Be Prejudiced by Setting Aside the Entry of Default

Lastly, the entry of default should be set aside because Plaintiff will not be prejudiced should this Court set aside the default entered against the Defendant. The relief requested by the Defendant is being made within 6 days of the entry of default, and two days within the date the Defendant received the Order.

### IV. Conclusion

The Defendant has shown that it took prompt action to vacate the default, provided a plausible excuse for the default, presented a meritorious defense and that the Plaintiff would not be prejudiced by the setting aside of the entry of default.

**WHEREFORE, THE ABOVE PREMISES CONSIDERED**, pursuant to Rule 55(c), the Defendant respectfully requests this Court to set aside the default entered against it and for any other relief it may be entitled under these circumstances.

Respectfully submitted,

/s/ Thomas T. Gallion, III

Thomas T. Gallion, III
Jamie A. Johnston
Attorneys for the Defendant

13

OF COUNSEL:

Haskell Slaughter Young & Gallion, L.L.C.
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573    Telephone
(334) 264-7945    Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing upon the following by placing a copy of the same in the U.S. Mail, properly addressed and postage prepaid, this the 24th of August 2006:

Jay Lewis, Esq.
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103

/s/ Thomas T. Gallion, III
_____
OF COUNSEL

#21843
83562-023