## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **DARRELL HINSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.: 2:05cv971-ID** |
| | ) |
| **WEBSTER INDUSTRIES,** | ) |
| | ) |
| **Defendant.** | ) |

### AFFIDAVIT OF CLEVETTE ELLIS

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| **MONTGOMERY COUNTY** | ) |

I, Clevette Ellis, being over the age of nineteen, and first duly deposed and sworn, state that the following is based on my personal knowledge of the facts contained herein:

1.    My name is Clevette Ellis. I am Human Resource Manager of Chelsea Industries Inc. in their Montgomery division, known as Webster Industries (hereinafter referred to as "Webster").

2.    The law firm of Haskell Slaughter Young & Gallion represented Webster in the Hinson EEOC matter.

3.    Upon information and belief Marvin Leef retired as the Executive Vice-President of Webster on October 31, 2005.

4.    In his capacity as the Executive Vice President, Mr. Leef was responsible for coordinating legal matters with legal counsel.

5.    No one at Webster received a Motion for Default Judgment at either the home office or the Montgomery operation.

6.    I received a copy of the Order and Memorandum of Opinion entering a



EXHIBIT

A

default against Webster on August 22, 2006.

      7.     Upon receipt of the Order, I located the Darrell Hinson Complaint in Mr. Leef's old files and for the first time was alerted to the fact that Mr. Hinson had filed a lawsuit against Webster.

      8.     On August 22, 2006, I contacted our counsel Tommy Gallion and Jamie Johnston, who in turn prepared and filed a Motion to Set Aside Default Judgment and supporting memorandum.

      9.     On or about November 28, 2001, Hinson applied for a truck driver's position with Webster. On or about March 18, 2002, Hinson began employment with Webster.

      10.    On or about February 19, 2004, Hinson was stabbed in his neighborhood. Hinson required medical treatment for the injuries he suffered as a result of the stabbing.

      11.    On or about February 24, 2004, Hinson completed a Leave of Absence Request Form, which stated he was expected to be out for approximately two months because of the injuries he suffered as a result of the stabbing. Hinson received short-term disability in accordance with Webster's policy. Hinson returned to work **without any limitations** on or about April 10, 2004.

      12.    On or about April 11, 2004, Hinson drove his truck and pulled a trailer away from a loading dock while a forklift driver was inside his trailer. When Hinson discovered that an employee was inside the trailer, he returned it to the loading dock with the forklift driver still inside. Additionally, Hinson pulled away with the wrong trailer. Hinson's actions were all gross violations of several safety procedures implemented by Webster. These serious safety violations could have severely injured the forklift driver

and/or done extensive property damage.

13.    Hinson was suspended while the incident was under investigation.

14.    On or about April 20, 2004, Webster completed the investigation and determined that consistent with Webster's policy Hinson was terminated for violation of the safety procedures.

15.    Upon termination, Hinson's position was posted internally. Alvin Pugh, an African American male, was awarded the job bid and replaced Hinson as a truck driver.

16.    Prior to receiving the entry of default, no one at Webster, under its current administration, was aware of the pending lawsuit.

17.    My review of the file indicates a former employee Jennifer Keodouangdy signed for the Complaint on October 31, 2005. Ms. Keodouangdy was not a member of Senior Management. Neither Mr. Leef's replacement nor I, were aware a lawsuit had been filed as the Complaint was not brought to either of our attention. The Hinson Complaint remained in Mr. Leef's files until August 22, 2006 when I received the notice of default and located the Complaint. Upon receipt of the Entry of Default, I was alerted to the urgency of this matter, located Mr. Leef's files and found the Complaint. On the same day, I retained counsel who filed the Motion to Set Aside Entry of Default. Between the service of the Complaint and the Entry of Default, Webster never received any other pleadings or communications regarding Mr. Hinson's claims.

18.    We did not receive any Motion for Default Judgment or other pleading beyond the Complaint between October 31, 2005 and August 22, 2006. Neither I, as the Human Resource Manager nor the General Manager was aware of the lawsuit until receipt of the Entry of Default. We would have answered the Complaint had we known of

3

its existence.

Further, the affiant saith not.

_Clevette Ellis_

**CLEVETTE ELLIS**

Sworn and subscribed before me on this the 24th day of August, 2006.

Notary Public

My commission expires  8/4/2010

EEOC Form 161 (3/99)

# DISMISSAL AND NOTICE OF RIGHTS

To:  **Darrell Hinson**
**P. O. Box 9951**
**Montgomery, AL 36108**

From:  **Birmingham District Office**
**Ridge Park Place, Suite 2000**
**1130 - 22nd Street, South**
**Birmingham, AL 335205**

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **130 2005 00189** | **Jean McGinnis-Barrera, Investigator** | **(205) 212-2056** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐  While reasonable efforts were made to locate you, we were not able to do so.

☐  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____
Bernice Williams-Kimbrough, District Director

8/4/05
*(Date Mailed)*

Enclosure(s)

cc:  **Jamie A. Johnston**
**Haskell, Slaughter, Young & Gallion, LLC**
**P. O. Box 4660**
**Montgomery, AL 3103-4660**



EXHIBIT
B

Hinson

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Webster Industries
2740 W. Gunter Park Drive
Montgomery, AL 36029

2:05CN971 Calico woo Cmp 20 Qu

2. Article Number
(Transfer from service label)

9220 5925 0000 06E0 5002

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Somila Keadouangdy_     ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)          C. Date of Delivery
S. Keadouangdy          10-31-05

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☑ Yes



EXHIBIT
C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL HINSON,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )  CIVIL ACTION NO.: 2:05cv971-ID
                                         )
WEBSTER INDUSTRIES,                      )
                                         )
        Defendant.                       )

## AFFIDAVIT OF JAMIE JOHNSTON

STATE OF ALABAMA           )
MONTGOMERY COUNTY          )

I, Jamie Johnston, being over the age of nineteen, and first duly deposed and sworn, state that the following is based on my personal knowledge of the facts contained herein:

1.      My name is Jamie Johnston. I am one of the attorneys for Webster Industries in the Montgomery, Alabama office of Haskell Slaughter Young & Gallion, LLC.

2.      The Complaint was not served upon counsel for Webster despite the clear knowledge of the Plaintiff of Haskell Slaughter's representation of Webster during the EEOC investigation.

3.      The Plaintiff did not serve a copy of the Motion for Default upon Webster's counsel, Haskell Slaughter, Young & Gallion, LLC.

4.      Counsel for Webster, was not served with the lawsuit, the Motion for Default Judgment, nor was counsel for Webster contacted by Plaintiff since the filing of this lawsuit.

EXHIBIT
D

Further, the affiant saith not.

_____

**JAMIE JOHNSTON**

Sworn and subscribed before me on this the 24th day of August, 2006.

_____

Notary Public

My commission expires ___8/4/2010___

2

# DRIVER'S
# APPLICATION FOR EMPLOYMENT

*web*

Company _Webster Industries_

Address _5402 LAMCO St_

City _Montgomery_ State _AL_ Zip _36117_

(answer all questions - please print)

In compliance with Federal and State equal employment opportunity laws, qualified applicants are considered for all positions without regard to race, color, religion, sex, national origin, age, marital status, or non-job related disability.

Date of application _11-28-1_

Position(s) Applied for _Driver (local)_

Name _Hinson_ _Darrell_ _Dewayne_      Social Security No. _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_
    Last          First         Middle

List your addresses of residency for the past 3 years.

