IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DARRELL HINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:05cv971-ID |
| ) | (WO) |
| WEBSTER INDUSTRIES, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Before the court is Defendant Webster Industries' ("Defendant") "motion to set aside and vacate entry of default," which the court construes as a motion seeking relief from both the entries of default and judgment by default on the issue of liability. (Doc. No. 20.) The motion is accompanied by a memorandum of law and an evidentiary submission. (Doc. No. 21.) Plaintiff Darrell Hinson ("Plaintiff") filed a response (Doc. No. 23), to which Defendant replied. (Doc. No. 24.)

In this lawsuit, Plaintiff, an African-American male, has sued his former employer on a claim of unlawful termination on the basis of race asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981"). Upon Defendant's failure to answer the complaint or to otherwise appear in this lawsuit, Plaintiff obtained an entry of default from the clerk, pursuant to

Rule 55(a), and a default judgment on the issue of liability, pursuant to Rule 55(b)(2).[1] See Fed. R. Civ. P. 55; (Doc. Nos. 11, 15.) The court set an evidentiary hearing on the issue of damages (Doc. No. 15), but, prior to the hearing, Defendant filed the instant motion for relief from default. (Doc. No. 20.) The court continued the evidentiary hearing pending resolution of Defendant's motion. (Doc. No. 22.)

A preliminary issue raised by the parties concerns the standard which governs the court's determination of whether to set aside the default judgment which was entered only on the issue of liability. For the reasons explained herein, the court finds that, because the court's default judgment is not yet a final default judgment, Rule 55(c)'s "good cause" standard applicable to setting aside an entry of default guides the court's determination. Applying the "good cause" standard, the court finds that Defendant's motion is due to be granted and that the entries of default and default judgment are due to be set aside.

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction). Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2). (Compl. ¶ 2.) The court finds adequate allegations of personal jurisdiction.

---

[1] All citations herein to the Rules are to the Federal Rules of Civil Procedure.

### III.  BACKGROUND

The events preceding the court's entry of judgment by default on the issue of liability are set out in the court's prior order entered in this case on August 17, 2006.  In order to give proper context to the present motion, the court incorporates some of those facts here.

Plaintiff has sued his former employer on a claim of unlawful termination on the basis of race.  In his complaint, Plaintiff sets out the following allegations.  Defendant hired Plaintiff on or about March 18, 2002, as a full-time local truck driver.  (Compl. ¶ 11 (Doc. No. 1).)  On or about April 14, 2004, Plaintiff was suspended from his job because of an error that constituted a "safety violation."  (Id. ¶ 12.)  Six days later, on or about April 20, Plaintiff's employment was terminated as a result of the safety violation; the decisionmaker was a Caucasian male.  (Id. ¶¶ 13, 18.)  Plaintiff alleges that at least one other similarly-situated Caucasian employee committed the same violation as Plaintiff, but was not terminated, and that the only apparent reason for the disparity in treatment was Plaintiff's race.  (Id. ¶¶ 14-16.)

Prior to filing this lawsuit, Plaintiff fulfilled Title VII's exhaustion requirements before the Equal Employment Opportunity Commission ("EEOC").  During the EEOC proceedings, Defendant was represented by the law firm of Haskell Slaughter Young & Gallion.  (See Clevette Ellis Aff. ¶ 2 (Ex. A to Doc. No. 21).)[2]  On August 4, 2005, the

---

[2] Clevette Ellis ("Ellis") signed his affidavit in his capacity as human resource manager of Chelsea Industries in its Montgomery division, known as Webster Industries.

EEOC issued Plaintiff a "Dismissal and Notice of Rights" letter in which the EEOC indicated as the reason for dismissal that it was "unable to conclude" that there was a violation of federal statutes, but at the same time the EEOC did not "certify" that Defendant was complying with federal statutes. (Ex. B to Doc. No. 21.)

Plaintiff timely filed this lawsuit on October 11, 2005, seeking redress from Defendant for his termination. (Doc. No. 1 ¶¶ 8, 20.) Plaintiff's complaint contains two counts. Count 1 alleges a claim of discriminatory discharge based on race, in violation of § 1981. (Id. at 4-5.) Count 2 seeks redress for the same wrong pursuant to Title VII. In his complaint, Plaintiff requests declaratory relief, an injunction, compensatory damages in the amount of $300,000.00, punitive damages, reinstatement/front pay, back pay, attorney's fees and costs. (Id. at 2, 5-6.)