Current Address _P.O. Box 7951_ _Montgomery_
    Street               City

_AL_ _36108_ Phone _201-4718_ How Long? _1 Year_
State         Zip Code

Previous Addresses _3220 Margarette Ann Dr. Montgomery_ _AL_ _36108_ How Long? _4 years_
    Street              City          State & Zip Code

    Street              City          State & Zip Code      How Long? _____

    Street              City          State & Zip Code      How Long? _____

Do you have the legal right to work in the United States? _Yes_

Date of Birth _10_ / _25_ / _73_      Can you provide proof of age? _Yes_
(Required for Truck Drivers)

Have you worked for this company before? _NO_      Where? _____

Dates: From _____ To _____ Rate of Pay _____ Position _____

Reason for leaving _____

Are you now employed? _Yes_ If not, how long since leaving last employment? _____

Who referred you? _Walk-in_      Rate of pay expected _$10.00 hr._

Is there any reason you might be unable to perform the functions of the job for which you have applied [as described in the attached job description]? _NO_

If yes, explain if you wish. _____

EXHIBIT
E

© Copyright 1995 J. J. KELLER & ASSOCIATES, INC., Neenah, WI • USA • (800) 327-6i

15F (Rev. 10/95)

| DATES | NATURE OF ACCIDENT (HEAD-ON, REAR-END, UPSET, ETC.) | FATALITIES | INJURIES |
|---|---|---|---|
| LAST ACCIDENT | | | |
| NEXT PREVIOUS | | | |
| NEXT PREVIOUS | | | |

TRAFFIC CONVICTIONS AND FORFEITURES FOR THE PAST 3 YEARS (OTHER THAN PARKING VIOLATIONS) IF NONE, WRITE NONE

| LOCATION | DATE | CHARGE | PENALTY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

(ATTACH SHEET IF MORE SPACE IS NEEDED)

## EDUCATION

CIRCLE HIGHEST GRADE COMPLETED: 1 2 3 4 5 6 7 8    HIGH SCHOOL: 1 2 3 (4)    COLLEGE: 1 2 3 4

LAST SCHOOL ATTENDED ___Calhoun High School___    ___Leto hatchee___
                        (NAME)                                   (CITY)

## EXPERIENCE AND QUALIFICATIONS – DRIVER

| | STATE | LICENSE NO. | TYPE | EXPIRATION DATE |
|---|---|---|---|---|
| DRIVER LICENSES | A1 | 5721461 | Commercial | 2-18-2 |
| | | | | |

A.  Have you ever been denied a license, permit or privilege to operate a motor vehicle?   YES _____ NO ✓

B.  Has any license, permit or privilege ever been suspended or revoked?   YES _____ NO ✓

IF THE ANSWER TO EITHER A OR B IS YES, ATTACH STATEMENT GIVING DETAILS

## DRIVING EXPERIENCE IF NONE, WRITE NONE

| CLASS OF EQUIPMENT | TYPE OF EQUIPMENT (VAN, TANK, FLAT, ETC.) | DATES FROM | TO | APPROX. NO. OF MILES (TOTAL) |
|---|---|---|---|---|
| STRAIGHT TRUCK | | | | |
| TRACTOR AND SEMI-TRAILER | Van | 1993 | Present | 500000 |
| TRACTOR - TWO TRAILERS | | | | |
| OTHER | | | | |

LIST STATES OPERATED IN FOR LAST FIVE YEARS ___Approx 25___

SHOW SPECIAL COURSES OR TRAINING THAT WILL HELP YOU AS A DRIVER: ___None___

WHICH SAFE DRIVING AWARDS DO YOU HOLD AND FROM WHOM? ___None___

EXPERIENCE AND QUALIFICATIONS - OTHER

SHOW ANY TRUCKING, TRANSPORTATION OR OTHER EXPERIENCE THAT MAY HELP IN YOUR WORK FOR THIS COMPANY

*None*

LIST COURSES AND TRAINING OTHER THAN SHOWN ELSEWHERE IN THIS APPLICATION

*None*

LIST SPECIAL EQUIPMENT OR TECHNICAL MATERIALS YOU CAN WORK WITH (OTHER THAN THOSE ALREADY SHOWN)

*None*

## TO BE READ AND SIGNED BY APPLICANT

This certifies that this application was completed by me, and that all entries on it and information in it are true and complete to the best of my knowledge.

I authorize you to make such investigations and inquiries of my personal, employment, financial or medical history and other related matters as may be necessary in arriving at an employment decision. (Generally, inquiries regarding medical history will be made only if and after a conditional offer of employment has been extended.) I hereby release employers, schools, health care providers and other persons from all liability in responding to inquiries and releasing information in connection with my application.

In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in discharge. I understand, also, that I am required to abide by all rules and regulations of the Company.

11-28-1
_____
Date

_____
Applicant's Signature

## PROCESS RECORD

APPLICANT HIRED _____         REJECTED _____

DATE EMPLOYED _____           POINT EMPLOYED _____

DEPARTMENT _____              CLASSIFICATION _____
(IF REJECTED, SUMMARY REPORT OF REASONS SHOULD BE PLACED IN FILE)

THIS SECTION TO BE FILLED IN BY RESPONSIBLE
OFFICER OR COMPANY REPRESENTATIVE

|  | SUPERIOR | GOOD | FAIR | BELOW AVERAGE | POOR | WRITTEN RECORD ON FILE |
|---|---|---|---|---|---|---|
| 1. APPLICATION |  |  |  |  |  |  |
| 2. INTERVIEW |  |  |  |  |  |  |
| 3. PAST EMPLOYMENT |  |  |  |  |  |  |
| 4. WRITTEN EXAM |  |  |  |  |  |  |
| 5. ROAD TEST |  |  |  |  |  |  |
| 6. CRIMINAL AND TRAFFIC CONVICTIONS |  |  |  |  |  |  |

SIGNATURE OF INTERVIEWING OFFICER _____

## TRANSFERS

FROM: _____ TO: _____        FROM: _____ TO: _____

DATE: _____                              DATE: _____

REASON FOR TRANSFER _____               REASON FOR TRANSFER _____

FROM: _____ TO: _____        FROM: _____ TO: _____

DATE: _____                              DATE: _____

REASON FOR TRANSFER _____               REASON FOR TRANSFER _____

## TERMINATION OF EMPLOYMENT

DATE TERMINATED _____          DEPARTMENT RELEASED FROM _____

DISMISSED _____ VOLUNTARILY QUIT _____ OTHER _____

TERMINATION REPORT PLACED IN FILE _____          SUPERVISOR _____

PAGE 4  15F (Rev. 10/95)

# EMPLOYMENT HISTORY

All driver applicants to drive in interstate commerce must provide the following information on all employers during the preceding 3 years. List complete mailing address, street number, city, state and zip code.

Applicants to drive a commercial motor vehicle* in intrastate or interstate commerce shall also provide an addi-
tional 7 years' information on those employers for whom the applicant operated such vehicle.
(NOTE: List employers in reverse order starting with the most recent. Add another sheet as necessary.)

| EMPLOYER | DATE |
|---|---|
| NAME _AMX_ | FROM MO. _8_ YR. _0_  TO MO. _11_ YR. _?_ |
| ADDRESS _1350 Emory Folmar Blvd._ | POSITION HELD _Driver_ |
| CITY _Montgomery_   STATE _AL_ ZIP _36110_ | SALARY/WAGE _$9.50 hr_ |
| CONTACT PERSON                PHONE NUMBER | REASON FOR LEAVING _Lay-off_ |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR.  TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY       STATE    ZIP | SALARY/WAGE |
| CONTACT PERSON           PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR.  TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY       STATE    ZIP | SALARY/WAGE |
| CONTACT PERSON           PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR.  TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY       STATE    ZIP | SALARY/WAGE |
| CONTACT PERSON           PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR.  TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY       STATE    ZIP | SALARY/WAGE |
| CONTACT PERSON           PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR.  TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY       STATE    ZIP | SALARY/WAGE |
| CONTACT PERSON           PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR.  TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY       STATE    ZIP | SALARY/WAGE |
| CONTACT PERSON           PHONE NUMBER | REASON FOR LEAVING |

*Includes vehicles having a GVWR of 26,001 lbs. or more, vehicles designed to transport 15 or more passengers, or any size vehicle used to transport hazardous materials in a quantity requiring placarding.

## EMPLOYMENT RECORD FOR PAST 10

Begin with your present or most recent job and work backward in order, listing your employers for a time necessary. All time must be accounted for, including military service, self-employment, and periods of une employment.