A summons, together with a copy of the complaint, was served on Defendant on October 31, 2005, and was received by "J. Keodouangdy" on behalf of Defendant. (Doc. Nos. 5-6.) Defendant's answer was due on November 21, 2005. Defendant did not file an answer or otherwise respond to the complaint by the November 21 deadline. Consequently, Plaintiff sought and obtained from the clerk an entry of default. (Doc. Nos. 9, 11.) Plaintiff then filed a motion for default judgment. (Doc. No. 12.) Because Plaintiff represented to the court that the damages sought in this lawsuit are not for a sum certain, the court directed Plaintiff to file a brief as to the requested damages, together with evidence to support the requested amount. (Doc. No. 13.) Therein, the court noted that it would review the submitted materials and decide whether to schedule an

4

evidentiary hearing. (Id. at 2 n.1.) Plaintiff complied with the court's order and submitted evidence of the damages sought. (Doc. No. 14.) Therein, Plaintiff requested the court to enter a final default judgment in his favor in the amounts of $47,370.00 in back pay, $34,967.00 in front pay, $300,000.00 in compensatory damages, $6,801.00 in attorney's fees, and $272.20 in costs. (Id.)

Subsequently, in a memorandum opinion and order, entered on August 17, 2006, the court found that a default judgment was warranted on the issue of liability on the written record, but that an evidentiary hearing was necessary on the issue of damages. (Doc. No. 15.) The court, thus, granted Plaintiff's motion for default judgment on the issue of liability and set an evidentiary hearing on the issue of damages for August 22, 2006. (Id. at 16-17.) The court also noted that, "[a]fter determination of damages, the court w[ould] enter a final judgment in this matter." (Id. at 17 n.5.) Thereafter, upon motion of Plaintiff, the court entered an order on August 21, 2006, continuing the evidentiary hearing to August 29. (See Doc. Nos. 16-19.)

On August 24, 2006, Defendant filed the instant motion to set aside and vacate entry of default. (Doc. Nos. 20-21.) Via affidavits submitted in support of its motion, Defendant has provided an explanation for its failure to timely answer the complaint or otherwise make an appearance in this action and also has submitted evidence for the purpose of proffering non-discriminatory reasons for Plaintiff's termination. The court, thus, entered an order, directing Plaintiff to respond to Defendant's motion and continuing the evidentiary hearing until such time that the court resolved the instant

5

motion. (Doc. No. 22.) In compliance with the court's order, Plaintiff filed a response in which he "agrees that the defendant has asserted a meritorious defense, if its allegations are to be believed," but submits that Defendant's proffered excuse for the default is insufficient to warrant setting aside the default judgment on the issue of liability. (Doc. No. 23.) Defendant, thereafter, filed a reply. (Doc. No. 24.)

### IV. DISCUSSION

A motion made pursuant to Rule 55(c) is addressed to the sound discretion of the trial court. See McGrady v. D'Andrea Elec., Inc., 434 F.2d 1000, 1001 (5th Cir. 1970).[3] The court's discretion is tempered by this circuit's preference for a decision on the merits with full participation by the parties. See Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc., 740 F.2d 1499, 1510 (11th Cir. 1984).

Rule 55(c) of the Federal Rules of Civil Procedure states that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b), in turn, provides, in pertinent part, that relief from a "final judgment" for "mistake, inadvertence, surprise or excusable neglect" or for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(1), (6). "The importance

---

[3] In Bonner v. City of Prichard, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981. See 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

of distinguishing between an entry of default and a default judgment lies in the standard to be applied in determining whether or not to set aside the default." EEOC v. Mike Smith Pontiac GMC, Inc., 896 F.2d 524, 528 (11th Cir. 1990). "The excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default." Id.; Jones v. Harrell, 858 F.2d 667, 669 (11th Cir. 1988).