*Hinson*
*8 pages*
*11/27/01*
*334-281-6462*

### CURRENT EMPLOYER

From: 10/18/99 To: 7/31/00
Phone Number: 334) 262-1021
Type of Equipment Driven: Tractor Trailer - Van

Company Name: MCC
Address: P.O. Box 4306 City Montgomery State AL Zip 36101
Position Held: Driver    Salary: 23%
Reason For Leaving: too little work    Areas in which you drove: approx 15 states

### SECOND LAST EMPLOYER

From: 3/3/99 To: 8/20/99
Phone Number: (334) 265-4807
Type of Equipment Driven: Tractor Trailer Van - Flat Bed

Company Name: Southern Pallet
Address: 4596 Washington Ferry Rd City Montgomery State AL Zip 36108
Position Held: Driver    Salary: $8.00 hr.
Reason For Leaving: accused of running light and ect    Areas in which you drove: Alabama

### THIRD LAST EMPLOYER

From: 8/25/99 To: 10/31/99
Phone Number: 334 278-3171
Type of Equipment Driven: Tractor Trailer - Dump

Company Name: Santee Sand + Gravel
Address: 220 Hwy 80 West City Lowndesboro State Al Zip 36752
Position Held: Driver    Salary: $9.00 hr
Reason For Leaving: Rain - No Work    Areas in which you drove: Alabama

### FOURTH LAST EMPLOYER

From: 10/26/98 To: 2/22/99
Phone Number: 334) 271-0430
Type of Equipment Driven: None

Company Name: Multi Staffing
Address: 111 Market Place City Montgomery State Al Zip 36117
Position Held: Temp    Salary: $7-8.00 hr
Reason For Leaving: Temp Work    Areas in which you drove: None

### FIFTH LAST EMPLOYER

From: 10/15/95 To: 1/14/97
Phone Number: 334) 265-1567
Type of Equipment Driven: Tractor Trailer - Van

Company Name: PiKnik Products
Address: 3806 Day St City Montgomery State AL Zip 36108
Position Held: Driver    Salary: $7.75
Reason For Leaving: Had to do D2 mp for State - assault    Areas in which you drove: Alabama

### SIXTH LAST EMPLOYER

From: 1/16/95 To: 10/10/95
Phone Number: (None) No longer in business
Type of Equipment Driven: Tractor Trailer Van

Company Name: Builders Transport
Address: 2029 W. Dekalb St. City Camden State SC Zip 29020
Position Held: Driver    Salary: 21¢ mile
Reason For Leaving: Need to be home at time    Areas in which you drove: approx 30 states

### SEVENTH LAST EMPLOYER

From: 7/5/94 To: 1/12/95
Phone Number: 334) 284-8486
Type of Equipment Driven: Tractor Trailer Van, Forklift

Company Name: American Freightways
Address: Hwy 331 South City Montgomery State Al Zip 36105
Position Held: Spotter    Salary: $9.45 hr
Reason For Leaving: laid off    Areas in which you drove: only spotted

*Use separate sheet for additional employment history, if necessary.*

2

Rev. 02/2000

J.P. Teck (Driving School)
3920 Troy Hwy
Montgomery AL. 36116
(334) 288-1080
From: 11-93 To: 1-94

Unemployed
From: 5-15-93 To: 10-28-93

Winn Dixie
1550 Jackson Ferry Rd.
Montgomery AL. 36104 (334) 265-5240
From: 6-3-92 To: 5-15-93
Job: Select food products and operate forklift
Reason Left: company would not train me
to drive truck as their rep's R. Knight
promised me.

Calhoun High School
8213 Co. Rd. 33
Letohatchee AL. 36047
(334) 227-4515
Finished School: May 29, 1992

# Medical Examination Report
## FOR COMMERCIAL DRIVER FITNESS DETERMINATION

### 1. DRIVER'S INFORMATION

Driver completes this section.

**Driver's Name (Last, First, Middle)**
Hudson Darrell Dewayne

**Social Security No.** 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

**Birthdate** 10-25-70 M/D/Y

**Age** 69

**Sex** ☑M ☐F

☐ New Certification
☐ Recertification
☐ Follow Up

**Date of Exam** 3-18-2

**Address**
P.O. Box 7251

**Work Tel:** ( )

**Driver License No.** 522461

**License Class**
☑A ☐C
☐B ☐D
☐Other

**State of Issue** AL

**City, State, Zip Code**
Montgomery Al 36108

**Home Tel:** 334 201-4978

### 2. HEALTH HISTORY

Driver completes this section, but medical examiner is encouraged to discuss with driver.

| Yes | No | | Yes | No | |
|---|---|---|---|---|---|
| ☐ | ☑ | Any illness or injury in last 5 years? | ☐ | ☑ | Fainting, dizziness |
| ☐ | ☑ | Head/Brain injuries, disorders or illnesses | ☐ | ☑ | Sleep disorders, pauses in breathing while asleep, daytime sleepiness, loud snoring |
| ☐ | ☑ | Seizures, epilepsy | | | |
| | | ☐ medication | ☐ | ☑ | Stroke or paralysis |
| ☑ | ☐ | Eye disorders or impaired vision (except corrective lenses) | ☑ | ☐ | Missing or impaired hand, arm, foot, leg, finger, toe |
| ☐ | ☑ | Ear disorders, loss of hearing or balance | ☐ | ☑ | Spinal injury or disease |
| ☐ | ☑ | Heart disease or heart attack; other cardiovascular condition | ☐ | ☑ | Chronic low back pain |
| | | ☐ medication | ☐ | ☑ | Regular, frequent alcohol use |
| ☐ | ☑ | Heart surgery (valve replacement/bypass, angioplasty, pacemaker) | ☐ | ☑ | Narcotic or habit forming drug use |
| ☑ | ☐ | High blood pressure ☐ medication | | | |
| ☐ | ☑ | Muscular disease | | | |
| ☐ | ☑ | Shortness of breath | | | |
| ☐ | ☑ | Lung disease, emphysema, asthma, chronic bronchitis | | | |
| ☐ | ☑ | Kidney disease, dialysis | | | |
| ☐ | ☑ | Liver disease | | | |
| ☑ | ☐ | Digestive problems | | | |
| ☑ | ☐ | Diabetes or elevated blood sugar controlled by: | | | |
| | | ☐ diet | | | |
| | | ☐ pills | | | |
| | | ☐ Insulin | | | |
| ☑ | ☐ | Nervous or psychiatric disorders, e.g., severe depression | | | |
| | | ☐ medication | | | |
| ☑ | ☐ | Loss of, or altered consciousness | | | |

For any YES answer, indicate onset date, diagnosis, treating physician's name and address, and any current limitation. List all medications (including over-the-counter medications) used regularly or recently.

_____

_____

_____

I certify that the above information is complete and true. I understand that inaccurate, false or missing information may invalidate the examination and my Medical Examiner's Certificate.

**Driver's Signature** _David R Dewayne Hudson_     **Date** 3-18-2

**Medical Examiner's Comments on Health History** (The medical examiner must review and discuss with the driver any "yes" answers and potential hazards of medications, including over-the-counter medications, while driving.)

# TESTING (Medical Examiner completes Section 3 through 7)

## 3. VISION

**Standard:** At least 20/40 acuity (Snellen) in each eye with or without correction. At least 70° peripheral in horizontal meridian measured in each eye. The use of corrective lenses should be noted on the Medical Examiner's Certificate.

**INSTRUCTIONS:** When other than the Snellen chart is used, give test results in Snellen-comparable values. In recording distance vision, use 20 feet as normal. Report visual acuity as a ratio with 20 as numerator and the smallest type read at 20 feet as denominator. If the applicant wears corrective lenses, these should be worn while visual acuity is being tested. If the driver habitually wears contact lenses, or intends to do so while driving, sufficient evidence of good tolerance and adaptation to their use must be obvious. Monocular drivers are not qualified.

**Numerical readings must be provided.**

| ACUITY | UNCORRECTED | CORRECTED | HORIZONTAL FIELD OF VISION |
|---|---|---|---|
| Right Eye | 20/ | 20/ 20 | 90 ° |
| Left Eye | 20/ | 20/ 30 | 90 ° |
| Both Eyes | 20/ | 20/ 15 | 180 ° |

Complete next line only if vision testing is done by an ophthalmologist or optometrist.

Applicant can recognize and distinguish among traffic control signals and devices showing standard red, green and amber colors? ☒ Yes ☐ No

Applicant meets visual acuity requirement only when wearing:
☒ Corrective Lenses

Monocular Vision: ☐ Yes ☒ No

Date of Examination _____ Name of Ophthalmologist or Optometrist (print) _____ Tel. No. _____

License No./State of Issue _____     _____N/A_____  Signature

## 4. HEARING

**Standard: a) Must first perceive forced whispered voice ≥ 5 ft, with or without hearing aid, or b) average hearing loss in better ear ≤ 40 dB**

☐ Check if hearing aid used for tests. ☐ Check if hearing aid required to meet standard.

**INSTRUCTIONS:** To convert audiometric test results from ISO to ANSI, –14 dB from ISO for 500 Hz, –10 dB for 1,000 Hz, –8.5 dB for 2,000 Hz. To average, add the readings for 3 frequencies tested and divide by 3.