The Eleventh Circuit has expressed that the "good cause" standard is a liberal one. Compania Interamericana Export-Import, S.A. v. Compania Dominicana De Aviacion, 88 F.3d 948, 951 (11th Cir. 1996). Although "'good cause' is not susceptible to a precise formula," the Eleventh Circuit has set out some factors which may aid the court in its determination. Id. These factors include, but are not limited to, (1) "whether the default was culpable or willful" which entails an assessment of the plausibility of the defaulting party's excuse; (2) "whether setting [the default] aside would prejudice the adversary," (3) "whether the defaulting party presents a meritorious defense," and (4) "whether the defaulting party acted promptly to correct the default." Id.; Turner Broadcasting Sys., Inc. v. Sanyo Electric, Inc., 33 B.R. 996, 1001 (N.D. Ga. 1983), aff'd without op., 742 F.2d 1465 (11th Cir. 1984); see also Kelly v. Florida, No. 06-11258, 2007 WL 295419 (11th Cir. 2007) (unpublished) (quoting Compania Interamericana, *supra*, for the proposition that the Eleventh Circuit has established "'some general guidelines,'" which although not "'talismanic,'" may guide the court's Rule 55(c) "good cause"


determination). In short, the essence of Rule 55(c) is that an entry of default may be set aside if the party in default demonstrates "good cause," Fed. R. Civ. 55(c), and, as established in this circuit, the foregoing factors provide a means to assist the court in ascertaining whether such cause exists. See Compania Interamericana, 88 F.3d at 951 ("Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default."). On the other hand, while the inquiries are similar under the "good cause" and "excusable neglect" standards, the Eleventh Circuit applies the foregoing factors "more rigorous[ly]" in the context of considering whether to set aside a default judgment. See Mike Smith Pontiac GMC, 896 F.2d at 528; see also Chrysler Credit Corp. v. Macino, 710 F.2d 363, 368 (7th Cir. 1983) ("Although the elements for relief under Rule 55(c) and Rule 60(b) are substantially the same, the standards are applied more stringently when considering a motion to vacate a default judgment under Rule 60(b).").

The parties disagree on the standard of review applicable to Defendant's motion to set aside the default judgment on the issue of liability. Defendant maintains that it is entitled to Rule 55(c)'s "good cause" standard of review because the court has not yet determined damages (see Doc. No. 24 at 3), while Plaintiff urges the court to review the motion under the more stringent "excusable neglect" standard. (See Doc. No. 23 at 1.) Although each party cites opinions which discuss the "good cause" and "excusable neglect" standards of review, neither party cites an opinion which examines the issue of

how the court is to determine which standard applies in the first place. The court's own independent research, however, reveals that Defendant is correct.

In Anheuser Busch, Inc. v. Philpot, the Eleventh Circuit's account of the procedural events in the district court reveals that, subsequent to the clerk's entry of default and upon motion of the plaintiff, the court entered a default judgment against the defendant as to liability on a defamation claim, but set an evidentiary hearing for a determination of damages. See 317 F.3d 1264, 1265 (11th Cir. 2003). After hearing the evidence, the district court determined that the plaintiff had failed to prove any actual damages on the defamation claim; hence, the district court *sua sponte* vacated the default judgment on liability and entered final judgment for the defendant. Id. at 1265-66.

Although not the primary issue on appeal, the Eleventh Circuit concluded its opinion by "reject[ing]" the plaintiff's "argument that the district court erred by setting aside the default judgment absent a motion by [the defendant]." Id. at 1267. The Eleventh Circuit explained that the default judgment "entered by the court against [the defendant] was not a final default judgment, as it provided neither relief nor damages." Id.; see also 10A Charles Alan Wright, Aurthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2692 (3rd ed. 1998) ("a final default judgment is not possible against a party in default until the measure of recovery has been ascertained"). Consequently, in Anheuser Busch, the Eleventh Circuit opined that the district court could *sua sponte* set aside the default judgment on the issue of liability "for 'good

9

cause.'" 317 F.3d at 1267 (citing Fed. R. Civ. P. 55(c)). The plaintiff's "failure to prove actual damages was sufficient 'good cause' for the court to vacate the default and enter final judgment for [the defendant]." Id.