**Numerical readings must be recorded.**

a) Record distance from individual at which forced whispered voice can first be heard.

| | | |
|---|---|---|
| Right Ear | 10 | Feet |
| Left Ear | 20 | Feet |

b) If audiometer is used, record hearing loss in decibels. (acc. to ANSI Z24.5-1951)

| Right Ear | | |
|---|---|---|
| 500 Hz | 1000 Hz | 2000 Hz |
| | | |

Average:

| Left Ear | | |
|---|---|---|
| 500 Hz | 1000 Hz | 2000 Hz |
| | | |

Average:

## 5. BLOOD PRESSURE / PULSE RATE

| Blood Pressure | Systolic | Diastolic |
|---|---|---|
| | 110 | X |

Driver qualified if ≤ 160/90 on initial exam.

Pulse Rate | ☒ Regular  ☐ Irregular

**Numerical readings must be recorded.**

### GUIDELINES FOR BLOOD PRESSURE EVALUATION

**On initial exam**

If 161-180 and/or 91-104, qualify 3 mos. only.

If > 180 and/or 104, not qualified until reduced to < 181/105. Then qualify for 3 mos. only.

**Within 3 months**

If ≤ 160 and/or 90, qualify for 1 yr. Document Rx & control the 3rd month.

If ≤ 160 and/or 90, qualify for 6 mos. Document Rx & control the 3rd month.

### Certify

Annually if acceptable BP is maintained

Biannually

*Medical examiner should take at least 2 readings to confirm blood pressure.*

## 6. LABORATORY AND OTHER TEST FINDINGS

**Numerical readings must be recorded.**

Urinalysis is required. Protein, blood or sugar in the urine may be an indication for further testing to rule out any underlying medical problem. Other Testing (Describe and record)

| URINE SPECIMEN | SP. GR. | PROTEIN | BLOOD | SUGAR |
|---|---|---|---|---|
| | 1.030 | trace | No | No |

## 7. PHYSICAL EXAMINATION    Height 5' 11" (in.)    Weight 254 (lbs.)

The presence of a certain condition may not necessarily disqualify a driver, particularly if the condition is controlled adequately, is not likely to worsen or is readily amenable to treatment. Even if a condition does not disqualify a driver, the medical examiner may consider deferring the driver temporarily. Also, the driver should be advised to take the necessary steps to correct the condition as soon as possible particularly if the condition, if neglected, could result in more serious illness that might affect driving.

Check YES if there are any abnormalities. Check NO if the body system is normal. Discuss any YES answers in detail in the space below, and indicate whether it would affect the driver's ability to operate a commercial motor vehicle safely. Enter applicable item number before each comment. If organic disease is present, note that it has been compensated for.
See *Instructions to the Medical Examiner for guidance.*

| BODY SYSTEM | CHECK FOR: | YES* | NO | BODY SYSTEM | CHECK FOR: | YES* | NO |
|---|---|---|---|---|---|---|---|
| 1. General Appearance | Marked overweight, tremor, signs of alcoholism, problem drinking, or drug abuse. | | | 7. Abdomen and Viscera | Enlarged liver, enlarged spleen, masses, bruits, hernia, significant abdominal wall muscle weakness. | | |
| 2. Eyes | Pupillary equality, reaction to light, accommodation, ocular motility, ocular muscle imbalance, extraocular movement, nystagmus, exophthalmos, strabismus uncorrected by corrective lenses, retinopathy, cataracts, aphakia, glaucoma, macular degeneration. | | | 8. Vascular System | Abnormal pulse and amplitude, carotid or arterial bruits, varicose veins. | | |
| | | | | 9. Genito-urinary System | Hernias. | | |
| 3. Ears | Middle ear disease, occlusion of external canal, perforated eardrums. | | | 10. Extremities - Limb impaired. Driver may be subject to SPE certificate if otherwise qualified. | Loss or impairment of leg, foot, toe, arm, hand, finger. Perceptible limp, deformities, atrophy, weakness, paralysis, clubbing, edema, hypotonia. Insufficient grasp and prehension in upper limb to maintain steering wheel grip. Insufficient mobility and strength in lower limb to operate pedals properly. | | |
| 4. Mouth and Throat | Irremediable deformities likely to interfere with breathing or swallowing. | | | | | | |
| 5. Heart | Murmurs, extra sounds, enlarged heart, pacemaker. | | | 11. Spine, other musculoskeletal | Previous surgery, deformities, limitation of motion, tenderness. | | |
| 6. Lungs and chest, not including breast examination. | Abnormal chest wall expansion, abnormal respiratory rate, abnormal breath sounds including wheezes or alveolar rales, impaired respiratory function, dyspnea, cyanosis. Abnormal findings on physical exam may require further testing such as pulmonary tests and/or xray of chest. | | | 12. Neurological | Impaired equilibrium, coordination or speech pattern; paresthesia, asymmetric deep tendon reflexes, sensory or positional abnormalities, abnormal patellar and Babinski's reflexes, ataxia. | | |

*COMMENTS: _____

_____

_____

Note certification status here. See Instructions to the Medical Examiner for guidance.

- ☒ Meets standards in 49 CFR 391.41; qualifies for 2 year certificate
- ☐ Does not meet standards
- ☐ Meets standards, but periodic evaluation required

Due to _____ driver qualified only for:
- ☐ 3 months    ☐ 1 year
- ☐ 6 months    ☐ Other
- ☐ Temporarily disqualified due to (condition or medication): _____

Return to medical examiner's office for follow up on _____

**If meets standards, complete a Medical Examiner's Certificate according to 49 CFR 391.43(h).** (Driver must carry certificate when operating a commercial vehicle.)

- ☒ Wearing corrective lenses
- ☐ Wearing hearing aid
- ☐ Accompanied by a _____ waiver/exemption
- ☐ Skill Performance Evaluation (SPE) Certificate
- ☐ Driving within an exempt intracity zone
- ☐ Qualified by operation of 49 CFR 391.64

Medical Examiner's Signature _____

Medical Examiner's Name (print) Dr. Scheidler MD

Address 601 N.E. Blvd Dothan AL 36417

Telephone Number 334-673-6914

# BUREAU OF MOTOR CARRIER SAFETY
# WRITTEN EXAMINATION FOR DRIVERS

Applicant _Darrell Hinsan_     Date _3-11-2_

Examiner _____

1. 390.32  A motor carrier who is also a driver (owner-operator):
1.  (  ) is not covered by the safety regulations.
2.  (  ) must obey only those parts of the regulations which cover drivers.
3.  (  ) must obey only those parts of the regulations which cover motor carriers.
4.  ( ✓ ) must obey both the parts covering drivers and the parts covering motor carriers.

2. 391.11(b)(1)  With only a few exceptions, the Federal Motor Carrier Safety Regulations say a driver must be:
1.  (  ) at least 18 years old.
2.  (  ) at least 19 years old.
3.  (  ) at least 20 years old.
4.  (  ) at least 21 years old.

3. 391.15(c)(2)(3)  A driver cannot drive a motor vehicle:
1.  (  ) For one year after a first offense conviction for a felony involving a commercial motor vehicle he was driving.
2.  (  ) For one year after a first offense conviction for driving a commercial vehicle under the influence of alcohol or narcotics.
3.  (  ) For one year after a first offense conviction for leaving the scene of an accident which resulted in personal injury or death.
4.  ( ✓ ) For one year after a first offense conviction for any of the above.

4. 391.21(b)(7)(8)(10)  Every driver applicant must fill out an application form giving:
1.  (  ) a list of all vehicle accidents he was in during the previous 3 years.
2.  (  ) a list of all of his motor vehicle violation convictions and bond forfeits (except for parking) during the previous 3 years.
3.  (  ) a list of names and addresses of all of his employers during the previous 3 years.
4.  ( ✓ ) all of the above.

5. 391.27(a)(b)  At least once a year, a driver must fill out a form listing all motor vehicle violations (except parking) which he had during the previous 12 months.  He must fill out the form:
1.  (  ) even if he had no violations.
2.  (  ) only if he was convicted.
3.  (  ) only if he was convicted or forfeited bond or collateral.
4.  (  ) only if the carrier requires it.

6. 391.33(a)(2)  If a driver applicant has a valid certificate showing he passed a driver's road test:
1.  (  ) the carrier must accept it.
2.  ( ✓ ) the carrier may still require the applicant to take a road test.
3.  (  ) the carrier cannot accept it.
4.  (  ) the carrier may request a road test waiver from the Bureau of Motor Carrier Safety.