In Anheuser Busch, the Eleventh Circuit clearly distinguished between final and non-final default judgments, determining that only "good cause" is required to set aside a non-final default judgment. Therein, the Eleventh Circuit also elucidated that a default judgment is not final if it speaks only to liability and does not provide full relief.

The First Circuit's opinion in Federal Deposit Insurance Corp. v. Francisco Investment Corp. ("FDIC") also is illustrative of the standard which governs a court's determination of whether to set aside a non-final default judgment. See 873 F.2d 474 (1st Cir. 1989). The First Circuit observed that a "cursory reading" of Rule 55(c) "seems to mandate the application of the stricter standards of Rule 60(b) to all requests to set aside default judgments." Id. at 478. The First Circuit, however, explained that Rule 60(b) was "tailored for setting aside *final* judgments." Id. (emphasis in original). Because the default judgment at issue in FDIC was not final, the First Circuit held that "the more liberal 'good cause' standard should be applied." Id. The court expounded on its reasoning:

> Generally, non-final judgments can be set aside or otherwise changed by the district court at any time before they become final. Fed. R. Civ. P. 54(b). If we were to apply the 60(b) standard to non-final default judgments we would have the anomaly of using the strict standard envisioned for final judgments to non-final default judgments and the more liberal standard of Rule 54(b) to other non-final judgments. This result

10

>would be inconsistent with the purposes underlying the Federal Rules of Civil Procedure, especially considering that when deciding whether to set aside entries of default and default judgments courts favor allowing trial on the merits.

Id. (citation omitted).

Here, as in Anheuser Busch, *supra*, the court has not yet made an assessment of damages. It only has entered a default judgment on the issue of liability. Indeed, in its previous memorandum opinion and order, the court expressly reserved entry of final judgment until its determination of damages. (Doc. No. 15 at 17 n.5.) The default judgment on the issue of liability, therefore, is not a final default judgment. Accordingly, the court finds that Rule 55(c)'s "good cause" standard governs the determination of whether to set aside the default judgment entered in this case.

Guided by the Compania Interamericana factors set out above, the court observes that Plaintiff has not offered any opposition to the assertions of Defendant that it has not acted in bad faith, that minimal prejudice will result to Plaintiff by permitting a decision on the merits, that it has presented a meritorious defense, and that it has acted promptly in seeking to rectify its status as a defaulting party. Instead, Plaintiff focuses on Defendant's asserted reason for failing to timely respond to the complaint. As stated, however, Plaintiff has evaluated the legal sufficiency of Defendant's excuse through the narrow lens of "excusable neglect," rather than the wider-angled lens of "good cause." (See, e.g., Doc. No. 23 at 1-2.) The court, thus, need not decide whether the facts of this

case bear "striking similarities" to those in National Railroad Passenger Corp. v. Patco Transport, Inc., as argued by Plaintiff, because in that case the Eleventh Circuit applied the more rigorous "excusable neglect" standard in reviewing and affirming the district court's order denying a motion to set aside a final default judgment. See 128 Fed. Appx. 93, 2005 WL 901902, *1-*2 (11th Cir. 2005) (per curiam) (unpublished).

The court is satisfied that Defendant's explanation satisfies the lenient good cause standard for the following reasons. The court considers first the plausibility of Defendant's excuse.[4] Defendant explains that the date Plaintiff effected service on Defendant coincided with the retirement of its executive vice president, who had for the preceding ten years served as the individual responsible for coordinating legal matters with outside counsel. (See Bruce Linson Aff. (Ex. J to Doc. No. 21).)[5] The failure of the complaint to come to the attention of the executive vice president's replacement or another member of senior management was compounded by the fact that, in violation of Defendant's procedure that only senior management accept certified mail, Jennifer Keodouangdy, a clerk in the accounting department, signed for the complaint. (See id.)

---

[4] The court notes that Plaintiff has not seriously challenged the plausibleness of Defendant's excuse under the "good cause" standard. (See, e.g., Doc. No. 23 at 2 (stating that Defendant's proffered reason for the default "may be . . . a 'plausible' excuse,' but it is not excusable neglect").)

[5] Bruce Linson ("Linson") signed his affidavit in his capacity as general manager of Webster Industries.