7. 391.41(b)(5)  Persons with breathing problems which may affect safe driving:
1.  (  ) cannot drive.
2.  (  ) cannot drive unless the vehicle has an emergency oxygen supply.
3.  (  ) cannot drive unless another driver is along.
4.  (  ) cannot drive except on short runs.

8. 391.41(b)(7)  Persons with arthritis, rheumatism, or any such condition which may affect safe driving:
1.  (  ) cannot drive unless they are checked by a doctor before each trip.
2.  ( ✓ ) cannot drive.
3.  (  ) cannot drive except when they are free of pain.
4.  (  ) cannot drive unless another driver is along.

9. 391.41(b)(8)  Persons who have ever had epilepsy:
1.  (  ) cannot drive unless another driver is along.
2.  ( ✓ ) cannot drive.
3.  (  ) cannot drive on long runs.
4.  (  ) cannot drive without monthly medical examinations.

10. 391.41(b)(9)(12)(13)  In order to be able to drive, a person:
1.  (  ) must not have any mental, nervous or physical problem likely to affect safe driving.
2.  (  ) must not use an amphetamine, narcotic or any habit-forming drug.
3.  (  ) must not have a current alcoholism problem.
4.  ( ✓ ) must not have or use any of the above.

11. 391.45(c)  Any driver who gets an injury or illness serious enough to affect his ability to perform his duties:
1.  (  ) must report it at his next scheduled physical.
2.  (  ) cannot drive again.
3.  ( ✓ ) must take another physical and be recertified before driving again.
4.  (  ) must wait at least 1 month after recovery before driving again.

12. 392.2  A driver may not drive faster than posted speed limits:
1.  (  ) unless he is sick and must complete his run quickly.
2.  ( ✓ ) at any time.
3.  (  ) unless he is passing another vehicle.
4.  (  ) unless he is late and must make a scheduled arrival.

13. 392.3  When a driver's physical condition while on a trip requires that he stop driving, but stopping would not be safe, the driver:
1.  (  ) must stop anyway.
2.  (  ) may try to complete his trip, but as quickly as possible.
3.  (  ) may continue to drive to his home terminal.
4.  ( ✓ ) may continue to drive, but must stop at the nearest safe place.

14. 392.5(a)(1)  A driver may not drink or be under the influence of any alcoholic beverage (regardless of alcoholic content):
1.  ( ✓ ) within 4 hours before going on duty or driving.
2.  (  ) within 6 hours before going on duty or driving.
3.  (  ) within 8 hours before going on duty or driving.
4.  (  ) within 12 hours before going on duty or driving.

15. 392.7  A driver must satisfy himself that service and parking brakes, tires, lights and reflectors, mirrors, coupling and other devices are in good working order:
1.  (  ) at the end of each trip.
2.  ( ✓ ) before the vehicle may be driven.
3.  (  ) only when he considers it necessary.
4.  (  ) according to schedules set by the carrier.

© Copyright 1978 & Published By:
J. J. KELLER & ASSOCIATES, INC.
145 W. Wisconsin Ave. - Neenah, Wisconsin 54956
(414) 722-2848
"International Technical Publishers"

FORM NO. 14F

16. 392.8  Which of the following must be in place and ready for use before a vehicle can be driven?
1. ( ✓ ) at least one spare fuse or other overload pro-
        tector of each type used on the vehicle.
2. (   ) a tool kit containing a specified list of hand
        tools.
3. (   ) at least one spare tire for every four wheels.
4. (   ) a set of spark plugs.

17. 392.9(a)(3)  If any part of the cargo or anything else blocks a driver's front or side views, his arm or leg movements, or his access to emergency equipment, the driver:
1. (   ) can drive the vehicle, but must report the
        problems at the end of the trip.
2. ( ✓ ) cannot drive the vehicle.
3. (   ) can drive the vehicle, but only at speeds un-
        der 40 miles per hour.
4. (   ) can drive the vehicle, but only on secondary
        roads.

18. 392.9(a)  Any driver who needs glasses to meet the minimum visual requirements:
1. (   ) must drive only during daylight hours.
2. ( ✓ ) must always wear his glasses when driving.
3. (   ) must always carry a spare pair of glasses.
4. (   ) must not drive a motor vehicle.

19. 392.9(b)  A driver may drive with a hearing aid:
1. (   ) if he always has it turned on while he is
        driving.
2. (   ) if he always carries a spare power source for
        it.
3. (   ) if he can meet the hearing requirements when
        he has it turned on.
4. ( ✓ ) if all of the above requirements are met.

20. 392.10(a)  A driver required to stop at a rail-road crossing should bring his vehicle to a stop no closer to the tracks than:
1. (   ) 5 feet.
2. (   ) 10 feet.
3. ( ✓ ) 15 feet.
4. (   ) 20 feet.

21. 392.10(a)  Shifting gears is not permitted:
1. (   ) when traveling faster than 35 miles per hour.
2. (   ) when moving across any bridge.
3. ( ✓ ) when crossing railroad tracks.
4. (   ) when traveling down a hill steeper than 10
        degrees.

22. 392.13  Drivers of motor vehicles not required to stop at drawbridges without signals:
1. (   ) must drive at a rate of speed which will permit
        a stop before reaching the lip of the draw.
2. (   ) must sound their horn before crossing.
3. ( ✓ ) can proceed across without reducing speed.
4. (   ) must slow down only if directed to by an atten-
        dant.

23. 392.15(a)  A driver turning his vehicle should be-gin flashing his turn signal:
1. (   ) at least 50 feet before turning.
2. (   ) at least 60 feet before turning.
3. (   ) at least 75 feet before turning.
4. ( ✓ ) at least 100 feet before turning.

24. 392.16  Which of the following is true?
1. ( ✓ ) if a seat belt is installed in the vehicle, a
        driver must have it fastened before beginning
        to drive.
2. (   ) a driver may or may not use the seat belt, de-
        pending on his judgment.
3. (   ) seat belts are not necessary on heavier vehicles.
4. (   ) a driver must use his seat belt only if re-
        quired to by the carrier.

25. 392.21  When a motor vehicle cannot be stopped off the traveled part of the highway, the driver:
1. (   ) must keep driving.
2. (   ) may stop, but shall get as far off the traveled
        part of the highway as possible.
3. (   ) may stop, but shall make sure that the vehicle
        can be seen as far as possible to its front and
        rear.
4. ( ✓ ) may stop if he has to, but should do both 2 and
        3 above.

26. 392.22(b)(1)  If a vehicle has a breakdown the driv-er must place one emergency signal:
1. (   ) 100 feet in front of the vehicle in the center
        of the lane it occupies.
2. (   ) 100 feet in back of the vehicle in the center
        of the lane it occupies.
3. (   ) 10 feet in front or back of the traffic side.
4. ( ✓ ) at all of the above locations.

27. 392.22(b)(1)(i)  If a vehicle has a breakdown on a poorly-lit street or highway, the driver shall place on the traffic side:
1. (   ) a reflective triangle.
2. (   ) a lighted red electric lantern.
3. (   ) a red reflector.
4. ( ✓ ) any one of the above.

28. 392.22(b)(2)(iii)  No emergency signals are required for a vehicle with a breakdown if the street or highway lighting is bright enough so it can be seen at a distance of:
1. (   ) 100 feet.
2. (   ) 200 feet.
3. ( ✓ ) 500 feet.
4. (   ) 750 feet.

29. 392.22(b)(2)(v)  If a vehicle has a breakdown and stops on a poorly-lit *divided or one way* highway, the driver must place one emergency signal:
1. (   ) 200 feet in back of the vehicle in the center of
        the lane it occupies.
2. (   ) 100 feet in back of the vehicle on the traffic
        side of the vehicle.
3. (   ) 10 feet in back of the vehicle on the traffic
        side of the vehicle.
4. ( ✓ ) at all of the above locations.

30. 392.25  Lighted flame-producing emergency signals, including fusees:
1. (   ) may not be used with vehicles carrying Class A
        or B explosives.
2. (   ) may not be used with tank vehicles, loaded or
        empty, which are used to carry flammable li-
        quids or gas.
3. (   ) may not be used with any vehicle using com-
        pressed gas as a fuel.
4. ( ✓ ) may be used with any of the above.

31. 392.30(a)  A driver is required to have his lights on:
1. (   ) from one-half hour *before* sunset to one-half
        hour *before* sunrise.
2. (   ) from one-half hour before sunset to sunrise.
3. (   ) from one-half hour *after* sunset to one-half
        hour *before* sunrise.
4. (   ) from sunset to one-half hour before sunrise.

32. 392.32(a)(b)  When lights are required on the open highway, a driver shall use the high beam:
1. (   ) except when within 500 feet of an on-coming ve-
        hicle or a vehicle he is following.
2. (   ) except when within 400 feet of an on-coming ve-
        hicle or a vehicle he is following.
3. ( ✓ ) except when within 200 feet of an on-coming ve-
        hicle or a vehicle he is following.
4. (   ) except when within 100 feet of an on-coming ve-
        hicle or a vehicle he is following.

33. 392.32(a) When lights are required, drivers may use lower beam lights:
1. ( ) when fog, dust or other such conditions exist.
2. ( ) when approaching tunnels or bridges.
3. ( ) when driving on one way highways.
4. ( ) when within 1,000 feet of business areas or where people live.

34. 392.40 Every driver involved in an accident must follow the Safety Regulation procedures whenever an injury or death is involved or if:
1. ( ) the accident is caused by the driver and property damage of over $250.00 results.
2. ( ) property damage of over $250.00 results, no matter who is at fault.
3. ( ) property damage of over $100.00 results.
4. ( ) property damage of any kind results.

35. 392.41 If a driver strikes a parked vehicle, he should first:
1. ( ) stop and call the local police.
2. ( ) stop and call his carrier.
3. ( ) stop and try to find the driver or owner of the parked vehicle.
4. ( ) stop and estimate the damage.

36. 392.42 When a driver receives notice that his operator's license or permit has been revoked, suspended, or withdrawn, he must:
1. ( ) notify his carrier within 72 hours.
2. ( ) notify his carrier within one week.
3. ( ) notify his carrier before the end of the next business day.
4. ( ) take no action since his carrier will also get a notice.

37. 392.61 Except in emergencies, no driver shall allow his vehicle to be driven by any other person:
1. ( ) except those he knows can drive it.
2. ( ) except on roads with little or no traffic.
3. ( ) except those allowed by the carrier to do it.
4. ( ) unless he goes along with the person driving.

38. 392.64 A person may ride inside a vehicle's closed body or trailer:
1. ( ) only on short runs.
2. ( ) only if there is an easy way to get out from the inside.
3. ( ) only if the inside of the body or trailer is lighted.
4. ( ) only if there is no cargo in it.

39. 392.66 If carbon-monoxide is inside a vehicle or if a mechanical problem may produce a carbon-monoxide danger, the vehicle:
1. ( ) may be sent out and driven so long as the windows are left open.
2. ( ) may not be sent out or driven.
3. ( ) may be sent out and driven only if the carrier decides the vehicle has to be used.
4. ( ) may be sent out and driven on short runs.

40. 392.68 No motor vehicle shall be operated out of gear:
1. ( ) except when fuel must be saved.
2. ( ) except on hills which are less than 20 degrees.
3. ( ) except when it is necessary for stopping or shifting gears.
4. ( ) except when the vehicle's speed is under 25 miles per hour.

41. 393.1(a) Under the Federal Motor Carrier Safety Regulations, no vehicle may be driven:
1. ( ) until a list of all missing or defective equipment has been prepared and given to the carrier.
2. ( ) until all equipment has been inspected and replacements for defective parts have been ordered.
3. ( ) unless all missing equipment is to be replaced no later than the end of the vehicle's next run.
4. ( ) until it meets all of the equipment requirements of the Regulations.

42. 393 various Minimum requirements for lighting, reflecting and electrical equipment and devices on buses and trucks:
1. ( ) are set by the vehicle makers.
2. ( ) are set by the National Safety Council.
3. ( ) are specified in the Safety Regulations.
4. ( ) are set by the trucking associations.

43. 393.18(a)(b) Every motor vehicle which has a load sticking out over its sides must be specifically marked with flags and lamps. Additional flags and lamps must be added if the load or tailgate sticks out beyond the rear of the vehicle by more than:
1. ( ) 2 feet.
2. ( ) 4 feet.
3. ( ) 6 feet.
4. ( ) 8 feet.

44. 393.41(a) Every vehicle shall have a parking brake system which will hold it, no matter what its load:
1. ( ) on any grade on which it is operated which is free from ice and snow.
2. ( ) on all grades under 15 degrees which are free from ice and snow.
3. ( ) on all grades under 20 degrees which are free from ice and snow.
4. ( ) on all grades under 25 degrees which are free from ice and snow.

45. 393.77(b)(6) A portable heater may not be used in any vehicle cab:
1. ( ) unless it is secured.
2. ( ) unless it is of the electric filament type.
3. ( ) at any time.
4. ( ) without approval from the carrier.

46. 395.3(a) Drivers are not generally allowed to drive for more than:
1. ( ) 6 hours following 8 straight hours off duty.
2. ( ) 8 hours following 8 straight hours off duty.
3. ( ) 10 hours following 8 straight hours off duty.
4. ( ) 12 hours following 8 straight hours off duty.

47. 395.3(a) Most drivers of large vehicles are not allowed to drive:
1. ( ) after they have been on duty for 16 hours.
2. ( ) after they have been on duty for 15 hours.
3. ( ) after they have been on duty for 14 hours.
4. ( ) after they have been on duty for 12 hours.

48. 395.3(b) Generally, a driver may not be "on duty":
1. ( ) for more than 40 hours in any 7 straight days.
2. ( ) for more than 50 hours in any 7 straight days.
3. ( ) for more than 60 hours in any 7 straight days.
4. ( ) for more than 70 hours in any 7 straight days.

49. 395.7 When a driver is riding in a vehicle, but is not driving and has no other responsibility, such time shall be counted as:
1. ( ) on-duty time.
2. ( ) on-duty time unless he is allowed 8 straight hours off duty when he gets to the destination.
3. ( ) on-duty time unless he is allowed 6 straight hours off duty when he gets to the destination.
4. ( ) on-duty time unless he is allowed 4 straight hours off duty when he gets to the destination.

50. 395.8(b) Every driver must prepare an original and one copy of a daily log which he must keep current by updating it:
1. ( ) every time he changes a duty status.
2. ( ) every 24 hours.
3. ( ) every 8 hours.
4. ( ) at the end of each trip.

51. 395.8(c) Except for the name and main address of the carrier, all entries in a log:
1. ( ) must be printed in ink or typed.
2. ( ) must be made by the carrier dispatcher.
3. ( ) must be made in front of a witness.
4. ( ) must be written in the driver's own handwriting.

52. 395.8(1)(p)(q)  Which of the following is *not* to be in a driver's log?
1.  (    )  Time spent in a sleeper berth.
2.  (    )  Total hours in each on-duty status.
3.  (    )  The name of the carrier or carriers.
4.  (  ⟋  )  The name and make of his vehicle.

53. 395.11  If an emergency delays a run which could normally have been completed within hours of service limits, the driver:
1.  (    )  must still stop driving when the hours of service limit is reached.
2.  (    )  may drive for 1 extra hour.
3.  (    )  may drive for 2 extra hours.
4.  (  ⟋  )  may finish his run without being in violation.

54. 395.13  Any driver declared "Out of Service":
1.  (    )  must take a road test before driving again.
2.  (    )  must wait 72 hours before driving again.
3.  (    )  must appeal to the Director of the Bureau of Motor Carrier Safety to drive again.
4.  (  ⟋  )  can drive again only after hours of service requirement are met.

55. 396.4  If a vehicle on a trip is in a condition likely to cause an accident or breakdown:
1.  (    )  the driver should report it at the end of his run so repairs can be made.
2.  (    )  the driver should drive at lower speeds for the rest of the run.
3.  (  ⟋  )  the driver should stop immediately unless going on to the nearest repair shop is safer than stopping.
4.  (    )  the driver should change his route so as to get away from heavily traveled roads.

56. 396.5(c)  If authorized Federal inspectors find a vehicle which is likely to cause an accident or breakdown:
1.  (    )  it will be reported to the carrier for repair as soon as the vehicle is not scheduled.
2.  (    )  it will be reported to the carrier for repair at the end of the trip.
3.  (  ⟋  )  it will be marked with an "Out of Service Vehicle" sticker and not driven until repairs are made.
4.  (    )  the driver will be held responsible and declared "Out of Service."

57. 396.5(c)(4)  If the driver makes his own repairs on an "Out of Service" vehicle:
1.  (    )  his work must be approved by a mechanic.
2.  (  ⟋  )  he must complete and sign a "Certification of Repairman" form himself.
3.  (    )  his work must be approved by his supervisor.
4.  (    )  his work must be approved by a Federal inspector.

### The following questions must be answered by Drivers involved in the transportation of Hazardous Materials.

58. 397.3  Department of Transportation Regulations covering the driving and parking of vehicles containing hazardous materials:
1.  (    )  replace State and local laws.
2.  (    )  prevent States and cities from having their own laws.
3.  (  ⟋  )  must be obeyed even if State or local laws are less strict or disagree.
4.  (    )  should not be obeyed if State or local laws disagree.

59. 397.5(c)  A vehicle which contains hazardous materials *other than* Class A or B explosives must be attended at all times:
1.  (    )  by the driver.
2.  (  ⟋  )  by the driver except when he is involved in something else necessary to his duties as a driver.
3.  (    )  by the driver or a person chosen by the driver.
4.  (    )  by the driver or a police officer.

60. 397.5(d)(1)  A vehicle containing Class A or B explosives or other hazardous materials on a trip is "attended":
1.  (    )  when the person in charge is anywhere within 100 feet of it.
2.  (    )  as long as the driver can see it from 200 feet away.
3.  (  ⟋  )  when the person in charge is within 100 feet and has a clear view of it.
4.  (    )  when the person in charge is resting in the berth.

61. 397.7(a)(3)  Except for short periods when operations make it necessary, trucks carrying Class A or B explosives cannot be parked any closer to bridges, tunnels, building or crowds of people than:
1.  (    )  50 feet.
2.  (    )  100 feet.
3.  (    )  200 feet.
4.  (  ⟋  )  300 feet.

62. 397.13(a)  Smoking or carrying a lighted cigarette, cigar or pipe near a vehicle which contains explosives, oxidizing or flammable materials is not allowed:
1.  (    )  except in the closed cab of the vehicle.
2.  (    )  except when the vehicle is moving.
3.  (  ⟋  )  except at a distance of 25 feet or more from the vehicle.
4.  (    )  except when approved by the carrier.

63. 397.15(a)(b)  When a vehicle containing hazardous materials is being fueled:
1.  (    )  no person may remain in the cab.
2.  (  ⟋  )  a person must be in control of the fueling process at the point where the fuel tank is filled.
3.  (    )  the area within 50 feet of the vehicle must be cleared.
4.  (    )  the person who controls the fueling process must wear special clothes.

64. 397.17(a)  If a vehicle carrying hazardous materials is equipped with dual tires on any axle, the driver must examine the tires:
1.  (    )  at all fueling stops only.
2.  (    )  only at the end of each day or tour of duty.
3.  (  ⟋  )  at the beginning of each trip and each time the vehicle is parked.
4.  (    )  at the beginning of each trip only.

65. 397.17(c)  If a driver of a vehicle carrying hazardous materials finds a tire which is overheated, he must:
1.  (    )  wait for the overheated tire to cool before going on.
2.  (    )  remove and replace the overheated tire, store it on the vehicle and drive on.
3.  (  ⟋  )  remove the tire, place it a safe distance from the vehicle and not drive the vehicle until the cause of the overheating is fixed.
4.  (    )  drive slowly to the nearest repair shop and have the cause of the overheating fixed.

66. 177.823(a)(3)  When required, specified hazardous materials markings or signs must be placed:
1.  (    )  wherever they can be seen clearly.
2.  (    )  on the sides and rear of the vehicle.
3.  (    )  on the front, rear and sides of the vehicle.
4.  (    )  on the front and rear bumpers of the vehicle.

FORM NO. 14F

## REQUEST FOR INFORMATION FROM PREVIOUS EMPLOYER

COMPANY: ALABAMA Food Service

ADDRESS: 401 Paul Rd

CITY&STATE: Montgomery, AL  ZIP: 36108

YOU ARE HEARBY AUTHORIZED TO GIVE:
WEBSTER INDUSTRIES
5402 LAMCO STREET
MONTGOMERY,AL. 36117

All information regarding my services,character and conduct while in your enployment.You are
released from any libility which may result from furnishing such information to the named company.

DATE 4-11-03  EMPLOYEE'S SIGNATURE: _____

WORK HABITS: DATES OF EMPLOYMENT  from 12-6-01 to: 3-15-02

1. Did the applicant drive a motor  vehicle for you ?--- yes
2. Tractor-semi trailer?--------other?-----
3. Was the applicant a safe and efficient driver ?--- yes
4. Was the driver involved in any accidents ?-- No
5. Where they chargeable--------
6. Reason for leaving your employment ?discharged---- layoff---- resigned---- other Another Job  Went to WEBSTER 3-15-02
7. Are you willing to rehire the applicant ? yes  no

SUBSTANCE ,ABUSE INVESTIGATIVE REPORT:

1.Did the driver have any alcohol test with results of 0.04 alcohol concentration or greater ? yes---- no
2.did driver have any verified positive controlled substance test results (check one) Yes----no
3.Did driver ever refused to be tested :yes----no

Signature of the person completing this form :  _____  date  5-1-03

FMSCR391/23 required an investigation into the driver's past employment record. This investigation must
be completed withen 30 days of employment, and may be by personal interviews , telephone interviews ,
letters or any other method that the carrier deems appropriate. A written record must include the past
employer's name ,address and the date of contact and comments made as to the driver's past record. The
written record shall be retained in the driver's qualification file.

Please furnish this information as soon as possible according to FMSCR 382.413 which is required. Please
see this regulation for futher information if needed.

REQUEST FOR INFORMATION FROM PREVIOUS EMPLOYER

COMPANY: *ALABAMA Food Service*

ADDRESS: ---------------------------------------------------

CITY&STATE: *Montgomery , AL*    ZIP------------------

YOU ARE HEARBY AUTHORIZED TO GIVE:
WEBSTER INDUSTRIES
5402 LAMCO STREET
MONTGOMERY,AL. 36117

    All information regarding my services,character and conduct while in your enployment.You are released from any libility which may result from furnishing such information to the named company.

DATE: *4-11-03*    EMPLOYEE'S SIGNATURE: *David Johnson*

WORK HABITS: DATES OF EMPLOYMENT   from-------------- to:-------------------------------

1.   Did the applicant drive a motor vehicle for you ?----------
2.   Tractor-semi trailer?-----------other?------
3.   Was the applicant a safe and efficient driver ?------
4.   Was the driver involved in any accidents ?-----
5.   Where they chargeable--------------
6.   Reason for leaving your employment ?discharged---- layoff----- resigned----- other--------
7.   Are you willing to rehire the applicant ? yes---no---

SUBSTANCE ABUSE INVESTIGATIVE REPORT:

1.Did the driver have any alcohol test with results of 0.04 alcohol concentration or greater ? yes--- no----
2.did driver have any verified positive controlled substance test results (check one) Yes----no----
3.Did driver ever refused to be tested :yes---no----

Signature of the person completing this form :
------------------------------------------------ date----------------------------

FMSCR391-23 required an investigation into the driver's past employment record. This investigation must be completed withen 30 days of employment, and may be by personal interviews , telephone interviews , letters or any other method that the carrier deems appropriate. A written record must include the past employer's name ,address and the date of contact and comments made as to the driver's past record. The written record shall be retained in the driver's qualification file.

Please furnish this information as soon as possible according to FMSCR 382.413 which is required. Please see this regulation for futher information if needed.

*5-1-03 Spoke to Nancy faxed Copy to her boss Joe McGuire at 9:35 Am*



The
# STANDARD.
**INSURANCE**

March 17, 2004



EXHIBIT
F

```
DARRELL  HINSON          BNFTS
PO BOX 9957
MONTGOMERY, AL     36108
```

| | |
|---|---|
| Group Name: | Webster Industries, Division of Chelesa Industries, Inc. |
| Policy Number: | 132489 |
| Claim Number: | 00AK6820 |

Dear Mr. Hinson:

We are pleased to inform you that your claim for Short Term Disability (STD) benefits has been approved. This letter generally explains the processing of your claim and how your benefits have been calculated.

STD benefits have been computed using the benefit formula in your group policy. The amount of your weekly STD benefit is $200.00.

Please note, this may be reduced by any applicable Social Security and/or Medicare taxes, State Disability and Workers Compensation benefits.

Benefits become payable after a waiting period is served. According to your group policy, the waiting period is 1 day for an accident. Information submitted indicated your disability began 02/19/2004. Benefits become payable on 02/20/2004.

To be eligible for continued benefits, you must meet the requirements of your group policy. To confirm your continued disability, we will periodically request that you have the physician treating you complete a medical questionnaire. We may also request certain other information from you or your physician(s). It is important that all information be returned to us as soon as possible, because a delay in receiving information could cause an interruption of your benefits.

At this time, additional information is needed for your disability benefits to continue after 03/31/2004. Our records show that your doctor has given an estimated return-to-work date of 04/01/2004.

For your convenience we have enclosed a medical form. This form should only be completed if you are disabled after 03/31/2004.

If you return to work full or part-time, please notify us immediately to prevent an overpayment of benefits. You may be eligible for partial disability benefits.

Benefit payments will cease when you (1) return to work, (2) are released to return to work, (3) fail to

provide evidence of continued medical impairment or (4) fail to meet any of the conditions for eligibility as defined in the group policy. The maximum benefit period for Short Term Disability is 180 days. Your maximum benefit period will provide benefits through 08/17/2004 provided that adequate documentation of continuous disability is received. Please contact your employer to verify your eligibility for any additional benefits, such as Group Long Term Disability and/or Continued Life Insurance.

Your claim will be closed for the reasons outlined above.

We have reached our decision based upon the reasons outlined above. If you want us to review your claim and this decision you must send us a written request within 180 days after you receive this letter. If you request a review, you will have the right to submit additional information in connection with your claim. If there is other new information you wish to have considered, please include it with your request for a review.

If you request a review, it will be conducted by an individual who was not involved in the original decision. If necessary the person conducting the review will consult with a medical professional regarding your claim. The medical professional will be someone who was not previously consulted in connection with your claim. The review would be completed within 45 days after we receive your request, unless circumstances beyond our control require an extension of an additional 45 days. If you request a review and the decision to deny, close or limit your claim is upheld, you will have the right to file suit under Section 502(a) of the Employee Retirement Income Security Act (ERISA) or state law, whichever is applicable.

We want to let you know that upon further investigation, other valid reasons for limiting or denying your claim, which have not been previously considered, could come to our attention. Therefore, Standard reserves the right to consider and assert other valid reasons for limitation or denial of your claim should they occur in the future.

Please consult your Certificate of Insurance or Summary Plan Document for a complete description of your rights under the terms of the group policy.

If you have any questions regarding your STD claim, please call The Standard at the number listed below. We will be happy to assist you.

Sincerely,

Customer Service Department
Consolidated Disability Benefits
(800) 368-2859

Enclosure

cc:    WEBSTER INDUSTRIES

## Judi Herrera

**From:** Bill Barton
**Sent:** Friday, April 09, 2004 7:56 AM
**To:** Judi Herrera
**Subject:** RE: Truckers on MLOA

Hi Judy,

Yes, I know about George Jackson.
I will send you a copy of Darrell's return to work order.

Thanks,
Bill

    -----Original Message-----
**From:** Judi Herrera
**Sent:** Thursday, April 08, 2004 2:40 PM
**To:** Bill Barton
**Cc:** William Snow; Amanda Danner; James Jones
**Subject:** Truckers on MLOA

Bill:

**RE: George Jackson # 2817 851 F/T Truck Driver**
George came to see me today, 04/08/04 with a doctor note excusing him from work starting 03/27/04
thru 04/12/04. I have forwarded a MLOA PSR to payroll. I will update you again if the return to work
date changes.

**Also: Darrell Hinson # 6314 851 F/T Truck Driver**
He says he has turned in the latest Dr note to you, with a return to work date of Sat, 04/10/04 - NO
RESTRICTIONS.
Please let me know if this is correct. I also need to have a copy of that return to work Doctor note.

Thank you
Judi

04/09/2004



EXHIBIT
G

*5 mailed 4/26/04 JH*

## Personnel Documentation
## For
## Employee Progressive Disciplinary Action

**Today's Date 4/14/2004      Employee Name Darrell Hinson**

**Employee Clock # 6314**

**Employee Assigned Shift Local Driver**

**Employee Assigned Department 85**

**Employee's Supervisor Bill Barton**

**Disciplinary Action being taken: Suspension**

**Describe Reason for Discipline:**
**On 4/11/2004, You drove your truck and pulled a trailer away from a loading dock while a forklift driver was in side your trailer. You violated several safety procedures that required you to check your trailer before driving away from the loading dock. This is a serious safety violation that could have severely injured the forklift driver and/or destroyed a Webster forklift. Therefore, you are being suspended while this incident is under investigation.**

**Previous Discipline Given:**
**Verbal - Date_____     1st Written - Date_____**
**Suspension – Date**
**Suspension # Days_____ to be taken on the following day(s)_____**
**Termination - Date** *Nancy Stewart*
**Supervisor's Signature_____    Employee's Signature** *Refused to sign*
(check if employee refused to sign)

**HR Representative Signature** *James C. Gore 4/14/04*

**Shop Steward Signature** *Charles Sanson*

**Copies: Employee, Employee's Supervisor, Operations Manager, HR Representative, HR Manager, Shop Steward, Union Business Representative, Employee File**



EXHIBIT
H

## Personnel Documentation
## For
## Employee Progressive Disciplinary Action

**Today's Date 4/20/2004      Employee Name Darrell Hinson**

**Employee Clock # 6314**

**Employee Assigned Shift Local Driver**

**Employee Assigned Department 85**

**Employee's Supervisor Bill Barton**

**Disciplinary Action being taken: Termination**

**Describe Reason for Discipline:**

**On 4/11/2004, You pulled a trailer away from the loading dock without following the prescribed safety procedures. This action was compounded by the fact that a Webster employee in the process of loading the trailer was actually inside the trailer when you pulled it away. Further, when you discovered that an employee was inside the trailer, you returned it to the loading dock with the forklift driver still inside. The fact that it was not the trailer you were supposed to pull away in the first place just adds to the problem. You have committed several serious safety violations the result of which could have been serious injury or death, not to mention a destroyed forklift. Therefore, you were suspended while this incident was under investigation.**

**After completing our investigation, we have concluded that based on the serious of these safety violations, your employment with Webster Industries has been terminated.**

**Previous Discipline Given:**

**Verbal - Date_____   1st Written - Date_____**

**Suspension – Date**

**Suspension # Days_____to be taken on the following day(s)_____**

**Termination - Date**

**Supervisor's Signature** *Bill Barton* **Employee's Signature** *Darrell Hinson*
(check if employee refused to sign)

**HR Representative Signature** *Janice C. Yarns* 4/20/04

**Shop Steward Signature** *May Hickerson*

**Copies: Employee, Employee's Supervisor, Operations Manager, HR Representative, HR Manager, Shop Steward, Union Business Representative, Employee File**



EXHIBIT
I

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL HINSON,                          )
                                         )
    Plaintiff,                           )
                                         )
v.                                       )  CIVIL ACTION NO.:  2:05cv971-ID
                                         )
WEBSTER INDUSTRIES,                      )
                                         )
    Defendant.                           )

### AFFIDAVIT OF BRUCE LINSON

STATE OF ALABAMA            )
MONTGOMERY COUNTY           )

    I, Bruce Linson, being over the age of nineteen, and first duly deposed and sworn, state that the following is based on my personal knowledge of the facts contained herein:

1.    My name is Bruce Linson. I am General Manager of Webster Industries.

2.    Upon information and belief, Marvin Leef retired as the Executive Vice-President of the Montgomery operations of Chelsea Industries, Inc. on October 31, 2005.

3.    In his capacity as the Executive Vice President, Mr. Leef was responsible for coordinating legal matters with legal counsel.

4.    I, as General Manager, was unaware a lawsuit had been filed by Mr. Hinson as his file was not brought to my office upon service of the Complaint.

5.    I was unaware of the lawsuit until receipt of the Entry of Default on August 22, 2006. The Defendant would have answered the Complaint had it known of its existence.

6.    Webster's policy during Mr. Leef's tenure was for only Senior Management to sign for certified mail.


EXHIBIT
J

7.    Mr. Leef handled the coordination of legal counsel when we received the Hinson EEOC filing.  I was aware the EEOC dismissed Hinson's claim and assumed the matter was resolved.  I further assumed that if it was not resolved our corporate office in Massachusetts handled it as they handle trucking matters from their office.

Further, the affiant saith not.

_____
**BRUCE LINSON**

Sworn and subscribed before me on this the _24_ day of August, 2006.

_____
Notary Public

My commission expires _____

**My Commission Expires 10/20/2009**

2