Also, as part of its justification for its default, Defendant has relied to some extent on Plaintiff's failure to provide its attorney with notice of the default proceedings, given that Plaintiff was aware that Defendant's attorney actively participated in the EEOC proceedings in this case.[6] (See Doc. No. 21 at 1-2, 7); (Doc. No. 24 at 5.) In this regard, Defendant submits that, although Plaintiff did not serve on Defendant or its counsel the motions seeking an entry of default and a judgment by default, on August 22, 2006, Defendant received a copy of the court's August 17 order, granting Plaintiff's motion for default judgment on the issue of liability. Upon receipt of this order, a member of senior management located Plaintiff's complaint in the files of the retired executive vice president and became aware "for the first time" of the existence of the lawsuit. (See Linson Aff. ¶¶ 2-8 (Ex. J to Doc. No. 21)); (Ellis Aff. ¶ 7 (Ex. A to Doc. No. 21)); (Jamie

---

[6] The court notes that Defendant has not argued that its attorney's participation in the EEOC proceedings constitutes an "appearance" within the meaning of Rule 55(b)(2) or that the default judgment should be set aside for the failure of Plaintiff to comply with Rule 55(b)(2)'s notice requirement. See Fed. R. Civ. P. 55(b)(2) (requiring that if the party or his representative has "appeared in the action, the party . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application"). Because these issues have not been raised and are not necessary to the resolution of the instant motion, the court does not explore them further. Rather, for present purposes, the court will assume *arguendo* that notice was not required by Rule 55(b)(2). Although the fact that Defendant did not receive notice of the commencement of the default proceedings does not excuse Defendant's administrative errors which resulted in Defendant's failure to handle properly the initial receipt of the complaint, Defendant's absence of notice of the default proceedings is not wholly irrelevant to the court's analysis of "good cause." Namely, Defendant's lack of notice of the default proceedings is one consideration which the court has weighed in assessing Defendant's level of culpability.

13

Johnston Aff. ¶¶ 2-4 (Ex. D to Doc. No. 21).)[7] Defendant points out that its motion for relief from default was filed promptly thereafter on August 24, 2006. (Ellis Aff. ¶ 8.)

In this case, there was an administrative breakdown in the processes normally employed by Defendant to make certain that service of process of legal documents was not ignored. The internal failings which resulted in the complaint lying unattended in a file were multifarious. Whether the excuse proffered by Defendant is excusable is an issue the court need not decide. As explained herein, it is not a prerequisite that Defendant's actions be excusable in order for Defendant to obtain relief under Rule 55(c)'s "good cause" standard. Assuming *arguendo* that Defendant's justification does not constitute excusable neglect, the court is satisfied that Defendant's reason for failing to respond to the complaint is plausible and that Defendant did not act willfully or deliberately in a manipulative attempt to delay the litigation.

Continuing with an examination of the Compania Interamericana factors, *supra*, the court finds that permitting a decision on the merits in this case will not prejudice Plaintiff, particularly given that this case is in its early stages. A scheduling order has not been entered, nor has discovery commenced. The court further finds that Defendant acted in a reasonably prompt manner in filing its motion for relief from default. Defendant also has asserted a defense on the merits with specificity and, thus, has

---

[7] Jamie Johnston, Esquire, signed his affidavit in his capacity as one of the attorneys for Defendant.

demonstrated that allowing this case to move forward will not be futile. Cf. TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001) ("If . . . the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the judgment."); Owens-Illinois, Inc v. T & N Ltd., 191 F.R.D. 522, 526-27 (E.D. Tex. 2000) ("The requirement of a meritorious defense is only intended to ensure that the Court's order vacating the judgment is not an exercise in futility."). Based upon the foregoing considerations, coupled with this circuit's strong policy for deciding cases on the merits, the court finds that the entries of default and default judgment on the issue of liability are due to be set aside for good cause shown.

## V.  ORDER

Accordingly, it is CONSIDERED and ORDERED that Defendant's motion to set aside and vacate the entries of default and judgment by default on the issue of liability (Doc. No. 20) be and the same is hereby GRANTED and that the entries of default and judgment by default on the issue of liability (Doc. Nos. 11, 15) be and the same are hereby SET ASIDE.

DONE this 8th day of February, 2007.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE