## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

DARRELL HINSON,                          )
                                         )
    Plaintiff,                           )
                                         )
v.                                       )  CIVIL ACTION NO.:  2:05cv971-ID
                                         )
CHELSEA INDUSTRIES, INC.,                )
                                         )
    Defendant.                           )

## CHELSEA INDUSTRIES, INC. AND WEBSTER INDUSTRIES, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Chelsea Industries, Inc. and Webster Industries, Inc.[1], (hereinafter

collectively referred to as "Webster"), and submits this Memorandum of Law in Support of its

Motion for Summary Judgment filed in the above styled cause of action.

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Darrell Hinson filed this lawsuit against Webster on or about October 11, 2005,

alleging that Webster had discriminated against him on the basis of race in violation of Title VII of

the Civil Rights Act of 1964, and 42 U.S.C. Section 1981.  Specifically, Hinson argues that he was

wrongfully terminated for committing safety violations while a Caucasian employee that committed

the same violations was not discharged. Webster vehemently denies any liability with respect to

these purported claims and as demonstrated below is entitled to judgment as a matter of law with

respect to all of them.

---

[1]Chelsea Industries, Inc., is the proper party to this action.  The original Complaint named
Webster Industries.



## II.    STATEMENT OF UNDISPUTED FACTS

On November 28, 2001, Hinson applied for a truck driver's position with Webster. [See Affidavit of William Barton, attached hereto as Exhibit A; see also Driver's Application, attached hereto as Exhibit "B"]. Hinson began employment with Webster as a local truck driver on March 18, 2002. [Exh. A, ¶ 5].

On April 11, 2004, Hinson drove a trailer away from the loading dock without performing the mandatory tasks required of a Webster truck driver before he or she can pull the truck away from the loading dock. [Exh. A, ¶ 9, 12]. Hinson's failure to perform the mandatory procedures resulted in him leaving the loading dock with an employee on a forklift inside his trailer. [Exh. A, ¶ 9, 12]. After learning that a co-employee was in the trailer, Hinson continued to operate the vehicle. [Exh. A, ¶ 10].

Webster's safety procedures require all drivers to perform certain tasks before leaving the loading dock.[Exh. A, ¶ 11] Specifically, a truck driver must: (1) go inside the trailer and pull the dock plate; and (2) then place safety chains across the dock doors. [Exh. A, ¶ 11]. Hinson violated Webster's safety procedures by leaving the loading dock before pulling the dock plate and before placing the safety chains across the dock doors. [Exh. A, ¶ 12]. He also continued to operate his vehicle after learning that an employee was on a forklift inside his trailer. [Exh. A, ¶ 13]

On April 14, 2004, Hinson was suspended while the incident was investigated. [Exh. A, ¶ 16; see also Personnel Documentation for Employee Progressive Disciplinary Action, attached hereto as Exhibit "C"; see also Complaint, attached hereto as Exhibit "D"]. On April 20, 2004, Webster terminated Hinson. [Exh. A, ¶ 16; see also Exh. D; see also Personnel Documentation for Employee Progressive Disciplinary Action, attached hereto as Exhibit "E"]. Alvin Pugh, an African

2

American male, was awarded Hinson's position following his termination. [Exh. A, ¶ 18].

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). Mere allegations in a pleading are not enough to create a genuine issue of material fact as against a showing of evidence contrary to the allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)("mere existence of some alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment. . .") (emphasis in the original). Once the moving party has made a showing that there is no genuine issue of material fact, the non-moving party must then present specific facts creating such an issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87; *Celotex Corp. v. Catrett*, 477 U.S. 317,327 (1986) ("summary judgment is not a disfavored procedural shortcut but an integral part of the Federal Rules").

Federal courts have confirmed the specific and proper application of the Supreme Court's summary judgment standard to cases involving allegations of employment discrimination. For example, in *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568 (7th Cir. 1989), the court expressly stated:

> The workload crisis of the federal courts, and realization that Title VII is occasionally or perhaps more than occasionally used by plaintiffs as a substitute for principles of job protection that do not yet exist in American law, have led the courts to take a critical look at efforts to withstand . . . summary judgment. A district court judge faced with such a motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed.

879 F.2d at 1572-73. "Summary judgments for defendants are not rare in employment discrimination cases." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). This

case is one where summary judgment should be granted because, at best, Mr. Hinson's evidence is "merely colorable"—not "significantly probative."

At all times, a plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. See *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2747-48 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). The Supreme Court has established the basic allocation of burdens and order of proof in a Title VII case where the plaintiff is alleging disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981).[2]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a prima facie case of discrimination. Second, once the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination. *McDonnell Douglas*, 93 S. Ct. at 1824-25; *Burdine*, 101 S. Ct. at 1093-94. Because the plaintiff bears the initial burden of proof with respect to the prima facie elements, summary judgment in favor of the defendant is appropriate when the plaintiff fails to adduce evidence to establish each element, or where the moving party showed the absence of facts to support each element of the claims that she is asserting. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993).

_____

[2]The *McDonnell Douglas/Burdine* allocation scheme is only applicable in cases, such as this one, where there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

4

If the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to

the defendant to articulate a non-discriminatory justification for the adverse employment decision,

thereby rebutting the prima facie case. See *Hicks*, 113 S. Ct. at 2747. The Eleventh Circuit has

emphasized, however, that in determining whether the plaintiff has refuted the employer's articulated

legitimate reason, the "court does not sit as a super-personnel department that re-examines an entity's

business decision . . . no matter how mistaken a firm's managers." *Elrod v. Sears, Roebuck & Co.*,

939 F.2d 1466, 1470 (11th Cir. 1991); *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986), cert.

denied, 479 U.S. 1034 (1987).

Once a defendant meets its light burden of production, the plaintiff's prima facie case is

"rebutted, destroyed, and no longer relevant." *Hicks*, 113 S. Ct. at 2747; *Burdine*, 101 S. Ct. at 1095.

The plaintiff can then only survive the defendant's motion for summary judgment if she can establish

sufficient, concrete and affirmative evidence to show that the defendant's reason was a pretext for

discrimination, by showing "both that the reason was false, and that discrimination was the real

reason." *Hicks*, 113 S. Ct. at 2752 (emphasis in original).

## IV.    ARGUMENT

### (1)    Plaintiff's Prima Facie Case[3]

---

[3]Hinson's Complaint is limited to alleged race discrimination claims. However, in his Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), Hinson claims he was discriminated against because of a disability in violation of American with Disabilities Act ("ADA"). Although Hinson does not make a claim of discrimination in violation of the ADA in his Complaint filed with this Court, he does reference in his interrogatory responses that he is relying upon witnesses who will testify that Webster has terminated other employees due to disabilities. [Exh. F, p. 6]. Briefly, Hinson was stabbed in his neighborhood. [Exh. A, ¶ 6]. As a result of the stabbing underwent medical treatment.[Exh. A, ¶ 6]. In accordance with Webster's short term disability policy, Hinson received nearly two months of disability benefits. [Exh. A, ¶ 6]. Thereafter, Hinson returned to his employment with Webster without any limitations. [Exh. B, ¶ 7]. In order to maintain an ADA claim, Hinson must establish that he was disabled, qualified to perform

5

Hinson alleges 'disparate treatment' based on race, in violation of Title VII and Section

1981[4]. The elements of a claim of race discrimination under 42 U.S.C. §1981 are the same as a Title

VII disparate treatment claim in the employment context. *Gaston v. Home Depot USA, Inc.*, 129

F.Supp.2d 1355 (S.D. Fla. 2001)(citing *Peterson v. BMI Refractories*, 132 F.3d 1405, 1412 n.13 (11th

Cir.1998)). Title VII makes it "an unlawful employment practice for an employer to fail or refuse

to hire or to discharge any individual with respect to his compensation, terms, conditions, or

privileges of employment because of such person's race, color, religion, sex or national origin."

*Tolbert v. Briggs and Stratton Corporation*, 510 F.Supp.2d 549, 552 (M.D.Ala.2007)(quoting 42

---

with reasonable accommodation, and he was terminated because of his disability. *See Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir.1996). The ADA defines a 'disability' as one that is substantially limited in one or more major life activities due to a physical or mental impairment or he is regarded as having such an impairment. Hinson provided Webster with medical documentation that he was fully recovered and able to return to his employment without any limitation. Accordingly, Hinson neither suffered from a disability nor was he perceived to have suffered a disability. [Exh. A, ¶ 8]. Therefore, Hinson is unable to establish a prima facie case of ADA discrimination. To the extent Hinson seeks to recover under an ADA charge, Webster is entitled to a judgment as a matter of law based upon the absence of a disputed material fact and the fact Hinson cannot establish the necessary elements of an ADA claim sufficient to defeat summary judgment. Further, even if we assume Hinson can establish a prima facie case, Webster has offered a legitimate non-discriminating explanation for Hinson's termination. As set forth herein, Hinson cannot show that Webster's explanation is pretxtual.

[4]The Complaint only asserts a disparate treatment theory – that Hinson received more severe treatment than a similarly situated non-African-American. However, in Hinson's discovery responses, he cites to witnesses who will provide testimony concerning Alvin Pugh. [Exh. F, p. 7]. Mr. Pugh replaced Hinson after he was terminated. Mr. Pugh is an African-American male. [Exh. A, ¶ 18]. To the extent, Hinson seeks to allege race discrimination upon a theory that he was qualified for a position, yet replaced with a non-African-American, he cannot. After Hinson was terminated for committing serious safety violations, Webster internally posted the position and ultimately awarded the position to Mr. Pugh. [Exh. A., ¶ 17-18]. Accordingly, Hinson cannot maintain a race discrimination charge based upon a theory he was replaced by a non-African-American in violation of Title VII. Furthermore, even if Hinson could establish a prima facie case under such a theory, he cannot establish that Webster's proffered reason for termination (failure to pull dockplate and failure to place safety chains on dock doors before leaving a loading dock **and** operating a vehicle knowing an employee was inside the trailer on a forklift) are pretextual.

U.S.C. §2000e-2).

In a disparate-treatment case, "the plaintiff must prove that the employer acted with discriminatory purpose, motive or intent." *Id.* (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S.324, 335 n.15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir.2002). If the plaintiff seeks to establish a disparate treatment case by circumstantial evidence, the court is guided by the burden shifting framework set forth in *McDonnell Douglas, supra.* and *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Pursuant to *McDonnell Douglas*, in order to establish a prima facie case of disparate treatment in violation of Title VII or Section 1981, Hinson must first establish that (1) he belongs to a protected class; (2) he has engaged in conduct similar to that of persons outside of the protected class; and (3) similarly situated persons outside of the protected class received more favorable treatment. *Gaddis v. Russell Corporation*, 242 F.Supp.2d 1123 (M.D.Ala.2003)(citing *Smith v. Int'l Paper Co.*, 160 F.Supp.2d 1335, 1340 (M.D.Ala.2001)).

It is undisputed that Hinson is in a protected class and that he was subjected to termination. However, Webster strongly denies that Hinson engaged in conduct similar to that of a white employee and Hinson received less favorable treatment. Employees are similarly situated when they are involved in or accused of similar misconduct yet disciplined in different ways; however, the burden remains with the plaintiff to show the similarity between his conduct and that of other employees who were treated differently, and not on the defendant to disprove their similarity. *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989).

In order for Hinson to establish this aspect of a prima facie case, he must show that his misconduct (failure to follow the procedures for pulling a trailer from the loading dock **and**

7

knowingly and intentionally driving a truck with an employee on a forklift inside the trailer), was similar to that of a non-African-American employee who committed the same or similar violations, and that Webster imposed more severe discipline on Hinson than that imposed on the non-African-American employee for similar violations. Further, in order to establish a case of discriminatory motive in a disparate disciplinary case, a plaintiff must show that middle and upper managers were aware of, and consciously overlooked, similar violations by other employees when plaintiff was disciplined. *Jones*, 874 F.2d at 1541-42 (11th Cir. 1989).

Hinson alleges that Webster permitted "Paul", a white employee, to pull "the trailer off the dock at the plant" without suffering termination of his employment. [See Hinson's Responses to Interrogatories and Request for Production of Documents, attached hereto as Exhibit "F", p. 2]. Although Hinson does not specify who "Paul" is and which department "Paul" may have worked in at Webster, we will assume for discussion purposes that "Paul" is also a local truck driver with Webster and that "Paul" is non African-American. There is only one non African-American similarly situated local truck driver named "Paul" employed by Webster as of April 20, 2005, the date Hinson was terminated. That person's full name is Paul Hugh Walden. (hereinafter referred to as "Mr. Walden"). [Exh. A, ¶ 19].[5] Mr. Walden began his employment with Webster on March 19, 2003. [Exh. A, ¶ 19]. Mr. Walden worked for Webster as a local truck driver. [Exh. A, ¶ 19].

---

[5]Nels Paul Jacobson is also a white male employed by Webster at the time of Hinson's termination. [Exh. A, ¶ 21]. Although he too was a truck driver, he was not similarly situated as Mr. Jacobson was an over the road driver (classified as TRU), while Hinson was a local driver (classified as local delivery only - LDO). [Exh. A, ¶ 21]. Under Eleventh Circuit precedent, two employees must be similarly situated because if they are not, then the different application of rules does not constitute illegal discrimination. *Gaddis, supra.* (citing *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir.1999)). Further, Webster denies that Mr. Jacobson ever committed any safety violation similar to those committed by Hinson. [Exh. A, ¶ 21].

In order to determine whether employees are similarly situated for purposes of a prima facie case of disparate treatment, a court must consider whether the employees are involved in the same or similar conduct and are treated in different ways. *Gaddis, supra* (citing *Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001)). Further, the individual being compared to the complainant must be "**nearly identical** to the plaintiff's so that courts will not second-guess an employer's reasonable decisions." *Id.*(emphasis added).

Hinson was terminated because he failed to follow the safety procedures for pulling a trailer from the loading dock. Before a truck driver can pull away from the loading dock, a truck driver must pull the dock plate and then the driver must place safety chains across the dock doors. [Exh. A, ¶ 11 ]. Hinson failed to pull the dock plate before leaving the loading dock. [Exh. A, ¶ 12]. Hinson failed to place the safety chains across the dock doors before leaving the loading dock. [Exh. A, ¶ 12]. Hinson intentionally operated his vehicle **knowing** a co-employee was on a forklift inside his trailer. [Exh. A, ¶ 13]. Hinson's conduct is egregious and could have killed the co-employee. [Exh. A, ¶ 14]. It further could have caused significant property damage to the forklift. [Exh. A, ¶ 15].

In support of his discrimination claim, Hinson argues that Mr. Walden was not "written up for pulling the trailer off the dock at the plant." [Exh. F, p. 2]. Webster denies that Mr. Walden committed similar safety violations as those of Hinson. [Exh. A, ¶ 20]. Mr. Walden has never not followed the safety procedures outlined above. [Exh. A, ¶ 20]. Mr. Walden has never failed to pull the dock plate before leaving the loading dock. [Exh. A, ¶ 20]. Mr. Walden has never failed to place the safety chains across the dock doors before leaving the loading dock.[Exh. A, ¶ 20]. Further, Mr. Walden has never intentionally driven a truck away from a loading dock knowing there was an employee inside the trailer on a forklift. [Exh. A, ¶ 20]. Further, Hinson's comparative example,

9

assuming it occurred, is not similar to that of the serious infractions committed by Hinson. Simply pulling a trailer from the dock does not necessarily constitute a safety violation. Further, Hinson was not terminated for simply pulling a trailer from the dock – rather, he was terminated for failure to pull the dock plate and place the safety chains across the dock doors before leaving the loading dock (which resulted in having an employee inside the trailer on a forklift) and for continuing to operate the truck with the knowledge that someone was inside the trailer on a forklift. [Exh. A, ¶¶ 9-16]. Accordingly, Hinson has failed to establish that a similarly situated employee received more favorable treatment. Specifically, Hinson has failed to establish that a non African-American in the same position as himself committed nearly identical safety violations and received more favorable treatment.

In the present case, there is no record of Mr. Walden committing similar safety violations, much less nearly identical, to those committed by Hinson.[Exh. A, p. 20]. Even if Hinson's recollection that Mr. Walden pulled away from the dock is accurate, the simple act of pulling away from the loading dock is not even remotely comparable to the continuous violations committed by Hinson. Hinson pulled away from the loading dock without first pulling the dock plate and then placing the safety chains across the dock doors resulting in the fact an employee was left in the trailer on a forklift. To further exacerbate matters, once Hinson became aware of the co-employee's presence in the trailer Hinson intentionally continued to operate his vehicle with the co-employee still inside the trailer. [Exh. A, ¶¶ 9-16]. Webster requires its truck drivers to verify the load is complete, pull the dock plate, place the safety chains across the dock doors before leaving the loading dock. [Exh. A, ¶ 11]. Hinson failed to properly evaluate the load jeopardizing the safety of a co-employee inside the trailer on a forklift and continued to risk the safety of his co-employee by

10

continuing to drive with the employee inside the trailer. [Exh. A, ¶ 9-16]. Mr. Walden has no similar violation within his personnel file. [Exh. A, ¶ 20]. Mr. Walden has never not performed the safety procedures mandated on truck drivers before they can leave the loading dock. [Exh. A, ¶ 20]. Mr. Walden has never driven his truck while knowing a co-employee is on a forklift inside the trailer. [Exh. A, ¶ 20]. Violation of these safety procedures subjects all employees to termination. [Exh. A, ¶ 22].

Moreover, Hinson has failed to present evidence that Webster consciously overlooked violations by "Paul" when Webster disciplined Hinson more severely. In summary, taking all the evidence in the light most favorable to Hinson, it is impossible to identify any non-African-American employee that Webster disciplined more favorably for failure to pull the dock plate before leaving the loading dock **and** failure to place the safety chains on the dock doors before leaving the loading dock **and** for continuing to operate the trailer after knowing that a co-employee was inside the trailer on a forklift. Further, even if we assume the existence of "Paul" and assume he committed a similar violation, which is denied, Hinson fails to show that Webster knew that "Paul", a purported comparator, committed misconduct similar to Hinson.[6] Furthermore, even if Webster knew about the presumed other violations, the evidence does not show that Webster consciously overlooked those violations when Webster disciplined Hinson more severely. See *Jones*, 874 F.2d at 1541-42. There is no evidence that establishes Webster decided to impose harsher discipline on Hinson because of his race. Based upon the foregoing, it is clear Hinson is unable to meet the elements of a 'disparate treatment' prima facie case. Therefore, summary judgment is due in favor of Webster.

---

[6] Hinson admits in his responses to interrogatories that Bill Barton was not aware of "Paul" pulling away from the loading dock. [Exh. F, p.2].

11

### (2) Defendant's Legitimate, Non-Discriminatory Reason

Even if Hinson had established a prima facie case of disparate treatment in violation of Title VII and 42 U.S.C. §1983, Webster has demonstrated a legitimate, non-discriminatory reason for terminating Hinson. See *Moreland v. Miami-Dade County*, 255 F.Supp.2d1304 (S.D. Fla. 2002)(citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105(2000) "(explaining the burden at this stage is one of production, not persuasion, and employer need only point to admissible evidence from which a fact-finder could reasonably conclude that the challenged action was taken for legitimate, non-discriminatory response)".

In the present case, Webster has stated that Hinson was terminated because he committed several safety violations which endangered the safety of a co-employee and Webster's property. Even if Webster's finding that Hinson committed these safety violations and that he should be terminated because of those violations was wrong, it is a legitimate, non-discriminatory explanation for Webster's decision to terminate Hinson. See *Moreland, supra.* (citing *Chapman v. AI Transport*, 229 F.3d1012, 1030-31 (11th Cir.2000)(holding that defendant may terminate an employee for good or bad reason without violation of federal law); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984)(holding that an employee may be fired "for good reason, bad reason, reason based on erroneous facts, or no reason at all, so long as its action is not for a discriminatory reason")). It is clear that Webster has established a legitimate, non-discriminatory reason for terminating Hinson.

### (3) Plaintiff's Evidence of Pretext

Because Webster has offered a legitimate, non-discriminatory reason for terminating Hinson, the burden returns to Hinson to show that the proffered reason was in fact a pretext for intentional

12

discrimination based upon Hinson's race. Further, the presumption of discriminatory conduct created by a prima facie case "drops" from the case. *Moreland, supra* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed. 2d 207 (1981)).

"In otherwords, the plaintiff must show that 'a discriminatory reason more likely than not motivated [Webster] to terminate [Hinson]." *Gaston v. Home Depot USA, Inc.*, 129 F.Supp.2d 1355 (S.D.Fl a2001)(quoting *Burdine,* 450 U.S. at 256,101 S.Ct. At 1095))". "In examining the employer's proffered reasons, the court does not sit as a super-personnel department, and must accept the employer's stated reasons as given. As stated by the Eleventh Circuit recently, 'provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.'" *Gaston, supra* (quoting *Chapman*, 229 F.3d at 1030).

In the present case, Hinson does not offer any evidence casting any doubt on the believability of Webster's explanation for their decision to terminate Hinson. Generally, Hinson relies upon anticipated testimony that is expected to establish "other employees were threatened and/or discriminated against Paul's attitude towards other blacks; knows safety equipment not working properly,knows of other employees being terminated due to disabilities; knows false testimony was given about Alvin Pugh taking my position after termination; knows company did not follow its own policies; Paul's comments about not being able to pass drug testing." [Exh. F, p.7]. Nothing hypothecated by Hinson addresses the proffered explanation of Webster that Hinson was terminated because he committed several safety violations. Even if Hinson's arguments and anticipated testimony he relies upon are fully accepted, admissible and could be found to cast doubt on

13

Webster's explanation, Webster remains entitled to summary judgment because Hinson has not presented any evidence to indicate that Webster discriminated against him because of his race. Hinson's case is primarily a semantic one and includes little and no probative evidence addressing the fact Hinson failed to pull the dock plate, failed to place the chains on the trailer door and operated a vehicle knowing an employee was on a forklift inside the trailer. Hinson has not presented any independent evidence in his argument of pretext that Webster acted with discriminatory intent in Hinson's discharge. Without such evidence, Webster is entitled to summary judgment as a matter of law.

## V.    CONCLUSION

It is undisputed Hinson committed serious safety violations in the operation of his truck which resulted in his termination. Hinson pulled away from the loading dock without first pulling a dock plate and without placing safety chains on the dock doors. Hinson further continued to operate the vehicle with the knowledge that a co-employee was inside a trailer on a forklift. These series of events jeopardized the safety of the co-employee and the condition of Webster's forklift and property. The seriousness of these infractions resulted in the dismissal of Hinson from Webster's employ. The termination of Hinson from Webster was not in violation of Title VII, 42 U.S.C. §1981, or the American with Disabilities Act. For the reasons stated above, Webster is entitled to a judgment as a matter of law on all counts.

Respectfully submitted,

s/ Thomas T. Gallion, III

_____

Thomas T. Gallion, III
Jamie A. Johnston
Attorneys for the Defendant

14

OF COUNSEL:

Haskell Slaughter Young & Gallion, L.L.C.
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573        Telephone
(334) 264-7945        Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document upon the following by causing a true and complete copy of same via CM/ECF and in the United States Mail, sufficient first class postage prepaid, on this the 20th day of November 2007, addressed as follows:

Jay Lewis, Esq.
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL  36103

s/ Thomas T. Gallion, III
_____
OF COUNSEL

#29280
83562-023

15

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL HINSON,                     )
                                    )
          Plaintiff,                )
                                    )
v.                                  )     CIVIL ACTION NO.:  2:05cv971-ID
                                    )
CHELSEA INDUSTRIES, INC.,           )
                                    )
          Defendant.                )

## AFFIDAVIT OF WILLIAM BARTON

STATE OF ALABAMA          )

COUNTY OF MONTGOMERY      )

1.     My name is Bill Barton. I am over the age of nineteen.

2.     I am employed by Chelsea Industries, Inc., (hereinafter referred to as "Webster") and currently hold the position of Fleet Manager.

3.     I am familiar with the circumstances surrounding the above litigation.

4.     On November 28, 2001, Darrell Hinson applied for a truck driver's position with Webster.

5.     Mr. Hinson began his employment with Webster on March 18, 2002 as a local truck driver.

6.     In 2004, Mr. Hinson was stabbed in his neighborhood. Mr. Hinson, while undergoing medical treatment, received short term disability benefits in accordance with Webster's policies.

7.     Mr. Hinson returned to his employment with Webster, according to his medical documentation, without any limitation.



8.    I did not perceive Mr. Hinson as being disabled as a result of the stabbing otherwise, I would not have let him operate his vehicle

9.    On April 11, 2004, Mr. Hinson drove a trailer away from a loading dock without first pulling the dock plate and without placing the safety chains on the dock doors. Mr. Hinson pulled the trailer off the loading dock while a Webster employee was on a forklift inside Mr. Hinson's trailer.

10.    After learning that a co-employee was on a forklift inside the trailer, Mr. Hinson continued to drive the vehicle.

11.    Webster's safety procedures require all drivers to (1) go inside and pull the dock plate; and (2) then place safety chains across the dock doors before departing the loading dock.

12.    Mr. Hinson violated Webster's safety procedures by leaving the loading dock before pulling the dock plate and before placing the safety chains across the dock doors. Mr. Hinson's failure to perform these tasks resulted in him driving off with an employee on a forklift inside the trailer.

13.    Additionally, Mr. Hinson violated safety procedures by continuing to operate the trailer while knowing someone was inside the trailer on a forklift.

14.    Mr. Hinson could have seriously injured or killed the co-employee inside the trailer.

15.    Mr. Hinson could have caused significant damage to Webster's forklift and facilities as a result of his actions.

16.    On April 14, 2004, Mr. Hinson was suspended while the incident was investigated. On April 20, 2004, Webster terminated Mr. Hinson based on the violation of the above safety procedures.

2

17.     After Mr. Hinson was terminated, Webster internally posted Mr. Hinson's position.

18.     Alvin Pugh, an African American male, was awarded Mr. Hinson's position.

19.     Paul Walden, a Caucasian male, began his employment with Webster on March 19, 2003 as a local truck driver. I was Mr. Hinson's supervisor during his employment with Webster.

20.     Mr. Walden, to my knowledge and according to my review of his personnel file, has never failed to pull the dock plate and place the safety chains on the dock doors before pulling away from the loading dock. Further, Mr. Walden has never knowingly driven his truck with an employee on a forklift inside his trailer.

21.     Webster also employed Nels Paul Jacobson. Mr. Jacobson was an over the road truck driver for Webster. He is Caucasian. To my knowledge as Fleet Manager and my review of his personnel file, Mr. Jacobson never pulled away from the loading dock without first pulling the dock plate and then placing the safety chains on the dock doors. Mr. Jacobson, to my knowledge, never operated a truck knowing a co-employee was still inside the trailer on a forklift.

22.     Any employee committing the same or similar safety violations that Hinson did would be subjected to termination.

Further Affiant sayeth not.

3

Dated this 20th day of November 2007.

_William Barton_
**WILLIAM BARTON**

STATE OF ALABAMA                    *

COUNTY OF MONTGOMERY          *

I, Amanda Thomson , a Notary Public, in and for the said County in said State, hereby certify that BILL BARTON, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing instrument, executed the same voluntarily or/and as the act of said corporation.

SWORN TO and SUBSCRIBED before me this 20th day of November 2007.

_Amanda_

NOTARY SEAL

Notary Public
My Commission Expires: 8/4/2010

4

# DRIVER'S
# APPLICATION FOR EMPLOYMENT

Company _Webster Industries_

Address _5402 LAMCO St_

City _Montgomery_ State _AL_ Zip _36117_

(answer all questions - please print)

In compliance with Federal and State equal employment opportunity laws, qualified applicants are considered for all positions without regard to race, color, religion, sex, national origin, age, marital status, or non-job related disability.

Date of application _11-28-1_

Position(s) Applied for _Driver (local)_

Name _Hinson_ _Darrell_ _Dewayne_    Social Security No. _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_
    Last        First        Middle

List your addresses of residency for the past 3 years.

Current Address _P.O. Box 9951_ _Montgomery_
    Street        City
_AL_ _36108_ Phone _201-4718_ How Long? _1 Year_
    State    Zip Code

Previous Addresses _3220 Margarette Ann Dr. Montgomery AL 36108_ How Long? _4 Years_
    Street        City    State & Zip Code

___ ___ How Long? ___
    Street        City    State & Zip Code

___ ___ How Long? ___
    Street        City    State & Zip Code

Do you have the legal right to work in the United States? _Yes_

Date of Birth _10_, _25_, _72_    Can you provide proof of age? _Yes_
(Required for Truck Drivers)

Have you worked for this company before? _NO_    Where? ___

Dates: From ___ To ___ Rate of Pay ___ Position ___

Reason for leaving ___

Are you now employed? _Yes_ If not, how long since leaving last employment? ___

Who referred you? _Walk-In_    Rate of pay expected _$10.00 hr._

Is there any reason you might be unable to perform the functions of the job for which you have applied [as described in the attached job description]? _NO_

If yes, explain if you wish. ___

EXHIBIT
B

© Copyright 1995 J. J. KELLER & ASSOCIATES, INC., Neenah, WI • USA • (800) 327-6 [ ]    15F (Rev. 10/95)

ACCIDENT RECORD FOR PAST 3 YEARS OR MORE (ATTACH SHEET IF MORE SPACE IS NEEDED) IF NONE, WRITE NONE

| DATES | | NATURE OF ACCIDENT (HEAD-ON, REAR-END, UPSET, ETC.) | FATALITIES | INJURIES |
|---|---|---|---|---|
| LAST ACCIDENT | | | | |
| NEXT PREVIOUS | | | | |
| NEXT PREVIOUS | | | | |

TRAFFIC CONVICTIONS AND FORFEITURES FOR THE PAST 3 YEARS (OTHER THAN PARKING VIOLATIONS) IF NONE, WRITE NONE

| LOCATION | DATE | CHARGE | PENALTY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

(ATTACH SHEET IF MORE SPACE IS NEEDED)

## EDUCATION

CIRCLE HIGHEST GRADE COMPLETED: 1 2 3 4 5 6 7 8    HIGH SCHOOL: 1 2 3 (4)    COLLEGE: 1 2 3 4

LAST SCHOOL ATTENDED _Calhoun High School_    _Lelo hatchee_
(NAME)                                        (CITY)

## EXPERIENCE AND QUALIFICATIONS – DRIVER

| | STATE | LICENSE NO. | TYPE | EXPIRATION DATE |
|---|---|---|---|---|
| DRIVER LICENSES | AI | 5721461 | Commercial | 2-18-2 |

A. Have you ever been denied a license, permit or privilege to operate a motor vehicle?    YES _____ NO ✓

B. Has any license, permit or privilege ever been suspended or revoked?    YES _____ NO ✓

IF THE ANSWER TO EITHER A OR B IS YES, ATTACH STATEMENT GIVING DETAILS

## DRIVING EXPERIENCE IF NONE, WRITE NONE

| CLASS OF EQUIPMENT | TYPE OF EQUIPMENT (VAN, TANK, FLAT, ETC.) | DATES FROM | TO | APPROX. NO. OF MILES (TOTAL) |
|---|---|---|---|---|
| STRAIGHT TRUCK | | | | |
| TRACTOR AND SEMI-TRAILER | Van | 1993 | Present | 500000 |
| TRACTOR - TWO TRAILERS | | | | |
| OTHER | | | | |

LIST STATES OPERATED IN FOR LAST FIVE YEARS _Approx 25_

SHOW SPECIAL COURSES OR TRAINING THAT WILL HELP YOU AS A DRIVER: _None_

WHICH SAFE DRIVING AWARDS DO YOU HOLD AND FROM WHOM? _None_

## EXPERIENCE AND QUALIFICATIONS – OTHER

SHOW ANY TRUCKING, TRANSPORTATION OR OTHER EXPERIENCE THAT MAY HELP IN YOUR WORK FOR THIS COMPANY

*None*

LIST COURSES AND TRAINING OTHER THAN SHOWN ELSEWHERE IN THIS APPLICATION

*None*

LIST SPECIAL EQUIPMENT OR TECHNICAL MATERIALS YOU CAN WORK WITH (OTHER THAN THOSE ALREADY SHOWN)

*None*

### TO BE READ AND SIGNED BY APPLICANT

This certifies that this application was completed by me, and that all entries on it and information in it are true and complete to the best of my knowledge.

I authorize you to make such investigations and inquiries of my personal, employment, financial or medical history and other related matters as may be necessary in arriving at an employment decision. (Generally, inquiries regarding medical history will be made only if and after a conditional offer of employment has been extended.) I hereby release employers, schools, health care providers and other persons from all liability in responding to inquiries and releasing information in connection with my application.

In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in discharge. I understand, also, that I am required to abide by all rules and regulations of the Company.

| 11-28-1 | |
|---|---|
| Date | Applicant's Signature |

### PROCESS RECORD

APPLICANT HIRED _____  REJECTED _____

DATE EMPLOYED _____  POINT EMPLOYED _____

DEPARTMENT _____  CLASSIFICATION _____
(IF REJECTED, SUMMARY REPORT OF REASONS SHOULD BE PLACED IN FILE)

#### THIS SECTION TO BE FILLED IN BY RESPONSIBLE OFFICER OR COMPANY REPRESENTATIVE

|  | SUPERIOR | GOOD | FAIR | BELOW AVERAGE | POOR | WRITTEN RECORD ON FILE |
|---|---|---|---|---|---|---|
| 1. APPLICATION | | | | | | |
| 2. INTERVIEW | | | | | | |
| 3. PAST EMPLOYMENT | | | | | | |
| 4. WRITTEN EXAM | | | | | | |
| 5. ROAD TEST | | | | | | |
| 6. CRIMINAL AND TRAFFIC CONVICTIONS | | | | | | |

SIGNATURE OF INTERVIEWING OFFICER _____

### TRANSFERS

FROM: _____ TO: _____  FROM: _____ TO: _____

DATE: _____  DATE: _____

REASON FOR TRANSFER _____  REASON FOR TRANSFER _____

FROM: _____ TO: _____  FROM: _____ TO: _____

DATE: _____  DATE: _____

REASON FOR TRANSFER _____  REASON FOR TRANSFER _____

### TERMINATION OF EMPLOYMENT

DATE TERMINATED _____  DEPARTMENT RELEASED FROM _____

DISMISSED _____  VOLUNTARILY QUIT _____  OTHER _____

TERMINATION REPORT PLACED IN FILE _____  SUPERVISOR _____

PAGE 4  15F (Rev. 10/95)

# EMPLOYMENT HISTORY

All driver applicants to drive in interstate commerce must provide the following information on all employers during the preceding 3 years. List complete mailing address, street number, city, state and zip code.

Applicants to drive a commercial motor vehicle* in intrastate or interstate commerce shall also provide an additional 7 years' information on those employers for whom the applicant operated such vehicle.
(NOTE: List employers in reverse order starting with the most recent. Add another sheet as necessary.)

| EMPLOYER | DATE |
|---|---|
| NAME _AMX_ | FROM MO. _6_ YR. _0_  TO MO. _11_ YR. _1_ |
| ADDRESS _1390 Emory Folmar Blvd._ | POSITION HELD _Driver_ |
| CITY _Montgomery_   STATE _Al_   ZIP _36110_ | SALARY/WAGE _$9.50 hr_ |
| CONTACT PERSON          PHONE NUMBER | REASON FOR LEAVING _Lay-off_ |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO.  YR.   TO MO.  YR. |
| ADDRESS | POSITION HELD |
| CITY   STATE   ZIP | SALARY/WAGE |
| CONTACT PERSON          PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO.  YR.   TO MO.  YR. |
| ADDRESS | POSITION HELD |
| CITY   STATE   ZIP | SALARY/WAGE |
| CONTACT PERSON          PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO.  YR.   TO MO.  YR. |
| ADDRESS | POSITION HELD |
| CITY   STATE   ZIP | SALARY/WAGE |
| CONTACT PERSON          PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO.  YR.   TO MO.  YR. |
| ADDRESS | POSITION HELD |
| CITY   STATE   ZIP | SALARY/WAGE |
| CONTACT PERSON          PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO.  YR.   TO MO.  YR. |
| ADDRESS | POSITION HELD |
| CITY   STATE   ZIP | SALARY/WAGE |
| CONTACT PERSON          PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO.  YR.   TO MO.  YR. |
| ADDRESS | POSITION HELD |
| CITY   STATE   ZIP | SALARY/WAGE |
| CONTACT PERSON          PHONE NUMBER | REASON FOR LEAVING |

*Includes vehicles having a GVWR of 26,001 lbs. or more, vehicles designed to transport 15 or more passengers, or any size vehicle used to transport hazardous materials in a quantity requiring placarding.

Hinson
8 pages
11/27/01
334-281-6462

# EMPLOYMENT RECORD FOR PAST 10

Begin with your present or most recent job and work backward in order, listing your employers for all employment. All time must be accounted for, including military service, self-employment, and periods of unemployment.

## CURRENT EMPLOYER

From: Month 10 Date 18 Year 99 To: Month 7 Date 31 Year 00
Phone Number: (334) 262-1021
Type of Equipment Driven: Tractor Trailer - Van

Company Name: MCC
Address: Street P.O. Box 4306 City Montgomery State AL Zip 36101
Position Held: Driver Salary: 23%
Reason For Leaving: too little work Areas in which you drove: apprx 15 states

## SECOND LAST EMPLOYER

From: Month 3 Date 13 Year 99 To: Month 8 Date 20 Year 99
Phone Number: (334) 265-4807
Type of Equipment Driven: Tractor Trailer - Van - Flat Bed

Company Name: Southern Pallet
Address: Street 4596 Washington Ferry Rd City Montgomery State AL Zip 36108
Position Held: Driver Salary: $8.00 hr.
Reason For Leaving: accused of running light and ect Areas in which you drove: Alabama

## THIRD LAST EMPLOYER

From: Month 8 Date 25 Year 99 To: Month 10 Date 11 Year 99
Phone Number: 334-278-3171
Type of Equipment Driven: Tractor Trailer - Dump

Company Name: Santez Sand + Gravel
Address: Street 220 Hwy 80 West City Lowndesboro State AL Zip 36752
Position Held: Driver Salary: $9.00 hr
Reason For Leaving: Rain - No Work Areas in which you drove: Alabama

## FOURTH LAST EMPLOYER

From: Month 10 Date 26 Year 98 To: Month 2 Date 12 Year 99
Phone Number: (334) 271-0430
Type of Equipment Driven: None

Company Name: Multi Staffing
Address: Street 111 Market Place City Montgomery State AL Zip 36117
Position Held: Temp Salary: $7-8.00 hr
Reason For Leaving: Temp Work Areas in which you drove: None

## FIFTH LAST EMPLOYER

From: Month 10 Date 15 Year 95 To: Month 1 Date 14 Year 97
Phone Number: (334) 265-1567
Type of Equipment Driven: Tractor Trailer - Van

Company Name: Piknik Products
Address: Street 3806 Day St City Montgomery State AL Zip 36108
Position Held: Driver Salary: $7.75
Reason For Leaving: Had to do at me. For State assault Areas in which you drove: Alabama

## SIXTH LAST EMPLOYER

From: Month 1 Date 16 Year 95 To: Month 10 Date 10 Year 95
Phone Number: (None) No longer in business
Type of Equipment Driven: Tractor Trailer - Van

Company Name: Builders Transport
Address: Street 2029 W. Dekalb St. City Camden State SC Zip 29020
Position Held: Driver Salary: 21¢ mile
Reason For Leaving: Need to be home - full time Areas in which you drove: apprx 30 States

## SEVENTH LAST EMPLOYER

From: Month 7 Date 15 Year 94 To: Month 1 Date 12 Year 95
Phone Number: (334) 284-8486
Type of Equipment Driven: Tractor Trailer - Van, Fork Lift

Company Name: American Freightways
Address: Street Hwy 331 South City Montgomery State AL Zip 36105
Position Held: Spotter Salary: $9.45 hr
Reason For Leaving: laid off Areas in which you drove: only spotted

*Use separate sheet for additional employment history, if necessary.*

2

Rev. 02/2000

J.P. Teck (Driving School)
3920 Troy Hwy
Montgomery AL. 36116
(334) 288-1080
From: 11-93 To: 1-94

Unemployed
From: 5-15-93 To: 10-28-93

Winn Dixie
1550 Jackson Ferry Rd.
Montgomery AL. 36104 (334) 265-5240
From: 6-3-92 To: 5-15-93
Job: Select food products and operate fork lift
Reason Left: company would not train me
to drive truck as their rep's R. Knight
promised me.

Calhoun High School
8213 Co. Rd. 33
Letohatchee AL. 36047
(334) 227-4515
Finished School: May 29, 1992

# Medical Examination Report
## FOR COMMERCIAL DRIVER FITNESS DETERMINATION

### 1. DRIVER'S INFORMATION — Driver completes this section.

Driver's Name (Last, First, Middle): Hixson Darrell Dewayne

Address: P.O. Box 7951

City, State, Zip Code: Montgomery Al 36108

Social Security No.: 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

Birthdate: 10-25-70 M/D/Y

Age: 69

Sex: ☑ M ☐ F

Work Tel: ( )

Home Tel: 334 301-4718

Driver License No.: 522461

New Certification ☐ Recertification ☐ Follow Up ☐

Date of Exam: 3-18-2

License Class: ☑ A ☐ C ☐ B ☐ D ☐ Other

State of Issue: Al

### 2. HEALTH HISTORY — Driver completes this section, but medical examiner is encouraged to discuss with driver.

**Yes No**
- ☐☐ Any illness or injury in last 5 years?
- ☐☐ Head/Brain injuries, disorders or illnesses
- ☐☐ Seizures, epilepsy
- ☐ medication
- ☐☐ Eye disorders or impaired vision (except corrective lenses)
- ☐☐ Ear disorders, loss of hearing or balance
- ☐☐ Heart disease or heart attack; other cardiovascular condition
- ☐ medication
- ☐☐ Heart surgery (valve replacement/bypass, angioplasty, pacemaker)
- ☐☐ High blood pressure ☐ medication
- ☐☐ Muscular disease
- ☐☐ Shortness of breath

**Yes No**
- ☐☐ Lung disease, emphysema, asthma, chronic bronchitis
- ☐☐ Kidney disease, dialysis
- ☐☐ Liver disease
- ☐☐ Digestive problems
- ☐☐ Diabetes or elevated blood sugar controlled by:
  - ☐ diet
  - ☐ pills
  - ☐ Insulin
- ☑☐ Nervous or psychiatric disorders, e.g., severe depression
- ☐☐ Loss of, or altered consciousness

**Yes No**
- ☐☐ Fainting, dizziness
- ☐☐ Sleep disorders, pauses in breathing while asleep, daytime sleepiness, loud snoring
- ☑☐ Stroke or paralysis
- ☐☐ Missing or impaired hand, arm, foot, leg, finger, toe
- ☐☐ Spinal injury or disease
- ☐☐ Chronic low back pain
- ☐☐ Regular, frequent alcohol use
- ☐☐ Narcotic or habit forming drug use

For any YES answer, indicate onset date, diagnosis, treating physician's name and address, and any current limitation. List all medications (including over-the-counter medications) used regularly or recently.

I certify that the above information is complete and true. I understand that inaccurate, false or missing information may invalidate the examination and my Medical Examiner's Certificate.

Driver's Signature: _David L. Dewayne Hixson_    Date: 3-18-2

**Medical Examiner's Comments on Health History** (The medical examiner must review and discuss with the driver any "yes" answers and potential hazards of medications, including over-the-counter medications, while driving.)

## TESTING (Medical Examiner completes Section 3 through 7)

**3. VISION** Standard: At least 20/40 acuity (Snellen) in each eye with or without correction. At least 70° peripheral in horizontal meridian measured in each eye. The use of corrective lenses should be noted on the Medical Examiner's Certificate.

INSTRUCTIONS: *When other than the Snellen chart is used, give test results in Snellen-comparable values. In recording distance vision, use 20 feet as normal. Report visual acuity as a ratio with 20 as numerator and the smallest type read at 20 feet as denominator. If the applicant wears corrective lenses, these should be worn while visual acuity is being tested. If the driver habitually wears contact lenses, or intends to do so while driving, sufficient evidence of good tolerance and adaptation to their use must be obvious. Monocular drivers are not qualified.*

Numerical readings must be provided.

| ACUITY | UNCORRECTED | CORRECTED | HORIZONTAL FIELD OF VISION |
|---|---|---|---|
| Right Eye | 20/ | 20/ 20 | Right Eye | 90 ° |
| Left Eye | 20/ | 20/ 30 | Left Eye | 90 ° |
| Both Eyes | 20/ | 20/ 15 | | 110 ° |

Complete next line only if vision testing is done by an ophthalmologist or optometrist.

Date of Examination _____  Name of Ophthalmologist or Optometrist (print) _____  Tel. No. _____

Applicant can recognize and distinguish among traffic control signals and devices showing standard red, green and amber colors?   ☒ Yes   ☐ No

Applicant meets visual acuity requirement only when wearing:
☒ Corrective Lenses

Monocular Vision:  ☐ Yes   ☒ No

License No./State of Issue _____   Signature _____   N/A

**4. HEARING** Standard: a) Must first perceive forced whispered voice ≥ 5 ft., with or without hearing aid, or b) average hearing loss in better ear ≤ 40 dB
☐ Check if hearing aid used for tests. ☐ Check if hearing aid required to meet standard.

INSTRUCTIONS: *To convert audiometric test results from ISO to ANSI, -14 dB from ISO for 500 Hz, -10 dB from ISO for 1,000 Hz, -8.5 dB for 2,000 Hz. To average, add the readings for 3 frequencies tested and divide by 3.*

Numerical readings must be recorded.

a) Record distance from individual at which forced whispered voice can first be heard.

| Right Ear | Left Ear |
|---|---|
| 20 Feet | 20 Feet |

b) If audiometer is used, record hearing loss in decibels, (acc. to ANSI Z24.5-1951)

| | Right Ear | | | Left Ear | | |
|---|---|---|---|---|---|---|
| | 500 Hz | 1000 Hz | 2000 Hz | 500 Hz | 1000 Hz | 2000 Hz |
| Average: | | | | Average: | | |

**5. BLOOD PRESSURE / PULSE RATE** Numerical readings must be recorded.

| Blood Pressure | Systolic | Diastolic |
|---|---|---|
| 110 | X |

Driver qualified if ≤ 160/90 on initial exam.

Pulse Rate:  ☒ Regular   ☐ Irregular

**GUIDELINES FOR BLOOD PRESSURE EVALUATION**

Within 3 months

On initial exam.
If 161-180 and/or 91-104, qualify 3 mos. only.

If > 180 and/or 104, not qualified until reduced to < 181/105. Then qualify for 3 mos. only.

If ≤ 160 and/or 90, qualify for 1 yr. Document Rx & control the 3rd month.

If ≤ 160 and/or 90, qualify for 6 mos. Document Rx & control the 3rd month.

Certify

Annually if acceptable BP is maintained

Biannually

**6. LABORATORY AND OTHER TEST FINDINGS** Numerical readings must be recorded.

Urinalysis is required. Protein, blood or sugar in the urine may be an indication for further testing to rule out any underlying medical problem.

*Medical examiner should take at least 2 readings to confirm blood pressure.*

Other Testing (Describe and record)

| URINE SPECIMEN | SP. GR. | PROTEIN | BLOOD | SUGAR |
|---|---|---|---|---|
| | 1.030 | trace | No | No |

# 7. PHYSICAL EXAMINATION  Height: 5' 11" (in.)  Weight 254 (lbs.)

The presence of a certain condition may not necessarily disqualify a driver, particularly if the condition is controlled adequately, is not likely to worsen or is readily amenable to treatment. Even if a condition does not disqualify a driver, the medical examiner may consider deferring the driver temporarily. Also, the driver should be advised to take the necessary steps to correct the condition as soon as possible particularly if the condition, if neglected, could result in more serious illness that might affect driving.

Check YES if there are any abnormalities. Check NO if the body system is normal. Discuss any YES answers in detail in the space below, and indicate whether it would affect the driver's ability to operate a commercial motor vehicle safely. Enter applicable item number before each comment. If organic disease is present, note that it has been compensated for.
See Instructions to the Medical Examiner for guidance.

| BODY SYSTEM | CHECK FOR: | YES* | NO | BODY SYSTEM | CHECK FOR: | YES* | NO |
|---|---|---|---|---|---|---|---|
| 1. General Appearance | Marked overweight, tremor, signs of alcoholism, problem drinking, or drug abuse. | | | 7. Abdomen and Viscera | Enlarged liver, enlarged spleen, masses, bruits, hernia, significant abdominal wall muscle weakness. | | |
| 2. Eyes | Pupillary equality, reaction to light, accommodation, ocular motility, ocular muscle imbalance, extraocular movement, nystagmus, exophthalmos, strabismus uncorrected by corrective lenses, retinopathy, cataracts, aphakia, glaucoma, macular degeneration. | | | 8. Vascular System | Abnormal pulse and amplitude, carotid or arterial bruits, varicose veins. | | |
| | | | | 9. Genito-urinary System | Hernias. | | |
| 3. Ears | Middle ear disease, occlusion of external canal, perforated eardrums. | | | 10. Extremities - Limb impaired. Driver may be subject to SPE certificate if otherwise qualified. | Loss of impairment of leg, foot, toe, arm, hand, finger. Perceptible limp, deformities, atrophy, weakness, paralysis, clubbing, edema, hypotonia. Insufficient grasp and prehension in upper limb to maintain steering wheel grip. Insufficient mobility and strength in lower limb to operate pedals properly. | | |
| 4. Mouth and Throat | Irremediable deformities likely to interfere with breathing or swallowing. | | | | | | |
| 5. Heart | Murmurs, extra sounds, enlarged heart, pacemaker. | | | 11. Spine, other musculoskeletal | Previous surgery, deformities, limitation of motion, tenderness. | | |
| 6. Lungs and chest, not including breast examination. | Abnormal chest wall expansion, abnormal respiratory rate, abnormal breath sounds including wheezes or alveolar rales, impaired respiratory function, dyspnea, cyanosis. Abnormal findings on physical exam may require further testing such as pulmonary tests and/or xray of chest. | | | 12. Neurological | Impaired equilibrium, coordination or speech pattern; paresthesia, asymmetric deep tendon reflexes, sensory or positional abnormalities, abnormal patellar and Babinski's reflexes, ataxia. | | |

*COMMENTS:

Note certification status here. See Instructions to the Medical Examiner for guidance.

☒ Meets standards in 49 CFR 391.41; qualifies for 2 year certificate
☐ Does not meet standards
☐ Meets standards, but periodic evaluation required
   Due to _____ driver qualified only for:
   ☐ 3 months  ☐ 1 year
   ☐ 6 months  ☐ Other
☐ Temporarily disqualified due to (condition or medication): _____
   Return to medical examiner's office for follow up on _____

☒ Wearing corrective lenses
☐ Wearing hearing aid
☐ Accompanied by a _____ waiver/exemption
☐ Skill Performance Evaluation (SPE) Certificate
☐ Driving within an exempt intracity zone
☐ Qualified by operation of 49 CFR 391.64

Medical Examiner's Signature _____

Medical Examiner's Name (print) Dr. J Schilw MD

Address 601  N.E. Blvd  Mtg.  Al 3617

Telephone Number 334-277-6174

If meets standards, complete a Medical Examiner's Certificate according to 49 CFR 391.43(h). (Driver must carry certificate when operating a commercial vehicle.)

# BUREAU OF MOTOR CARRIER SAFETY

# WRITTEN EXAMINATION FOR DRIVERS

Applicant **Darrell Hinson**          Date **3-11-2**

Examiner _____

1. 390.32  A motor carrier who is also a driver (owner-operator):
1. (  ) is not covered by the safety regulations.
2. (  ) must obey only those parts of the regulations which cover drivers.
3. (  ) must obey only those parts of the regulations which cover motor carriers.
4. (✓) must obey both the parts covering drivers and the parts covering motor carriers.

2. 391.11 (b)(1)  With only a few exceptions, the Federal Motor Carrier Safety Regulations say a driver must be:
1. (  ) at least 18 years old.
2. (  ) at least 19 years old.
3. (  ) at least 20 years old.
4. (✓) at least 21 years old.

3. 391.15 (c)(2)(3)  A driver cannot drive a motor vehicle:
1. (  ) For one year after a first offense conviction for a felony involving a commercial motor vehicle he was driving.
2. (  ) For one year after a first offense conviction for driving a commercial vehicle under the influence of alcohol or narcotics.
3. (  ) For one year after a first offense conviction for leaving the scene of an accident which resulted in personal injury or death.
4. (✓) For one year after a first offense conviction for any of the above.

4. 391.21 (b)(7)(8)(10)  Every driver applicant must fill out an application form giving:
1. (  ) a list of all vehicle accidents he was in during the previous 3 years.
2. (  ) a list of all of his motor vehicle violation convictions and bond forfeits (except for parking) during the previous 3 years.
3. (  ) a list of names and addresses of all of his employers during the previous 3 years.
4. (✓) all of the above.

5. 391.27 (a)(b)  At least once a year, a driver must fill out a form listing all motor vehicle violations (except parking) which he had during the previous 12 months. He must fill out the form:
1. (  ) even if he had no violations.
2. (  ) only if he was convicted.
3. (  ) only if he was convicted or forfeited bond or collateral.
4. (  ) only if the carrier requires it.

6. 391.33 (a)(2)  If a driver applicant has a valid certificate showing he passed a driver's road test:
1. (  ) the carrier must accept it.
2. (✓) the carrier may still require the applicant to take a road test.
3. (  ) the carrier cannot accept it.
4. (  ) the carrier may request a road test waiver from the Bureau of Motor Carrier Safety.

7. 391.41 (b)(5)  Persons with breathing problems which may affect safe driving:
1. (  ) cannot drive.
2. (  ) cannot drive unless the vehicle has an emergency oxygen supply.
3. (  ) cannot drive unless another driver is along.
4. (  ) cannot drive except on short runs.

8. 391.41 (b)(7)  Persons with arthritis, rheumatism, or any such condition which may affect safe driving:
1. (  ) cannot drive unless they are checked by a doctor before each trip.
2. (✓) cannot drive.
3. (  ) cannot drive except when they are free of pain.
4. (  ) cannot drive unless another driver is along.

9. 391.41 (b)(8)  Persons who have ever had epilepsy:
1. (  ) cannot drive unless another driver is along.
2. (✓) cannot drive.
3. (  ) cannot drive on long runs.
4. (  ) cannot drive without monthly medical examinations.

10. 391.41 (b)(9)(12)(13)  In order to be able to drive, a person:
1. (  ) must not have any mental, nervous or physical problem likely to affect safe driving.
2. (  ) must not use an amphetamine, narcotic or any habit-forming drug.
3. (  ) must not have a current alcoholism problem.
4. (✓) must not have or use any of the above.

11. 391.45 (c)  Any driver who gets an injury or illness serious enough to affect his ability to perform his duties:
1. (  ) must report it at his next scheduled physical.
2. (  ) cannot drive again.
3. (✓) must take another physical and be recertified before driving again.
4. (  ) must wait at least 1 month after recovery before driving again.

12. 392.2  A driver may not drive faster than posted speed limits:
1. (  ) unless he is sick and must complete his run quickly.
2. (  ) at any time.
3. (  ) unless he is passing another vehicle.
4. (  ) unless he is late and must make a scheduled arrival.

13. 392.3  When a driver's physical condition while on a trip requires that he stop driving, but stopping would not be safe, the driver:
1. (  ) must stop anyway.
2. (  ) may try to complete his trip, but as quickly as possible.
3. (  ) may continue to drive to his home terminal.
4. (✓) may continue to drive, but must stop at the nearest safe place.

14. 392.5 (a)(1)  A driver may not drink or be under the influence of any alcoholic beverage (regardless of alcoholic content):
1. (  ) within 4 hours before going on duty or driving.
2. (  ) within 6 hours before going on duty or driving.
3. (  ) within 8 hours before going on duty or driving.
4. (  ) within 12 hours before going on duty or driving.

15. 392.7  A driver must satisfy himself that service and parking brakes, tires, lights and reflectors, mirrors, coupling and other devices are in good working order:
1. (  ) at the end of each trip.
2. (✓) before the vehicle may be driven.
3. (  ) only when he considers it necessary.
4. (  ) according to schedules set by the carrier.

© Copyright 1978 & Published By:
J. J. KELLER & ASSOCIATES, INC.
145 W. Wisconsin Ave. • Neenah, Wisconsin 54956
(414) 722-2848
"International Technical Publishers"

16. 392.8  Which of the following must be in place and ready for use before a vehicle can be driven?
1. (   ) at least one spare fuse or other overload protector of each type used on the vehicle.
2. (   ) a tool kit containing a specified list of hand tools.
3. (   ) at least one spare tire for every four wheels.
4. (   ) a set of spark plugs.

17. 392.9(a)(3)  If any part of the cargo or anything else blocks a driver's front or side views, his arm or leg movements, or his access to emergency equipment, the driver:
1. (   ) can drive the vehicle, but must report the problems at the end of the trip.
2. (   ) cannot drive the vehicle.
3. (   ) can drive the vehicle, but only at speeds under 40 miles per hour.
4. (   ) can drive the vehicle, but only on secondary roads.

18. 392.9(a)  Any driver who needs glasses to meet the minimum visual requirements:
1. (   ) must drive only during daylight hours.
2. (   ) must always wear his glasses when driving.
3. (   ) must always carry a spare pair of glasses.
4. (   ) must not drive a motor vehicle.

19. 392.9(b)  A driver may drive with a hearing aid:
1. (   ) if he always has it turned on while he is driving.
2. (   ) if he always carries a spare power source for it.
3. (   ) if he can meet the hearing requirements when he has it turned on.
4. (   ) if all of the above requirements are met.

20. 392.10(a)  A driver required to stop at a railroad crossing should bring his vehicle to a stop no closer to the tracks than:
1. (   ) 5 feet.
2. (   ) 10 feet.
3. (   ) 15 feet.
4. (   ) 20 feet.

21. 392.10(a)  Shifting gears is not permitted:
1. (   ) when traveling faster than 35 miles per hour.
2. (   ) when moving across any bridge.
3. (   ) when crossing railroad tracks.
4. (   ) when traveling down a hill steeper than 10 degrees.

22. 392.13  Drivers of motor vehicles not required to stop at drawbridges without signals:
1. (   ) must drive at a rate of speed which will permit a stop before reaching the lip of the draw.
2. (   ) must sound their horn before crossing.
3. (   ) can proceed across without reducing speed.
4. (   ) must slow down only if directed to by an attendant.

23. 392.15(a)  A driver turning his vehicle should begin flashing his turn signal:
1. (   ) at least 50 feet before turning.
2. (   ) at least 60 feet before turning.
3. (   ) at least 75 feet before turning.
4. (   ) at least 100 feet before turning.

24. 392.16  Which of the following is true?
1. (   ) if a seat belt is installed in the vehicle, a driver must have it fastened before beginning to drive.
2. (   ) a driver may or may not use the seat belt, depending on his judgment.
3. (   ) seat belts are not necessary on heavier vehicles.
4. (   ) a driver must use his seat belt only if required to by the carrier.

25. 392.21  When a motor vehicle cannot be stopped off the traveled part of the highway, the driver:
1. (   ) must keep driving.
2. (   ) may stop, but shall get as far off the traveled part of the highway as possible.
3. (   ) may stop, but shall make sure that the vehicle can be seen as far as possible to its front and rear.
4. (   ) may stop if he has to, but should do both 2 and 3 above.

26. 392.22(b)(1)  If a vehicle has a breakdown the driver must place one emergency signal:
1. (   ) 100 feet in front of the vehicle in the center of the lane it occupies.
2. (   ) 100 feet in back of the vehicle in the center of the lane it occupies.
3. (   ) 10 feet in front or back of the traffic side.
4. (   ) at all of the above locations.

27. 392.22(b)(1)(i)  If a vehicle has a breakdown on a poorly-lit street or highway, the driver shall place on the traffic side:
1. (   ) a reflective triangle.
2. (   ) a lighted red electric lantern.
3. (   ) a red reflector.
4. (   ) any one of the above.

28. 392.22(b)(2)(iii)  No emergency signals are required for a vehicle with a breakdown if the street or highway lighting is bright enough so it can be seen at a distance of:
1. (   ) 100 feet.
2. (   ) 200 feet.
3. (   ) 500 feet.
4. (   ) 750 feet.

29. 392.22(b)(2)(v)  If a vehicle has a breakdown and stops on a poorly-lit *divided or one way* highway, the driver must place one emergency signal:
1. (   ) 200 feet in back of the vehicle in the center of the lane it occupies.
2. (   ) 100 feet in back of the vehicle on the traffic side of the vehicle.
3. (   ) 10 feet in back of the vehicle on the traffic side of the vehicle.
4. (   ) at all of the above locations.

30. 392.25  Lighted flame-producing emergency signals, including fusees:
1. (   ) may not be used with vehicles carrying Class A or B explosives.
2. (   ) may not be used with tank vehicles, loaded or empty, which are used to carry flammable liquids or gas.
3. (   ) may not be used with any vehicle using compressed gas as a fuel.
4. (   ) may not be used with any of the above.

31. 392.30(a)  A driver is required to have his lights on:
1. (   ) from one-half hour *before* sunset to one-half hour *before* sunrise.
2. (   ) from one-half hour before sunset to sunrise.
3. (   ) from one-half hour *after* sunset to one-half hour *before* sunrise.
4. (   ) from sunset to one-half hour before sunrise.

32. 392.32(a)(b)  When lights are required on the open highway, a driver shall use the high beam:
1. (   ) except when within 500 feet of an on-coming vehicle or a vehicle he is following.
2. (   ) except when within 400 feet of an on-coming vehicle or a vehicle he is following.
3. (   ) except when within 200 feet of an on-coming vehicle or a vehicle he is following.
4. (   ) except when within 100 feet of an on-coming vehicle or a vehicle he is following.

33. 392.32(a) When lights are required, drivers may use lower beam lights:
1. (   ) when fog, dust or other such conditions exist.
2. (   ) when approaching tunnels or bridges.
3. (   ) when driving on one way highways.
4. (   ) when within 1,000 feet of business areas or where people live.

34. 392.40 Every driver involved in an accident must follow the Safety Regulation procedures whenever an injury or death is involved or if:
1. (   ) the accident is caused by the driver and property damage of over $250.00 results.
2. (   ) property damage of over $250.00 results, no matter who is at fault.
3. (   ) property damage of over $100.00 results.
4. (   ) property damage of any kind results.

35. 392.41 If a driver strikes a parked vehicle, he should first:
1. (   ) stop and call the local police.
2. (   ) stop and call his carrier.
3. (   ) stop and try to find the driver or owner of the parked vehicle.
4. (   ) stop and estimate the damage.

36. 392.42 When a driver receives notice that his operator's license or permit has been revoked, suspended, or withdrawn, he must:
1. (   ) notify his carrier within 72 hours.
2. (   ) notify his carrier within one week.
3. (   ) notify his carrier before the end of the next business day.
4. (   ) take no action since his carrier will also get a notice.

37. 392.61 Except in emergencies, no driver shall allow his vehicle to be driven by any other person:
1. (   ) except those he knows can drive it.
2. (   ) except on roads with little or no traffic.
3. (   ) except those allowed by the carrier to do it.
4. (   ) unless he goes along with the person driving.

38. 392.64 A person may ride inside a vehicle's closed body or trailer:
1. (   ) only on short runs.
2. (   ) only if there is an easy way to get out from the inside.
3. (   ) only if the inside of the body or trailer is lighted.
4. (   ) only if there is no cargo in it.

39. 392.66 If carbon-monoxide is inside a vehicle or if a mechanical problem may produce a carbon-monoxide danger, the vehicle:
1. (   ) may be sent out and driven so long as the windows are left open.
2. (   ) may not be sent out or driven.
3. (   ) may be sent out and driven only if the carrier decides the vehicle has to be used.
4. (   ) may be sent out and driven on short runs.

40. 392.68 No motor vehicle shall be operated out of gear:
1. (   ) except when fuel must be saved.
2. (   ) except on hills which are less than 20 degrees.
3. (   ) except when it is necessary for stopping or shifting gears.
4. (   ) except when the vehicle's speed is under 25 miles per hour.

41. 393.1(a) Under the Federal Motor Carrier Safety Regulations, no vehicle may be driven:
1. (   ) until a list of all missing or defective equipment has been prepared and given to the carrier.
2. (   ) until all equipment has been inspected and replacements for defective parts have been ordered.
3. (   ) unless all missing equipment is to be replaced no later than the end of the vehicle's next run.
4. (   ) until it meets all of the equipment requirements of the Regulations.

42. 393 various Minimum requirements for lighting, reflecting and electrical equipment and devices on buses and trucks:
1. (   ) are set by the vehicle makers.
2. (   ) are set by the National Safety Council.
3. (   ) are specified in the Safety Regulations.
4. (   ) are set by the trucking associations.

43. 393.18(a)(b) Every motor vehicle which has a load sticking out over its sides must be specifically marked with flags and lamps. Additional flags and lamps must be added if the load or tailgate sticks out beyond the rear of the vehicle by more than:
1. (   ) 2 feet.
2. (   ) 4 feet.
3. (   ) 6 feet.
4. (   ) 8 feet.

44. 393.41(a) Every vehicle shall have a parking brake system which will hold it, no matter what its load:
1. (   ) on any grade on which it is operated which is free from ice and snow.
2. (   ) on all grades under 15 degrees which are free from ice and snow.
3. (   ) on all grades under 20 degrees which are free from ice and snow.
4. (   ) on all grades under 25 degrees which are free from ice and snow.

45. 393.77(b)(6) A portable heater may not be used in any vehicle cab:
1. (   ) unless it is secured.
2. (   ) unless it is of the electric filament type.
3. (   ) at any time.
4. (   ) without approval from the carrier.

46. 395.3(a) Drivers are not generally allowed to drive for more than:
1. (   ) 6 hours following 8 straight hours off duty.
2. (   ) 8 hours following 8 straight hours off duty.
3. (   ) 10 hours following 8 straight hours off duty.
4. (   ) 12 hours following 8 straight hours off duty.

47. 395.3(a) Most drivers of large vehicles are not allowed to drive:
1. (   ) after they have been on duty for 16 hours.
2. (   ) after they have been on duty for 15 hours.
3. (   ) after they have been on duty for 14 hours.
4. (   ) after they have been on duty for 12 hours.

48. 395.3(b) Generally, a driver may not be "on duty":
1. (   ) for more than 40 hours in any 7 straight days.
2. (   ) for more than 50 hours in any 7 straight days.
3. (   ) for more than 60 hours in any 7 straight days.
4. (   ) for more than 70 hours in any 7 straight days.

49. 395.7 When a driver is riding in a vehicle, but is not driving and has no other responsibility, such time shall be counted as:
1. (   ) on-duty time.
2. (   ) on-duty time unless he is allowed 8 straight hours off duty when he gets to the destination.
3. (   ) on-duty time unless he is allowed 6 straight hours off duty when he gets to the destination.
4. (   ) on-duty time unless he is allowed 4 straight hours off duty when he gets to the destination.

50. 395.8(b) Every driver must prepare an original and one copy of a daily log which he must keep current by updating it:
1. (   ) every time he changes a duty status.
2. (   ) every 24 hours.
3. (   ) every 8 hours.
4. (   ) at the end of each trip.

51. 395.8(c) Except for the name and main address of the carrier, all entries in a log:
1. (   ) must be printed in ink or typed.
2. (   ) must be made by the carrier dispatcher.
3. (   ) must be made in front of a witness.
4. (   ) must be written in the driver's own handwriting.

52. 395.8(1)(p) (q)  Which of the following is *not* to be in a driver's log?
1.  (   ) Time spent in a sleeper berth.
2.  (   ) Total hours in each duty status.
3.  (   ) The name of the carrier or carriers.
4.  (   ) The name and make of his vehicle.

53. 395.11  If an emergency delays a run which could normally have been completed within hours of service limits, the driver:
1.  (   ) must still stop driving when the hours of service limit is reached.
2.  (   ) may drive for 1 extra hour.
3.  (   ) may drive for 2 extra hours.
4.  (   ) may finish his run without being in violation.

54. 395.13  Any driver declared "Out of Service":
1.  (   ) must take a road test before driving again.
2.  (   ) must wait 72 hours before driving again.
3.  (   ) must appeal to the Director of the Bureau of Motor Carrier Safety to drive again.
4.  (   ) can drive again only after hours of service requirement are met.

55. 396.4  If a vehicle on a trip is in a condition likely to cause an accident or breakdown:
1.  (   ) the driver should report it at the end of his run so repairs can be made.
2.  (   ) the driver should drive at lower speeds for the rest of the run.
3.  (   ) the driver should stop immediately unless going on to the nearest repair shop is safer than stopping.
4.  (   ) the driver should change his route so as to get away from heavily traveled roads.

56. 396.5(c)  If authorized Federal inspectors find a vehicle which is likely to cause an accident or breakdown:
1.  (   ) it will be reported to the carrier for repair as soon as the vehicle is not scheduled.
2.  (   ) it will be reported to the carrier for repair at the end of the trip.
3.  (   ) it will be marked with an "Out of Service Vehicle" sticker and not driven until repairs are made.
4.  (   ) the driver will be held responsible and declared "Out of Service."

57. 396.5(c)(4)  If the driver makes his own repairs on an "Out of Service" vehicle:
1.  (   ) his work must be approved by a mechanic.
2.  (   ) he must complete and sign a "Certification of Repairman" form himself.
3.  (   ) his work must be approved by his supervisor.
4.  (   ) his work must be approved by a Federal inspector.

---

**The following questions must be answered by Drivers involved in the transportation of Hazardous Materials.**

58. 397.3  Department of Transportation Regulations covering the driving and parking of vehicles containing hazardous materials:
1.  (   ) replace State and local laws.
2.  (   ) prevent States and cities from having their own laws.
3.  (   ) must be obeyed even if State or local laws are less strict or disagree.
4.  (   ) should not be obeyed if State or local laws disagree.

59. 397.5(c)  A vehicle which contains hazardous materials *other than* Class A or B explosives must be attended at all times:
1.  (   ) by the driver.
2.  (   ) by the driver except when he is involved in something else necessary to his duties as a driver.
3.  (   ) by the driver or a person chosen by the driver.
4.  (   ) by the driver or a police officer.

60. 397.5(d)(1)  A vehicle containing Class A or B explosives or other hazardous materials on a trip is "attended":
1.  (   ) when the person in charge is anywhere within 100 feet of it.
2.  (   ) as long as the driver can see it from 200 feet away.
3.  (   ) when the person in charge is within 100 feet and has a clear view of it.
4.  (   ) when the person in charge is resting in the berth.

61. 397.7(a)(3)  Except for short periods when operations make it necessary, trucks carrying Class A or B explosives cannot be parked any closer to bridges, tunnels, building or crowds of people than:
1.  (   ) 50 feet.
2.  (   ) 100 feet.
3.  (   ) 200 feet.
4.  (   ) 300 feet.

62. 397.13(a)  Smoking or carrying a lighted cigarette, cigar or pipe near a vehicle which contains explosives, oxidizing or flammable materials is not allowed:
1.  (   ) except in the closed cab of the vehicle.
2.  (   ) except when the vehicle is moving.
3.  (   ) except at a distance of 25 feet or more from the vehicle.
4.  (   ) except when approved by the carrier.

63. 397.15(a)(b)  When a vehicle containing hazardous materials is being fueled:
1.  (   ) no person may remain in the cab.
2.  (   ) a person must be in control of the fueling process at the point where the fuel tank is filled.
3.  (   ) the area within 50 feet of the vehicle must be cleared.
4.  (   ) the person who controls the fueling process must wear special clothes.

64. 397.17(a)  If a vehicle carrying hazardous materials is equipped with dual tires on any axle, the driver must examine the tires:
1.  (   ) at all fueling stops only.
2.  (   ) only at the end of each day or tour of duty.
3.  (   ) at the beginning of each trip and each time the vehicle is parked.
4.  (   ) at the beginning of each trip only.

65. 397.17(c)  If a driver of a vehicle carrying hazardous materials finds a tire which is overheated, he must:
1.  (   ) wait for the overheated tire to cool before going on.
2.  (   ) remove and replace the overheated tire, store it on the vehicle and drive on.
3.  (   ) remove the tire, place it a safe distance from the vehicle and not drive the vehicle until the cause of the overheating is fixed.
4.  (   ) drive slowly to the nearest repair shop and have the cause of the overheating fixed.

66. 177.823(a)(3)  When required, specified hazardous materials markings or signs must be placed:
1.  (   ) wherever they can be seen clearly.
2.  (   ) on the sides and rear of the vehicle.
3.  (   ) on the front, rear and sides of the vehicle.
4.  (   ) on the front and rear bumpers of the vehicle.

REQUEST FOR INFORMATION FROM PREVIOUS EMPLOYER

COMPANY: _ALABAMA Food Service_

ADDRESS: _401 Paul Rd_

CITY & STATE: _Montgomery, AL_    ZIP _36108_

YOU ARE HEARBY AUTHORIZED TO GIVE:
WEBSTER INDUSTRIES
5402 LAMCO STREET
MONTGOMERY, AL. 36117

All information regarding my services, character and conduct while in your employment. You are released from any liability which may result from furnishing such information to the named company.

DATE: _4-11-03_    EMPLOYEE'S SIGNATURE: _____

WORK HABITS: DATES OF EMPLOYMENT    from _12-6-01_ to: _3-15-02_

1. Did the applicant drive a motor vehicle for you ? _yes_
2. Tractor-semi trailer?_____other?_____
3. Was the applicant a safe and efficient driver ? _yes_
4. Was the driver involved in any accidents ? _No_
5. Where they chargeable_____
6. Reason for leaving your employment ?discharged---- layoff---- resigned---- other _Another Job_ _went to Webster 3-15-02_
7. Are you willing to rehire the applicant ? yes--no--

SUBSTANCE ABUSE INVESTIGATIVE REPORT:

1. Did the driver have any alcohol test with results of 0.04 alcohol concentration or greater ? yes--- no _✓_
2. did driver have any verified positive controlled substance test results (check one) Yes----no _✓_
3. Did driver ever refused to be tested :yes----no _✓_

Signature of the person completing this form : _____    date _5-1-03_

FMSCR391.23 required an investigation into the driver's past employment record. This investigation must be completed within 30 days of employment, and may be by personal interviews , telephone interviews , letters or any other method that the carrier deems appropriate. A written record must include the past employer's name ,address and the date of contact and comments made as to the driver's past record. The written record shall be retained in the driver's qualification file.

Please furnish this information as soon as possible according to FMSCR 382.413 which is required. Please see this regulation for futher information if needed.

## REQUEST FOR INFORMATION FROM PREVIOUS EMPLOYER

COMPANY: *ALABAMA Food Service*

ADDRESS: ----------------------------------------------

CITY&STATE: *Montgomery , AL*     ZIP--------------------

YOU ARE HEARBY AUTHORIZED TO GIVE:
WEBSTER INDUSTRIES
5402 LAMCO STREET
MONTGOMERY, AL. 36117

All information regarding my services, character and conduct while in your employment. You are released from any libility which may result from furnishing such information to the named company.

DATE: *4-11-03*     EMPLOYEE'S SIGNATURE: *Danny Johnson*

WORK HABITS: DATES OF EMPLOYMENT  from------------- to:------------------------------

1. Did the applicant drive a motor vehicle for you ?----------
2. Tractor-semi trailer?-----------other?------
3. Was the applicant a safe and efficient driver ?------
4. Was the driver involved in any accidents ?-----
5. Where they chargeable--------------
6. Reason for leaving your employment ?discharged---- layoff----- resigned----- other--------
7. Are you willing to rehire the applicant ? yes---no---

SUBSTANCE ABUSE INVESTIGATIVE REPORT:

1. Did the driver have any alcohol test with results of 0.04 alcohol concentration or greater ? yes--- no----
2. did driver have any verified positive controlled substance test results (check one) Yes----no----
3. Did driver ever refused to be tested :yes---no----

Signature of the person completing this form :
----------------------------------------------- date----------------------------

FMSCR391-23 required an investigation into the driver's past employment record. This investigation must be completed withen 30 days of employment, and may be by personal interviews , telephone interviews , letters or any other method that the carrier deems appropriate. A written record must include the past employer's name ,address and the date of contact and comments made as to the driver's past record. The written record shall be retained in the driver's qualification file.

Please furnish this information as soon as possible according to FMSCR 382.413 which is required. Please see this regulation for futher information if needed.

*5-1-03 SpoKe to Nancy faxed
Copy to her boss Joe McGuire at 9:35 Am*

5 mailed 26/04 JH

# Personnel Documentation
## For
## Employee Progressive Disciplinary Action

**Today's Date** 4/14/2004     **Employee Name** Darrell Hinson

**Employee Clock #** 6314

**Employee Assigned Shift** Local Driver

**Employee Assigned Department** 85

**Employee's Supervisor** Bill Barton

**Disciplinary Action being taken: Suspension**

**Describe Reason for Discipline:**
On 4/11/2004, You drove your truck and pulled a trailer away from a loading dock while a forklift driver was in side your trailer. You violated several safety procedures that required you to check your trailer before driving away from the loading dock. This is a serious safety violation that could have severely injured the forklift driver and/or destroyed a Webster forklift. Therefore, you are being suspended while this incident is under investigation.

**Previous Discipline Given:**

**Verbal - Date**_____     **1st Written - Date**_____

**Suspension – Date**

**Suspension # Days**_____ **to be taken on the following day(s)**_____

**Termination - Date**_____

**Supervisor's Signature** _Nancy Stewart_     **Employee's Signature** _Refused to sign_
(check if employee refused to sign)

**HR Representative Signature** _Jamie C. Ayne_ 4/14/04

**Shop Steward Signature** _Charles Danson_

Copies: Employee, Employee's Supervisor, Operations Manager, HR Representative, HR Manager, Shop Steward, Union Business Representative, Employee File


EXHIBIT

Dbt f !3;16.dw 11: 82..E.DTD!!!!!Epdvn f ou2!!!!!Gjrhe!21℗2℗3116!!!!!Qbhf !2!pg7

RECEIVED

2005 OCT 11  P 1: 28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

DARRELL HINSON,                    )
    Plaintiff,                         )
                                              )
         v.                         )          Civil Action No. _2 : 05cv 971 · D_
                                              )
WEBSTER INDUSTRIES,            )          ***JURY TRIAL DEMANDED***
    Defendant.                       )

## COMPLAINT

    COMES NOW Plaintiff Darrell Hinson against the above-captioned defendant and would

show unto the Court as follows:

### JURISDICTION AND VENUE

1.    Plaintiff files this Complaint and invokes the jurisdiction of this Court under and by

    virtue of 28 U.S.C. §1331 and §1343 to obtain compensatory damages and equitable

    relief.  Defendant violated Plaintiff's rights as guaranteed by the Constitution of the

    United States and by Federal law, particularly 42 U.S.C. § 2000e, et seq., and 42 U.S.C.

    §1981.

2.    The violations of Plaintiff's rights as alleged herein occurred in Montgomery County,

    Alabama and were committed within the Middle District of the State of Alabama.

### PARTIES

3.    Plaintiff Darrell Hinson (hereinafter referred to as "Plaintiff"), who is over the age of 19

    years, is and at all times material hereto was a member of a protected class, Black, and a

    citizen of the United States and the State of Alabama, residing in Montgomery County,



Alabama.

4.    Defendant Webster Industries (hereinafter referred to as "the employer" or "the

defendant") is a business entity located in or doing business in Montgomery County,

Alabama, whose further identity is presently unknown to Plaintiff.

## NATURE OF PROCEEDINGS

5.    This is a proceeding for a declaratory judgment as to Plaintiff's rights and for a permanent

injunction, restraining the defendant from maintaining a policy, practice, custom or usage

of discrimination against Plaintiff or others similarly situated because of race and from

retaliating against Plaintiff or others similarly situated because of their opposition to

unlawful employment practices or participation in proceedings arising under 42 U.S.C. §

2000e or under 42 U.S.C. § 1981. The Complaint also seeks restitution to Plaintiff of all

rights, privileges, benefits, and income that would have been received by Plaintiff but for

the defendant's unlawful and discriminatory practices. Further, Plaintiff seeks

compensatory and punitive damages for his suffering as a consequence of the wrongs

alleged herein. Further, Plaintiff seeks such equitable relief, including back pay and a

reasonable amount of front pay in lieu of reinstatement, as to which he may be entitled.

Plaintiff avers that the defendant acted to deny Plaintiff his rights under the laws of the

United States of America and such action was designed to intentionally discriminate

against Plaintiff who is a member of a protected class, Black.

6.    Plaintiff avers that the defendant's actions were designed to prevent him and others

similarly situated from obtaining an equality with non-protected group members in

obtaining employment opportunities such as promotions and continued employment.

-2-

Dbtf.l3;16.dw11: 82. E. DTD!!!!!Epdvn f ou2!!!!!Gjrhe!21©2©81 16!!!!!Qbhf !4!pd7

Further, Plaintiff avers that the defendant has maintained a pattern of discrimination against Blacks in hiring, retention, and promotions.

7.   As a proximate result of the illegal actions alleged above, Plaintiff has been damaged in that he has been deprived of an opportunity for continued employment, job advancement and increases in pay, as well as caused to suffer great humiliation and mental anguish from then until now.

8.   Plaintiff avers that the defendant acted intentionally to deprive Plaintiff of his rights as alleged above and to cause Plaintiff mental anguish and to discriminate against him because of his race and because of his opposition to unlawful employment practices. Plaintiff filed a charge of discrimination with the EEOC. Plaintiff timely files this action after receiving his right to sue letter from the U.S. Department of Justice dated August 4, 2005.

## FACTS

9.   Plaintiff expressly adopts as if fully set forth herein the allegations in each of the foregoing paragraphs.

10.   Plaintiff is a Black male.

11.   Plaintiff was initially hired by the defendant on or about March 18, 2002, as a full-time local truck driver.

12.   On or about April 14, 2004, Plaintiff was suspended from his job because of an error that constituted a safety violation.

13.   On or about April 20, 2004, Plaintiff's employment was terminated as a result of the said safety violation.

14.   At least one White employee committed the same violation.

15.   The White employee was similarly situated to Plaintiff in all material respects.

16.   The White employee was not terminated.

17.   Plaintiff lost pay and benefits as a result of the discharge.

18.   The adverse employment action was taken against him by a member of a non-protected
      group, a White male.

19.   Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity
      Commission, complaining of the adverse employment action taken against him.

20.   Plaintiff was issued a Notice of Right to Sue from the EEOC dated August 4, 2005, and
      therefore files this suit in a timely manner.

21.   Plaintiff has suffered economic loss and severe emotional distress and mental anguish as
      a result of his treatment at the hands of the defendant.

## CAUSES OF ACTION

22.   Plaintiff expressly adopts with respect to each cause of action as if fully set forth in each
      claim the allegations contained in each and all of the foregoing paragraphs.

### COUNT ONE - DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

23.   Plaintiff is a member of a protected class, Black.

24.   Plaintiff was subjected to adverse and discriminatory treatment sufficient to alter the
      terms, conditions and privileges of his employment, and the treatment to which he was
      subjected was because of his race, Black.

25.   Plaintiff was subjected to an adverse employment action, termination.

22.   Members of non-protected classes were not and would not have been subjected to the

Dbt f l3;16.dw 11: 82. JE .DTD!!!!!Epdvn f ou2!!!!!Gjrhe!21 02 03116!!!!!Qbhf !6!pg7

employment actions visited upon Plaintiff.

23.    Plaintiff has been injured thereby.

### COUNT TWO - DISCRIMINATION IN VIOLATION OF TITLE VII

24.    Plaintiff is a member of a protected class, Black.

25.    Plaintiff was subjected to adverse and discriminatory treatment sufficient to alter the

terms, conditions and privileges of his employment, and the treatment to which he was

subjected was because of his race, Black.

26.    Plaintiff was subjected to an adverse employment action, termination.

27.    Members of non-protected classes were not and would not have been subjected to the

employment actions visited upon Plaintiff.

28.    Plaintiff has been injured thereby.

### PRAYER FOR RELIEF

WHEREFORE THE PREMISES CONSIDERED, the Plaintiff requests the Court to:

a)    Enter a declaratory judgment that the discriminatory practices complained of

herein are unlawful and violative of 42 U.S.C. §1981 and 42 U.S.C. § 2000e, et seq.;

b)    Permanently enjoin the defendant, his agents, successors, officers, employees,

attorneys and those action in concert with it or them from engaging in each of the unlawful

practices, policies, customs, and usages set forth herein, and from continuing any and all other

practices shown to be in violation of applicable law;

c)    Order modification or elimination of practices, policies, customs, and usages set

forth  herein and all other such practices shown to be in violation of applicable law that they do

not discriminate on the basis of sex, race or disability;

-5-

d)    Grant Compensatory damages of three hundred thousand dollars as against the defendant under Title VII and three hundred thousand dollars as against the defendant under 42 USC § 1981;

e)    Grant Plaintiff the cost of this action including reasonable attorney's fees;

f)    Enjoin the defendant from retaliation.

g)    Grant such other, further and different relief as this Court may deem just and proper to include back pay, front pay, reinstatement, and all other equitable and legal relief as to which Plaintiff may be entitled.

RESPECTFULLY SUBMITTED on this the 11th day of October, 2005.


JAY LEWIS (LEW031)


LAW OFFICES OF JAY LEWIS, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733


**_PLAINTIFF DEMANDS TRIAL BY STRUCK JURY_**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

DARRELL HINSON,         )
    Plaintiff,         )
         )
    v.         )    Civil Action No.  2:05-cv-971-ID-CSC
         )
CHELSEA INDUSTRIES, INC.,         )    *JURY TRIAL DEMANDED*
    Defendant.         )

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Darrell Hinson against the above-captioned defendant and would show unto the Court as follows:

### JURISDICTION AND VENUE

1.    Plaintiff files this Complaint and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §1331 and §1343 to obtain compensatory damages and equitable relief. Defendant violated Plaintiff's rights as guaranteed by the Constitution of the United States and by Federal law, particularly 42 U.S.C. § 2000e, et seq., and 42 U.S.C. §1981.

2.    The violations of Plaintiff's rights as alleged herein occurred in Montgomery County, Alabama and were committed within the Middle District of the State of Alabama.

### PARTIES

3.    Plaintiff Darrell Hinson (hereinafter referred to as "Plaintiff"), who is over the age of 19 years, is and at all times material hereto was a member of a protected class, Black, and a citizen of the United States and the State of Alabama, residing in Montgomery County,

-1-

Alabama.

4.      Defendant Chelsea Industries, Inc. (hereinafter referred to as "the employer" or "the

        defendant") is a business entity located in or doing business in Montgomery County,

        Alabama, whose further identity is presently unknown to Plaintiff.

### NATURE OF PROCEEDINGS

5.      This is a proceeding for a declaratory judgment as to Plaintiff's rights and for a permanent

        injunction, restraining the defendant from maintaining a policy, practice, custom or usage

        of discrimination against Plaintiff or others similarly situated because of race and from

        retaliating against Plaintiff or others similarly situated because of their opposition to

        unlawful employment practices or participation in proceedings arising under 42 U.S.C. §

        2000e or under 42 U.S.C. § 1981. The Complaint also seeks restitution to Plaintiff of all

        rights, privileges, benefits, and income that would have been received by Plaintiff but for

        the defendant's unlawful and discriminatory practices. Further, Plaintiff seeks

        compensatory and punitive damages for his suffering as a consequence of the wrongs

        alleged herein. Further, Plaintiff seeks such equitable relief, including back pay and a

        reasonable amount of front pay in lieu of reinstatement, as to which he may be entitled.

        Plaintiff avers that the defendant acted to deny Plaintiff his rights under the laws of the

        United States of America and such action was designed to intentionally discriminate

        against Plaintiff who is a member of a protected class, Black.

6.      Plaintiff avers that the defendant's actions were designed to prevent him and others

        similarly situated from obtaining an equality with non-protected group members in

        obtaining employment opportunities such as promotions and continued employment.

-2-

Further, Plaintiff avers that the defendant has maintained a pattern of discrimination against Blacks in hiring, retention, and promotions.

7.     As a proximate result of the illegal actions alleged above, Plaintiff has been damaged in that he has been deprived of an opportunity for continued employment, job advancement and increases in pay, as well as caused to suffer great humiliation and mental anguish from then until now.

8.     Plaintiff avers that the defendant acted intentionally to deprive Plaintiff of his rights as alleged above and to cause Plaintiff mental anguish and to discriminate against him because of his race and because of his opposition to unlawful employment practices. Plaintiff filed a charge of discrimination with the EEOC. Plaintiff timely files this action after receiving his right to sue letter from the U.S. Department of Justice dated August 4, 2005.

## FACTS

9.     Plaintiff expressly adopts as if fully set forth herein the allegations in each of the foregoing paragraphs.

10.    Plaintiff is a Black male.

11.    Plaintiff was initially hired by the defendant on or about March 18, 2002, as a full-time local truck driver.

12.    On or about April 14, 2004, Plaintiff was suspended from his job because of an error that constituted a safety violation.

13.    On or about April 20, 2004, Plaintiff's employment was terminated as a result of the said safety violation.

-3-

14.   At least one White employee committed the same violation.

15.   The White employee was similarly situated to Plaintiff in all material respects.

16.   The White employee was not terminated.

17.   Plaintiff lost pay and benefits as a result of the discharge.

18.   The adverse employment action was taken against him by a member of a non-protected group, a White male.

19.   Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, complaining of the adverse employment action taken against him.

20.   Plaintiff was issued a Notice of Right to Sue from the EEOC dated August 4, 2005, and therefore files this suit in a timely manner.

21.   Plaintiff has suffered economic loss and severe emotional distress and mental anguish as a result of his treatment at the hands of the defendant.

### CAUSES OF ACTION

22.   Plaintiff expressly adopts with respect to each cause of action as if fully set forth in each claim the allegations contained in each and all of the foregoing paragraphs.

### COUNT ONE - DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

23.   Plaintiff is a member of a protected class, Black.

24.   Plaintiff was subjected to adverse and discriminatory treatment sufficient to alter the terms, conditions and privileges of his employment, and the treatment to which he was subjected was because of his race, Black.

25.   Plaintiff was subjected to an adverse employment action, termination.

22.   Members of non-protected classes were not and would not have been subjected to the

-4-

employment actions visited upon Plaintiff.

23.    Plaintiff has been injured thereby.

## COUNT TWO - DISCRIMINATION IN VIOLATION OF TITLE VII

24.    Plaintiff is a member of a protected class, Black.

25.    Plaintiff was subjected to adverse and discriminatory treatment sufficient to alter the terms, conditions and privileges of his employment, and the treatment to which he was subjected was because of his race, Black.

26.    Plaintiff was subjected to an adverse employment action, termination.

27.    Members of non-protected classes were not and would not have been subjected to the employment actions visited upon Plaintiff.

28.    Plaintiff has been injured thereby.

### PRAYER FOR RELIEF

WHEREFORE THE PREMISES CONSIDERED, the Plaintiff requests the Court to:

a)    Enter a declaratory judgment that the discriminatory practices complained of herein are unlawful and violative of 42 U.S.C. §1981 and 42 U.S.C. § 2000e, et seq.;

b)    Permanently enjoin the defendant, his agents, successors, officers, employees, attorneys and those action in concert with it or them from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law;

c)    Order modification or elimination of practices, policies, customs, and usages set forth herein and all other such practices shown to be in violation of applicable law that they do not discriminate on the basis of sex, race or disability;

-5-

d)    Grant Compensatory damages of three hundred thousand dollars as against the

defendant under Title VII and three hundred thousand dollars as against the defendant under 42

USC § 1981;

e)    Grant Plaintiff the cost of this action including reasonable attorney's fees;

f)    Enjoin the defendant from retaliation.

g)    Grant such other, further and different relief as this Court may deem just and

proper to include back pay, front pay, reinstatement, and all other equitable and legal relief as to

which Plaintiff may be entitled.

RESPECTFULLY SUBMITTED on this the 3rd day of March, 2007.

> /s/ JAY LEWIS
> Jay Lewis
> Law Offices of Jay Lewis, LLC
> P.O. Box 5059
> Montgomery, AL 36103
> (334) 263-7733 (Voice)
> (334) 832-4390 (Fax)
> J-Lewis@JayLewisLaw.com
> ASB-2014-E66J

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on the following counsel or
parties, by CM/ECF, by placing a copy of such in the United States mail, properly addressed and
first class postage prepaid, or by hand delivery, on this the 3rd day of March, 2007.

Hon. Thomas T. Gallion, III
Hon. Jamie A. Johnston

> /s/JAY LEWIS
> Jay Lewis
> LAW OFFICES OF JAY LEWIS, LLC.
> P.O. Box 5059
> Montgomery, AL 36103
> Phone: (334) 263-7733

Fax: (334) 832-4390
J-lewis@jaylewislaw.com
ASB-2014-E66J
Counsel for Plaintiff

## _PLAINTIFF DEMANDS TRIAL BY STRUCK JURY_

# Personnel Documentation
# For
# Employee Progressive Disciplinary Action

**Today's Date 4/20/2004     Employee Name Darrell Hinson**

**Employee Clock # 6314**

**Employee Assigned Shift Local Driver**

**Employee Assigned Department 85**

**Employee's Supervisor Bill Barton**

**Disciplinary Action being taken: Termination**

**Describe Reason for Discipline:**

On 4/11/2004, You pulled a trailer away from the loading dock without following the prescribed safety procedures. This action was compounded by the fact that a Webster employee in the process of loading the trailer was actually inside the trailer when you pulled it away. Further, when you discovered that an employee was inside the trailer, you returned it to the loading dock with the forklift driver still inside. The fact that it was not the trailer you were supposed to pull away in the first place just adds to the problem. You have committed several serious safety violations the result of which could have been serious injury or death, not to mention a destroyed forklift. Therefore, you were suspended while this incident was under investigation.

After completing our investigation, we have concluded that based on the serious of these safety violations, your employment with Webster Industries has been terminated.

**Previous Discipline Given:**

**Verbal - Date_____     1st Written - Date_____**

**Suspension – Date**

**Suspension # Days_____ to be taken on the following day(s)_____**

**Termination - Date**

**Supervisor's Signature** Bill Barton **Employee's Signature** Darrell Hinson

(check if employee refused to sign)

**HR Representative Signature** James E. Gane 4/20/04

**Shop Steward Signature** Mary Hickerberm

Copies: Employee, Employee's Supervisor, Operations Manager, HR Representative, HR Manager, Shop Steward, Union Business Representative, Employee File


EXHIBIT
E

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL HINSON,                          )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )  CIVIL ACTION NO.:  2:05cv971-ID
                                         )
WEBSTER INDUSTRIES,                      )
                                         )
        Defendant.                       )

## AFFIDAVIT OF BRUCE LINSON

STATE OF ALABAMA          )
MONTGOMERY COUNTY         )

        I, Bruce Linson, being over the age of nineteen, and first duly deposed and sworn,

state that the following is based on my personal knowledge of the facts contained herein:

        1.      My name is Bruce Linson. I am General Manager of Webster Industries.

        2.      Upon information and belief, Marvin Leef retired as the Executive Vice-

President of the Montgomery operations of Chelsea Industries, Inc. on October 31, 2005.

        3.      In his capacity as the Executive Vice President, Mr. Leef was responsible

for coordinating legal matters with legal counsel.

        4.      I, as General Manager, was unaware a lawsuit had been filed by Mr.

Hinson as his file was not brought to my office upon service of the Complaint.

        5.      I was unaware of the lawsuit until receipt of the Entry of Default on

August 22, 2006. The Defendant would have answered the Complaint had it known of its

existence.

        6.      Webster's policy during Mr. Leef's tenure was for only Senior

Management to sign for certified mail.

7.    Mr. Leef handled the coordination of legal counsel when we received the Hinson EEOC filing. I was aware the EEOC dismissed Hinson's claim and assumed the matter was resolved. I further assumed that if it was not resolved our corporate office in Massachusetts handled it as they handle trucking matters from their office.

Further, the affiant saith not.

**BRUCE LINSON**

Sworn and subscribed before me on this the 24 day of August, 2006.

Notary Public

My commission expires _____

**My Commission Expires 10/20/2009**

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

DARRELL HINSON,                    )
    Plaintiff,                     )
                )
      v.                          )          Civil Action No. 2:05-cv-971-ID-CSC
                )
WEBSTER INDUSTRIES,                )
    Defendant.                     )

## PLAINTIFF'S ANSWERS TO DEFENDANT'S INTERROGATORIES AND REQUEST FOR PRODUCTION

COMES NOW Plaintiff Darrell Hinson in the above styled cause pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure and in answer to Defendant's Interrogatories and Request for Production states as follows:

1.  Identify by providing the names and addresses of all persons known to you or your agents with knowledge or information regarding any of the claims and allegations alleged by you in the Complaint with respect to Defendant Chelsea Industries, Inc. and/or Webster Industries and its representatives. This request includes, but is not limited to, all persons known to you or your agents who were witnesses to any of the events or claims forming the basis of your Complaint in this case that have been asserted against Chelsea Industries, Inc.

RESPONSE: All addresses and phone numbers are known to the defendant:

Jimmy Jackson; Michael Price; Paul Walsdon; Bill Barton; Larry Hooks; Anthony Taylor;

Joe Scruggs; Barney Strech; Alvin Pugh; Bruce Linson; Caroline Simmons; Tina Murry;

Courty Exford; Mickey Hays; Veronica Thorn; George Anderson; Clevette Ellis.



Dr. Tucker Mattox, P.O.Box 250450, Montgomery, Alabama 36125-0450

2. If you have ever been arrested or convicted or a crime other than a traffic violation, identify the crime, date of arrest or conviction, the court hearing the case, and case number of the case.

**RESPONSE: Montgomery County Circuit Court, Case No.96-1777, assault 1; Montgomery Municipal Court, Case No. 2006cra004858A, Assault 3rd; Montgomery County Circuit Court, Case No. 05-790, Assault 2nd.**

3. Identify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

**RESPONSE: Will be provided in accordance with the Federal Rules of Civil Procedure.**

4. List the name and address of each individual or representative of Chelsea Industries, Inc. and/or Webster Industries with whom you have communicated regarding the events alleged in the Complaint, and list the substance of each such communication, and the date on which such communication took place.

**RESPONSE: I talked to Bill Barton but do not remember the date nor do I know his address. I asked him why Paul was not written up for pulling the trailer off the dock at the plant. Bill said that he did not know about the incident and it was not for me to tell.**

5. List all schools, colleges, universities, vocational schools and other educational institutes which you have attended above and including the high school level, and provide the dates of attendance and degrees or certificates received.

-2-

RESPONSE: Calhoun High School, 8213 Co. Rd 33, Letohatchee, Alabama, 36047; 334-

227-4515, graduated 1992, diploma;

J.P. Tech, 3920 Troy Highway, Montgomery, Alabama 36116; 334-288-1080,

attended November 1993 through January 1994; received certificate.

6.      Name each person, firm or corporation for whom you have worked from 1985 to the

present, stating the kind of work you did for each such employer, the date on which you

began working for each such employer, the amount of compensation you received from

each such employer for your services, on what date you stopped working for each such

employer, the reason you stopped working for each such employer, and your immediate

supervisor at each such place of employment.

RESPONSE: Asphalt Contractors Inc.; driver; $11.00 hourly; current; not applicable.

Callen Enterprises Inc.; driver; $9.00 hourly; December 2006; received another

opportunity.

Alabama Food Service; driver; $8.50 hourly; July 2006; terminated due to disagreement.

Penberton Truck Lines; driver; $.30 per mile; September 2006; received another

opportunity.

Waste Recycling; driver; $50.00 per load; June 2004; received another opportunity.

Towns Transportation; driver; $.30 per mile; April 2004; received another opportunity.

Webster Industries; driver; $11.97; April 2004; refer to suit.

AMX; driver; $9.50; November 2001; lay-off.

MCC; driver; 23% of load total; July 2000; not enough work.

Southern Pallet; driver; $8.00 hourly; August 1999; accused of traffic violation.

Santez Sand & Gravel; driver; $9.00 hourly; October 1999; rain-no work.

Multi Staffing; temporary work; $7.00-$8.00 hourly; February 1999; temporary conditions.

Piknik Products; driver; $7.75; January 1997; incarcerated.

Builders Transport; driver; $.21 per mile; October 1995; travel expenses too expensive.

American Freightways; spotter; $9.45; January 1995; laid off.

7.    Identify each and every lawsuit in which you have been involved or are currently

involved, either as a Plaintiff, Defendant, or witness by identifying the court, case

number, and nature of the case.

**RESPONSE: Federal Court:**

Hinson versus American Freightways; Case Number 96-1154; Discrimination.

Hinson versus Lucas; Case Number 79-1758; Violation of Constitutional Rights.

Hinson versus Webster; Case Number 05-971; Discrimination.

**Small Claims Court**

Hinson versus Donald Mount; Case Number Unknown; Debt Owed.

Hinson versus Bobby Rogers; Case Number Unknown; Breach of Contract.

8.    Identify each and every charge of discrimination that you have filed with the Equal

Employment Opportunity Commission ("EEOC") by identifying the charge number and

the outcome of the investigation by the EEOC.

**RESPONSE: None.**

9.    Identify by name, address, and telephone number any person from whom you and anyone

acting on your behalf have obtained a written, recorded or oral statement concerning or

relating to the events alleged in the Plaintiff's Complaint, and state the date on which

such statement was obtained and who has possession of each such statement.

**RESPONSE: None.**

10.    List the name and address of each person with whom you have communicated regarding any of the allegations contained in Plaintiff's Complaint.

**RESPONSE: All addresses and phone numbers are known to the defendant:**

**Jimmy Jackson; Michael Price; Paul Walsdon; Bill Barton; Larry Hooks; Anthony Taylor; Joe Scruggs; Barney Strech; Alvin Pugh; Caroline Simmons; Tina Murry; Courty Exford; Mickey Hays; Veronica Thorn; George Anderson; Dr. Tucker Mattox, P.O.Box 250450, Montgomery, Alabama 36125-0450**

11.    Provide the name and address of each person you expect to call as a witness at trial, and state briefly the substance of her/her {sic} knowledge relating to the allegations contained in Plaintiff's Complaint.

**RESPONSE: Will provide in accordance with the Federal Rules of Civil Procedure.**

12.    Describe all information known by any of the following persons with regard to Plaintiff's employment with Webster Industries, the allegations in the Complaint, and any conversation(s) they have had with you concerning your termination by Webster Industries and this lawsuit:

    **(A)**    Jimmy Jackson;

    **(B)**    Michael Price;

    **(C)**    Paul LNU;

    **(D)**    Bill Barton;

    **(E)**    Bill Snow.

RESPONSE: A.    Has knowledge of policies and procedures, accident history, knows other employees were threatened and/or discriminated; Paul's (LNU) attitude towards other blacks; knows safety equipment not working properly; knows of other employees being terminated due to disabilities; knows false testimony was given about Alvin Pugh taking my position after termination; knows company did not follow it's own policies; Paul's (LNU) comments about not being able to pass drug testing;

B.    Has knowledge of policies and procedures, accident history, knows other employees were threatened and/or discriminated; Paul's (LNU) attitude towards other blacks; knows safety equipment not working properly; knows of other employees being termination due to disabilities; knows false testimony was given about Alvin Pugh taking my position after termination; knows company did not follow their own policies;

C.    Has knowledge of policies and procedures, accident history, knows other employees were threatened and/or discriminated against Paul's (LNU) attitude towards other blacks; knows safety equipment not working properly; knows of other employees being terminated due to disabilities; knows false testimony was given about Alvin Pugh taking my position after termination; knows company did not follow it's own policies; Paul's (LNU) comments about not being able to pass drug

testing;

D.  Has knowledge of policies and procedures, accident history, knows other employees were threatened and/or discriminated against Paul's (LNU) attitude towards other blacks; knows safety equipment not working properly; knows of other employees being terminated due to disabilities; knows false testimony was given about Alvin Pugh taking my position after termination; knows company did not follow it's own policies; Paul's (LNU) comments about not being able to pass drug testing;

E.  Violations committed by other drivers.

Remainder of this page intentionally left blank.

DATED this the 30th day of April, 2007.

_____
DARRELL HINSON

SWORN TO AND SUBSCRIBED before me on this the 30th day of April, 2007.

_____
NOTARY PUBLIC

(SEAL)

My Commission Expires: 9/19/07

Respectfully submitted this the 30 day of April, 2007.

_____
JAY LEWIS (LEW031)

OF COUNSEL:
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)

## Request for Production

1.  All documents, including notes and correspondence, evidencing, referring or relating to any communication between Plaintiff or anyone purporting to act on his behalf, and the Defendant Chelsea Industries, or any representative of Webster Industries.

**RESPONSE: See attached various grievance and personnel documentation.**

2.  All documents evidencing, referring or relating to any communications between Defendant Chelsea Industries, Inc or any representative of Webster Industries, and any other person with respect to or relating to the allegations or damages alleged in Plaintiff's Complaint.

**RESPONSE: See attached Baptist Medical Center medical records.**

3.  All documents evidencing, referring or relating to any communication among or between the Defendant, or person purporting to act on its behalf, with respect to Plaintiff or Plaintiff's claims asserted in the Complaint.

**RESPONSE: Safety Regulations and Agreement between Webster and Retail Wholesale and Department Store Union AFL-CIO available for copying and/or inspection upon request at the Law Offices of Jay Lewis.**

4.  All statements, affidavits, notes or other documents as defined above containing, concerning or relating to any statements from any proposed witnesses in this matter, or from any individual who purports to have nay knowledge

**RESPONSE: None.**

5.  All documents that evidence communications of Plaintiff or his representatives with any

-9-

other person who is not a party to this case relating to any of the claims made the subject

of the Complaint, or the damages alleged in the Complaint.

**RESPONSE: None.**

6.  All documents Plaintiff or his representatives received from Defendant Chelsea

Industries, Inc., any representative of Webster Industries, or any other person purporting

to act on their behalf.

**RESPONSE: None.**

7.  All documents evidencing or relating to any charges filed by Plaintiff with the EEOC at

any time.

**RESPONSE: See attached various EEOC documents.**

8.  Copies of any and all documents Plaintiff or his representatives supplied to the Defendant

and/or Webster Industries.

**RESPONSE: None.**

9.  Copies of any and all documents Plaintiff or his representatives received from the EEOC,

Defendant and/or Webster Industries.

**RESPONSE: See attached various EEOC documents.**

10.  Copies of any and all documents Plaintiff provided to Defendant Chelsea Industries, Inc.,

any representative or Webster Industries, or any other person purporting to act on their

behalf.

**RESPONSE: None.**

11.  All documents provided by Plaintiff or anyone on Plaintiff's behalf to any expert witness,

or any other party or individual, regarding any of the allegations, matters or items set

-10-

/or any representative of Webster Industries.

**RESPONSE: None.**

20.   All documents supporting or relating to Plaintiff's contention that he has pursued and exhausted his administrative remedies with the EEOC.

**RESPONSE: See attached various EEOC documents.**

21.   All documents supporting or relating to any wrongdoing allegedly committed by Chelsea Industries, inc., or any representative of Webster Industries against Plaintiff.

**RESPONSE: None.**

22.   All documents evidencing how Plaintiff has been damaged by any of the actions of Chelsea Industries, inc., or any representative of Webster Industries.

**RESPONSE: See attached Baptist Medical Center medical records.**

23.   All documents evidencing any income or compensation of Plaintiff from 2002 to the present.

**RESPONSE: See attached tax returns for 2001 through 2004 and 2006.**

24.   Copies of resumes of any expert witnesses Plaintiff intends to call at trial.

**RESPONSE: None.**

25.   All documents evidencing, referring or relating to any arrests or convictions of crime of the Plaintiff.

**RESPONSE: None.**

26.   All documents evidencing, referring or relating to any reprimand or other disciplinary action taken against Plaintiff by any employer of Plaintiff.

**RESPONSE: None.**

27.     A copy of any document Plaintiff supplied to or received from the EEOC.

**RESPONSE: See attached various EEOC documents.**

28.     A copy of all documents relating to Plaintiff's wages or compensation from employment

from 2002 to the present.

**RESPONSE: See attached tax returns for 2001 through 2004 and 2006.**

Respectfully submitted this the ___ day of April, 2007.



JAY LEWIS (LEW031)


OF COUNSEL:
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)


<u>Certificate of Service</u>

I hereby certify that the foregoing has been served on counsel listed below by placing same in the United States mail postage prepaid and properly addressed on this the ____ day of April, 2007.

Thomas T. Gallion
Jamie A. Johnson
P.O. Box 4660
Montgomery, AL 36103-4660



OF COUNSEL

-13-



**U.S. Equal Employment Opportunity Commission**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street, South
Birmingham, AL 35205
(205) 212-2100
TTY (205) 212-2112
FAX (205) 212-2105
1-800-669-4000

Respondent: WEBSTER INDUSTRIES
EEOC Charge No.: 130-2005-00189
FEPA Charge No.:

Jan 06, 2005

Darren Hinson
P.O. Box 9951
Montgomery, AL 36108

Dear Mr. Hinson:

This is with reference to your recent inquiry (an office visit, phone call, or correspondence) in which you alleged employment discrimination by the above-named respondent. The information provided indicates that the matter complained of is subject to one or more of the following laws:

[X]    Title VII of the Civil Rights Act of 1964 (Title VII)

[ ]    The Age Discrimination in Employment Act (ADEA)

[X]    The Americans with Disabilities Act (ADA)

[ ]    The Equal Pay Act (EPA)

The attached EEOC Form 5, Charge of Discrimination, was drafted as a result of the information provided. To enable proper handling of this action by the Commission you should:

(1)    Review the enclosed charge form and make corrections.

(2)    Sign and date the charge in the bottom left hand block where I have made an "X". The date of signature on the charge will not affect the jurisdiction date established in any original written complaint previously given to EEOC.

(3)    Return the signed charge to this office within 10 days.

Since charges should be processed within the time limits imposed by law, <u>please complete these steps as soon as possible</u>. Please call me at the number listed below if you have any questions. If you have to call long distance, please call collect.

[ ]    Please be aware that the EEOC will send a copy of the charge to the agency listed below as required by our procedures. If that agency processes the charge, it may require the charge to be signed before a notary public or an agency official. Then the agency will investigate and resolve the charge under their statute. If this occurs, section 1601.76 of EEOC's regulations entitles you to ask us to perform a Substantial Weight Review of the

agency's final finding. To obtain this review, a written request must be made to this office within 15 days of receipt of the agency's final finding in the case. Otherwise, we will generally adopt the agency's finding as EEOC's.

Please use the "EEOC Charge No." listed at the top of this letter whenever you call us about this charge. Please notify this office of any change in address or of any prolonged absence from home. Failure to cooperate in this matter may lead to dismissal of the charge.

Sincerely,

Aaron N. Hallaway
Investigator
(205) 212-2123

Office Hours: Monday - Friday, 8:00 a.m. - 4:30 p.m.
TDD: 1-800-669-6820
www.eeoc.gov

Enclosure(s)
        Copy of EEOC Form 5, Charge of Discrimination

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Darrell Hinson**
**P. O. Box 9951**
**Montgomery, AL 36108**

From: **Birmingham District Office**
**Ridge Park Place, Suite 2000**
**1130 - 22nd Street, South**
**Birmingham, AL 335205**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 130 2005 0 0189 | **Jean McGinnis-Barrera, Investigator** | (205) 212-2056 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this Notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Samuel Hall*                                    8/4/05

Bernice Williams-Kimbrough, District Director          *(Date Mailed)*

Enclosure(s)

cc:  **Jamie A. Johnston**
**Haskell, Slaughter, Young & Gallion, LLC**
**P. O. Box 4660**
**Montgomery, AL 3103-4660**

Enclosure with EEOC
Form 161 (3/98)

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred more than **2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit before **7/1/02** – *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION -- **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

INFORMATION FOR PERSONS WITH AGE DISCRIMINATION CLAIMS AGAINST STATE EMPLOYERS: HOW KIMEL V. FLORIDA BOARD OF REGENTS AFFECTS YOUR RIGHTS

The Supreme Court has recently held in *Kimel v. Florida Board of Regents*[1] that the Federal Age Discrimination in Employment Act (ADEA) does not override a State's constitutional immunity from suits by private persons for monetary relief. Therefore, you may not bring an age discrimination suit seeking monetary relief against a State employer in either Federal or State court, unless the State has given its consent. We know of no State that consents to Federal ADEA suits. However, the *Kimel* Court noted that persons may recover money damages from their State employers under State age discrimination laws in 44 States.[2]

The age discrimination provisions of the ADEA still apply to State employers. In spite of *Kimel*, ADEA charges may still be filed with the EEOC and EEOC retains its full authority to seek relief from ADEA violations and to otherwise enforce the Act, including suing States in Federal or State court.

THE ADDITIONAL INFORMATION BELOW MAY OR MAY NOT APPLY TO YOUR CASE. *(Your attorney, EEOC, or a State or local Fair Employment Practices agency that enforces an age discrimination law can explain or discuss these matters with you.)*

- States may permit suits by private persons[3] but can define how they may be sued, such as procedures, who can sue, and in what courts.[4] In this regard, as noted above, many States allow private age discrimination suits in *State* court under *State* law. *(Thus, your discrimination charge, or other factors, may entitle you to sue or otherwise seek relief under State law.)*

- *Kimel* does not apply to most local units of government – counties, cities, school boards, special taxing districts, etc. – one factor being whether any damages awarded will come from the State's treasury.[5] And *Kimel* does not apply to interstate compact agencies that are not structured to qualify for immunity.[6]

- While *Kimel* bars private age discrimination suits for monetary relief under Federal law, employees may be permitted to sue State officials, in their official capacity, for purely injunctive relief under the ADEA. This theory will have to be tested in the courts by private litigants.

- Your ADEA charge may also claim discrimination based on disability or a Title VII basis (race, color, religion, sex, national origin). *Kimel* does not bar private Title VII or Americans with Disabilities Act (ADA) suits against State employers (though some Federal circuits have barred private ADA suits against State employers, applying reasoning similar to that in *Kimel*).

- Where *Kimel* applies, State law age discrimination suits may not be appended to a Title VII or ADA suit in Federal court.[7] But Title VII and ADA suits may also be filed in State court[8] along with a suit under State law that includes State law age discrimination claims.

If you have any questions on your rights under the EEOC statutes, or if you wish to be referred to a private attorney who may consider handling your case, please call the EEOC office where you filed your charge. You may find additional information on the EEOC Internet Web site at www.eeoc.gov.

1. 120 S.Ct. 631 (2000)

2. *Kimel*, 120 S.Ct. at 650 (footnote).

3. *Clark v. Barnard*, 108 U.S. 436, 447 (1883); *Gunter v. Atlantic Coast Line*, 200 U.S. 273 (1906); *Missouri v. Fiske*, 290 U.S. 18, 24 (1933), cited in *Ford Motor Co. v. Dept of Treasury*, 323 U.S. 459, 465 (1945)

4. *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)

5. *Mt. Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977); *Moor v. County of Alameda*, 411 U.S. 693, 717-721 (1973); *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890)

6. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)

7. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 117-21 (1984)

8. *Yellow Freight Systems Inc. v. Donnelly*, 493 U.S. 953 (1990)

(NOTICE TO BE PROVIDED TO CPs WITH NEW OR PENDING
CHARGES AND TO BE ATTACHED TO ADEA NRTSs)

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:
- [ ] FEPA
- [X] EEOC

**130-2005-00189**

and EEOC

State or local Agency, if any

**Name (Indicate Mr., Ms., Mrs.)**
**Mr. Darren Hinson**

Home Phone No. (Incl Area Code) | Date of Birth

**Street Address**  P.O. Box 9951 Montgomery, AL 36108   City, State and ZIP Code

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **WEBSTER INDUSTRIES** | **15 - 100** | **(334) 277-9360** |

**Street Address**  2705 Gunter Industrial Pk Dr W,  Montgomery, AL 36109   City, State and ZIP Code

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|

Street Address | City, State and ZIP Code

**DISCRIMINATION BASED ON** (Check appropriate box(es).)

- [X] RACE
- [ ] COLOR
- [ ] SEX
- [ ] RELIGION
- [ ] NATIONAL ORIGIN
- [ ] RETALIATION
- [ ] AGE
- [X] DISABILITY
- [ ] OTHER (Specify below.)

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest  **2003**     Latest  **04/20/2004**

[ ] CONTINUING ACTION

**THE PARTICULARS ARE** (If additional paper is needed, attach extra sheet(s)):

I began my employment on March 18, 2002. During my employment, I have heard of employees making racial comments. During February of 2004 I sustained an injury away from the job that resulted in my having to take a medical leave for about a month and a half. I returned to duty without restrictions. On April 14, 2004, I was suspended pending investigation of a safety violation. On April 20, 2004, at the conclusion of the investigation, I was discharged for pulling a trailer off of the door that was being loaded. Similarly situated White employees have committed the same violation and they were not discharged.

I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended. I also believe I have been discriminated against because the employer perceived me as being disabled due to my previous injury. I believe this to be in violation of the Americans with Disabilities Act.

Amended charge - original charge filed October 13, 2004

RECEIVED JAN 18 2005

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

1-15-05   Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

*Webster*

## DRIVER QUALIFICATIONS

1.  Be at least 25 years. of age.

2.  Have at least two (2) years of over the road driving experience which can be verified by a reliable truck line.

3.  No more than two (1) traffic violations in the past twelve (12) months.

4.  Must not have had license revoked for excessive traffic violations in the past two (3) years.

5.  Must not have been convicted of **DUI** in any type of vehicle.

6.  Must meet the **D.O.T.** physical qualification requirements.

7.  Must not have a history of Workman's Compensation claims for extended periods of lost time claims.

8.  Must not have more than one (1) poor past employment reference for the past three (3) years.

9.  Must not have had a major chargeable accident involving a death in the past three (3) years.

10.  Must not have had more than one (1) major chargeable accident in the past year.

11.  Must not have had more than two (2) chargeable accidents in the past two (2) years.

12.  Must not have been involved in any accident found to be intentional.

13.  Must not have been convicted for the use of narcotics.

14.  Must not have a record of alcoholism.

15.  Must not have been terminated from last employer as a driver for poor safety record.

### INVESTIGATION

**A thorough investigation into the background of each applicant will be accomplished prior to employment. As a minimum, the applicant's previous employment record, accident record, motor vehicle record, and character and work habits will always be investigated.**

# Personnel Documentation
## For
## Employee Progressive Disciplinary Action

**Today's Date 4/14/2004      Employee Name Darrell Hinson**

**Employee Clock # 6314**

**Employee Assigned Shift Local Driver**

**Employee Assigned Department 85**

**Employee's Supervisor Bill Barton**

**Disciplinary Action being taken: Suspension**

**Describe Reason for Discipline:**

**On 4/11/2004, You drove your truck and pulled a trailer away from a loading dock while a forklift driver was in side your trailer. You violated several safety procedures that required you to check your trailer before driving away from the loading dock. This is a serious safety violation that could have severely injured the forklift driver and/or destroyed a Webster forklift. Therefore, you are being suspended while this incident is under investigation.**

**Previous Discipline Given:**

**Verbal - Date_____      1st Written - Date_____**

**Suspension – Date**

**Suspension # Days_____ to be taken on the following day(s)_____**

**Termination - Date** _Nancy Stewart_

**Supervisor's Signature_____**      **Employee's Signature** _Refused to sign_

(check if employee refused to sign)

**HR Representative Signature** _Pam C. Gore 4/14/04_

**Shop Steward Signature** _Charles Sanson_

**Copies: Employee, Employee's Supervisor, Operations Manager, HR Representative, HR Manager, Shop Steward, Union Business Representative, Employee File**

# Personnel Documentation
# For
# Employee Progressive Disciplinary Action

**Today's Date 4/20/2004**    **Employee Name Darrell Hinson**

**Employee Clock # 6314**

**Employee Assigned Shift Local Driver**

**Employee Assigned Department 85**

**Employee's Supervisor Bill Barton**

**Disciplinary Action being taken: Termination**

**Describe Reason for Discipline:**

**On 4/11/2004, You pulled a trailer away from the loading dock without following the prescribed safety procedures. This action was compounded by the fact that a Webster employee in the process of loading the trailer was actually inside the trailer when you pulled it away. Further, when you discovered that an employee was inside the trailer, you returned it to the loading dock with the forklift driver still inside. The fact that it was not the trailer you were supposed to pull away in the first place just adds to the problem. You have committed several serious safety violations the result of which could have been serious injury or death, not to mention a destroyed forklift. Therefore, you were suspended while this incident was under investigation.**

**After completing our investigation, we have concluded that based on the serious of these safety violations, your employment with Webster Industries has been terminated.**

**Previous Discipline Given:**

**Verbal - Date_____    1ˢᵗ Written - Date_____**

**Suspension – Date**

**Suspension # Days_____ to be taken on the following day(s)_____**

**Termination - Date**

**Supervisor's Signature** Bill Barton    **Employee's Signature** Darrell Hinson
                                          (check if employee refused to sign)

**HR Representative Signature** Jamie C. Gone 4/20/04

**Shop Steward Signature** May Hickerber

Copies: Employee, Employee's Supervisor, Operations Manager, HR Representative, HR Manager, Shop Steward, Union Business Representative, Employee File

# RETAIL, WHOLESALE & DEPARTMENT STORE UNION
## AFL-CIO
## GRIEVANCE REPORT

LOCAL 932  COMPANY Webster Ind.  ADDRESS Montgomery, Al

DATE 4/8/04  DEPARTMENT Transportation  CLASSIFICATION Local Truck Driver

EMPLOYEE INITIATING GRIEVANCE Darrell Hinson - P.O. Box 9951 - Mont. Al. 36108
334-201-4718

SHOP STEWARD PROCESSING GRIEVANCE by Claude F. Morgan
Darrell Hinson

### STATEMENT OF GRIEVANCE

I was terminated but did not receive benefits that was already earned but not paid. I had already earned my Personal Day Holiday and one (1) week vacation however I have not received this pay.

### ARTICLES & SECTIONS OF CONTRACT ALLEGED VIOLATED

Article V, and VI, and any other article are section that may apply including Federal law.

### SETTLEMENT DESIRED

Be paid for my Personal Day and my vacation day.

### DISPOSITION OF GRIEVANCE

Signed_____    Signed_____

Date _____    Date_____

(If additional space is needed, please use reverse side).

**BAPTIST MEDICAL CENTER**
2105 East South Boulevard
Montgomery, Alabama 36111
Telephone 334/288-2100

78/01

PATIENT:  HINSON, DARRELL D
MR #:  000554655
SURGERY DATE: 02/19/2004
SURGEON: TUCKER MATTOX, M.D.~
ATTENDING PHYSICIAN: TUCKER "" MATTOX, MD

ROOM #:  410
PATIENT #: 0405003042
ADM DT #: 02/19/2004

---

**PREOPERATIVE DIAGNOSIS:**    LACERATION OF LEFT FOREARM WITH OBVIOUS EXTENSOR TENDON LACERATIONS.

**POSTOPERATIVE DIAGNOSIS:**    LACERATION OF LEFT FOREARM WITH OBVIOUS EXTENSOR TENDON LACERATIONS.

**OPERATION:**    EXPLORATION OF TWO DORSAL LACERATIONS WITH REPAIR, BRACHIAL RADIALIS, EXTENSOR DIGITORUM SUPERFICIALIS, LONG, RING, AND SMALL FINGERS AND REPAIR OF SUPERFICIAL RADIAL NERVES.

**ANESTHESIA:**    GENERAL.

**ASSISTANT:**    MOUNT.

**INDICATIONS:**    The patient is a 31 year old who was involved in an altercation, injuring his left forearm. He has obvious injuries to the dorsum of his forearm with extensor tendon lacerations. No evidence of any volar injury. Planned exploration, repair of indicated structures. He understands that significant loss of motion, strength, and may be perhaps permanent loss of function of his left arm and hand. He understands and agrees to proceed.

**PROCEDURE:** The patient was taken to the operating room and was found to have two approximately 4 to 5 cm lacerations, one on the dorsal radial portion and one on the dorsal ulnar side paralleling each other. After the arm was prepped with Betadine scrub and paint and draped into a sterile field, the tourniquet was inflated to 250 mm/Hg. Then the two lacerations were connected and extended to allow for visualization. The more radial side was explored. Brachial radialis was lacerated. Superficial radial nerve was lacerated. There were some deeper muscular structures that were divided longitudinally. This was copiously irrigated. No evidence of foreign body. Superficial radial nerve was repaired using interrupted 7-0 nylon sutures and epineural sutures. The brachial radialis was then repaired using 4-0 PDS suture. Attention was turned to the more ulnar side laceration where he had completely lacerated the extensor tendons to small, ring, and long fingers. The index appeared intact. Laceration went deep through the interosseous membrane to the lower side on exploration. With digital palpation, there was no palpable evidence of any injury to the volar side. This side was not explored and will require separate incision of the volar side but an interosseous membrane was lacerated but not repaired. Extensor tendons were individually located and repaired end-to-end using 4-0 PDS suture. Muscle bellies were also approximated. It was necessary to keep the wrist in extension. The extensor carpi ulnaris appeared intact. After repair of all these structures, the wound was copiously irrigated and wounds closed with interrupted 4-0 nylon suture. Sterile dressing was applied and placed in splint with wrist and fingers in extension. The tourniquet was deflated. Total tourniquet time an hour and ten minutes. He was awakened from anesthesia. Counts were correct. Taken to the recovery room in satisfactory condition.

TM/ /dm
D: 02/19/2004
T: 02/25/2004

TUCKER MATTOX, M.D.~

**OPERATIVE REPORT**

not
in
comp

# BAPTIST MEDICAL CENTER
## 2105 East South Boulevard
## Montgomery, Alabama 36111
### Telephone 334/288-2100

| | |
|---|---|
| PATIENT: HINSON, DARRELL D | ROOM #: |
| MR #: OO0554655 | PATIENT #: 0400000042 |
| PHYSICIAN: TUCKER MATTOX, M.D.~ | ADM. DATE: 2/19/04 |

HISTORY OF PRESENT ILLNESS: The patient is a 31 year old male apparently involved in an altercation, injuring his left forearm where he has 2 lacerations. He also has a laceration on the upper arm that is superficial. He is admitted for exploration and repair of extensor tendons in his forearm.

PAST MEDICAL HISTORY: Denies any chronic medical problems, denies any previous significant surgical history. He denies any current use of any medications, denies any drug allergies.

PHYSICAL EXAMINATION: Black male, awake, alert, cooperative.

HEENT: Normocephalic, atraumatic.

NECK: Supple.

CHEST: Clear to auscultation.

HEART: Regular rate and rhythm.

ABDOMEN: Soft.

EXTREMITIES: He has approximately 4 cm laceration of the upper arm that is now repaired with staples as per the Emergency Room doctor. He has 2 longitudinal parallel lacerations to the left forearm, approximately 5 cm each, with obvious extensor tendon injury. Denies any numbness, tingling on the volar side of his fingertips.

X-RAYS: Negative.

ASSESSMENT AND PLAN: MULTIPLE STAB WOUNDS. They will require exploration and repair.


TUCKER MATTOX, M.D.~

TM/ / kb
D: 02/19/2004
T: 02/19/2004

## HISTORY AND PHYSICAL

078101

HINSON, DARRELL

2/27/04 - DR. MATTOX

DARRELL HINSON IS HERE TODAY. HE'S A 31 YEAR OLD GENTLEMAN WHO WAS STABBED THREE TIMES IN THE LEFT ARM. HE HAD UPPER ARM LACERATIONS THAT THE ER DOCTOR TOOK CARE OF. HE HAD TWO LACERATIONS DOWN ON HIS FOREARM THAT I HAD TO CONNECT TO REPAIR. HE HAD REPAIR OF THE BRACHIORADIALIS, FLEXOR DIGITORUM SUPERFICIALIS TO THE LONG, RING AND SMALL FINGERS, ALSO REPAIR OF SUPERFICIAL CUTANEOUS NERVE. TODAY HIS WOUND LOOKS FINE. HIS FINGERS HAVE NO EVIDENCE OF NUMBNESS ON THE VOLAR SIDE OR ON THE DORSUM. OVERALL, EXAM LOOKS OKAY TODAY. WE'LL TAKE HIS SUTURES OUT AND PUT HIM IN A SPLINT TO KEEP HIS WRIST BACK. I'LL CHECK HIM BACK HERE IN ANOTHER 2 WEEKS.

T 3/1/04 BG

3/12/04 - DR. MATTOX

DARRELL HINSON IS HERE TODAY. HIS HAND LOOKS FINE. WE'LL PUT HIM IN A REMOVABLE SPLINT, LET HIM WORK ON SOME RANGE OF MOTION WITH THERAPY, AND CHECK HIM BACK HERE IN ANOTHER COUPLE OF WEEKS.

T 3/15/04 BG

3/19/04 - DR. MATTOX

MR. HINSON IS BACK. HIS ARM LOOKS FINE. AT THIS POINT, WE NEED TO CHANGE HIS THERAPY SOMEWHAT AND CONTINUE OUR NORMAL POSTOPERATIVE TREATMENT FOR HIM. I'LL CHECK HIM BACK HERE IN ANOTHER 2 WEEKS. HE CAN BE LIGHT DUTY AT WORK IF THAT'S AVAILABLE.

D/T 3/24/04 BG

4-5-04-DARRELL HINSON IS IN TODAY. HIS ARM OVERALL LOOKS OK EXCEPT FOR THE FACT THAT HE IS STILL NOT ABLE TO EXTEND HIS FINGERS. IT REALLY LOOKS ALMOST LIKE A NERVE PROBLEM. HE HAS GOT OVERALL APPEARANCE OF THE SWELLING LOOKS BETTER. HIS WRIST EXTENSION LOOKS OK. HIS DISTAL FINGER EXTENSION WHICH IS HARD TO FULLY COMPREHEND BECAUSE OF THE NATURE OF HIS LACERATION. HE DID HAVE A LACERATION MORE PROXIMAL OVER THE POSTERIOR ASPECT OF HIS UPPER ARM WHICH WAS REPAIRED BY THE E.R. PHYSICIANS. IT IS POSSIBLE HE COULD HAVE GOTTEN A PARTIAL INJURY TO THE RADIAL NERVE AT THAT LEVEL. SENSATION IN HIS HAND IS FINE. THE SENSATION OF THE RADIAL NERVE AND HAND MEDIAN ULNAR NERVES ALL WERE CHECKED CLOSELY AND THEY ARE OK. HE DOES HAVE WRIST FLEXION EXTENSION SO I AM HOPEFUL DISCONTINUING HIS SPLINT TODAY AND DOING STRENGTHENING EXERCISES FOR HIS FINGERS AND THUMBS WILL IMPROVE MATTERS. I WILL CHECK HIM BACK HERE IN ANOTHER FEW WEEKS. I WILL GET HIM CHECKED BY A NEUROLOGIST TO EVALUATE THAT RADIAL NERVE IN THE HAND TO SEE WHAT WE ARE DEALING WITH THERE. TM/AG

4-19-04-DARRELL HINSON IS BACK IN TODAY. HE IS STILL NOT GETTING BACK HIS RADIAL NERVE FUNCTION IN HIS HAND. I AM CONCERNED ABOUT GETTING HIS NERVE TEST EVALUATED AT THIS POINT. I AM CONCERNED HE COULD HAVE A TWO LEVEL INJURY. ACCORDING TO DR. BRYAN'S ASSESSMENT HE HAS GOT ON NERVE STIMULATION STUDIES NO REAL SENSORY NERVE RESPONSE FROM THE RADIAL NERVE TESTING ON DENERVATION BUT SOME REINERVATION OF THE RADIAL NERVE AND IS GREATER DISTAL RATHER THAN PROXIMAL WHICH INDICATES MAYBE HE HAD A TWO LEVEL INJURY BOTH UPPER EXTREMITY, LACERATION LOWER EXTREMITY LACERATION AS WELL. THE QUESTION IS EXACTLY WHAT TO DO, WHETHER WE NEED TO DO REEXPLORATION OF THE UPPER ARM OR LOWER ARM, OR TRANSFERS. I WOULD LIKE TO GET DR. PALMER'S ASSISTANCE IN THIS SITUATION. I WILL SET HIM UP TO SEE DR. PALMER. I WILL SEE HIM BACK AFTER HE IS EVALUATED. TM/AG

LETTER DOCTOR PALMER

DEAR DR. PALMER:

I AM SENDING YOU A PATIENT OF MINE, DARRELL HINSON. HE IS A

**BAPTIST MEDICAL CENTER**
**2105 East South Boulevard**
**Montgomery, Alabama 36111**
**Telephone 334/288-2100**

78/01

**PATIENT: HINSON, DARRELL D**
**MR #: 000554655**
**SURGERY DATE: 02/19/2004**
**SURGEON: TUCKER MATTOX, M.D.~**
**ATTENDING PHYSICIAN: TUCKER "" MATTOX, MD**

**ROOM #: 410**
**PATIENT #: 040500 0042**
**ADM DT #: 02/19/2004**

| | |
|---|---|
| PREOPERATIVE DIAGNOSIS: | LACERATION OF LEFT FOREARM WITH OBVIOUS EXTENSOR TENDON LACERATIONS. |
| POSTOPERATIVE DIAGNOSIS: | LACERATION OF LEFT FOREARM WITH OBVIOUS EXTENSOR TENDON LACERATIONS. |
| OPERATION: | EXPLORATION OF TWO DORSAL LACERATIONS WITH REPAIR, BRACHIAL RADIALIS, EXTENSOR DIGITORUM SUPERFICIALIS, LONG, RING, AND SMALL FINGERS AND REPAIR OF SUPERFICIAL RADIAL NERVES. |
| ANESTHESIA: | GENERAL. |
| ASSISTANT: | MOUNT. |

**INDICATIONS:** The patient is a 31 year old who was involved in an altercation, injuring his left forearm. He has obvious injuries to the dorsum of his forearm with extensor tendon lacerations. No evidence of any volar injury. Planned exploration, repair of indicated structures. He understands that significant loss of motion, strength, and may be perhaps permanent loss of function of his left arm and hand. He understands and agrees to proceed.

**PROCEDURE:** The patient was taken to the operating room and was found to have two approximately 4 to 5 cm lacerations, one on the dorsal radial portion and one on the dorsal ulnar side paralleling each other. After the arm was prepped with Betadine scrub and paint and draped into a sterile field, the tourniquet was inflated to 250 mm/Hg. Then the two lacerations were connected and extended to allow for visualization. The more radial side was explored. Brachial radialis was lacerated. Superficial radial nerve was lacerated. There were some deeper muscular structures that were divided longitudinally. This was copiously irrigated. No evidence of foreign body. Superficial radial nerve was repaired using interrupted 7-0 nylon sutures and epineural sutures. The brachial radialis was then repaired using 4-0 PDS suture. Attention was turned to the more ulnar side laceration where he had completely lacerated the extensor tendons to small, ring, and long fingers. The index appeared intact. Laceration went deep through the interosseous membrane to the lower side on exploration. With digital palpation, there was no palpable evidence of any injury to the volar side. This side was not explored and will require separate incision of the volar side but an interosseous membrane was lacerated but not repaired. Extensor tendons were individually located and repaired end-to-end using 4-0 PDS suture. Muscle bellies were also approximated. It was necessary to keep the wrist in extension. The extensor carpi ulnaris appeared intact. After repair of all these structures, the wound was copiously irrigated and wounds closed with interrupted 4-0 nylon suture. Sterile dressing was applied and placed in splint with wrist and fingers in extension. The tourniquet was deflated. Total tourniquet time an hour and ten minutes. He was awakened from anesthesia. Counts were correct. Taken to the recovery room in satisfactory condition.

_____
TUCKER MATTOX, M.D.~

TM/ / dm
D: 02/19/2004
T: 02/25/2004

**OPERATIVE REPORT**

04/20/2007  14:10 FAX  334 272 0216   SOUTHERN ORTHO SURG EAST → NURM FRONT   ☑004/004
02/19/04  09:16:42   BMC Medical Records->   3342846009   Page 001

not
in
Comp

# BAPTIST MEDICAL CENTER
## 2105 East South Boulevard
## Montgomery, Alabama 36111
### Telephone 334/288-2100

| | |
|---|---|
| PATIENT: HINSON, DARRELL D | ROOM #: |
| MR #: O00554655 | PATIENT #: 0406000042 |
| PHYSICIAN: TUCKER MATTOX, M.D.~ | ADM. DATE: 2/19/04 |

HISTORY OF PRESENT ILLNESS: The patient is a 31 year old male apparently involved in an altercation, injuring his left forearm where he has 2 lacerations. He also has a laceration on the upper arm that is superficial. He is admitted for exploration and repair of extensor tendons in his forearm.

PAST MEDICAL HISTORY: Denies any chronic medical problems, denies any previous significant surgical history. He denies any current use of any medications, denies any drug allergies.

PHYSICAL EXAMINATION: Black male, awake, alert, cooperative.

HEENT: Normocephalic, atraumatic.

NECK: Supple.

CHEST: Clear to auscultation.

HEART: Regular rate and rhythm.

ABDOMEN: Soft.

EXTREMITIES: He has approximately 4 cm laceration of the upper arm that is now repaired with staples as per the Emergency Room doctor. He has 2 longitudinal parallel lacerations to the left forearm, approximately 5 cm each, with obvious extensor tendon injury. Denies any numbness, tingling on the volar side of his fingertips.

X-RAYS: Negative.

ASSESSMENT AND PLAN: MULTIPLE STAB WOUNDS. They will require exploration and repair.


_____
TUCKER MATTOX, M.D.~

TM//kb
D: 02/19/2004
T: 02/19/2004

## HISTORY AND PHYSICAL

04/26/2007  14:56 FAX  334 272 0210   SOUTHERN ORTHO SURG EAST / NORM FRONT   ☒ 001/004

078101   HINSON, DARRELL

2/27/04 - DR. MATTOX

DARRELL HINSON IS HERE TODAY. HE'S A 31 YEAR OLD GENTLEMAN WHO WAS STABBED THREE TIMES IN THE LEFT ARM. HE HAD UPPER ARM LACERATIONS THAT THE ER DOCTOR TOOK CARE OF. HE HAD TWO LACERATIONS DOWN ON HIS FOREARM THAT I HAD TO CONNECT TO REPAIR. HE HAD REPAIR OF THE BRACHIORADIALIS, FLEXOR DIGITORUM SUPERFICIALIS TO THE LONG, RING AND SMALL FINGERS, ALSO REPAIR OF SUPERFICIAL CUTANEOUS NERVE. TODAY HIS WOUND LOOKS FINE. HIS FINGERS HAVE NO EVIDENCE OF NUMBNESS ON THE VOLAR SIDE OR ON THE DORSUM. OVERALL, EXAM LOOKS OKAY TODAY. WE'LL TAKE HIS SUTURES OUT AND PUT HIM IN A SPLINT TO KEEP HIS WRIST BACK. I'LL CHECK HIM BACK HERE IN ANOTHER 2 WEEKS.

T 3/1/04 BG

3/12/04 - DR. MATTOX

DARRELL HINSON IS HERE TODAY. HIS HAND LOOKS FINE. WE'LL PUT HIM IN A REMOVABLE SPLINT, LET HIM WORK ON SOME RANGE OF MOTION WITH THERAPY, AND CHECK HIM BACK HERE IN ANOTHER COUPLE OF WEEKS.

T 3/15/04 BG

3/19/04 - DR. MATTOX

MR. HINSON IS BACK. HIS ARM LOOKS FINE. AT THIS POINT, WE NEED TO CHANGE HIS THERAPY SOMEWHAT AND CONTINUE OUR NORMAL POSTOPERATIVE TREATMENT FOR HIM. I'LL CHECK HIM BACK HERE IN ANOTHER 2 WEEKS. HE CAN BE LIGHT DUTY AT WORK IF THAT'S AVAILABLE.

D/T 3/24/04 BG

4-5-04-DARRELL HINSON IS IN TODAY.  HIS ARM OVERALL LOOKS OK EXCEPT FOR THE FACT THAT HE IS STILL NOT ABLE TO EXTEND HIS FINGERS. IT REALLY LOOKS ALMOST LIKE A NERVE PROBLEM. HE HAS GOT OVERALL APPEARANCE OF THE SWELLING LOOKS BETTER. HIS WRIST EXTENSION LOOKS OK.  HIS DISTAL FINGER EXTENSION WHICH IS HARD TO FULLY COMPREHEND BECAUSE OF THE NATURE OF HIS LACERATION. HE DID HAVE A LACERATION MORE PROXIMAL OVER THE POSTERIOR ASPECT OF HIS UPPER ARM WHICH WAS REPAIRED BY THE E.R. PHYSICIANS.  IT IS POSSIBLE HE COULD HAVE GOTTEN A PARTIAL INJURY TO THE RADIAL NERVE AT THAT LEVEL. SENSATION IN HIS HAND IS FINE.  THE SENSATION OF THE RADIAL NERVE AND HAND MEDIAN ULNAR NERVES ALL WERE CHECKED CLOSELY AND THEY ARE OK.  HE DOES HAVE WRIST FLEXION EXTENSION SO I AM HOPEFUL DISCONTINUING HIS SPLINT TODAY AND DOING STRENGTHENING EXERCISES FOR HIS FINGERS AND THUMBS WILL IMPROVE MATTERS.  I WILL CHECK HIM BACK HERE IN ANOTHER FEW WEEKS.  I WILL GET HIM CHECKED BY A NEUROLOGIST TO EVALUATE THAT RADIAL NERVE IN THE HAND TO SEE WHAT WE ARE DEALING WITH THERE.   TM/AG

4-19-04-DARRELL HINSON IS BACK IN TODAY.  HE IS STILL NOT GETTING BACK HIS RADIAL NERVE FUNCTION IN HIS HAND.  I AM CONCERNED ABOUT GETTING HIS NERVE TEST EVALUATED AT THIS POINT. I AM CONCERNED HE COULD HAVE A TWO LEVEL INJURY. ACCORDING TO DR. BRYAN'S ASSESSMENT HE HAS GOT ON NERVE STIMULATION STUDIES NO REAL SENSORY NERVE RESPONSE FROM THE RADIAL NERVE TESTING ON DENERVATION BUT SOME REINERVATION OF THE RADIAL NERVE AND IS GREATER DISTAL RATHER THAN PROXIMAL WHICH INDICATES MAYBE HE HAD A TWO LEVEL INJURY BOTH UPPER EXTREMITY, LACERATION LOWER EXTREMITY LACERATION AS WELL.  THE QUESTION IS EXACTLY WHAT TO DO, WHETHER WE NEED TO DO REEXPLORATION OF THE UPPER ARM OR LOWER ARM, OR TRANSFERS. I WOULD LIKE TO GET DR. PALMER'S ASSISTANCE IN THIS SITUATION. I WILL SET HIM UP TO SEE DR. PALMER. I WILL SEE HIM BACK AFTER HE IS EVALUATED. TM/AG

LETTER DOCTOR PALMER

DEAR DR. PALMER;

I AM SENDING YOU A PATIENT OF MINE, DARRELL HINSON. HE IS A

BEING INVOLVED IN AN ALTERCATION WHERE HE HAD SIGNIFICANT
LACERATIONS OF HIS LEFT FOREARM ABOUT MID LOWER ARM LEVEL.
AT  THAT TIME HE HAD A LACERATION OF HIS LEFT UPPER ARM
WHICH WAS REPAIRED BY THE E.R. DOCTOR.   IT WAS TOLD TO BE
JUST A SUPERFICIAL LACERATION.   I REPAIRED HIS STRUCTURES
IN  THE FOREARM AND PROCEEDED WITH NORMAL THERAPY
AFTERWARDS.   DURING HIS POSTOP PERIOD HE HAS NOT REGAINED
FULL MOTION.   AFTER SOME REEVALUATION, I AM CONCERNED
PERHAPS HE HAD A RADIAL NERVE INJURY AT THE UPPER ARM
LACERATION SITE. I SENT HIM FOR NERVE CONDUCTION VELOCITIES
WHICH SHOWED PARTIAL DEINNERVATION PROXIMALLY AND SOME
SIGNIFICANT DEINNERVATION DISTALLY.  I WOULD LIKE TO GET
YOUR OPINION ON WHETHER THE EXAM IS CONSISTENT WITH MORE OF
A PROXIMAL OR DISTAL INJURY. IF SO, THE EXACT APPROACH FROM
HERE. I APPRECIATE YOUR ASSISTANCE IN THIS MATTER.
SINCERELY,

N TUCKER MATTOX, M.D.
ADDENDUM;  MR. HINSON FELT LIKE THE APPOINTMENT I GAVE HIM
WITH DR. PALMER WAS TOO FAR OFF FROM NOW THOUGH IT WAS ONLY
A WEEK AND HALF. I OFFERED TO SEND HIM TO BIRMINGHAM BUT HE
REFUSED THAT AS WELL.  AFTER LENGTHY DISCUSSION I TOLD HIM
WE NEEDED TO GET ANOTHER OPINION ON THAT. I STRONGLY
ENCOURAGED HIM TO DO ONE OR THE OTHER.   THE GIRLS WOULD BE
HAPPY TO SCHEDULE WHICHEVER HE WANTS. I WILL SEE HIM BACK
AS NEEDED IF HE WISHES ANOTHER OPINION.   TM/AG
4/26/04 - DR. MATTOX
I TALKED TO MR. HINSON ON THE PHONE TODAY. HE DID NOT GO
SEE DR. DAVIS IN BIRMINGHAM AS SCHEDULED BECAUSE MR. HINSON
REPORTS TO ME HIS INSURANCE HAS BEEN CANCELLED, AND I TOLD
HIM THAT WE NEED TO GET HIM EVALUATED, REGARDLESS OF WHETHER
OR NOT HE HAS ANY INSURANCE, AND I STILL WANT TO FOLLOW HIM
CLOSELY. HE INDICATED HE MIGHT NOT BE COMING TO SEE ME FOR
A WHILE UNTIL HE GETS INSURANCE, IS WORKING. HE WAS ALSO
ASKING IF A DELAY IN TREATMENT ON THIS MIGHT ALTER THINGS.
I TOLD HIM I CAN'T SAY THAT IT WOULD OR IT WOULDN'T, AND I
CAN'T SAY THAT ANY FURTHER SURGERY AT THIS POINT WOULD
NECESSARILY HELP HIM FOR SURE OR NOT AND THAT'S WHY I
WANTED HIM TO BE SEEN IN BIRMINGHAM TO MAKE THAT
ASSESSMENT. BUT HE'S MADE THE DECISION THAT HE IS NOT GOING
TO SEE THE DOCTOR IN BIRMINGHAM OR ANOTHER DOCTOR HERE
LOCALLY, AND I'VE ENCOURAGED HIM TO CONTINUE FOLLOWING WITH
ME IN THE OFFICE.
T 4/26/04 BG

Form **8879**

Department of the Treasury
Internal Revenue Service

# IRS e-file Signature Authorization

OMB No. 1545-1756

**2001**

Declaration Control Number (DCN) ▶ 00-632191-    -2

| Taxpayer's name | Social security number |
|---|---|
| DARRELL D. HINSON | 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 |
| Spouse's name | Spouse's social security number |

## Part I    Tax Return Information - Tax Year Ending December 31, 2001 (Whole Dollars Only)

| | | | |
|---|---|---|---|
| 1 | Adjusted gross income (Form 1040, line 33; 1040A, line 19; 1040EZ, line 4) | 1 | 6,382 |
| 2 | Total tax (Form 1040, line 58; 1040A, line 36; 1040EZ, line 11) | 2 | 0 |
| 3 | Federal income tax withheld (Form 1040, line 59; 1040A, line 37; 1040EZ, line 8) | 3 | 479 |
| 4 | Refund (Form 1040, line 68a; 1040A, line 43a; 1040EZ, line 12a) | 4 | 1,423 |
| 5 | Amount you owe (Form 1040, line 70; 1040A, line 45; 1040EZ, line 13) | 5 | |

## Part II    Declaration and Signature Authorization of Taxpayer

Under penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2001, and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of my electronic income tax return. I acknowledge that I have read the Consent to Disclosure and, if applicable, Electronic Funds Withdrawal Consent included on the copy of my electronic income tax return and I agree to the provisions contained therein. I have selected a personal identification number (PIN) as my signature for my electronic income tax return and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

[X] I authorize    **HR Block**    to enter my PIN    41963    as my signature
on my tax year 2001 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2001 electronically filed income tax return.

Your signature ▶ _Darrell D. Hinson_    Date ▶ 01/19/2002

**Spouse's PIN: check one box only**

[ ] I authorize    to enter my PIN    as my signature
on my tax year 2001 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2001 electronically filed income tax return.

Your signature ▶    Date ▶

## Practitioner PIN Program Participants Only - continue below

## Part III    Certification and Authentication - Practitioner PIN Program Participants

ERO's EFIN/PIN. Enter your six-digit EFIN followed by your five-digit self-selected PIN.    63219100005

As a participant in the Practitioner PIN Program, I certify that the above numeric entry is my PIN, which is my signature on the tax year 2001 electronically filed income tax return for the taxpayer(s) indicated above. I confirm that I am participating in the Practitioner PIN Program in accordance with the requirements established for this program.

ERO's signature ▶ _Tom Mitchell_    Date ▶ 01/19/2002

ERO Must Retain This Document - See Instructions
Do Not Submit This Document To the IRS Unless Requested To Do So
See Privacy Act and Paperwork Reduction Act Notice

KBA  For Privacy Act and Paperwork Reduction Act Notice, see page 2 of form.    Form **8879** (2001)

Safe, accurate,
FAST! Use

Visit the IRS Web Site
at www.irs.gov

Copy B To Be Filed With Employee's FEDERAL Tax Return
This Information is being furnished to the Internal Revenue Service.

| a Control number 294 | | OMB No. 1545-0008 | |
|---|---|---|---|

| b Employer identification number 630 503126 | 1 Wages, tips, other compensation 25966.24 | 2 Federal income tax withheld 304.47 |
|---|---|---|

| c Employer's name, address, and ZIP code | 3 Social security wages 26069.08 | 4 Social security tax withheld 1616.03 |
|---|---|---|
| ALABAMA MOTOR EXPRESS, INC. | 5 Medicare wages and tips 26069.08 | 6 Medicare tax withheld 377.94 |
| PO BOX 0573 | 7 Social security tips | 8 Allocated tips |
| DOTHAN           AL, 36304 | | |

| d Employee's social security number 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 | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|

| e Employee's name, address, and ZIP code | 11 Nonqualified plans | 12a See Instructions for box 12  D      96.04 |
|---|---|---|
| DARRELL            HINSON | 13 Statutory employee / Retirement plan / Third party sick pay | 12b |
| PO BOX 0751 | 14 Other | 12c |
| PINE NELSON | | 12d |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| AL | 23 0116 | 25966.24 | 978.87 | | | |

Form **W-2** Wage and Tax Statement **2001**

Department of the Treasury—Internal Revenue Service

| a Control number | | OMB No. 1545-0008 | Safe, accurate, FAST! Use | e-file | Visit the IRS Web Site at www.irs.gov. |
|---|---|---|---|---|---|

| b Employer identification number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 63 0250041 | 1728.00 | 174.99 |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| ALABAMA FOOD SERVICE, LLC. | 1728.00 | 107.15 |
| 601 COIL ROAD | 5 Medicare wages and tips | 6 Medicare tax withheld |
| P. O. BOX 4997 | 1728.00 | 25.06 |
| MONTGOMERY     AL   36103-4997 | 7 Social security tips | 8 Allocated tips |
| | .00 | .00 |

| d Employee's social security number | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|
| | .00 | .00 |

| e Employee's name, address, and ZIP code | 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|---|
| WENDELL D        HINSON | .00 | |
| P O BOX 9351 | 13 Statutory employee / Retirement plan / Third-party sick pay | 12b |
| MONTGOMERY AL  36108 | 14 Other | 12c |
| | | 12d |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| AL | 1 4585C | 1728.00 | 63.25 | | | |

Form **W-2** Wage and Tax Statement

2001

Department of the Treasury—Internal Revenue Service

Copy B To Be Filed with Employee's FEDERAL Tax Return.
This information is being furnished to the Internal Revenue Service.

Form **8879**

**IRS e-file Signature Authorization**

▶ Do not send to the IRS. Keep for your records.
▶ See Instructions.

OMB No. 1545-1758

**2002**

Department of the Treasury
Internal Revenue Service

Declaration Control Number (DCN) ▶ 00-632191-    -3

| Taxpayer's name | Social security number |
|---|---|
| DARRELL D. HINSON | 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 |
| Spouse's name | Spouse's social security number |

### Part I   Tax Return Information - Tax Year Ending December 31, 2002 (Whole Dollars Only)

| | | | |
|---|---|---|---|
| 1 | Adjusted gross income (Form 1040, line 35; Form 1040A, line 21; Form 1040EZ, line 4) | 1 | 34,441 |
| 2 | Total tax (Form 1040, line 61; Form 1040A, line 38; Form 1040EZ, line 10) | 2 | 2,729 |
| 3 | Federal income tax withheld (Form 1040, line 62; Form 1040A, line 39; Form 1040EZ, line 7) | 3 | 4,696 |
| 4 | Refund (Form 1040, line 71a; Form 1040A, line 45a; Form 1040EZ, line 11a) | 4 | 1,967 |
| 5 | Amount you owe (Form 1040, line 73; Form 1040A, line 47; Form 1040EZ, line 12) | 5 | |

### Part II   Declaration and Signature Authorization of Taxpayer

Under penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2002, and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of my electronic income tax return. I acknowledge that I have read the Consent to Disclosure and, if applicable, Electronic Funds Withdrawal Consent included on the copy of my electronic income tax return and I agree to the provisions contained therein. I have selected a personal identification number (PIN) as my signature for my electronic income tax return and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

[X] I authorize **HR Block** to enter my PIN [ 41963 ] as my signature
ERO firm name     do not enter all zeros
on my tax year 2002 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2002 electronically filed income tax return. Check this box only if you are entering your own PIN and your return is filed using the Practitioner PIN Program. The ERO must complete Part III below.

Your signature ▶ *[signature]*     Date ▶ 02/01/2003

**Spouse's PIN: check one box only**

[ ] I authorize _____ to enter my PIN [ ] as my signature
ERO firm name     do not enter all zeros
on my tax year 2002 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2002 electronically filed income tax return. Check this box only if you are entering your own PIN and your return is filed using the Practitioner PIN Program. The ERO must complete Part III below.

Your signature ▶ _____     Date ▶ _____

### Practitioner PIN Method Returns Only - continue below

### Part III   Certification and Authentication - Practitioner PIN Method

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN.     [ 63219100005 ]
do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the tax year 2002 electronically filed income tax return for the taxpayer(s) indicated above. I confirm that I am submitting this return in accordance with the requirements of the Practitioner PIN Program.

ERO's signature ▶ *[signature]*     Date ▶ 02/01/2003

**ERO Must Retain This Form - See Instructions**
**Do Not Submit This Form To the IRS Unless Requested To Do So**

KBA  For Privacy Act and Paperwork Reduction Act Notice, see page 2 of form.     Form **8879** (2002)

Form 8879 (2002)     FD8879-1V 1.0
Form Software Copyright 1996 - 2003 H&R Block Tax Services, Inc.

| 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 35095.71 | 4050.89 |
| 3 Social security wages | 4 Social security tax withheld |
| 35095.71 | 2175.93 |
| 5 Medicare wages and tips | 6 Medicare tax withheld |
| 35095.71 | 508.89 |

| a Control Number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 006314 CYTU | 852809 | | A 353 |

c Employer's name, address, and ZIP code

BES PAK & COMPANY INC
P.O. BOX 210339
MONTGOMERY, AL 36121

| b Employer's FED ID number | d Employer's SSA number |
|---|---|
| 63-0462045 | 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 |

| 7 Social security tips | 8 Allocated tips |
|---|---|

| 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|

| 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|
| | 12b |
| 14 Other | 12c |
| | 12d |

| 13 Stat emp | Ret. plan | 3rd party sick pay |
|---|---|---|
| | X | |

ef Employer's name, address and ZIP code

DARRELL DEWAYNE HINSON
P.O. BOX 9951
MONTGOMERY, AL 36108

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|---|
| AL | 004154 | 35095.71 |
| 17 State income tax | | 18 Local wages, tips, etc. |
| 1442.74 | | |
| 19 Local income tax | 20 Locality name |

W-2 Wage and Tax Statement 2002

Federal Filing Copy.
Copy B to be filed with employee's Federal Income Tax Return.

| a Control number | | | | |
|---|---|---|---|---|
| PAPAA OHE | OMB No. 1545-0008 | Safe, accurate, FAST! Use | IRS e-file | Visit the IRS Web Site at www.irs.gov. |

| b Employer identification number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 63-0758041 | 6531.25 | 645.24 |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| ALABAMA FOOD SERVICE, INC. | 6531.25 | 404.98 |
| 801 PAUL FOOD | 5 Medicare wages and tips | 6 Medicare tax withheld |
| P. O. BOX 897 | 6531.25 | 94.70 |
| MONTGOMERY AL 36103-4997 | 7 Social security tips | 8 Allocated tips |
| | .00 | .00 |

| d Employee's social security number | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|
| 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 | .00 | .00 |

| e Employee's name, address, and ZIP code | 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|---|
| DARRELL D HINSON | .00 | |
| P. O. BOX 2351 | 13 Statutory employee / Retirement plan / Third-party sick pay | 12b |
| MONTGOMERY AL 36104 | 14 Other | 12c |
| | | 12d |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| AL | 143096 | 6531.25 | 256.30 | | | |

Form **W-2** **Wage and Tax Statement**

**2002**

Copy B To Be Filed with Employee's FEDERAL Tax Return. This information is being furnished to the Internal Revenue Service.

(Rev. February 2002)

Department of the Treasury—Internal Revenue Service

Form **8879**

## IRS e-file Signature Authorization

▶ Do not send to the IRS. Keep this form for your records.
▶ See Instructions.

Department of the Treasury
Internal Revenue Service

OMB No. 1545-1758

**2003**

Declaration Control Number (DCN) ▶   00–632191–    –4

| Taxpayer's name | Social security number |
|---|---|
| DARRELL D. FINSON | 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 |
| Spouse's name | Spouse's social security number |

### Part I    Tax Return Information - Tax Year Ending December 31, 2003 (Whole Dollars Only)

| | | | |
|---|---|---|---|
| 1 | Adjusted gross income (Form 1040, line 35; Form 1040A, line 22; Form 1040EZ, line 4) | 1 | 43,618 |
| 2 | Total tax (Form 1040, line 60; Form 1040A, line 38; Form 1040EZ, line 10) | 2 | 3,079 |
| 3 | Federal income tax withheld (Form 1040, line 61; Form 1040A, line 39; Form 1040EZ, line 7) | 3 | 5,773 |
| 4 | Refund (Form 1040, line 70a; Form 1040A, line 45a; Form 1040EZ, line 11a). | 4 | 2,694 |
| 5 | Amount you owe (Form 1040, line 72; Form 1040A, line 47; Form 1040EZ, line 12) | 5 | |

### Part II    Taxpayer Declaration and Signature Authorization   (Be sure you get and keep a copy of your return)

Under penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2003, and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of my electronic income tax return. I consent to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send my return to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission, (b) an indication of any refund offset, (c) the reason for any delay in processing the return or refund, and (d) the date of any refund. If applicable, I acknowledge that I have read the Electronic Funds Withdrawal Consent included on the copy of my electronic income tax return and I agree to the provisions contained therein. I have selected a personal identification number (PIN) as my signature for my electronic income tax return and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

[X] I authorize **HR Block** to enter my PIN   **41963**   as my signature
　　　　　　　　　　　　ERO firm name　　　　　　　　　　　　　　　　do not enter all zeros
on my tax year 2003 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2003 electronically filed income tax return. Check this box only if you are entering your own PIN and your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Your signature ▶ *Darrell D. Finson*　　　　　　　　　　　Date ▶ 01/28/2004

**Spouse's PIN: check one box only**

[ ] I authorize _____ to enter my PIN _____ as my signature
　　　　　　　　ERO firm name　　　　　　　　　　　　　do not enter all zeros
on my tax year 2003 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2003 electronically filed income tax return. Check this box only if you are entering your own PIN and your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Spouse's signature ▶ _____　　　　　　　　Date ▶ _____

### Practitioner PIN Method Returns Only - continue below

### Part III    Certification and Authentication - Practitioner PIN Method Only

ERO's EFIN/PIN. Enter your six-digit EFIN followed by your five-digit self-selected PIN.   **63219128805**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the tax year 2003 electronically filed income tax return for the taxpayer(s) indicated above. I confirm that I am submitting this return in accordance with the requirements of the Practitioner PIN method and Publication 1345, Handbook for Authorized e-file Providers.

ERO's signature ▶ *[signature]*　　　　　　　　　　　Date ▶ 01/28/2004

### ERO Must Retain This Form - See Instructions
### Do Not Submit This Form To the IRS Unless Requested To Do So

KBA   For Privacy Act and Paperwork Reduction Act Notice, see page 2 of form.

Form 8879 (2003)

8879 (2003)　　　　　　FD8879-1V1.0

| 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 46804.55 | 572.83 |

| 3 Social security wages | 4 Social security tax withheld |
|---|---|
| 46804.55 | 2901.88 |

| 5 Medicare wages and tips | 6 Medicare tax withheld |
|---|---|
| 46804.55 | 678.67 |

| a Control Number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 006314 46/CYU 852809 | | A | 385 |

c Employer's name, address, and ZIP code

BES-PAK & COMPANY INC
PO BOX 210339
MONTGOMERY AL 36121

| b Employer's FED ID number | d Employee's SSA number |
|---|---|
| 63-0462045 | 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 |

| 7 Social security tips | 8 Allocated tips |
|---|---|
| | |

| 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|
| | |

| 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|
| | |

| 14 Other | 12b |
|---|---|
| | |
| | 12c |
| | |
| | 12d |

| 13 Stat emp. Ret. plan 3rd party sick pay |
|---|
| X |

e/f Employer's name, address and ZIP code

DARRELL DEWAYNE HINSON
P.O. BOX 9951
MONTGOMERY AL 36108

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|---|
| AL | 0041554 | 46804.55 |

| 17 State income tax | 18 Local wages, tips, etc. |
|---|---|
| 1911.77 | |

| 19 Local income tax | 20 Locality name |
|---|---|
| | |

W-2 Wages and Tax Statement 2003
Federal Filing Copy
Copy B To be filed with employee's Federal income tax return

Form **8879**

Department of the Treasury
Internal Revenue Service

# IRS e-file Signature Authorization

▶ Do not send to the IRS. Keep this form for your records.
▶ See Instructions.

OMB No. 1545-1758

**2004**

Declaration Control Number (DCN) ▶ 00 – 632191 –    –5

| Taxpayer's name | Social security number |
|---|---|
| DARRELL D HINSON | 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 |
| Spouse's name | Spouse's social security number |

## Part I    Tax Return Information - Tax Year Ending December 31, 2004 (Whole Dollars Only)

| | | | |
|---|---|---|---|
| 1 | Adjusted gross income (Form 1040, line 37; Form 1040A, line 22; Form 1040EZ, line 4) | 1 | 13,254 |
| 2 | Total tax (Form 1040, line 62; Form 1040A, line 38; Form 1040EZ, line 10) | 2 | 533 |
| 3 | Federal income tax withheld (Form 1040, line 63; Form 1040A, line 39; Form 1040EZ, line 7) | 3 | 1,693 |
| 4 | Refund (Form 1040, line 72a; Form 1040A, line 45a; Form 1040EZ, line 11a) | 4 | 1,160 |
| 5 | Amount you owe (Form 1040, line 74; Form 1040A, line 47; Form 1040EZ, line 12) | 5 | |

## Part II    Taxpayer Declaration and Signature Authorization (Be sure you get and keep a copy of your return)

Under penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2004, and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of my electronic income tax return. I consent to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send my return to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission, (b) an indication of any refund offset, (c) the reason for any delay in processing the return or refund, and (d) the date of any refund. If applicable, I acknowledge that I have read the Electronic Funds Withdrawal Consent included on the copy of my electronic income tax return and I agree to the provisions contained therein. I have selected a personal identification number (PIN) as my signature for my electronic income tax return and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

[X] I authorize **HR BLOCK** to enter my PIN    41963    as my signature
            ERO firm name                            do not enter all zeros
on my tax year 2004 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2004 electronically filed income tax return. Check this box **only** if you are entering your own PIN and your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Your signature ▶ *Darrell Hinson*    Date ▶ 02/12/2005

**Spouse's PIN: check one box only**

[ ] I authorize _____ to enter my PIN _____ as my signature
            ERO firm name                            do not enter all zeros
on my tax year 2004 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2004 electronically filed income tax return. Check this box **only** if you are entering your own PIN and your return is filed using the Practitioner PIN method. The ERO must complete Part III below.

Spouse's signature ▶ _____    Date ▶ _____

## Practitioner PIN Method Returns Only - continue below

## Part III    Certification and Authentication - Practitioner PIN Method Only

ERO's EFIN/PIN. Enter your six-digit EFIN followed by your five-digit PIN.    63219128801
                                                                            do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the tax year 2004 electronically filed income tax return for the taxpayer(s) indicated above. I confirm that I am submitting this return in accordance with the requirements of the Practitioner PIN method and Publication 1345, Handbook for Authorized e-file Providers.

ERO's signature ▶ *Helman Henninger*    Date ▶ 02/12/2005

### ERO Must Retain This Form - See Instructions
### Do Not Submit This Form To the IRS Unless Requested To Do So

KBA   For Privacy Act and Paperwork Reduction Act Notice, see page 2 of form.    Form 8879 (2004)

8879 (2004)    FD8879-1V1.0
Form Software Copyright 1996 - 2005 H&R Block Tax Services, Inc.

| a Control number | | Copy B—To Be Filed With Employee's FEDERAL Tax Return. OMB No. 1545-0008 | | |
|---|---|---|---|---|

| b Employer identification number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 63-1188910 | 281.25 | |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| | 281.25 | 17.44 |

CALLEN ENTERPRISES INC.
P. O. BOX 39
LOWNDESBORO, AL 36752

| 5 Medicare wages and tips | 6 Medicare tax withheld |
|---|---|
| 281.25 | 4.08 |

| 7 Social security tips | 8 Allocated tips |
|---|---|
| | |

| d Employee's social security number | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|
| 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 | | |

| e Employee's name, address, and ZIP code | 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|---|

DARRELL D        HINSON
P. O. BOX 9951
MONTGOMERY, AL 36108

| 13 Statutory employee | Retirement plan | Third-party sick pay | 12b |
|---|---|---|---|
| 14 Other | | | 12c |
| | | | 12d |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| AL | 0029121109 | 281.25 | 9.93 | | | |

Form **W-2** Wage and Tax Statement

**2004**

39-1908647   Department of the Treasury—Internal Revenue Service

This information is being furnished to the Internal Revenue Service.

BW2EEB    NTF 2561946*

| 1 Wages, tips, other comp. | 2 Federal income tax withheld |
|---|---|
| 11649.09 | 1277.94 |

| 3 Social security wages | 4 Social security tax withheld |
|---|---|
| 11649.09 | 722.24 |

| 5 Medicare wages and tips | 6 Medicare tax withheld |
|---|---|
| 11649.09 | 168.91 |

| a Control Number | Dept. | Corp. | Employer use only |
|---|---|---|---|
| 00S314 460CYU 852809 | | T | 345 |

c Employer's name, address, and ZIP code

BES DAK 2 COMPANY, INC
P.O. BOX 210335
MONTGOMERY AL 36121

| b Employer's FED ID number | d Employer's SSA number |
|---|---|
| 63-0462045 | 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 |

| 7 Social security tips | 8 Allocated tips |
|---|---|
| | |

| 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|
| | |

| 11 Nonqualified plans | 12a |
|---|---|
| | |

| 14 Other | 12b |
|---|---|
| | |

| | 12c |
|---|---|
| | |

| | 12d |
|---|---|
| | |

13 Stat. employee   Ret. plan   3rd party sick pay
X

e/f Employer's name, address, and ZIP code

DARRELL DEMAYNE HINSON
P.O. BOX 9951
MONTGOMERY, AL 36108

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. |
|---|---|---|
| AL | 004154 | 11649.09 |

| 17 State income tax | 18 Local wages, tips, etc. |
|---|---|
| 414.89 | |

| 19 Local income tax | 20 Locality name |
|---|---|
| | |

W-2 Wage and Tax Statement  2004

AL State Reference Copy
Compliance filed with employee distribution
PRINTED

| Copy B To Be Filed With Employee's FEDERAL Tax Return. | | 2004 OMB No. 1545-0008 | | Copy 2 To Be Filed With Employee's State, City, or Local Income Tax Return. | | 2004 OMB No. 1545-0008 | |
|---|---|---|---|---|---|---|---|
| a Control number 315 | 1 Wages, tips, other comp. 960.24 | 2 Federal income tax withheld 54.88 | | a Control number 315 | 1 Wages, tips, other comp. 960.24 | 2 Federal income tax withheld 54.88 | |
| b Employer ID number 63-0798133 | 3 Social security wages 960.24 | 4 Social security tax withheld 59.53 | | b Employer ID number 63-0798133 | 3 Social security wages 960.24 | 4 Social security tax withheld 59.53 | |
| | 5 Medicare wages and tips 960.24 | 6 Medicare tax withheld 13.92 | | | 5 Medicare wages and tips 960.24 | 6 Medicare tax withheld 13.92 | |

c Employer's name, address, and ZIP code
TOWNS TRANSPORTATION, INC.
P.O. BOX 889
JASPER, AL 35502

c Employer's name, address, and ZIP code
TOWNS TRANSPORTATION, INC.
P.O. BOX 889
JASPER, AL 35502

d Employee's social security number
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

d Employee's social security number
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

e Employee's name, address, and ZIP code
DARRELL D HINSON
P.O. BOX 9951
MONTGOMERY, AL 36108

e Employee's name, address, and ZIP code
DARRELL D HINSON
P.O. BOX 9951
MONTGOMERY, AL 36108

FDWA0110L 04/30/04

FDWA0110L 04/30/04

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment | | 7 Social security tips | 8 Allocated tips | 9 Advance EIC payment |
|---|---|---|---|---|---|---|
| 10 Dependent care benefits | 11 Nonqualified plans | 12a Code See inst. for box 12 | | 10 Dependent care benefits | 11 Nonqualified plans | 12a Code See inst. for box 12 |
| 13 Statutory employee | 14 Other | 12b Code | | 13 Statutory employee | 14 Other | 12b Code |
| Retirement Plan | | 12c Code | | Retirement Plan | | 12c Code |
| Third-party sick pay | | 12d Code | | Third-party sick pay | | 12d Code |

| AL 165950 | 960.24 | 27.00 | AL 165950 | 960.24 | 27.00 |
|---|---|---|---|---|---|
| 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 15 State  Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax |
| 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement
This information is being furnished to the Internal Revenue Service.                    Dept. of the Treasury - IRS

Form W-2 Wage and Tax Statement                    Dept. of the Treasury - IRS

# ARBITRATION IF A DISPUTE ARISES BETWEEN YOU AND H&R BLOCK

If a dispute arises between you and H&R Block, the dispute shall be settled through binding arbitration unless you opt-out of this arbitration provision using the process explained in bold type below. This alternative to traditional lawsuits does not necessarily require you to hire an attorney, and may cost you only $5 to have your dispute with H&R Block decided by a third party. This third party, known as the Arbitrator, is empowered to settle the matter with the same set of remedies available in court including compensatory, statutory, and punitive damages, injunctive and other equitable relief, and attorneys' fees and costs. However, arbitration requires you waive your rights to sue H&R Block in court before a judge and jury, and to waive any right to participate in any "class action" lawsuit against H&R Block regarding any issue that could otherwise be settled by arbitration. As used in this arbitration provision, "H&R Block" shall also include the officers, directors, agents and employees of the respective H&R Block companies referenced under "Professional Tax or Other Services."

**Right to Opt-Out of This Arbitration Provision.** H&R Block does not require you to accept arbitration even though you must sign this Client Service Agreement to receive service from us today. You may opt-out (reject) arbitration within the first 30 days after you sign this Agreement by visiting our website at www.hrblock.com/goto/optout, by calling 866-714-5502 or by sending a signed letter to H&R Block Compliance Department, One H&R Block Way, Kansas City, MO 64105. The letter you send us should include your printed name, Social Security number of yourself and joint filer if any, the most recent date you were served by H&R Block, and the words "Reject Arbitration." Your electronic, telephoned or written opt-out letter will override your signature below regarding arbitration but no other provision of this document.

**How Arbitration Works.** If you have a complaint against H&R Block that you have been unable to solve by bringing it to the attention of the office that served you, you may contact either the American Arbitration Association (AAA) at 335 Madison Avenue, Floor 10, New York, NY 10017 or the National Arbitration Forum (NAF) at P.O. Box 50191, Minneapolis, MN 55405. Whichever organization you choose will appoint a neutral practicing attorney with more than ten years of tax law experience to hear your side and H&R Block's side of the issue, and make a decision that is binding on both you and H&R Block. The American Arbitration Association's rules of arbitration are available by mail from AAA or on the Internet at www.adr.org. The National Arbitration Forum's rules are available by mail from NAF or on the Internet at www.arbforum.com.

**Arbitration Costs.** You will be asked to pay a $5 fee, and H&R Block will pay all other filing, administrative, hearing and miscellaneous arbitration expenses up to $1,500. H&R Block may consider paying arbitration costs that exceed $1,500 but only if you win the arbitration.

**Other Arbitration Terms & Information.** Your arbitration will take place in the federal judicial district where you live. The Arbitrator's award will be final and not subject to appeal except as permitted by the Federal Arbitration Act. Except as required by law, neither you nor H&R Block nor the Arbitrator may disclose the existence, content or results of your arbitration without prior written consent from the other two parties.

**Note:** This arbitration provision will not apply to any claims relating to the Peace of Mind Extended Service Plan, the subject matter of which is currently being asserted in any certified class action lawsuit pending against H&R Block as of August 29, 2006.

**My/our signature(s) below confirms that I/we understand and voluntarily agree to the terms of the Arbitration Provision described above, as well as all other terms, conditions and disclosures presented in this Client Service Agreement.**

_____                                    _____
**Client Signature**                                         **Tax Professional, for H&R Block**

_____
**Date**                                                     **Date**

**If married and spouse is present, spouse must also sign:**

_____                                    _____
**Client Signature**                                         **Date**

CSA 106442 08/06

 **H&R BLOCK**°

# Política de Privacidad

La protección de tu privacidad es fundamental para nuestra actividad en H&R Block. Cumplimos con todos los reglamentos aplicables con respecto a la privacidad y nos esforzamos por dirigir nuestra empresa en una forma que justifique tu elección de los productos y servicios de H&R Block. Te estamos proporcionando esta política de privacidad de conformidad con la ley. Esta política de privacidad explica los tipos de información que podemos solicitarte y te informa cómo podemos usar o divulgar dicha información.

## Quién está cubierto por esta política

Esta declaración se aplica a la información que recopilamos cuando brindamos productos y servicios financieros a los clientes actuales y antiguos de esta oficina de H&R Block, una franquicia de propiedad individual. Nuestro franquiciador opera en virtud de una política de privacidad similar pero separada, porque es una entidad legal independiente y puede tener diferentes prácticas o procesos. Todas las oficinas de H&R Block (ya sea que se trate de franquicias de propiedad individual o una compañía controlada a través de H&R Block, Services, Inc.) deben cumplir con las leyes y los reglamentos aplicables con respecto a la privacidad y seguridad.

## La información que recopilamos

Podemos recopilar información para poder preparar tu declaración de impuestos. Esta información, denominada "información de la declaración de impuestos" en esta política, incluye, por ejemplo, tu nombre, dirección y ciertos datos adicionales como tu número de seguro social, datos de deducciones e ingresos y otro tipo de información referente a ti y a tus dependientes, que necesitamos para preparar tu declaración de impuestos.

Podemos recopilar información adicional relacionada con otras transacciones, distintas de la preparación de la declaración de impuestos, que realices o que tengas la intención de efectuar con nosotros, con nuestras filiales (incluido, según corresponda, nuestro franquiciador) o con otras personas. Esta información puede incluir, por ejemplo, tu nombre, dirección y cierta "información personal no pública", como los números de las cuentas de cheques, de débito y de crédito, historial de pagos y saldos, ingresos, activos y número del seguro social. En esta política, "información de la declaración de impuestos" e "información personal no pública" pueden ser denominadas, en conjunto, "información personal".

Podemos recopilar información personal sobre ti a través del Servicio de Impuestos Internos (Internal Revenue Service, IRS), nuestro franquiciador y terceros no afiliados, tales como agencias de información de crédito, en relación con las transacciones que realices o tengas la intención de efectuar con nosotros, nuestras filiales, nuestro franquiciador o terceros no afiliados (p. ej., la información personal referente a tu declaración de impuestos, el reembolso de impuestos, a los préstamos de reembolso anticipado o a otros préstamos).

Nosotros, nuestras filiales, nuestro franquiciador o terceros no afiliados con quienes tenemos relaciones comerciales podemos recopilar información sobre ti cuando averigües acerca de los servicios o nos solicites información, cuando presentes formularios de rebajas o cuando participes en concursos patrocinados por nosotros o por nuestro franquiciador. Esta información puede incluir, por ejemplo, tu nombre, número de teléfono, dirección postal y dirección de correo electrónico.

## Cómo podemos divulgar tu información

La divulgación que hagamos de tu información personal se rige por una o más de las siguientes reglamentaciones: la Sección 7.216 del Código de Impuestos Internos (Internal Revenue Code); la Ley Gramm Leach Bliley de 1999; otras leyes y las políticas de H&R Block. Podemos divulgar cualquiera de las categorías de información personal que recopilemos (según lo descrito con anterioridad), sujeto a los términos de esta política de privacidad.

La Sección 7216 del Código de Impuestos Internos nos exige que obtengamos tu consentimiento antes de que divulguemos la información de tu declaración de impuestos a las filiales o a terceros no afiliados, al Servicio de Impuestos Internos (Internal Revenue Service, IRS) y a los funcionarios encargados de ejecutar las leyes, al igual que para determinados fines legales. Cuando este consentimiento sea necesario, no divulgaremos la información de tu declaración de impuestos sin él.

Es posible que la información que sea idéntica a la contenida en tu declaración de impuestos, tales como tu nombre y dirección, no esté sujeta a la Sección 7216, en caso de que también copilemos esta información para fines distintos de los de la preparación de tu declaración de impuestos. En estas situaciones, podemos divulgar esa información según se describe en esta política y según lo exija o lo permita la ley (aunque no se cumpla con lo dispuesto en la sección 7216).

Si compartimos tu información personal no pública con terceros no afiliados con fines comerciales, salvo según lo permite la ley Gramm Leach Bliley o cualquier otra ley aplicable, no vendemos o alquilamos tu información personal a distribuidores directos de terceros.

Podemos divulgar tu información personal de la forma indicada a continuación, cuando hayas dado tu consentimiento de conformidad con la Sección 7216 o de otra forma permitida por las leyes aplicables:

Si brindaste tu consentimiento en virtud de la Sección 7216, podemos divulgar la información de tu declaración de impuestos a nuestro franquiciador y a sus filiales que estén relacionadas con servicios bancarios, inversiones, tarjetas de crédito o préstamos al consumidor, seguros u otras actividades de servicios financieros, a fin de brindarte acceso a mejores servicios y oportunidades a productos que consideremos que pueden ser de tu interés.

Podemos divulgar tu información personal a los proveedores de servicios que cumplan funciones comerciales en nuestro nombre. Los servicios que dichas organizaciones pueden realizar en nuestro nombre pueden incluir, por ejemplo, impresión de cheques, análisis y procesamiento de datos, supervisión de concursos y producción de correo directo o correos electrónicos. Exigimos que todos los proveedores de servicios celebren contratos por escrito que especifiquen el uso apropiado de tu información personal, les exijan que protejan tu información personal y les prohíban usarla sin autorización o con fines ilícitos.

Podemos divulgar tu información personal a las instituciones financieras con las cuales tengamos acuerdos de comercialización conjunta. Exigimos que todos los distribuidores conjuntos celebren contratos por escrito con nosotros, que especifiquen el uso apropiado de tu información personal, les exijan que protejan tus datos y les prohíban usar tu información personal sin autorización o con fines ilícitos. Si una ley estatal (u otra ley) nos exige que te proporcionemos el derecho de no participación ("opt out") antes de cualquier divulgación de tu información personal para la comercialización conjunta, no divulgaremos tu información personal para esos fines sin darte la oportunidad de ejercer el mencionado derecho o sin obtener tu consentimiento.

Podemos divulgar tu información personal a las filiales, a nuestro franquiciador, o a terceros no afiliados para otros fines permitidos o exigidos por ley. Dichos fines pueden incluir, por ejemplo, el procesamiento o la prestación de un servicio que solicites, o la venta o transferencia de nuestra empresa o activos.

Si eliges recibir un préstamo de reembolso anticipado, otros productos de préstamos o una línea de crédito renovable para pagar tu responsabilidad de impuestos, o si eliges pagar tus comisiones por la preparación de impuestos o por la presentación electrónica con tu reembolso de impuestos, te entregaremos un acuerdo y solicitud de préstamo y/o un acuerdo de procesamiento del reembolso. Al aceptar estos acuerdos y firmar el formulario de consentimiento que se te entreguen, autorizas a H&R Block a divulgar tu información personal al banco prestamista. Debes revisar estos acuerdos y las políticas de privacidad del banco prestamista para entender cómo el banco puede usar y divulgar tu información personal.

Podemos divulgar tu información personal a las filiales o a terceros no afiliados (incluidas entidades gubernamentales) cuando tengamos el conocimiento de buena fe de que la ley exige tal divulgación. Esto puede ocurrir en relación con una orden judicial, proceso legal u otro procedimiento judicial, administrativo o de investigación, en virtud de las leyes que soliciten información personal.

## Cómo protegemos tu información

H&R Block mantiene políticas y procedimientos que nos exigen restringir el acceso a tu información personal en muchas formas. Estos incluyen programas y especificaciones para la seguridad física y la retención y eliminación de tus registros; medidas de seguridad en la comunicación y las computadoras, que se reflejan en el diseño del sistema, protección por contraseña y prácticas del manejo de datos; al igual que otras medidas que restringen el acceso a los datos que poseemos en forma física y electrónica.

## Cómo puedes controlar el uso de tu información

Podemos usar la información personal que proporciones (sujeto a tu consentimiento, cuando sea requerido) para comunicarnos contigo con respecto a los productos y servicios que se encuentran disponibles a través de H&R Block o terceros no afiliados. En caso de que en cualquier momento desees recibir las ofertas o promociones que reciba de nuestra parte, puedes llamar al 877-723-5458. Realizaremos los esfuerzos razonables para cumplir con tu solicitud, aunque es posible que para nosotros aún sea necesario enviarte información periódicamente sobre las transacciones o cuentas que tengas con nosotros, nuestro franquiciador o nuestras filiales.

# Taxable Recovery of Previous Deduction

Name(s) DARRELL D. HINSON                          SSN 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

| | | |
|---|---|---|
| 1. State/local income tax deduction recovery ............................... ** | 1. | 379 |
| 2. Other Sched A deduction recovery ...................................... | 2. | |
| 3. Add lines 1 and 2 .......................................................... | 3. | 379 |
| 4. Total itemized deductions ............................................... | 4. | 8,157 |
| 5. Standard deduction for filing status plus age and blindness ............. | 5. | 7,300 |
| 6. Line 4 minus line 5, not less than -0- .................................. | 6. | 857 |
| 7. Smaller of line 3 or line 6 ............................................. | 7. | 379 |
| 8. Taxable income plus any NOL carryover. May be less than -0- ............. | 8. | 15,789 |
| 9. Line 10, Form 1040 ...................................................... | 9. | 379 |
| 10. Line 21, Form 1040 ...................................................... | 10. | |



** Limited to income tax deducted minus general sales tax allowable.

## A few things to remember when you Send-a-Friend our way:

1. The maximum amount of friends that you can refer is 5 (five).

2. You must pay for your tax preparation to receive the Send-a-Friend reward.

3. Your friend must pay for their tax preparation in order to receive the Send-a-Friend reward.

4. Your friend must be a new client to H&R Block (a new client is a person who did not use a H&R Block office to prepare their prior year return).

5. Form cannot be redeemed within 2 hours of the referring party.



**H&R BLOCK**

## Send a friend to H&R Block. We'll thank you both with cash!

### $10 for you. $10 to your friend!*

1. Give this form to a friend and have them complete the information below.
2. We'll send you a check for up to 5 new clients you refer.*

| Last Name | First | MI |
| --- | --- | --- |
| Address | | |
| City | State | Zip Code |

*Valid only for new clients who purchase tax prep for a federal return from a participating U.S. H&R Block office between 1/1/07 and 8/1/07. A new client is a person who did not use H&R Block office to prepare their prior year return. Referral certificate must be presented prior to completion of initial tax prep interview. Amended returns are ineligible. Limit of five referrals per referring party and one referral per paid federal return. Cannot be redeemed by a referred client who completes tax prep within two hours of the referring party. H&R Block associates are not eligible. May not be combined with any other discount, gift or referral offer. Allow approximately 8 weeks for check delivery. Call 1-877-600-5432 for referral status.

To make an appointment call the office below. For other H&R Block locations call 1-800-HRBLOCK.

$$10 to:

LORI MILTON          DARRELL D HINSON
104 CHURCH ST        P O BOX 9951
GREENVILLE AL 36037  MONTGOMER, AL 36108
(334) 382-8670       (334) 294-5389

H&R BLOCK   For office use: 14014372258235
Client ID

Thanks for choosing H&R Block and referring your friends.

---

## Send a friend to H&R Block. We'll thank you both with cash!

### $10 for you. $10 to your friend!*

1. Give this form to a friend and have them complete the information below.
2. We'll send you a check for up to 5 new clients you refer.*

| Last Name | First | MI |
| --- | --- | --- |
| Address | | |
| City | State | Zip Code |

*Valid only for new clients who purchase tax prep for a federal return from a participating U.S. H&R Block office between 1/1/07 and 8/1/07. A new client is a person who did not use a H&R Block office to prepare their prior year return. Referral certificate must be presented prior to completion of initial tax prep interview. Amended returns are ineligible. Limit of five referrals per referring party and one referral per paid federal return. Cannot be redeemed by a referred client who completes tax prep within two hours of the referring party. H&R Block associates are not eligible. May not be combined with any other discount, gift or referral offer. Allow approximately 8 weeks for check delivery. Call 1-877-600-5432 for referral status.

To make an appointment call the office below. For other H&R Block locations call 1-800-HRBLOCK.

$$10 to:

LORI MILTON          DARRELL D HINSON
104 CHURCH ST        P O BOX 9951
GREENVILLE AL 36037  MONTGOMER, AL 36108
(334) 382-8670       (334) 294-5389

H&R BLOCK   For office use: 14014372258235
Client ID

Thanks for choosing H&R Block and referring your friends.

---

## Send a friend to H&R Block. We'll thank you both with cash!

### $10 for you. $10 to your friend!*

1. Give this form to a friend and have them complete the information below.
2. We'll send you a check for up to 5 clients you refer.*

| Last Name | First | MI |
| --- | --- | --- |
| Address | | |
| City | State | Zip Code |

*Valid only for new client who purchase tax prep for a federal return from a participating U.S. H&R Block office between 1/1/07 and 8/1/07. A new client is a person who did not use a H&R Block office to prepare their prior year return. Referral certificate must be presented prior to completion of initial tax prep interview. Amended returns are ineligible. Limit of five referrals per referring party and one referral per paid federal return. Cannot be redeemed by a referred client who completes tax prep within two hours of the referring party. H&R Block associates are not eligible. May not be combined with any other discount, gift or referral offer. Allow approximately 8 weeks for check delivery. Call 1-877-600-5432 for referral status.

To make an appointment call the office below. For other H&R Block locations call 1-800-HRBLOCK.

$$10 to:

LORI MILTON          DARRELL D HINSON
104 CHURCH ST        P O BOX 9951
GREENVILLE AL 36037  MONTGOMER, AL 36108
(334) 382-8670       (334) 294-5389

H&R BLOCK   For office use: 14014372258235
Client ID

Thanks for choosing H&R Block and referring your friends.

---

## Send a friend to H&R Block. We'll thank you both with cash!

### $10 for you. $10 to your friend!*

1. Give this form to a friend and have them complete the information below.
2. We'll send you a check for up to 5 clients you refer.*

| Last Name | First | MI |
| --- | --- | --- |
| Address | | |
| City | State | Zip Code |

*Valid only for new clients who purchase tax prep for a federal return from a participating U.S. H&R Block office between 1/1/07 and 8/1/07. A new client is a person who did not use a H&R Block office to prepare their prior year return. Referral certificate must be presented prior to completion of initial tax prep interview. Amended returns are ineligible. Limit of five referrals per referring party and one referral per paid federal return. Cannot be redeemed by a referred client who completes tax prep within two hours of the referring party. H&R Block associates are not eligible. May not be combined with any other discount, gift or referral offer. Allow approximately 8 weeks for check delivery. Call 1-877-600-5432 for referral status.

To make an appointment call the office below. For other H&R Block locations call 1-800-HRBLOCK.

$$10 to:

LORI MILTON          DARRELL D HINSON
104 CHURCH ST        P O BOX 9951
GREENVILLE AL 36037  MONTGOMER, AL 36108
(334) 382-8670       (334) 294-5389

H&R BLOCK   For office use: 14014372258235
Client ID

Thanks for choosing H&R Block and referring your friends.

---

## Send a friend to H&R Block. We'll thank you both with cash!

### $10 for you. $10 to your friend!*

1. Give this form to a friend and have them complete the information below.
2. We'll send you a check for up to 5 clients you refer.*

| Last Name | First | MI |
| --- | --- | --- |
| Address | | |
| City | State | Zip Code |

*Valid only for new clients who purchase tax prep for a federal return from a participating U.S. H&R Block office between 1/1/07 and 8/1/07. A new client is a person who did not use a H&R Block office to prepare their prior year return. Referral certificate must be presented prior to completion of initial tax prep interview. Amended returns are ineligible. Limit of five referrals per referring party and one referral per paid federal return. Cannot be redeemed by a referred client who completes tax prep within two hours of the referring party. H&R Block associates are not eligible. May not be combined with any other discount, gift or referral offer. Allow approximat ely 8 weeks for check delivery. Call 1-877-600-5432 for referral status.

To make an appointment call the office below. For other H&R Block locations call 1-800-HRBLOCK.

$$10 to:

LORI MILTON          DARRELL D HINSON
104 CHURCH ST        P O BOX 9951
GREENVILLE AL 36037  MONTGOMER, AL 36108
(334) 382-8670       (334) 294-5389

H&R BLOCK   For office use: 14014372258235
Client ID

Thanks for choosing H&R Block and referring your friends.

# H&R Block
# ADVANTAGE®
## Opportunities and Advice

H&R BLOCK

---

- **Plan to keep more of your refund next year:**
  A Refund Anticipation Loan (RAL) is fast and easy but it's also expensive because the lending bank charges for this service. And even if you deposit a RAL check at your own bank, you may have to wait a few days for funds to be available due to your bank's policies. Next year, why not file your return electronically and choose IRS direct deposit instead of a RAL? That way, you will avoid RAL fees and get the full amount of your refund deposited into your bank account in approximately 8-15 days. The payoff: More of your refund stays in your own pocket.

- **Getting the boss to pay your expenses:**
  Talk to your employer to get reimbursed for those job-related expenses you told us about. After all, they're for the employer's benefit - and you both get better tax treatment. Your employer can typically deduct more of the expense than you can. As an employee, you can only deduct expenses that exceed 2% of your adjusted gross income. Work on getting reimbursed - that way, you get 100% of the money back with no tax consequences.

- **Get your fair share!**
  The government uses tax dollars to fund programs that can assist you with free or discounted foods, prescription drugs, job placement, housing, health care and more. Ask your tax professional for a brochure about these programs. Or visit www.govbenefits.gov on the Internet to determine your eligibility for many of the programs. If you're age 55 or over, you may also find helpful information at www.benefitscheckup.org.

- **Need help finding child care?**
  The Child Care Aware program helps families locate quality child care and other resources. To find out more, call 1-800-424-2246, or visit www.childcareaware.org.

- **Build savings a little at a time:**
  You don't need to build a big nest egg all at once. Most banks and financial institutions offer automatic savings programs, and many employers offer automatic payroll deductions to fund a savings account. Such programs are an easy way to get started because they let you automatically save as little as $25 a month.

- **The Roth IRA - Save smart for retirement and education:**
  When you save in a Roth IRA (Individual Retirement Account), you can use some of your funds to help out with pre-retirement needs, such as education expenses for you or your child. After your account has been open five years, you can withdraw earnings penalty-free to pay for qualified education expenses. (Your regular income tax rate applies to the earnings you withdraw if you are not yet age 59 1/2.)

Affiliated Business Disclosure: H&R Block Services, Inc. and its tax preparation subsidiaries (collectively, "Block") may refer certain information about you to H&R Block Mortgage Corporation and/or Option One Mortgage Corporation. H&R Block Mortgage and Option One are indirect wholly owned subsidiaries of H&R Block, Inc. Because of this relationship, this referral may provide Block a financial or other benefit. You are NOT required to obtain a mortgage loan from H&R Block Mortgage and/or Option One. OTHER LENDERS ARE AVAILABLE. YOU SHOULD SHOP FOR THE BEST PRICES, SERVICES AND INTEREST RATES. If you obtain a loan from H&R Block Mortgage and/or Option One, you will be charged interest and fees in accordance with the mortgage loan documents and, depending on your qualification and market conditions, you will be charged between 0% to 6% of the loan amount for discount points, $250 to $595 for processing fees and $225 to $750 for loan administration fees. Not all programs are available in all areas. Program restrictions apply. H&R Block Mortgage Corporation is licensed or exempt from licensing to conduct business in all states. H&R Block Mortgage Corporation Underwriting Guidelines apply. Loans not made on properties in New Mexico and West Virginia. ©Copyright 2006. All rights reserved. Information accurate as of: 09/12/2006.

This H&R Block Advantage document provides suggestions that may help you improve your tax and financial situation. Its contents should be considered in conjunction with information you receive from other sources that are familiar with your specific circumstances. H&R Block Financial Advisors, Inc. is a dually-registered investment advisor and broker-dealer and a member of NYSE/SIPC. Banking services offered through H&R Block Bank, a Federal Savings Bank, Member FDIC. Tax services offered through subsidiaries of H&R Block Services, Inc. Mortgage services offered through H&R Block Mortgage Corporation. H&R Block, Inc., H&R Block Services, Inc., H&R Block Bank and H&R Block Mortgage Corporation are not registered broker-dealers.

# H&R Block
# ADVANTAGE®



## 2006 Tax Return Summary

---

## Federal Year over Year Comparison

### INCOME

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Wages, salaries, tips | $26,100 | $29,146 | ($3,046) |
| State/local tax refunds | $379 | $0 | $379 |
| Farm income (loss) | ($1,468) | $1,292 | ($2,760) |
| Total income | $25,011 | $30,438 | ($5,427) |

### ADJUSTMENTS

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Self-employed tax deduction | $0 | $92 | ($92) |
| Total adjustments | $0 | $92 | ($92) |

### ADJUSTED GROSS INCOME

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Total income less total adjustments | $25,011 | $30,346 | ($5,335) |

### TAXABLE INCOME

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Standard deductions | $7,550 | $7,300 | $250 |
| Exemptions | $6,600 | $6,400 | $200 |
| Taxable income | $10,861 | $15,789 | ($4,928) |

### TAX COMPUTATION

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Income tax | $1,094 | $1,844 | ($750) |
| Tax before credits | $1,094 | $1,844 | ($750) |

### CREDITS

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Child tax credit | $1,000 | $1,000 | $0 |
| Total credits | $1,000 | $1,000 | $0 |
| Tax after credits | $94 | $844 | ($750) |

### OTHER TAXES

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Self-employment tax | $0 | $183 | ($183) |
| Total tax | $94 | $1,027 | ($933) |

### PAYMENTS

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Federal withholding | $1,802 | $3,783 | ($1,981) |
| Earned income credit | $1,115 | $113 | $1,002 |
| Total payments | $2,957 | $3,896 | ($939) |

### REFUND

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Overpayment | $2,863 | $2,869 | ($6) |
| Refund due | $2,863 | $2,869 | ($6) |

### OTHER COMPUTATIONS

| | Year 2006 | Year 2005 | Change($) |
|---|---|---|---|
| Alternative minimum taxable income | $24,632 | $27,472 | ($2,840) |
| Total tax preferences and adjustments | ($379) | $5,283 | ($5,662) |
| Marginal tax bracket | 15% | 15% | |
| Filing status | Head of Household | Head of Household | |

This H&R Block Advantage document provides suggestions that may help you improve your tax and financial situation. Its contents should be considered in conjunction with information you receive from other sources that are familiar with your specific circumstances. H&R Block Financial Advisors, Inc., a subsidiary of H&R Block, Inc., offers investment services and securities products. H&R Block Financial Advisors, Inc. is a dually-registered investment advisor and broker-dealer and a member of NYSE/SIPC. Banking services offered through H&R Block Bank, a Federal Savings Bank, Member FDIC. Tax services offered through subsidiaries of H&R Block Services, Inc. Mortgage services offered through H&R Block Mortgage Corporation. H&R Block, Inc., H&R Block Services, Inc., H&R Block Bank and H&R Block Mortgage Corporation are not registered broker-dealers.

# H&R Block
# ADVANTAGE®



## Today's Services

---

**Tax Preparation**
*   Total Tax Preparation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $156.00

**H&R Block Service Fees**
*   Total H&R Block Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$156.00**

**Bank Fees**
*   Finance Charge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $50.70
*   Additional RAL Finance Charge. . . . . . . . . . . . . . . . . . . . . . . . . . . . $38.63
*   Refund Account Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $29.95
*   Total Bank Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$119.28**

**Total Fees Owed** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$275.28**

**Net Amount**
*   Check 1 (Estimated). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $908.35
*   Check 2 (Estimated). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,679.37

---

## Additional Notes:

This H&R Block Advantage document provides suggestions that may help you improve your tax and financial situation. Its contents should be considered in conjunction with information you receive from other sources that are familiar with your specific circumstances. H&R Block Financial Advisors, Inc., a subsidiary of H&R Block, Inc., offers investment services and securities products. H&R Block Financial Advisors, Inc. is a dually- registered investment advisor and broker- dealer and a member of NYSE/SIPC. Banking services offered through H&R Block Bank, a Federal Savings Bank, Member FDIC. Tax services offered through subsidiaries of H&R Block Services, Inc. Mortgage services offered through H&R Block Mortgage Corporation. H&R Block, Inc., H&R Block Services, Inc., H&R Block Bank and H&R Block Mortgage Corporation are not registered broker- dealers.

# H&R Block ADVANTAGE®



Your Personal Action Plan

## Saver's Credit: Earn a Tax Break Just for Saving

When you claim the Saver's Credit, it's like getting free money from Uncle Sam! Congress recently made the Saver's Credit a permanent tax credit so that qualifying taxpayers who save can continue to earn this dollar-for-dollar matching credit each year. It's worth up to half of the amount you place in savings, or a maximum of $1,000 per taxpayer.[1] The steps below can help you choose the right savings plan and take advantage of the Saver's Credit on your next tax return.

**Step 1**  **Identify Your Savings Goals**

Some retirement savings plans allow you to withdraw money early without penalty for certain goals like purchasing a home or funding education. To get motivated to save, list the mid-term and long-term goals you want to accomplish.

Examples of Mid-Term Goals - 1) Purchase my own home.   2) Pay for my child's education.

My Mid-Term Goals: _____

Examples of Long-Term Goals - 1) Retire by age 62.   2) Live comfortably in retirement.

My Long-Term Goals: _____

**Step 2**  **Find Out the Amount of Your Saver's Credit**

Depending on your filing status and modified adjusted gross income (AGI), your credit could be worth 10, 20 or 50% of your savings contribution.[2] In general, the lower your income, the higher your credit rate, as shown in the table below:

| Filing Status | Modified AGI | Saver's Credit Amount (Maximum credit = $1,000 per taxpayer) |
|---|---|---|
| Married Filing Jointly: | $0 - $31,000 | 50% of savings |
|  | $31,001 - $34,000 | 20% of savings |
|  | $34,001 - $52,000 | 10% of savings |
|  | Over $52,000 | Credit not available |
| Head of Household: | $0 - $23,250 | 50% of savings |
|  | $23,251 - $25,500 | 20% of savings |
|  | $25,501 - $39,000 | 10% of savings |
|  | Over $39,000 | Credit not available |
| All Other Filers: | $0 - $15,500 | 50% of savings |
|  | $15,501 - $17,000 | 20% of savings |
|  | $17,001 - $26,000 | 10% of savings |
|  | Over $26,000 | Credit not available |

1.  The credit applies to qualified retirement savings plans only. Your credit may be less than $1,000. The Saver's Credit is nonrefundable and cannot reduce your taxes below $0.

2.  Your tax professional can tell you how much of your income qualifies as "modified AGI."

This H&R Block Advantage document provides suggestions that may help you improve your tax and financial situation. Its contents should be considered in conjunction with information you receive from other sources that are familiar with your specific circumstances. H&R Block Financial Advisors, Inc., a subsidiary of H&R Block, Inc., offers investment services and securities products. H&R Block Financial Advisors, Inc. is a dually-registered investment advisor and broker-dealer and a member of NYSE/SIPC. Banking services offered through H&R Block Bank, a Federal Savings Bank, Member FDIC. Tax services offered through subsidiaries of H&R Block Services, Inc. Mortgage services offered through H&R Block Mortgage Corporation. H&R Block, Inc., H&R Block Services, Inc., H&R Block Bank and H&R Block Mortgage Corporation are not registered broker-dealers.

# H&R Block
# ADVANTAGE®



Your Personal Action Plan

---

**Step 3**   **Choose a Savings Plan**

Your tax professional can help you decide which type of plan is right for you.

Consider these tips:

- If you're eligible for a retirement savings plan through your employer, like a 401(k), or you become eligible in the future, be sure to sign up. You can make tax-deductible contributions and claim the Saver's Credit if you qualify.

- If you don't have an employer plan, or you'd like to supplement your plan with additional savings, consider opening a traditional IRA (Individual Retirement Account) or a Roth IRA. Contributions to these plans may also allow you to claim the Saver's Credit.

The table below compares features of a traditional IRA and a Roth IRA:

| Traditional IRA | Roth IRA |
|---|---|
| • Used primarily to save for retirement, also to save for college or a new home. | • Used primarily to save for retirement, also to save for college or a new home. |
| • Contributions are often tax deductible. Can reduce your taxes or increase your refund each year. | • Contributions are not tax deductible. |
| • Penalties apply for early withdrawals (except qualified expenses such as a first home purchase). | • Make tax-free withdrawals of the amount you have contributed, at any time, for any reason. |
| • Must stop contributions and begin taking withdrawals at age 70 1/2 . | • No maximum age for contributing (certain income limits apply). No minimum age at which you must take withdrawals. |
| • Qualified withdrawals are taxable. You benefit by deferring taxes on earnings until retirement (when you'll likely be in a lower tax bracket). | • Qualified withdrawals of contributions AND earnings are tax-free after five years if you are at least age 59 1/2, or certain other exceptions apply. |

---

**Step 4**   **Contribute Savings - Plan Now for Next Year**

Consider using part of your tax refund to start saving for your goals. Contributing savings this year can set you up to claim the Saver's Credit next tax season. Plus, the sooner you start, the longer your savings will have to grow.

- Ask about the H&R Block Easy IRA. If you are interested in opening a traditional or a Roth IRA, your tax professional can tell you how to open an IRA using all or part of your tax refund. Or for more information, call 1-800-HRBLOCK and select "H&R Block Easy Products."

This H&R Block Advantage document provides suggestions that may help you improve your tax and financial situation. Its contents should be considered in conjunction with information you receive from other sources that are familiar with your specific circumstances. H&R Block Financial Advisors, Inc., a subsidiary of H&R Block, Inc., offers investment services and securities products. H&R Block Financial Advisors, Inc. is a dually-registered investment advisor and broker-dealer and a member of NYSE/SIPC. Banking services offered through H&R Block Bank, a Federal Savings Bank, Member FDIC. Tax services offered through subsidiaries of H&R Block Services, Inc. Mortgage services offered through H&R Block Mortgage Corporation. H&R Block Bank, H&R Block Services, Inc., H&R Block Bank and H&R Block Mortgage Corporation are not registered broker-dealers.

| Form **8879** | IRS e- file Signature Authorization | OMB No. 1545-0074 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | ▶ Do not send to the IRS. This is not a tax return. <br> ▶ Keep this form for your records. See instructions. | **2006** |

Declaration Control Number (DCN) ▶ 00-632191-     -7

| Taxpayer's name | Social security number |
|---|---|
| DARRELL D HINSON | 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 |
| Spouse's name | Spouse's social security number |

**Part I    Tax Return Information - Tax Year Ending December 31, 2006 (Whole Dollars Only)**

| | | | |
|---|---|---|---|
| 1 | Adjusted gross income (Form 1040, line 38; Form 1040A, line 22; Form 1040EZ, line 4) | 1 | 25,011. |
| 2 | Total tax (Form 1040, line 63; Form 1040A, line 37; Form 1040EZ, line 11) | 2 | 94. |
| 3 | Federal income tax withheld (Form 1040, line 64; Form 1040A, line 38; Form 1040EZ, line 7) | 3 | 1,802. |
| 4 | Refund (Form 1040, line 74a; Form 1040A, line 45a; Form 1040EZ, line 12a, Form 1040EZ-T, line 1a) | 4 | 2,863. |
| 5 | Amount you owe (Form 1040, line 76; Form 1040A, line 47; Form 1040EZ, line 13) | 5 | |

**Part II    Taxpayer Declaration and Signature Authorization (Be sure you get and keep a copy of your return)**

Under penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2006, and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts from my electronic income tax return or request for refund. I consent to allow my intermediate service provider, transmitter, or electronic return originator (ERO) to send my return or request to the IRS and to receive from the IRS (a) an acknowledgement of receipt or reason for rejection of the transmission, (b) an indication of any refund offset, (c) the reason for any delay in processing the return or refund, and (d) the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an ACH electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of my Federal taxes owed on this return and/or a payment of estimated tax, and the financial institution to debit the entry to this account. I further understand that this authorization is to remain in full force and effect until I notify the U.S. Treasury Financial Agent to terminate the authorization. To revoke a payment, I must contact the U.S. Treasury Financial Agent at 1-888-353-4537 no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquires and resolve issues related to the payment. I further acknowledge that the personal identification number (PIN) below is my signature for my electronic income tax return or request for refund and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

[X] I authorize  HR BLOCK                           to enter or generate my PIN     **11963**
ERO firm name                                                                 do not enter all zeros
as my signature on my tax year 2006 electronically filed income tax return or request for refund.

[ ] I will enter my PIN as my signature on my tax year 2006 electronically filed income tax return or request for refund. Check this box only if you are entering your own PIN and your return or request is filed using the Practitioner PIN method. The ERO must complete Part III below.

Your signature ▶ _____ Date ▶ 02/03/2007

**Spouse's PIN: check one box only**

[ ] I authorize _____ to enter or generate my PIN  [_____]
ERO firm name                                                              do not enter all zeros
as my signature on my tax year 2006 electronically filed income tax return or request for refund.

[ ] I will enter my PIN as my signature on my tax year 2006 electronically filed income tax return or request for refund. Check this box only if you are entering your own PIN and your return or request is filed using the Practitioner PIN method. The ERO must complete Part III below.

Spouse's signature ▶ _____ Date ▶ _____

**Practitioner PIN Method Returns Only - continue below**

**Part III    Certification and Authentication - Practitioner PIN Method Only**

ERO's EFIN/PIN. Enter your six- digit EFIN followed by your five- digit self- selected PIN.     [ 63219128803 ]
                                                                              do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature for the tax year 2006 electronically filed income tax return or request for refund for the taxpayer(s) indicated above. I confirm that I am submitting this return in accordance with the requirements of the Practitioner PIN method and Publication 1345, Handbook for Authorized IRS e- file Providers of Individual Income Tax Returns.

ERO's signature ▶ _____ Date ▶ 02/03/2007

**ERO Must Retain This Form - See Instructions**
**Do Not Submit This Form to the IRS Unless Requested To Do So**

KBA   For Privacy Act and Paperwork Reduction Act Notice, see page 2 of form.                     Form 8879 (2006)

8879(D)(2006)                          FD8879D-1V 1.0

Declaration Control Number (DCN)

`0 0 - 6 3 2 1 9 1 - ☐☐☐☐☐ - 7`

**FORM**
**AL8453**

ALABAMA DEPARTMENT OF REVENUE
**Individual Income Tax Declaration for Electronic Filing**

For the year January 1 - December 31, 2006

**2006**

| Label | Your first name and initial | Last name | Your social security number |
|---|---|---|---|
| Use Alabama label. Otherwise, please type or print. | DARRELL D HINSON | | 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 |
| | If a joint return, spouse's first name and initial | Last name | Spouse's soc. sec. no. if joint return |
| | Home address (number and street). If a P. O. Box, see instructions. | Apt. no. | Telephone number (optional) |
| | P O BOX 9951 | | 334-294-5389 |
| | City, town or post office, state, and ZIP code | | FN (For official use only) |
| | MONTGOMERY AL 36108 | | |

**Part I**

**Tax Return Information**

(Whole dollars only.)

| | | | |
|---|---|---|---|
| 1 | Alabama taxable income (Form 40, line 17) . . . . . . . . . . . . . . . . . . | 1 | 15,499 |
| 2 | Total tax liability (Form 40, line 22) . . . . . . . . . . . . . . . . . . | 2 | 733 |
| 3 | Total payments (Form 40, line 26) . . . . . . . . . . . . . . . . . . | 3 | 738 |
| 4 | Refund (Form 40, line 33) . . . . . . . . . . . . . . . . . . | 4 | 5 |
| 5 | Amount you owe (Form 40, line 27) . . . . . . . . . . . . . . . . . . | 5 | 0 |

DO NOT

**Part II**

**Direct Deposit**

1  Routing number:

2  Account number:

3  Type of account: ☐ Checking  ☐ Savings

**Part III**

**Declaration of Taxpayer**

(Sign only after Part I is completed.)

Under penalties of perjury, I declare that I have compared the information contained on my return with the information I have provided to my electronic return originator and that the amounts described in Part 1 above agree with the amounts shown on the corresponding lines of my 2006 Alabama individual income tax return. To the best of my knowledge and belief this return, including any accompanying schedules and statements, is true, correct, and complete. Also, I hereby authorize the Alabama Department of Revenue to disclose to my ERO described below, any information concerning the disbursement of the refund requested or any problems encountered in the processing of my return.

☒  I authorize a representative of the Department of Revenue to discuss my return and attachments with my preparer.

**Sign Here** ▶

COPY ONLY    FILE    ▶ COPY ONLY

Your signature          Date          Spouse's signature. If a joint return, BOTH must sign.          Date

**Part IV**

**Declaration of Electronic Return Originator (ERO) and Paid Preparer**

(See Instructions.)

I declare that I have reviewed the above taxpayer's Alabama individual income tax return and that the entries on this form are complete and correctly represented based on all information of which I have any knowledge. I also declare that I have followed all other requirements described in IRS PUB. 1345, Revenue Procedures for Electronic Filing of Individual Income Tax Returns (Tax Year 2006), and the Alabama Handbook for Electronic Filers of Individual Income Tax Returns (Tax Year 2006). If I am also the paid preparer, under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete.

**ERO's Use Only**

| ERO's signature ▶ | Date 02/03/2007 | Check if also paid preparer ☒ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed) and address | H AND R BLOCK 104 CHURCH ST GREENVILLE, AL | | E.I. No. 63-1087058 ZIP Code 36037- |

**Paid Preparer's Use Only**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete.

| Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed) and address ▶ | | | E.I. No. ZIP Code |

AL29

**DO NOT MAIL TO ALABAMA DEPT. OF REVENUE**          Form AL8453 2006

8453(D)(2006)          AL8453D-1V 1.18

| Form 1040 | Department of the Treasury - Internal Revenue Service U.S. Individual Income Tax Return | 2006 | (99) | IRS Use Only - Do not write or staple in this space. |
|---|---|---|---|---|

For the year Jan. 1- Dec. 31, 2006, or other tax year beginning _____, 2006, ending _____, 20____    OMB No. 1545-0074

**Label**
Use the IRS label. Otherwise, please print or type.

DARRELL D HINSON
P O BOX 9951
MONTGOMERY, AL 36108

Your social security number **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**
Spouse's social security number

▲ You MUST enter your SSN(s) above. ▲

**Presidential Election Campaign** ► Check here if you, or your spouse if filing jointly, want $3 to go to this fund (see page 16) ►
Checking a box below will not change your tax or refund.    You    Spouse

**Filing Status**
Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above & full name below. ►
4 ☒ Head of household (with qualifying person). (See page 17.) If the qualifying person is a child but not your dependent, enter this child's name here. ►
5 ☐ Qualifying widow(er) with dependent child (see page 17)

**Exemptions**

6a ☒ Yourself. If someone can claim you as a dependent, do not check box 6a
b ☐ Spouse

Boxes checked on 6a and 6b **1**
No. of children on 6c who:

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qual. child for child tax cr. |
|---|---|---|---|
| KIARA BAILEY | 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 | NIECE | ☒ |

• lived with you **1**
• did not live with you due to divorce or separation
Dependents on 6c not entered above

If more than four dependents, see page 19.

d Total number of exemptions claimed

Add numbers on lines above ► **2**

**Income**

Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.

If you did not get a W-2, see page 23.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 26,100. |
| 8a | Taxable interest. Attach Schedule B if required | 8a | |
| b | Tax-exempt interest. Do not include on line 8a | 8b | |
| 9a | Ordinary dividends. Attach Schedule B if required | 9a | |
| b | Qualified dividends (see page 23) | 9b | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 24) | 10 | 379. |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Sch D. If not required check here ► ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | IRA distributions | 15a | b Taxable amt | 15b | |
| 16a | Pensions and annuities | 16a | b Taxable amt | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F | 18 | (1,468.) |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits | 20a | b Taxable amt | 20b | |
| 21 | Other income. List type and amount (see page 29) | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your total income ► | 22 | 25,011. |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | Archer MSA deduction. Attach Form 8853 | 23 | |
| 24 | Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24 | |
| 25 | Health savings account deduction. Attach Form 8889 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed SEP, SIMPLE, and qualified plans | 28 | |
| 29 | Self-employed health insurance deduction (see page 29) | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid  b Recipient's SSN ► | 31a | |
| 32 | IRA deduction (see page 31) | 32 | |
| 33 | Student loan interest deduction (see page 33) | 33 | |
| 34 | Jury duty pay you gave to your employer | 34 | |
| 35 | Domestic production activities deduction. Attach Form 8903 | 35 | |
| 36 | Add lines 23 through 31a and 32 through 35 | 36 | |
| 37 | Subtract line 36 from line 22. This is your adjusted gross income ► | 37 | 25,011. |

KBA  For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 80.    Form 1040 (2006)

1040 (2006)    FD1040-1V 1.25

Form 1040 (2006)  DARRELL D HINSON                                          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  Page 2

| | | | |
|---|---|---|---|
| **Tax and Credits** | 38 | Amount from line 37 (adjusted gross income) | 38 | 25,011. |

**Standard Deduction for—**

• People who checked any box on line 39a or 39b or who can be claimed as a dependent, see page 34.

• All others:

Single or Married filing separately, $5,150

Married filing jointly or Qualifying widow(er), $10,300

Head of household, $7,550

| Line | Description | Box | Amount |
|---|---|---|---|
| 39a | Check if: ☐ You were born before January 2, 1942, ☐ Blind. ☐ Spouse was born before January 2, 1942, ☐ Blind. Total boxes checked ► 39a | | |
| b | If your spouse itemizes on a separate return or you were a dual-status alien, see pg 34 & check here ► 39b ☐ | | |
| 40 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | 40 | 7,550. |
| 41 | Subtract line 40 from line 38 | 41 | 17,461. |
| 42 | If line 38 is over $112,875, or you provided housing to a person displaced by Hurricane Katrina, see page 36. Otherwise, multiply $3,300 by the total number of exemptions claimed on line 6d | 42 | 6,600. |
| 43 | Taxable income. Subtract line 42 from line 41. If line 42 is more than line 41, enter -0- | 43 | 10,861. |
| 44 | Tax. Check if any tax is from: a ☐ Form(s) 8814  b ☐ Form 4972 | 44 | 1,094. |
| 45 | Alternative minimum tax (see page 39). Attach Form 6251 | 45 | |
| 46 | Add lines 44 and 45 ► | 46 | 1,094. |
| 47 | Foreign tax credit. Attach Form 1116 if required | 47 | |
| 48 | Credit for child and dependent care expenses. Attach Form 2441 | 48 | |
| 49 | Credit for the elderly or the disabled. Attach Schedule R | 49 | |
| 50 | Education credits. Attach Form 8863 | 50 | |
| 51 | Retirement savings contributions credit. Attach Form 8880 | 51 | |
| 52 | Residential energy credits. Attach Form 5695 | 52 | |
| 53 | Child tax credit (see page 42). Attach Form 8901 if required | 53 | 1,000. |
| 54 | Credits from: a ☐ Form 8396  b ☐ Form 8839  c ☐ Form 8859 | 54 | |
| 55 | Other credits: a ☐ Form 3800  b ☐ Form 8801  c ☐ Form ____ | 55 | |
| 56 | Add lines 47 through 55. These are your total credits | 56 | 1,000. |
| 57 | Subtract line 56 from line 46. If line 56 is more than line 46, enter -0- ► | 57 | 94. |

| | | | |
|---|---|---|---|
| **Other Taxes** | 58 | Self-employment tax. Attach Schedule SE | 58 | |
| | 59 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 59 | |
| | 60 | Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 60 | |
| | 61 | Advance earned income credit payments from Form(s) W-2, box 9 | 61 | |
| | 62 | Household employment taxes. Attach Schedule H | 62 | |
| | 63 | Add lines 57 through 62. This is your total tax ► | 63 | 94. |

**Payments**

If you have a qualifying child, attach Schedule EIC.

| Line | Description | Box | Amount |
|---|---|---|---|
| 64 | Federal income tax withheld from Forms W-2 and 1099 | 64 | 1,802. | |
| 65 | 2006 estimated tax payments and amount applied from 2005 return | 65 | | |
| 66a | Earned income credit (EIC) | 66a | 1,115. | |
| b | Nontaxable combat pay election ► 66b | | | |
| 67 | Excess social security and tier 1 RRTA tax withheld (see page 60) | 67 | | |
| 68 | Additional child tax credit. Attach Form 8812 | 68 | | |
| 69 | Amount paid with request for extension to file (see page 60) | 69 | | |
| 70 | Payments from: a ☐ Form 2439  b ☐ Form 4136  c ☐ Form 8885 | 70 | | |
| 71 | Credit for federal telephone excise tax paid. Attach Form 8913 if required | 71 | 40. | |
| 72 | Add lines 64, 65, 66a, & 67 through 71. These are your total payments ► | 72 | | 2,957. |

| | | | |
|---|---|---|---|
| **Refund** Direct deposit? See page 61 and fill in 74b, 74c, and 74d, or Form 8888 | 73 | If line 72 is more than line 63, subtract line 63 from line 72. This is the amount you overpaid | 73 | 2,863. |
| | 74a | Amount of line 73 you want refunded to you. If Form 8888 is attached, check here ► ☐ | 74a | 2,863. |
| | ► b | Routing number 031101208 ► c Type: ☒ Checking ☐ Savings | | |
| | ► d | Account number 10877982420941963 | | |
| | 75 | Amount of line 73 you want applied to your 2007 estimated tax ► | 75 | |

| | | | |
|---|---|---|---|
| **Amount You Owe** | 76 | Amount you owe. Subtract line 72 from line 63. For details on how to pay, see page 62 ► | 76 | |
| | 77 | Estimated tax penalty (see page 62) | 77 | |

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see page 63)?  ☒ Yes. Complete the following.  ☐ No

Designee's name ► HR BLOCK    Phone no. ► (334) 382-8670    Personal ID number (PIN) ► 01288

**Sign Here**

Joint return? See page 17.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Field | Value |
|---|---|
| Your signature | For Info Only-Do not file |
| Date | |
| Your occupation | TRUCK DRIVER |
| Daytime phone number | |
| Spouse's signature. If a joint return, both must sign. | For Info Only-Do not file |
| Date | |
| Spouse's occupation | |

**Paid Preparer's Use Only**

| Field | Value |
|---|---|
| Preparer's signature | |
| Date | 2/3/2007 |
| Check if self-employed ☐ | |
| Preparer's SSN or PTIN | P00220062 |
| Firm's name (or yours if self-employed), address and ZIP code | H AND R BLOCK  GREENVILLE, AL 36037 |
| EIN | 63-1087058 |
| Phone no. | (334) 382-8670 |

1040 (2006)                     FD1040-2V 1.25                                   Form 1040 (2006)

**SCHEDULE F**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service (99)

# Profit or Loss From Farming

▶ Attach to Form 1040, Form 1040NR, Form 1041, Form 1065, or Form 1065-B.

▶ See Instructions for Schedule F (Form 1040).

OMB No. 1545-0074

**2006**

Attachment
Sequence No. **14**

Name of proprietor
DARRELL  D HINSON

Social security number (SSN)
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

**A** Principal product. Describe in one or two words your principal crop or activity for the current tax year.
CATTLE

**B** Enter code from Part IV
▶ 112111

**C** Accounting method:   (1) [X] Cash   (2) ☐ Accrual

**D** Employer ID number (EIN), if any

**E** Did you "materially participate" in the operation of this business during 2006? If "No," see page F-2 for limit on passive losses.   [X] Yes   ☐ No

## Part I   Farm Income - Cash Method. Complete Parts I and II (Accrual method. Complete Parts II and III, and Part I, line 11.)

Do **not** include sales of livestock held for draft, breeding, sport, or dairy purposes. Report these sales on Form 4797.

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Sales of livestock and other items you bought for resale | 1 | | | | |
| 2 | Cost or other basis of livestock and other items reported on line 1 | 2 | | | | |
| 3 | Subtract line 2 from line 1 | | | | 3 | |
| 4 | Sales of livestock, produce, grains, and other products you raised . . . . SEE ATTACHMENT | | | | 4 | 10,500. |
| 5a | Cooperative distributions (Form(s) 1099-PATR) | 5a | | 5b Taxable amount | 5b | |
| 6a | Agricultural program payments (see page F-3) | 6a | | 6b Taxable amount | 6b | |
| 7 | Commodity Credit Corporation (CCC) loans (see page F-3): | | | | | |
| a | CCC loans reported under election | | | | 7a | |
| b | CCC loans forfeited | 7b | | 7c Taxable amount | 7c | |
| 8 | Crop insurance proceeds and Federal crop disaster payments (see page F-3): | | | | | |
| a | Amount received in 2006 | 8a | | 8b Taxable amount | 8b | |
| c | If election to defer to 2007 is attached, check here . . ▶ ☐ | | 8d Amount deferred from 2005 | 8d | |
| 9 | Custom hire (machine work) income | | | | 9 | |
| 10 | Other income, including federal and state gasoline or fuel tax credit or refund (see page F-3) | | | | 10 | |
| 11 | Gross income. Add amounts in the right column for lines 3 through 10. If you use accrual method, enter the amount from Part III, line 51 . . . . . ▶ | | | | 11 | 10,500. |

## Part II   Farm Expenses - Cash and Accrual Method.

Do **not** include personal or living expenses such as taxes, insurance, repairs, on your home.

| | | | | | | |
|---|---|---|---|---|---|---|
| 12 | Car and truck expenses (see page F-4). Also attach Form 4562 | 12 | | 25 Pension and profit-sharing plans | 25 | |
| 13 | Chemicals | 13 | | 26 Rent or lease (see page F-5): | | |
| 14 | Conservation expenses (see page F-4) | 14 | | a Vehicles, machinery, and equipment | 26a | |
| 15 | Custom hire (machine work) | 15 | | b Other (land, animals, etc.) | 26b | |
| 16 | Depreciation and section 179 expense deduction not claimed elsewhere (see page F-4) | 16 | | 27 Repairs and maintenance | 27 | |
| | | | | 28 Seeds and plants | 28 | |
| 17 | Employee benefit programs other than on line 25 | 17 | | 29 Storage and warehousing | 29 | |
| | | | | 30 Supplies | 30 | |
| 18 | Feed | 18 | 1,200. | 31 Taxes | 31 | |
| 19 | Fertilizers and lime | 19 | 500. | 32 Utilities | 32 | |
| 20 | Freight and trucking | 20 | | 33 Veterinary, breeding, and medicine | 33 | |
| 21 | Gasoline, fuel, and oil | 21 | 1,568. | 34 Other expenses (specify): | | |
| 22 | Insurance (other than health) | 22 | | a ACCT FEES | 34a | 200. |
| 23 | Interest: | | | b MISC LABOR | 34b | 1,500. |
| a | Mortgage (paid to banks, etc.) | 23a | | c HAY | 34c | 4,000. |
| b | Other | 23b | | d 5 COWS DIED | 34d | 3,000. |
| 24 | Labor hired (less employment credits) | 24 | | e | 34e | |
| | | | | f | 34f | |
| 35 | Total expenses. Add lines 12 through 34f. If line 34f is negative, see instructions . . ▶ | | | | 35 | 11,968. |
| 36 | Net farm profit or (loss). Subtract line 35 from line 11. | | | | 36 | (1,468.) |

- If a profit, enter on Form 1040, line 18, and also on Schedule SE, line 1.
  If you file Form 1040NR, enter the profit on Form 1040NR, line 19.
- If a loss, you **must** go to line 37. Estates, trusts, and partnerships, see page F-6.

**37** If you have a loss, you **must** check the box that describes your investment in this activity (see page F-6).

- If you checked 37a, enter the loss on Form 1040, line 18, and also on Schedule SE, line 1.
  If you file Form 1040NR, enter the loss on Form 1040NR, line 19.
- If you checked 37b, you **must** attach Form 6198. Your loss may be limited.

37a [X] All investment is at risk.
37b ☐ Some investment is not at risk.

KBA   For Paperwork Reduction Act Notice, see page F-7 of the instructions.

1040-Sch F (2006)
Form Software Copyright 1996 - 2007 HRB Financial Corporation   FDF-1V 1.11

Schedule F (Form 1040) 2006

**SCHEDULE SE**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service   (99)

# Self-Employment Tax

▶ Attach to Form 1040.   ▶ See Instructions for Schedule SE (Form 1040).

OMB No. 1545-0074

**2006**

Attachment
Sequence No. **17**

Name of person with self-employment income (as shown on Form 1040)
DARRELL D HINSON

Social security number of person
with self-employment income ▶   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

## Who Must File Schedule SE

You must file Schedule SE if:

- You had net earnings from self-employment from other than church employee income (line 4 of Short Schedule SE or line 4c of Long Schedule SE) of $400 or more, or

- You had church employee income of $108.28 or more. Income from services you performed as a minister or a member of a religious order is not church employee income (see page SE-1).

**Note.** Even if you had a loss or a small amount of income from self-employment, it may be to your benefit to file Schedule SE and use either "optional method" in Part II of Long Schedule SE (see page SE-3).

**Exception.** If your only self-employment income was from earnings as a minister, member of a religious order, or Christian Science practitioner and you filed Form 4361 and received IRS approval not to be taxed on those earnings, do not file Schedule SE. Instead, write "Exempt-Form 4361" on Form 1040, line 58.

## May I Use Short Schedule SE or Must I Use Long Schedule SE?

**Note.** Use this flowchart only if you must file Schedule SE. If unsure, see Who Must File Schedule SE, above.



## Section A - Short Schedule SE. Caution. Read above to see if you can use Short Schedule SE.

| | | | |
|---|---|---|---|
| 1 | Net farm profit or (loss) from Schedule F, line 36, and farm partnerships, Schedule K-1 (Form 1065), box 14, code A | 1 | (1,468.) |
| 2 | Net profit or (loss) from Schedule C, line 31; Schedule C-EZ, line 3; Schedule K-1 (Form 1065), box 14, code A (other than farming); and Schedule K-1 (Form 1065-B), box 9, code J1. Ministers and members of religious orders, see page SE-1 for amounts to report on this line. See page SE-3 for other income to report | 2 | 0. |
| 3 | Combine lines 1 and 2 | 3 | (1,468.) |
| 4 | Net earnings from self-employment. Multiply line 3 by 92.35% (.9235). If less than $400, do not file this schedule; you do not owe self-employment tax ▶ | 4 | |
| 5 | Self-employment tax. If the amount on line 4 is: | 5 | |
| | • $94,200 or less, multiply line 4 by 15.3% (.153). Enter the result here and on Form 1040, line 58. | | |
| | • More than $94,200, multiply line 4 by 2.9% (.029). Then, add $11,680.80 to the result. Enter the total here and on Form 1040, line 58. | | |
| 6 | Deduction for one-half of self-employment tax. Multiply line 5 by 50% (.5). Enter the result here and on Form 1040, line 27 | 6 | 0. |

KBA   For Paperwork Reduction Act Notice, see Form 1040 instructions.

Schedule SE (Form 1040) 2006

1040-SchSE (2006)
FDSE-1V 1.13

**SCHEDULE EIC**
(Form 1040A or 1040)

Department of the Treasury
Internal Revenue Service (99)

# Earned Income Credit
## Qualifying Child Information
Complete and attach to Form 1040A or 1040
only if you have a qualifying child.



OMB No. 1545-0074

**2006**

Attachment
Sequence No. **43**

Name(s) shown on return
DARRELL D HINSON

Your social security number
420–94–1963

**Before you begin:** See the instructions for Form 1040A, lines 40a and 40b, or Form 1040, lines 66a and 66b, to make sure that (a) you can take the EIC, and (b) you have a qualifying child.

**⚠ CAUTION**

- If you take the EIC even though you are not eligible, you may not be allowed to take the credit for up to 10 years. See back of schedule for details.
- It will take us longer to process your return and issue your refund if you do not fill in all lines that apply for each qualifying child.
- Be sure the child's name on line 1 and social security number (SSN) on line 2 agree with the child's social security card. Otherwise, at the time we process your return, we may reduce or disallow your EIC. If the name or SSN on the child's social security card is not correct, call the Social Security Administration at 1-800-772-1213.

## Qualifying Child Information

| | Child 1 | | Child 2 | |
|---|---|---|---|---|
| | First name | Last name | First name | Last name |

**1 Child's name**
If you have more than two qualifying children, you only have to list two to get the maximum credit.

Child 1: KIARA BAILEY

**2 Child's SSN**
The child must have an SSN as defined on page 43 of the Form 1040A instructions or page 49 of the Form 1040 instructions unless the child was born and died in 2006. If your child was born and died in 2006 and did not have an SSN, enter "Died" on this line and attach a copy of the child's birth certificate.

Child 1: 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

**3 Child's year of birth**

Child 1: Year **2001**
If born after 1987, skip lines 4a and 4b; go to line 5.

Child 2: Year _____
If born after 1987, skip lines 4a and 4b; go to line 5.

**4 If the child was born before 1988 –**

**a** Was the child under age 24 at the end of 2006 and a student?

Child 1: ☐ Yes. Go to line 5.  ☐ No. Continue.

Child 2: ☐ Yes. Go to line 5.  ☐ No. Continue.

**b** Was the child permanently and totally disabled during any part of 2006?

Child 1: ☐ Yes. Continue.  ☐ No. The child is not a qualifying child.

Child 2: ☐ Yes. Continue.  ☐ No. The child is not a qualifying child.

**5 Child's relationship to you**
(for example, son, daughter, grandchild, niece, nephew, foster child, etc.)

Child 1: NIECE

**6 Number of months child lived with you in the United States during 2006**

- If the child lived with you for more than half of 2006 but less than 7 months, enter "7."
- If the child was born or died in 2006 and your home was the child's home for the entire time he or she was alive during 2006, enter "12."

Child 1: **12** months
Do not enter more than 12 months.

Child 2: _____ months
Do not enter more than 12 months.

**TIP** You may also be able to take the additional child tax credit if your child (a) was under age 17 at the end of 2006, and (b) is a U.S. citizen or resident alien. For more details, see the instructions for line 41 of Form 1040A or line 68 of Form 1040.

KBA   For Paperwork Reduction Act Notice, see Form 1040A or 1040 instructions.

Schedule EIC (Form 1040A or 1040) 2006

Supporting Schedules

Name: DARRELL D HINSON

2006

SSN: 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

------------------------------------------------------------------------

Schedule F - DARRELL D HINSON
LINE 4 - OTHER RAISED PRODUCTS

Description                                                        Amount
------------------------------------------------------------------------

MONTGOMERY STOCKYARD                                              19,475.
                                                                 -----------
     TOTAL                                                        10,500

FORM
**40** Alabama **2006**
Individual Income Tax Return
RESIDENTS & PART-YEAR RESIDENTS

For the year Jan. 1-Dec. 31, 2006, or other tax yr: Beginning: ● _____ Ending: ● _____

| Your social security number | Spouse's SSN if joint return |
|---|---|
| 42 0 941963 | ● |

| Your first name | Initial | Last name |
|---|---|---|
| ● DARRELL | D | HINSON |

| Spouse's first name | Initial | Last name |
|---|---|---|

Present home address (number and street or P.O. Box number)
● P O BOX 9951

| City, town or post office | State | ZIP code |
|---|---|---|
| ● MONTGOMERY | AL | 36108 |

USE BLACK INK TO COMPLETE RETURN

**Filing Status and Exemptions** Ck only 1 box.

1 ● $1,500 Single
2 ● $3,000 Married filing joint return (even if only one spouse had income)
3 ● $1,500 Married filing separate return. Complete line 5 with spouse's name and SSN.
4 ● **X** $3,000 Head of family (with qualifying person). (See pg 7 of inst.) Complete line 5.

5 Name ● KIARA BAILEY
Soc. Sec. No. ● 418534248
Relationship ● NIECE

**Income and Adjustments**

6 Wages, salaries, tips, etc. (list each employer and address separately):

| | | A - Alabama tax withheld | | B - Income | |
|---|---|---|---|---|---|
| a ALABAMA FOOD SERVICE MONTGOMERY | 6a ● | 527 00 | 6a | 13,330 | 00 |
| b CALLEN ENTERPRISES I LOWNDESBORO | 6b ● | 00 | 6b | 7,002 | 00 |
| c TEAM ONE CONTRACT SE DECATUR | 6c ● | 211 00 | 6c | 5,768 | 00 |
| d | 6d ● | 00 | 6d | | 00 |

7 Interest and dividend income (also attach Schedule B if over $1,500) . . . . . . . . . . . . . . . . . . . | 7 | ● | 0 | 00 |
8 Other income (from page 2, Part I, line 9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 | ● | (1,468) | 00 |
9 Total income. Add amounts in the income column for line 6a through line 8 . . . . . . . . . . . . . . | 9 | ● | 24,632 | 00 |
10 Total adjustments to income (from page 2, Part II, line 8) . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 | ● | 0 | 00 |
11 Adjusted gross income. Subtract line 10 from line 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 | ● | 24,632 | 00 |

**Deductions**
You Must Attach pg 2 of Fed Form 1040, Fed Form 1040A, Fed Form 1040NR, or pg 1 of 1040EZ, if claiming a deduction on line 13.

12 Check box a, if you itemize deductions, and enter amt from Sch A, line 26.
Check box b, if you do not itemize deductions, & enter standard deduction.

Box a or b MUST be checked

● a **X** Itemized Deductions ● b ☐ Standard Deduction . . . | 12 | ● | 5,739 | 00 |

13 Federal tax deduction (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . .
DO NOT ENTER THE FED TAX WITHHELD FROM YOUR FORM W-2(S) | 13 | ● | 94 | 00 |
14 Personal exemption (from line 1, 2, 3, or 4) . . . . . . . . . . . . . . . . . . . . . . . . | 14 | ● | 3,000 | 00 |
15 Dependent exemption (from page 2, Part III, line 2) . . . . . . . . . . . . . . . . . . | 15 | ● | 300 | 00 |

16 Total deductions. Add lines 12, 13, 14 and 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 | ● | 9,133 | 00 |

**Tax**
Do not Staple Form(s) W-2, W-2G, 1099 and/or 40V to this form

17 Taxable income. Subtract line 16 from line 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 | ● | 15,499 | 00 |
18 Income Tax due. Enter amount from tax table or check if from ● ☐ Form NOL-85A . . . . . . | 18 | ● | 733 | 00 |
19 Less credits from: ● ☐ Schedule CR and/or ● ☐ Schedule OC . . . . . . . . . . . . . . . . . . . | 19 | ● | 00 |
20a Net tax due Alabama. Subtract line 19 from line 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20a | ● | 733 | 00 |
b Consumer Use Tax (use worksheet on page 10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20b | ● | 0 | 00 |
21 Alabama Election Campaign Fund. You may make a voluntary contribution to the following:
a Alabama Democratic Party ☐ $1 ☐ $2 **X** none . . . . . . . . . . . . . . . . . . . . . . . . | 21a | ● | 0 | 00 |
b Alabama Republican Party ☐ $1 ☐ $2 **X** none . . . . . . . . . . . . . . . . . . . . . . . . | 21b | ● | 0 | 00 |
22 Total tax liability and voluntary contribution. Add lines 20a, 20b, 21a, and 21b . . . . . . . . . . | 22 | ● | 733 | 00 |

**Payments**

23 Alabama income tax withheld (from Forms W-2, W-2G, and/or 1099) . . . | 23 ● | 738 00 |
24 Amount paid with extension (attach Form 4868A) . . . . . . . . . . . . . . . . . | 24 ● | 00 |
25 2006 estimated tax payments (see instructions on page 11) . . . . . . . . . . | 25 ● | 00 |
26 Total payments. Add lines 23 through 25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 26 | ● | 738 | 00 |

**AMOUNT YOU OWE**

27 If line 22 is larger than line 26, subtract line 26 from line 22, and enter AMOUNT YOU OWE.
Place payment, along with Form 40V, loose in the mailing envelope (FORM 40V MUST ACCOMPANY PAYMENT.) | 27 | ● | 00 |
28 Estimated tax penalty. Also include on line 27 (see instructions page 11) . . . | 28 ● | 00 |

**OVERPAID**

29 If line 26 is larger than line 22, subtract line 22 from line 26, and enter amount OVERPAID . . . | 29 | ● | 5 | 00 |
30 Amount of line 29 to be applied to your 2007 estimated tax . . . . . . . . . . | 30 ● | 00 |

**Donation Check-offs**

31 Total Donation Check-offs from Schedule DC, line 2 . . . . . . . . . . . . . . . | 31 ● | 00 |
32 Total. Add line 30 and line 31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32 | ● | 0 | 00 |

**REFUND**

33 REFUNDED TO YOU. (You must sign this return on page 2.)
Subtract line 32 from line 29. For Direct Deposit, check here ● ☐ and complete Part V, Page 2 . . . | 33 | ● | 5 | 00 |

If an addressed envelope came with your return, please mail it and follow the instructions on the envelope. If you do not have one, mail your return to one of the addresses below.

**WHERE TO FILE FORM 40**

If you are not making a payment, mail your return to: | If you are making a payment, mail your return and payment to:
Alabama Department of Revenue | Alabama Department of Revenue
P.O. Box 154 | P.O. Box 2401
Montgomery, AL 36135-0001 | Montgomery, AL 36140-0001

Mail only your 2006 Form 40 to one of the above addresses. Prior year returns, amended returns, and all other correspondence should be mailed to Alabama Department of Revenue, P.O. Box 327464, Montgomery, AL 36132-7464.

AL29

DARRELL D HINSON

**Form 40 (2006)**

420941963  Page 2

| | | | | | |
|---|---|---|---|---|---|
| **PART I** | 1 | Alimony received | 1 | • | 00 |
| | 2 | Business income or (loss) (attach Federal Schedule C or C- EZ) | 2 | • | 00 |
| | 3 | Gain or (loss) from sale of Real Estate, Stocks, Bonds, etc. (attach Schedule D) | 3 | • | 00 |
| **Other Income** (see page 12) | 4 a | Total IRA distributions  4a • _____ 00  4b Taxable amount (see instructions) | 4b | • | 00 |
| | 5 a | Total pensions and annuities  5a • _____ 00  5b Taxable amount (see instructions) | 5b | • | 00 |
| | 6 | Rents, royalties, partnerships, estates, trusts, etc. (attach Schedule E) | 6 | • | 00 |
| | 7 | Farm income or (loss) (attach Federal Schedule F) | 7 | (1,468) | 00 |
| | 8 | Other income (state nature and source – see instructions) _____ | 8 | • | 00 |
| | 9 | **Total other income.** Add lines 1 through 8. Enter here and also on page 1, line 8 | 9 | (1,468) | 00 |

| | | | | | |
|---|---|---|---|---|---|
| **PART II** | 1 a | Your IRA deduction | 1a | • | 00 |
| | b | Spouse's IRA deduction | 1b | • | 00 |
| **Adjust-ments to Income** (see page 15) | 2 | Payments to a Keogh retirement plan and self- employment SEP deduction | 2 | • | 00 |
| | 3 | Penalty on early withdrawal of savings | 3 | • | 00 |
| | 4 | Alimony paid. Recipient's last name _____ SSN • _____ | | | |
| | | Address _____ City _____ State _____ ZIP _____ | 4 | • | 00 |
| | 5 | Adoption expenses | 5 | • | 00 |
| | 6 | Moving Expenses (Attach Federal Form 3903) to City _____ State _____ ZIP _____ | 6 | • | 00 |
| | 7 | Self- employed health insurance deduction | 7 | • | 00 |
| | 8 | **Total adjustments.** Add lines 1 through 7. Enter here and also on page 1, line 10 | 8 | 0 | 00 |

**PART III** 1a Dependents:

| (1) First name      Last name | (2) Dependent's social security number. | (3) Dependent's relationship to you. | (4) Did you provide more than one- half dependent's support? |
|---|---|---|---|
| KIARA BAILEY | • 418534248 | NIECE | Y |
| | • | | |
| | • | | |
| | • | | |

**Dependents**

Do not include yourself or your spouse

b  Total number of dependents claimed above • ___ 1

(See page 9) 2  Amount allowed. (Multiply $300 by the total number of dependents claimed on line 1b.)
Enter amount here and on page 1, line 15 ............ 2 • 300 00

| | | |
|---|---|---|
| **PART IV** | 1 | Residency  ▸ [X] Full Year  If you were a part- year resident of Alabama during 2006, indicate your period of residence:<br>Check only one box  ☐ Part Year  From _____ 2006 through _____ 2006. Total months _____ |
| **General Information** | 2 | Did you file an Alabama income tax return for the year 2005? [X] Yes ☐ No |
| | 3 | If no, state reason. |
| **All Tax-payers Must Complete This Section.** | 4 | Give name & address of present employer(s). Yours  ASPHALT CONTR DECATUR ST    MONTGOMER AL<br>Your Spouse's _____ |
| | 5 | Enter the Federal Adjusted Gross Income • $ 25,011 and Federal Taxable Income • $ 10,861 as reported on your 2006 Federal Individual Income Tax Return. |
| | 6 | Do you have income which is reported on your Fed rtn, but not reported on your AL rtn (other than your state tax refund)? ☐ Yes [X] No<br>If yes, enter source(s) and amount(s) below: (other than state income tax refund)<br>Source _____ Amount • _____ 00<br>Source _____ Amount • _____ 00 |
| | 7 | Do you have income included in this return from a grantor trust? ☐ Yes [X] No |

| | | |
|---|---|---|
| **PART V** | 1 | For Direct Deposit of your refund, complete 1, 2, and 3 below. (See Page 16 of instructions to see if you qualify.) |
| **Direct Deposit** | 1 | Routing Number: _____  2 Type: ☐ Checking  ☐ Savings |
| | 3 | Account Number: _____ |

**Sign Here In Black Ink**

• [X] I authorize a representative of the Department of Revenue to discuss my return and attachments with my preparer.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Keep a copy of this return for your records.

| | Date | Daytime telephone number | Your occupation |
|---|---|---|---|
| Your signature<br>For Information Only | | 334-294-5389 | TRUCK DRIVER |
| Spouse's signature (if joint return, BOTH must sign)<br>For Information Only | Date | Daytime telephone number | Spouse's occupation |

| **Paid Preparer's Use Only** | ▸ Preparer's signature | Date 02/03/2007 | Check if self- employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| | Firm's name (or yours if self- employed) H AND R BLOCK | | Daytime telephone no. 334-382-8670 | E.I. No. 63-1087058 |
| | Address 104 CHURCH ST GREENVILLE AL | | | ZIP Code 36037 |

AL29

40 (2006)
Form Software Copyright 1996 - 2007 H &R Block    AL40-2V 1.17

| | 1 Wages, tips, other compensation 13330.16 | 2 Federal income tax withheld 1293.34 |
|---|---|---|
| c Employer's name, address, and ZIP code | 3 Social security wages 13330.16 | 4 Social security tax withheld 826.47 |
| ALABAMA FOOD SERVICE, INC. | 5 Medicare wages and tips 13330.16 | 6 Medicare tax withheld 193.28 |
| 401 PAUL ROAD | | |
| P. O. BOX 4997 | | |
| MONTGOMERY        AL  36103-4997 | 7 Social security tips .00 | 8 Allocated tips .00 |
| d Employee's social security number 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 | 9 Advance EIC payment .00 | 10 Dependent care benefits .00 |
| e Employee's name, address, and ZIP code | 11 Nonqualified plans .00 | 12a See instructions for box 12 |
| DARRELL D        HINSON    Suff. | 13 Statutory employee / Retirement plan / Third-party sick pay | 12b |
| P O BOX 9951 | 14 Other | 12c |
| MONTGOMERY AL  36108 | | 12d |

| 15 State    Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|
| AL    149096 | 13330.16 | 527.34 | | | |

Form **W-2** Wage and Tax Statement    **2006**    Department of the Treasury—Internal Revenue Service

Copy B—To Be Filed With Employee's FEDERAL Tax Return.
This information is being furnished to the Internal Revenue Service.

a Control number 20208 DRV

Copy 2—To Be Filed With Employee's State, City, or Local Income Tax Return.

Form **W-2** Wage and Tax Statement    **2006**    Department of the Treasury—Internal Revenue Service

| | 1 Wages, tips, other compensation 13330.16 | 2 Federal income tax withheld 1293.34 |
|---|---|---|
| b Employer identification number (EIN) 63-0758041 | 3 Social security wages 13330.16 | 4 Social security tax withheld 826.47 |
| c Employer's name, address, and ZIP code | 5 Medicare wages and tips 13330.16 | 6 Medicare tax withheld 193.28 |
| ALABAMA FOOD SERVICE, INC. | 7 Social security tips .00 | 8 Allocated tips .00 |
| 401 PAUL ROAD | | |
| P. O. BOX 4997 | | |
| MONTGOMERY        AL  36103-4997 | 9 Advance EIC payment .00 | 10 Dependent care benefits .00 |
| d Employee's social security number 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 | 11 Nonqualified plans .00 | 12a |
| e Employee's name, address, and ZIP code | 13 Statutory employee / Retirement plan / Third-party sick pay | 12b |
| DARRELL D        HINSON    Suff. | 14 Other | 12c |
| P O BOX 9951 | | |
| MONTGOMERY AL  36108 | | 12d |

| 15 State    Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|
| AL    149096 | 13330.16 | 527.34 | | | |

OMB No. 1545-0008

Copy C—For EMPLOYEE'S RECORDS (see Notice to Employee on back of Copy B.)

| b Employer's identification number (EIN) | | |
|---|---|---|
| 63-1188910 | | |

| c Employer's name, address, and ZIP code | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| CALLEN ENTERPRISES INC.<br>P. O. BOX 39<br>LOWNDESBORO, AL 36752 | 7002.04 | |
| | 3 Social security wages<br>7002.04 | 4 Social security tax withheld |
| | 5 Medicare wages and tips<br>7002.04 | 6 Medicare tax withheld<br>434.13 |

| d Employee's social security number | 7 Social security tips<br>7002.04 | 8 Allocated tips<br>101.53 |
|---|---|---|
| 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 | 9 Advance EIC payment | 10 Dependent care benefits |

| e Employee's name, address, and ZIP code | 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|---|
| DARRELL            HINSON<br>P. O. BOX 9951<br>MONTGOMERY, AL 36108 | 13 Statutory employee / Retirement plan / Third-party sick pay | 12b |
| | 14 Other | 12c |
| | | 12d |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| AL | 0029121109 | 7002.04 | | | | |

Form **W-2** Wage and Tax Statement

2006

39-1908647   Department of the Treasury—Internal Revenue Service
This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

BW2EEC                NTF 2562979

---

ALSAT
DARRELL D HINSON
PO BOX 9951
MONTGOMERY AL 36108

DECATUR AL 35601
1822 6TH AVE SE
TEAM ONE CONTRACT SERVICES, LLC

| 15 State | Employer's state I.D. # | 16 State wages, tips, etc. | 17 State income tax |
|---|---|---|---|
| 18 Local wages, tips, etc. | | 19 Local income tax | 20 Locality name |

Form W-2 Wage & Tax Statement 2006      Dept. of the Treasury-IRS    OMB No. 1545-00

**1. The following information reflects your final pay statement plus employer adjustments that comprise your W-2 statement**

| Earnings Description | Wages, Tips, Other Comp. | Social Security Wages | Medicare Wage |
|---|---|---|---|
| Gross Wages | 6020.83 | 6020.83 | 6020. |
| Less Exempt Wages | | | |
| Less Deferred Comp | | | |
| Less Housing/Transportation | | | |
| Less Dependent Care | | | |
| Less Sec 125 | 252.54 | 252.54 | 252 |
| Less Excess Wages | | | |
| Taxable Wages<br>(Reported on Form W-2) | 5768.29<br>Box 1 of W-2 | 5768.29<br>Box 3 of W-2 | 5768<br>Box 5 of |

**2. Employee W-4 Profile To change your employee W-4 profile information, file a new W-4 with the payroll department**

FIT: S    2    SIT Res  ALSIT  S    2    SIT Work  ALSIT  S

Copy C For EMPLOYEE'S RECORDS

| a Control number | 1 Wages, tips, other compensation | 2 Federal income tax with |
| AFSAU | 5768.29 | 508. |
| d Employee's SSN | 3 Social security wages | 4 Social security tax with |
| 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 | 5768.29 | 357. |
| b Employer ID number | 5 Medicare wages and tips | 6 Medicare tax withheld |
| 20-0059104 | 5768.29 | 83. |

c Employer's name, address, and ZIP code

TEAM ONE CONTRACT SERVICES, LLC
2205 HWY 20 WEST
DECATUR AL 35601

e Employee's name, address, and ZIP code

DARRELL D HINSON
PO BOX 9951
MONTGOMERY AL 36108

| 7 Social security tips | 8 Allocated tips | 9 Advance EIC paymer |
| 10 Dependent care benefits | 11 Nonqualified plans | |
| 12a | | 13 Stat. Emp.  Ret.plan  3rd-party |
| 12b | | 14 Other |
| 12c | | |
| 12d | | |

This area intentionally left blank

Page  1    of W-2

---

OMB No. 1545-0901

CORRECTED (if checked) →

**Mortgage Interest Statement**

2006 FORM 1098

Copy B For Payer

*Caution: The amount shown may not be fully deductible by you. Limits based on the loan amount and the cost and value of the secured property may apply. Also, you may only deduct interest to the extent it was incurred by you, actually paid by you, and not reimbursed by another person.*

RECIPIENT'S/LENDER'S name, address, and telephone number

Vanderbilt Mortgage
and Finance Inc.
P.O. Box 9800
Maryville, TN 37802

| RECIPIENT'S federal identification no. | PAYER'S social security number |
| 620997810 | 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 |

PAYER'S/BORROWER'S name, street address (incl. apt. no.) city, state, and ZIP code

HINSON DARRELL
P.O. BOX 9951
MONTGOMERY AL 36108

1 Mortgage interest received from payer(s)/borrower(s)*
$1133.39

2 Points paid on purchase of principal residence
$

3 Refund of overpaid interest
$.00

4
$

The information in boxes 1, 2, and 3 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if the IRS determines that an underpayment of tax results because you overstated a deduction for this mortgage interest or for these points or because you did not report this refund of interest on your return.

Account number (see instructions)    890539
(keep for your records)

Department of the Treasury - Internal Revenue Service

Form 1098

**SCHEDULE A**
**(FORM 40)**

ALABAMA DEPARTMENT OF REVENUE
**Schedule A - Itemized Deductions**          **2006**

ATTACH TO FORM 40 - SEE INSTRUCTIONS FOR SCHEDULE A

| Name(s) as shown on Form 40 | Your social security number |
|---|---|
| DARRELL D HINSON | 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 |

The itemized deductions you may claim for the year 2006 are similar to the itemized deductions claimed on your Federal return, however, the amounts may differ. Please see instructions before completing this schedule. **PART-YEAR RESIDENTS:** A resident of Alabama for only a part of the year should list below only those deductions actually paid while a resident of Alabama.

| | | | | |
|---|---|---|---|---|
| **Medical and Dental Expenses** (See page 19) | **CAUTION: Do not include expenses reimbursed or paid by others.** | | | |
| | 1  Medical and dental expenses . . . . . . . . . . . . . . . . . . . | 1 | 00 | |
| | 2  Enter amount from Form 40, line 11 . . . . | 2 | 00 | |
| | 3  Multiply the amount on line 2 by 4% (.04). Enter the result . . . . . . . . . | 3 | 00 | |
| | 4  Subtract line 3 from line 1. Enter the result. If zero or less, enter -0-. . . . . . | | 4 ● 0 00 |
| **Taxes You Paid** (See page 20) | 5  Real estate taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 | 686 00 | |
| | 6  FICA Tax (Soc Sec and Medicare) and Federal Self- Employment Tax | 6 | 2,180 00 | |
| | 7  Railroad Retirement (Tier I only). . . . . . . . . . . . . . . . . . . . . . | 7 | 00 | |
| | 8  Other taxes. (List- include personal property taxes.) ▶ PERSONAL PROPERTY          40 | 8 | 40 00 | |
| | 9  Add the amounts on lines 5 through 8. Enter the total here . . . . . . . . | | 9 ● 2,906 00 |
| **Interest You Paid** (See page 20)  **NOTE: Personal interest is not deductible.** | 10a  Home mortgage interest and points reported to you on Fed Form 1098. | 10a | 2,833 00 | |
| | b  Home mortgage interest not reported to you on Federal Form 1098. (If paid to an individual, show that person's name and address.) ▶ | 10b | 00 | |
| | 11  Points not reported to you on Form 1098. . . . . . . . . . . . . . | 11 | 00 | |
| | 12  Investment interest. (Attach Form 4952A.) . . . . . . . . . . . . . . | 12 | 00 | |
| | 13  Add the amounts on lines 10a through 12. Enter the total here . . . . . . . . . | | 13 ● 2,833 00 |
| **Gifts to Charity** (See page 20) | **CAUTION: If you made a charitable contribution and received a benefit in return, see page 20.** | | | |
| | 14  Contributions by cash or check . . . . . . . . . . . . . . . . . . . | 14 | 00 | |
| | 15  Other than cash or check. (You MUST att Fed Fm 8283 if over $500.) | 15 | 00 | |
| | 16  Carryover from prior year . . . . . . . . . . . . . . . . . . . . . | 16 | 00 | |
| | 17  Add the amounts on lines 14 through 16. Enter the total here . . . . . . | | 17 ● 0 00 |
| **Casualty and Theft Loss** (Attach Fm 4684) | 18a  Enter the amount from Federal Form 4684, line 16 (See page 21) . . . . | 18a | 00 | |
| | b  Enter 10% of your Adjusted Gross Income (Form 40, line 11) . . . . . . . | 18b | 00 | |
| | c  Subtract line 18b from line 18a. If zero or less, enter -0-. . . . . . . | | 18c ● 0 00 |
| **Job Expenses and Most Other Miscellaneous Deductions** (See page 21) | 19  Unreimbursed employee expenses - job travel, union dues, job ed., etc. (You MUST attach Federal Form 2106 if required. See inst.) ▶ | 19 | 00 | |
| | 20  Other expenses (investment, tax preparation, safe deposit box, etc.). List type & amount. ▶ | 20 | 00 | |
| | 21  Add the amounts on lines 19 and 20. Enter the total . . . . . . . . . . . | 21 | 00 | |
| | 22  Multiply the amt on Form 40, line 11 by 2% (.02). Enter the result here. | 22 | 00 | |
| | 23  Subtract line 22 from line 21. Enter the result. If zero or less, enter -0-. . . . | | 23 ● 0 00 |
| **Other Miscellaneous Deductions** | 24  Other (from list on page 22 of instructions). List type and amount. ▶ | | | |
| | | | 24 ● 00 |
| **Qualified Long-Term Care Ins. Premiums** | **CAUTION: Do not include medical premiums.** | | | |
| | 25  Enter amount here . . . . . . . . . . . . . . . . . . . . . . . . . | | 25 ● 00 |
| **Total Itemized Deductions** | 26  Add the amounts on lines 4, 9, 13, 17, 18c, 23, 24, and 25. Enter the total here. Then enter on Form 40, page 1, line 12 . . . . . . . . . . . . . . . . | | 26 ● 5,739 00 |

**Schedule A (Form 40) 2006**

AL29


**H&R BLOCK**

| Client Name | Client SSN |
| --- | --- |
| DARRELL D HINSON | 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 |

## Peace of Mind® Extended Service Plan

The Peace of Mind® Extended Service Plan (the "Plan") offered by H&R Block ("Block") is available only at participating Block offices at the time your return is completed, but no later than October 31 of the year of the return due date. The Plan is separate from, and in addition to, Block's Standard Guarantee that pays penalty and interest resulting from an error in tax preparation.

The Plan is effective when paid for and signed by you and, cannot be transferred by you to others. Subject to the exceptions noted below, the Plan provides you with the following benefits with respect to the individual federal and any individual state or local returns prepared and paid for on the date of this agreement.

If your return is audited, Block will provide you with a qualified person (but not an attorney) to represent you before the tax authority should such tax authority question the accuracy of your return.

If you owe additional taxes as a result of an error in tax preparation and the error is discovered by you, your representative or a tax authority, during the period of 3 years from the filing deadlines for such returns, not including extensions, Block will pay you for such taxes up to a cumulative total of $5,000 for all such returns. Such 3 year limitation applies to your federal and state returns, including returns for those states in which the "open" period to review returns is greater than 3 years. In some cases, the correction of a specific error will involve changes on multiple returns, including State or Local tax returns, which may result in an overpayment on one return and a balance due on another. In such cases, the overpayment and balance due will be netted in determining the amount Block will pay for additional taxes owed as a result of correction of the error. Block assumes no responsibility for payment of additional taxes to a tax authority. You are responsible for providing payment of additional taxes to the tax authority.

**Before such payment, you must:**
- (a) notify Block of any government notice regarding such taxes within 60 days from the date of such notice;
- (b) promptly provide Block with copies of such notices and other documents relating to or substantiating such additional taxes;
- (c) provide Block with reasonable notice of and allow Block to attend an audit with you or as your representative with Power of Attorney;
- (d) allow Block at its sole discretion and expense, to challenge the determination that additional taxes and penalties and interest are owed; and
- (e) provide Block with your receipt as proof of your purchase of the Plan.

You may be required to include such payment as income on your return in an amount that will be indicated on any Form 1099 you receive from Block. Block is not responsible for the payment of any taxes you may owe on such income.

The Plan applies only to filed and accepted original individual resident tax returns prepared by Block for the year of the return and for which the balance due has been paid. You represent to us that you have reviewed the items on your return and that items or issues on such returns have not been, or are not currently, under examination by tax authorities as of the date of purchase indicated on your receipt that specifies the total purchase price for the Plan and which is incorporated herein.

**The Plan does not apply to:**
- (a) amended returns; 1040-NR;
- (b) non-individual returns such as employment (including taxes assessed on Form 4137 for income other than allocated tips), corporate, state and local small business, occupation tax, partnership, trust, estate, and gift tax returns;
- (c) any returns used to file for tax credits or rebates such as property tax, homestead or renters credits that are not filed in conjunction with a federal, state or local return;
- (d) the calculation of estimated tax payment vouchers, additional taxes owed as a result of an erroneous refund of your estimated tax payments by the IRS or a State or Local taxing authority;
- (e) any return for which, as of the date of such purchase, you have knowledge of additional taxes owed;
- (f) any return for which you have received on or before the date of such purchase any notification from any tax authority of examination or audit;
- (g) returns for which errors have been identified by Block prior to an assessment of additional taxes by tax authorities and can be corrected by Block within 30 days from Block's preparation of the return;
- (h) any return relating to previous years;

DARRELL  D HINSON                                           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

## Peace of Mind® Extended Service Plan

  (i)  additional taxes, penalties and interest that are assessed as the result of (i) incorrect, incomplete, false or misleading information that you have given to Block in connection with its preparation of a return; (ii) the government's inability to obtain from you sufficient records to support deductions, credits and other items on your return; (iii) your failure to timely pay the taxes as shown to be due on your return; and (iv) additional taxes assessed as the result of your desire to take a position on your return that challenges current IRS or judicial tax law guidelines or interpretation. In the event you receive a refund of any assessment that Block has paid you under the Plan, you must reimburse Block for the amount of such refund; and

  (j)  assessments of additional taxes that occur after 3 years from the filing deadline for the return, not including extensions.


### ARBITRATION IF A DISPUTE ARISES BETWEEN YOU AND H&R BLOCK

If a dispute arises between you and H&R Block, including any dispute that relates to POM, the dispute shall be settled by binding arbitration unless you opt-out of this arbitration provision. The arbitration procedures, including the procedures for you to opt-out of arbitration, are set forth in the Client Service Agreement between you and Block, in the section titled "Arbitration if a Dispute Arises Between You and H&R Block." The "Arbitration if a Dispute Arises Between You and H&R Block" section hereby is incorporated by reference.

Note:  This arbitration provision will not apply to any claims relating to the Peace of Mind Extended Service Plan, the subject matter of which is currently being asserted in any certified class action lawsuit pending against H&R Block as of November 2, 2006.

DARRELL D HINSON

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

# Peace Of Mind® Extended Service Plan

**Satisfaction**
If for any reason you are not satisfied with the terms of this Plan and want to rescind this Plan, you may obtain a full refund of the fee you paid for the Plan provided that within seven (7) days from the date of purchase you contact the district manager of the H&R Block office where your tax return was prepared and provide at that office the receipt for such payment.

**Claim Process - Frequently Asked Questions:**

**I received an inquiry from a tax authority. How do I file a claim?**
Take your tax authority notice and any related documents to your local H&R Block office. Your local H&R Block office will file a claim with the Peace of Mind Claims Department. The claim will be reviewed and processed. If the claim is approved, you will receive a check. If the claim is not approved, you will receive a letter explaining the reason for the denial.

**How long will it take to process my claim?**
It usually takes 4 - 6 weeks to reach a claim determination.

**What else do I need to know?**
Federal law states that if your tax liability is paid by someone else, the amount of that payment becomes taxable income to you. Therefore, you will need to include your Peace of Mind payment on your tax return next year. If the payment is $600 or more you will receive form 1099-MISC from H&R Block next year.

**What about penalty and interest payments?**
Payment of any penalty and interest assessed on the additional tax due may be processed separately under the conditions of H&R Block's Standard Guarantee and paid by your local office.

**Who do I contact if I have more questions?**
You should contact the H&R Block office where your claim was originally filed.

You can also speak to a client service representative by calling 1-800-HRBLOCK.

You can find additional information on our web site: www.hrblock.com/goto/peaceofmind.

**What if my claim is denied?**
You may dispute the denial by calling 1-800-HRBlock, or by submitting an email via hrblock.com, and clicking on customer support and requesting a second review. Your claim will usually be reviewed within 2 - 5 days. You will receive the final determination in writing. For New Hampshire Residents: In the event you do not receive satisfaction under this contract, you may contact the New Hampshire Insurance Department, Consumer Division, which provides oversight for consumer guaranty contracts, at 21 South Fruit Street, Suite 14, Concord NH 03301 or 603-271-2261.

My/our signature(s) below confirms that I/we understand and voluntarily agree to the terms, conditions and disclosures presented in this Agreement, including the requirement that any dispute between me/us and H&R Block be settled through binding arbitration.

Client's Name(s): <u>DARRELL D HINSON</u>

Extended Service Plan Accepted. _____    Extended Service Plan Declined.  <u>X</u>

Client's Signature: ___**Signature on file**_____    Date: _____

Spouse Signature: ___**Signature on file**_____    Date: _____

Tax Professional Signature: _____    Date: _____

## INFORMATION, IDENTIFICATION AND INSTRUCTIONS IN CONNECTION WITH APPLICATION FOR A REFUND ANTICIPATION LOAN AND A REFUND DEPOSIT ACCOUNT

System Protected by U.S. Patent Nos. 4,890,228, 5,193,057, and 5,963,921

### 1. INFORMATION

| Name of Applicant or Joint Filer | Name of Joint Applicant or Joint Filer |
|---|---|
| DARRELL D HINSON | |
| First    M.I.    Last | First    M.I.    Last |
| 3989 MASON, HOPE HULL, AL 36048 | |
| Home Address | Home Address |
| P O BOX 99, MONTGOMERY, AL 36108 | |
| Mailing Address | Mailing Address |
| Social Security/Taxpayer Identification # 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 | Social Security/Taxpayer Identification # |
| Date of Birth 10/25/1972 | Date of Birth |
| Home Phone # (334) 294-5389 (Required) | Home Phone # _____ (Required, if different) |
| Work Phone # (334) 269-5741 (Required, if employed) | Work Phone # _____ (Required, if employed) |
| Residence:  [X] Own  [ ] Rent  [ ] Other | Residence:  [ ] Own  [ ] Rent  [ ] Other |
| Checking Account: [X] Yes  [ ] No | Checking Account: [ ] Yes  [ ] No |
| Savings Account: [ ] Yes  [X] No | Savings Account: [ ] Yes  [ ] No |

### 2. IDENTIFICATION

The following unexpired identification ("ID") has been provided:

**For photo ID of Applicant or Joint Filer:**

Type of ID  DRIVERS LICENSE
ID Number, if any  5721461
Place of Issuance  AL
Date of Issuance, if any  02/21/2006    Expiration Date, if any  02/18/2010
Additional Information _____

**For photo ID of Joint Applicant or Joint Filer:**

Type of ID _____
ID Number, if any _____
Place of Issuance _____
Date of Issuance, if any _____    Expiration Date, if any _____
Additional Information _____

**For second ID of Applicant or Joint Filer, if required:**

Type of ID _____
ID Number, if any _____
Place of Issuance _____
Date of Issuance, if any _____    Expiration Date, if any _____
Additional Information _____

**For second ID of Joint Applicant or Joint Filer, if required:**

Type of ID _____
ID Number, if any _____
Place of Issuance _____
Date of Issuance, if any _____    Expiration Date, if any _____
Additional Information _____

### 3. PAYMENT INSTRUCTIONS

A. For an Instant RAL, please provide the loan proceeds by check, unless the box below is completed, in which case the loan proceeds should be provided via direct deposit into my [ ] H&R Block Card account. The account number into which I authorize my loan proceeds to be directed is

_____

The routing transit number (RTN) of the financial institution that provides this account, which is required to complete the direct deposit of my loan proceeds, is _____

B. For a Classic RAL, please provide my loan proceeds by check, unless the boxes below are completed, in which case the loan proceeds should be provided via direct deposit into my [ ] H&R Block Card account. The account number into which I authorize my loan proceeds to be directed is

_____

The routing transit number (RTN) of the financial institution that provides this account, which is required to complete the direct deposit of my loan proceeds, is _____

C. If the tax refund is greater than the amount of the RAL, please provide my proceeds of the excess refund by the same method chosen in subsection B, unless the boxes below are completed, in which case the proceeds should be provided by direct deposit into the following account: [ ] H&R Block Easy IRA   [ ] H&R Block Financial Advisors account   [ ] H&R Block Easy Savings account.

D. Notwithstanding any request above to receive proceeds by direct deposit, if the application for a RAL is approved (1) in an amount smaller than the amount specified in the Total of Payments section in the Loan Agreement and Disclosure Statement, or (2) with an itemization different than the Itemization of Amount Financed set forth in the Loan Agreement and Disclosure Statement, the RAL and any excess refund will be provided by check.

By signing below I confirm that the information set forth herein is true and correct. If I sign below as an Applicant or a Joint Applicant, I am indicating that I fully understand that I am applying for a loan. If I sign below as a Joint Filer I am indicating that I will not be personally responsible for any loan provided to the Applicant but that I agree that the Applicant may rely on our joint tax refund in applying for a loan.

| Signature on file | | Signature on file | |
|---|---|---|---|
| Applicant Signature | Date | Joint Applicant or Joint Filer Signature (if any) | Date |
| Signature on file | | | |
| Witness | | | |

Toll-Free Customer Service Number 1-888-832-5625

DARRELL D HINSON                                                                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

## LOAN AGREEMENT AND DISCLOSURE STATEMENT

In this Loan Agreement and Disclosure Statement ("Agreement"), "RAL" means a Refund Anticipation Loan, "Refund Account" means a Refund Deposit Account, "I", "me" and "my" means each person who has applied to HSBC for a RAL. "H&R Block" means each of H&R Block Services, Inc., and each of its parents, affiliates and subsidiaries (and franchisees thereof).

The following Truth in Lending Act ("TILA") disclosures are based on a RAL in the amount specified in item 9 of the Itemization of Amount Financed. I will receive a replacement TILA Disclosure Statement, including an Itemization of Amount Financed, if I am approved for a RAL in a different amount, if a prior debt to be paid is not set forth or is different than the amount set forth, or if any of the items are incorrectly stated. I may receive a duplicate copy if the RAL is disbursed to me by check.

### Truth in Lending Act Disclosure Statement

| | | |
|---|---|---|
| 1. | Amount Financed (the amount of credit provided to me or on my behalf) ................................ $ | 1,094.30 (e) |
| 2. | FINANCE CHARGE (the dollar amount the credit will cost me) .................................... $ | 50.70 (e) |
| 3. | Total of Payments (the amount I will have paid after I have made all payments as scheduled) ............. $ | 1,145.00 (e) |
| 4. | ANNUAL PERCENTAGE RATE (the cost of my credit as a yearly rate) ............................. | 140.923% (e) |

"e" = estimate                                                                    If line is left blank, amount is "0"

Creditor: My creditor is (a) HSBC Bank USA, National Association, if the office in which this Agreement was obtained is located in California, Delaware, Washington, D.C., Florida, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, or Washington, or (b) HSBC Trust Company (Delaware), National Association, if the office in which this Agreement was obtained is located in any other location (the applicable entity shall hereinafter be referred to as "HSBC").
Demand Feature: My loan will be repayable on demand or when the anticipated tax refund is electronically deposited in my Refund Account, whichever is earlier.
Payment Schedule: HSBC estimates that the Total of Payments set forth above will be due in a single payment approximately 12 days from the date of this Agreement.
Security Interest: I am providing HSBC with a security interest in my tax refund payment by the IRS, in all funds deposited in the Refund Account, and in that Refund Account.
Prepayment: If I pay off early, I will not be entitled to a refund of part or all of the Finance Charge.
Contract Reference: Refer to the Application and the accompanying Loan Agreement for additional information about nonpayment, default, any right to accelerate the maturity of the obligation, and any prepayment rebates or penalties.
Required Deposit: The Annual Percentage Rate does not take into account my required deposit.

### Itemization of Amount Financed

| | | |
|---|---|---|
| 1. | Amount paid directly to me ........................................................ $ | 908.35 (e) |
| 2. | Amount paid for Refund Account Fee to HSBC ......................................... $ | 29.95 |
| 3. | Amount paid for tax preparation to H&R Block ........................................ $ | 156.00 |
| 4. | Amount paid for prior year items owed to H&R Block ................................... $ | 0.00 |
| 5. | Amount paid for Express Filer Fee to H&R Block ...................................... $ | 0.00 |
| 6. | Amount paid for Peace of Mind to H&R Block ......................................... $ | 0.00 |
| 7. | Amount Financed (Items 1+2+3+4+5+6) ............................................. $ | 1,094.30 (e) |
| 8. | Prepaid FINANCE CHARGE (RAL Fee to HSBC) ....................................... $ | 50.70 (e) |
| 9. | Total RAL (Items 7+8) ........................................................... $ | 1,145.00 (e) |

"e" = estimate                                                                    If line is left blank, amount is "0"

### Loan Agreement

**1. Obligation on RAL**
(a) I am obligated, on the date I sign this Agreement, to accept a RAL if HSBC approves my Application, unless HSBC approves me for a RAL in an amount different than the amount set forth in the Total of Payments section in the TILA Disclosure Statement, if a prior debt to be paid is not set forth or is different than the amount set forth in the Itemization of Amount Financed, or if any of the items in the TILA Disclosure Statement or Itemization of Amount Financed are incorrectly stated. In such a case, I will be provided with a replacement TILA Disclosure Statement and I will be obligated to accept the RAL if I accept the RAL proceeds check. My loan will begin, and HSBC will earn the finance charge, when I am approved for the RAL and the proceeds check or debit card is made available.
(b) I may cancel my RAL transaction, or my obligation to accept a RAL, for up to 48 hours after I become obligated to accept the RAL. To do so, I must return to HSBC or the office where I received my RAL proceeds any check I have received (or cash in the amount of the RAL if I have cashed the check) or, if I received a debit card, cash in the amount of the RAL proceeds deposited onto the debit card, and comply with other requirements set by HSBC. I understand that, if I use my right to cancel, my finance charge and Refund Account Fee will be refunded to me and HSBC will provide me with any tax refund only after HSBC receives the refund from the IRS.
**2. Security Interest.** If I receive a RAL, I grant HSBC a security interest in the property described in the TILA Disclosure Statement as collateral for my obligations to repay the RAL and perform my other obligations under the Application and this Agreement.
**3. Deductions.** My Prepaid Finance Charge, Refund Account Fee, fees for the completion and system administration of my income tax return by H&R Block, and prior year debt owed to H&R Block shall be deducted from the proceeds of my RAL.
**4. Other Charges.** (a) I agree to pay a returned check charge of $19 if any check or automatic debit is not honored. (b) I agree to pay a periodic interest charge for each monthly period that the loan remains unpaid beginning on a date that is at least 30 days after payment of my loan is demanded, on or around the same date of each succeeding month (or if there is no such date, the last date of the month). The charge will be equal to a default periodic interest rate of 1.5% multiplied by the principal balance outstanding on the RAL on each date that the charge is imposed. (c) In the event that I pay my account by telephone, I agree to pay a $10 fee for each such payment. HSBC reserves the right to change such fee from time to time. I may call Customer Service for a current fee schedule. (d) I also agree to pay any attorney's fees and collection agency costs incurred by HSBC or its affiliates to collect any delinquent RAL as permitted by law.
**5. Instant RAL.** If I receive an Instant RAL, and if the electronic filing of my return is rejected by the Internal Revenue Service ("IRS"), I authorize H&R Block to insert my Refund Account number at HSBC, together with HSBC's routing transit number, on my signed paper returns, and mail them to the IRS.
**6. Application of Payments.** Each payment I make on the RAL will be applied in any order determined by HSBC.
**7. Debit Card.** If I receive my RAL proceeds on a debit card, I may request from H&R Block Bank, the debit card issuer, a disbursement of all or a portion of such proceeds via a check mailed to me or ACH transfer to my bank account one time at no cost. This one time request should be made to H&R Block Bank by calling 1-866-353-1266.

BY SIGNING BELOW, I AGREE TO THE TERMS OF THIS LOAN AGREEMENT, AND TO THE APPLICATION, WHICH INCLUDES AN ARBITRATION CLAUSE WHICH MAY SUBSTANTIALLY LIMIT MY RIGHTS IN THE EVENT OF A DISPUTE. I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS LOAN AGREEMENT AND DISCLOSURE STATEMENT.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.
NOTICE TO CUSTOMER
(a) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(b) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(c) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Signature on file                          Signature on file

DARRELL D HINSON                                                    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

## LOAN AGREEMENT AND DISCLOSURE STATEMENT

In this Loan Agreement and Disclosure Statement ("Agreement"), "RAL" means a Refund Anticipation Loan, "Refund Account" means a Refund Deposit Account, "I", "me" and "my" means each person who has applied to HSBC for a RAL. "H&R Block" means each of H&R Block Services, Inc., and each of its parents, affiliates and subsidiaries (and franchisees thereof).

The following Truth in Lending Act ("TILA") disclosures are based on a RAL in the amount specified in item 9 of the Itemization of Amount Financed. I will receive a replacement TILA Disclosure Statement, including an Itemization of Amout Financed, if I am approved for a RAL in a different amount, if a prior debt to be paid is not set forth or is different than the amount set forth, or if any of the items are incorrectly stated. I may receive a duplicate copy if the RAL is disbursed to me by check.

### Truth in Lending Act Disclosure Statement

| | | |
|---|---|---|
| 1. Amount Financed (the amount of credit provided to me or on my behalf) | $ | 1,679.37 (e) |
| 2. FINANCE CHARGE (the dollar amount the credit will cost me) | $ | 38.63 (e) |
| 3. Total of Payments (the amount I will have paid after I have made all payments as scheduled) | $ | 1,718.00 (e) |
| 4. ANNUAL PERCENTAGE RATE (the cost of my credit as a yearly rate) | | 76.327 % (e) |

"e" = estimate                                                    If line is left blank, amount is "0"

Creditor: My creditor is (a) HSBC Bank USA, National Association, if the office in which this Agreement was obtained is located in California, Delaware, Washington, D.C., Florida, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, or Washington, or (b) HSBC Trust Company (Delaware), National Association, if the office in which this Agreement was obtained is located in any other location (the applicable entity shall hereinafter be referred to as "HSBC").
Demand Feature: My loan will be repayable on demand or when the anticipated tax refund is electronically deposited in my Refund Account, whichever is earlier.
Payment Schedule: HSBC estimates that the Total of Payments set forth above will be due in a single payment approximately 12 days from the date of this Agreement.
Security Interest: I am providing HSBC with a security interest in my tax refund payment by the IRS, in all funds deposited in the Refund Account, and in that Refund Account.
Prepayment: If I pay off early, I will not be entitled to a refund of part or all of the Finance Charge.
Contract Reference: Refer to the Application and the accompanying Loan Agreement for additional information about nonpayment, default, any right to accelerate the maturity of the obligation, and any prepayment rebates or penalties.
Required Deposit: The Annual Percentage Rate does not take into account my required deposit.

| Itemization of Amount Financed | | |
|---|---|---|
| 1. Amount paid directly to me | $ | 1,679.37 (e) |
| 2. Amount paid for my Refund Account Fee to HSBC | $ | N/A |
| 3. Amount paid for tax preparation to H&R Block | $ | N/A |
| 4. Amount paid for prior year items owed to H&R Block | $ | N/A |
| 5. Amount paid for Express Filer Fee to H&R Block | $ | N/A |
| 6. Amount paid for Peace of Mind to H&R Block | $ | N/A |
| 7. Amount Financed (Items 1+2+3+4+5+6) | $ | 1,679.37 (e) |
| 8. Prepaid FINANCE CHARGE (RAL Fee to HSBC) | $ | 38.63 (e) |
| 9. Total RAL (Items 7+8) | $ | 1,718.00 (e) |

"e" = estimate                                                    If line is left blank, amount is "0"

### Loan Agreement

1. Obligation on RAL.
(a) I am obligated, on the date I sign this Agreement, to accept a RAL if HSBC approves my Application, unless HSBC approves me for a RAL in an amount different than the amount set forth in the Total of Payments section in the TILA Disclosure Statement, if a prior debt to be paid is not set forth or is different than the amount set forth in the Itemization of Amount Financed, or if any of the items in the TILA Disclosure Statement or Itemization of Amount Financed are incorrectly stated. In such a case, I will be provided with a replacement TILA Disclosure Statement and I will be obligated to accept the RAL if I accept the RAL proceeds check. My loan will begin, and HSBC will earn the finance charge, when I am approved for the RAL and the proceeds check or debit card is made available.
(b) I may cancel my RAL transaction, or my obligation to accept a RAL, for up to 48 hours after I become obligated to accept the RAL. To do so, I must return to HSBC or the office where I received my RAL proceeds any check I have received (or cash in the amount of the RAL if I have cashed the check) or, if I received a debit card, cash in the amount of the RAL proceeds deposited onto the debit card, and comply with other requirements set by HSBC. I understand that, if I use my right to cancel, my finance charge and Refund Account Fee will be refunded to me and HSBC will provide me with any tax refund only after HSBC receives the refund from the IRS.
2. Security Interest. If I receive a RAL, I grant HSBC a security interest in the property described in the TILA Disclosure Statement as collateral for my obligations to repay the RAL and perform my other obligations under the Application and this Agreement.
3. Deductions. My Prepaid Finance Charge, Refund Account Fee, fees for the completion and system administration of my income tax return by H&R Block, and prior year debt to wed to H&R Block shall be deducted from the proceeds of my RAL.
4. Other Charges. (a) I agree to pay a returned check charge of $19 if any check or automatic debit is not honored. (b) I agree to pay a periodic interest charge for each monthly period that the loan remains unpaid beginning on a date that is at least 30 days after payment of my loan is demanded, and on or around the same date of each succeeding month (or if there is no such date, the last day of the month). The charge will be equal to a default periodic interest rate of 1.5% multiplied by the principal balance outstanding on the RAL on each date that the charge is imposed. (c) In the event that I pay my account by telephone, I agree to pay a $10 fee for each such payment. HSBC reserves the right to change such fee from time to time. I may call Customer Service for a current fee schedule. (d) I also agree to pay any attorney's fees and collection agency costs incurred by HSBC or its affiliates to collect any delinquent RAL as permitted by law.
5. Instant RAL. If I receive an Instant RAL, and if the electronic filing of my return is rejected by the Internal Revenue Service ("IRS"), I authorize H&R Block to insert my Refund Account number at HSBC, together with HSBC's routing transit number, on my signed paper returns, and mail them to the IRS.
6. Application of Payments. Each payment I make on the RAL will be applied in any order determined by HSBC.
7. Debit Card. If I receive my RAL proceeds on a debit card, I may request from H&R Block Bank, the debit card issuer, a disbursement of all or a portion of such proceeds via a check mailed to me or ACH transfer to my bank account one time at no cost. This one time request should be made to H&R Block Bank by calling 1-866-353-1266.

BY SIGNING BELOW, I AGREE TO THE TERMS OF THIS LOAN AGREEMENT, AND TO THE APPLICATION, WHICH INCLUDES AN ARBITRATION CLAUSE WHICH MAY SUBSTANTIALLY LIMIT MY RIGHTS IN THE EVENT OF A DISPUTE. I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS LOAN AGREEMENT AND DISCLOSURE STATEMENT.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.
NOTICE TO CUSTOMER
(a) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(b) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(c) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Date:                        Signature on file                    Signature on file

# Child Tax Credit Worksheet - 2006

Name(s) **DARRELL D HINSON**                    SSN **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**

| | | | |
|---|---|---|---|
| 1. | Number of qualifying children:    1    x $1,000. Enter the result. | **1** | 1,000 |
| 2. | Enter the amount from Form 1040, line 38, Form 1040A, line 22, or Form 1040NR, line 36. | **2** | 25,011 |
| 3. | 1040 filers: Enter the total of any -<br>• Exclusion of income from Puerto Rico, and<br>• Amounts from Form 2555, lines 45 and 50; Form 2555-EZ, line 18; and Form 4563, line 15.<br>1040A and 1040NR filers: Enter -0-. | **3** | 0 |
| 4. | Add lines 2 and 3. Enter the total. | **4** | 25,011 |
| 5. | Enter the amount shown below for the taxpayer's filing status.<br>• Married filing jointly - $110,000<br>• Single, head of household, or qualifying widow(er) - $75,000<br>• Married filing separately - $55,000 | **5** | 75,000 |
| 6. | Is the amount on line 4 more than the amount on line 5?<br>[X] No.  Leave line 6 blank. Enter -0- on line 7.<br>[ ] Yes.  Subtract line 5 from line 4.<br>If the result is not a multiple of $1,000, increase it to the next multiple of $1,000. For example, increase $425 to $1,000, increase $1,025 to $2,000, etc. | **6** | |
| 7. | Multiply the amount on line 6 by 5% (.05). Enter the result. | **7** | 0 |
| 8. | Is the amount on line 1 more than the amount on line 7?<br>[ ] No. STOP You cannot take the child tax credit on Form 1040, line 53, Form 1040A, line 33, or 1040NR, line 48. You also cannot take the additional child tax credit on Form 1040, line 68 or Form 1040A, line 41, or Form 1040NR, line 62. Complete the rest of your Form 1040, 1040A, or Form 1040NR.<br>[X] Yes.  Subtract line 7 from line 1. Enter the result. Go to line 9. | **8** | 1,000 |
| 9. | Enter the amount from Form 1040, line 46, Form 1040A, line 28, or Form 1040NR, line 43. | **9** | 1,094 |

10. Add the amounts from -

| **Form 1040:** | or | **Form 1040A:** | or | **Form 1040NR:** | | |
|---|---|---|---|---|---|---|
| Line 47 | | | | Line 44 | | |
| Line 48 | | Line 29 | | Line 45 | + | |
| Line 49 | | Line 30 | | | | |
| Line 50 | | Line 31 | | | | |
| Line 51 | | Line 32 | | Line 46 | | |
| Line 52* | | | | Line 47* | + | |

\* Include only the amount from Form 5695, line 12.

Enter the total.    **10**    0

11. Are you claiming any of the following credits?
* Residential energy efficient property credit, Form 5695.
* Adoption credit, Form 8839
* Mortgage interest credit, Form 8396
* District of Columbia first-time homebuyer credit, Form 8859

[X] No.  Enter the amount from line 10.
[ ] Yes.  Complete the Line 11 worksheet to figure the amount to enter here.    **11**    0

| 12. | Subtract line 11 from line 9. Enter the result. | **12** | 1,094 |
|---|---|---|---|

13. Is the amount on line 8 of this worksheet more than the amount on line 12?
[X] No.  Enter the amount from line 8.    } This is your
[ ] Yes.  Enter the amount from line 12.    } child tax credit.
See the NOTE below.

**13**    1,000

Enter this amount on Form 1040, line 53, Form 1040A, line 33, or Form 1040NR, line 48.

Note: You may be able to take the additional child tax credit on Form 1040, line 68, Form 1040A, line 41, or Form 1040NR, line 62 only if you answered "Yes" on line 13.
• First, complete Form 1040 through line 67, Form 1040A through lines 40a, or Form 1040NR through line 61.
• Then, use Form 8812 to figure any additional child tax credit.

IWS CTC (2006)                    FDCTG-4K10

# DEPRECIATION WORKSHEET - ALL METHODS

Name(s) DARRELL D HINSON

SSN/EIN 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

Subform: 4562

- If the business-use percentage of an asset is expected to change from year to year, use a separate worksheet for that asset, recomputing the columns D through O each year.
- In states where depreciation is computed different than federal, use a separate worksheet for state depreciation.
- When more than eight assets are being depreciated, use as many worksheets as necessary.

**Business or Activity:** SCH F DARRELL D HINSON CATTLE

| | DEPRECIATION Asset Description/Location | Date Acquired (Purchased, gift, inherited, etc.) | Manner I/Y/P/E/L/C | Date Placed in Service, if different | System (MACRS, ACRS, etc.) & Class Life | A. Cost or Other Basis | B. Land/ Salvage or other adj.* | C. Qualified Basis (A-B) | D. Business Use % | E. Business Basis (C×D) |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CATTLE | 12/10/2002 | IPU | 12/10/2002 | MACRS 3 | 1858 | | 1858 | 100 | 1858 |
| 2 | CATTLE | 03/01/2002 | IPU | 03/01/2002 | MACRS 3 | 9100 | | 9100 | 100 | 9100 |
| 3 | CATCH PEN | 02/01/2002 | IPN | 02/01/2002 | MACRS 3 | 2800 | | 2800 | 100 | 2800 |
| 5 | CATTLE TRAILER | 02/10/2001 | IPU | 02/10/2001 | MACRS 3 | 1600 | | 1600 | 100 | 1600 |
| 6 | | | | | | | | | | |
| 7 | | | | | | | | | | |
| 8 | | | | | | | | | | |

\* Enter basis adjustment for clean- fuel vehicle deduction or electric vehicle credit in column B.

- In the section below, use the top row for each asset to compute depreciation for regular tax purposes, and the shaded row below it to compute depreciation for AMT purposes.
- In column O, enter the tax year at the top if the asset's recovery year below (1st, 2nd, etc.). Find the percentage from the appropriate table.
- To continue depreciation after the third year, and each recovery year, use the overflow worksheet as overflow worksheets. Enter in Column I any depreciation claimed on prior years' worksheets.

| | F. Sec. 179 Deduction | G. Special Depreciation Allowance, if any (col. G × 30% or 50%) | H. Depreciable Amount (E-F)** | I. | J. Recovery Period | K. Method and Convention | L. Prior Depreciation Claimed | M. Date of Disposition | N. Depreciation Computation Year: 2006 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Rec. Year | Depr. (I×%) | % | Rec. Year | Depr. (I×%) | Year: % | Rec. Year | Depr. (I×%) |
| 1 | | | 1858 | 1858 | 3 | 150DB HY | 1858 | | 5 | 0.0 | | | | | | |
| AMT | | | 1858 | 1858 | 3 | HY | 1858* | | 5 | 0.0 | | | | | | |
| 2 | | | 9100 | 9100 | 3 | 150DB HY | 9100 | | 5 | 0.0 | | | | | | |
| AMT | | | 9100 | 9100 | 3 | HY | 9100 | | 5 | 0.0 | | | | | | |
| 3 | | 840 | 2800 | 1960 | 3 | 150DB HY | 1960 | | 5 | 0.0 | | | | | | |
| AMT | | | | | | | | | | | | | | | | |
| 4 | | | 1600 | 1600 | 3 | 150DB HY | 1600 | | 6 | 0.0 | | | | | | |
| AMT | | | 1600 | 1600 | 3 | HY | 1600 | | 6 | 0.0 | | | | | | |
| 5 | | | | | | | | | | | | | | | | |
| AMT | | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | | |
| AMT | | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | | |
| AMT | | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | | |
| AMT | | | | | | | | | | | | | | | | |

\*\* Reduce the result by any investment credit basis adjustment before entering the figure in column G.
For qualified assets placed in service after September 10, 2001, and before January 1, 2005.

\* System calculated prior depreciation

Rev. 10/05

WS Deprec (2005)
Form Software Copyright 1996 - 2007 H&R Block Tax Services, Inc.    FDWS39-1V1.2

Name DARRELL D HINSON                                      SSN 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

# Worksheet B. - Earned Income Credit (EIC) - Line 63

## PART 1  Self-Employed and People With Church Employee Income Filing Schedule SE

1a. Enter the amount from Schedule SE, Section A, line 3, or Section B, line 3, whichever applies . . . **1a.** _____

b. Enter any amount from Schedule SE, Section B, line 4b, and line 5a . . . . . . . **b.** _____

c. Combine lines 1a and 1b . . . . . . . . . . . . . . . **c.** _____

d. Enter the amount from Schedule SE, Section A, line 6, or Section B, line 13, whichever applies . **d.** _____

e. Subtract line 1d from 1c . . . . . . . . . . . . . . **e.** _____

## PART 2  Self-Employed NOT Filing Schedule SE

2a. Enter any net farm profit (or loss) from Schedule F, line 36, and from farm partnerships, Schedule K-1 (Form 1065), box 14, code A. **2a.** _____ (1,468)

b. Enter any net profit (or loss) from Schedule C, line 31; Schedule C-EZ, line 3; Schedule K-1 (Form 1065), box 14, code A (other than farming); and Schedule K-1 (Form 1065-B), box 9 . . . . . **b.** _____

c. Combine lines 2a and 2b . . . . . . . . . . . . . . **c.** _____ (1,468)

## PART 3  Statutory Employees Filing Schedule C or C-EZ

3. Enter the amount from Schedule C, line 1, or Schedule C-EZ, line 1, that you are filing as a statutory employee . . **3.** _____

## PART 4  All Filers Using EIC Worksheet B

4a. Enter earned income from Worksheet 2, line 4 . . . . . . . . . **4a.** _____ 26,100

b. Combine lines 1e, 2c, 3, and 4a. This is the total earned income . . . . . **b.** _____ 24,632

5. If the taxpayer has:

  • 2 or more qualifying children, is line 4b less than $36,348 ($38,348 if married filing jointly)?

  • 1 qualifying child, is line 4b less than $32,001 ($34,001 if married filing jointly)?

  • No qualifying children, is line 4b less than $12,120 ($14,120 if married filing jointly)?

  [X] Yes. Enter the amount from line 4b on line 6.    [ ] No. STOP. You cannot take the credit.

## PART 5  All Filers Using Worksheet B

6. Enter the total earned income from Part 4, line 4b, of this worksheet . . . . **6.** _____ 24,632

7. Look up the amount on line 6 above in the EIC Table in the Appendix to find the credit. Enter the credit here . . . **7.** _____ 1,179
   If line 7 is zero, STOP. You cannot take the credit.

8. Enter the amount from Form 1040, line 38 . . . . . . . . . **8.** _____ 25,011

9. Are the amounts on lines 8 and 6 the same?

  [ ] Yes. Skip line 10; enter the amount from line 7 on line 11.    [ ] No. Go to line 10.

## PART 6  Filers Who Answered "No" on Line 9

10. If the taxpayer has:

  • No qualifying children, is the amount on line 8 less than $6,750 ($8,750 if married filing jointly)?

  • 1 or more qualifying children, is the amount on line 8 less than $14,850 ($16,850 if married filing jointly)?

  [ ] Yes. Leave line 10 blank; enter the amount from line 7 on line 11.

  [X] No. Look up the amount on line 8 in the EIC Table in the Appendix to find the credit. Enter the credit here . . **10.** _____ 1,115
  Look at the amounts on lines 10 and 7. Then, enter the smaller amount on line 11.

## PART 7  Earned Income Credit

11. This is the earned income credit . . . . . . . . . . . **11.** _____ 1,115

Enter this amount on Form 1040, line 66a.

Reminder -

If the taxpayer has a qualifying child, complete and attach Schedule EIC.

⚠ CAUTION  If the EIC for a year after 1996 was reduced or disallowed, see Chapter 5 to find out if the taxpayer must file Form 8862 to take the credit for 2005.

Name  DARRELL D HINSON                                          SSN  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

## Worksheet 1. Investment Income If You Are Filing Form 1040

### Interest and Dividends

1. Enter any amount from Form 1040, line 8a . . . . . . . . . . 1. _____0_
2. Enter any amount from Form 1040, line 8b, plus any amount on Form 8814, line 1b . . 2. _____0_
3. Enter any amount from Form 1040, line 9a . . . . . . . . . 3. _____0_
4. Enter the amount from Form 1040, line 21, that is from Form 8814 if you are filing that form to report your child's interest and dividend income on your return (See instructions for line 4 if your child received an Alaska Permanent Fund dividend.) . 4. _____0_

### Capital Gain Net Income

5. Enter the amount from Form 1040, line 13. If the amount on that line is a loss, enter zero . . 5. _____0_
6. Enter any gain from Form 4797, Sales of Business Property, line 7. If the amount on that line is a loss, enter zero . (But, if lines 8 and 9 of Form 4797 are completed, enter the amount from line 9 instead.) 6. _____0_
7. Subtract line 6 of this worksheet from line 5 of this worksheet. (If the result is less than zero, enter zero.) . . 7. _____0_

### Royalties and Rental Income from Personal Property

8. Enter any royalty income from Schedule E, line 4, plus any income from the rental of personal property shown on Form 1040, line 21 . . . . . . . . 8. _____0_
9. Enter any expenses from Schedule E, line 21, related to royalty income, plus any expenses from the rental of personal property deducted on Form 1040, line 36 . . . . 9. _____0_
10. Subtract the amount on line 9 of this worksheet from the amount on line 8 (If the result is less than zero, enter zero.) . 10. _____0_

### Passive Activities

11. Enter the total of any net income from passive activities (included on Schedule E, lines 26, 29a (col. (g)), 34a (col. (d)), and 40) . . . . . . 11. _____0_
12. Enter the total of any losses from passive activities (included on Schedule E, lines 26, 29b (col. (f)), 34b (col. (c)), and 40) . . . . . . 12. _____0_
13. Combine the amounts on lines 11 and 12 of this worksheet. (If the result is less than zero, enter zero.) . 13. _____0_
14. Add the amounts on lines 1, 2, 3, 4, 7, 10, and 13. Enter the total. **This is your investment income** . 14. _____0_
15. Is the amount on line 14 more than $2,800?

   ☐ **Yes.** You cannot take the credit;

   ☒ **No.** Go to Question 5 in Step 2 of the Form 1040 instructions to find out if the credit can be taken (unless using this publication to find out if the taxpayer can take the credit; in that case, go to Rule 7)

## Worksheet 2. Earned Income

1. Enter amount from Form 1040, line 7* . . . . . . . . . 1. ___26,100_

2. Subtract, if included on line 7, any:
   - Taxable scholarship or fellowship grant not reported on a Form W-2.
   - Amount paid to an inmate in a penal institution for work (put "PRI" and the amount subtracted on the dotted line next to line 7 of Form 1040).
   - Amount received as a pension or annuity from a nonqualified deferred compensation plan or a nongovernmental section 457 plan (put "DFC" and the amount subtracted on the dotted line next to line 7 of Form 1040). This amount may be shown in box 11 of the Form W-2. If taxpayer received such an amount but box 11 is blank, contact the employer for the amount received as a pension or annuity. . . } 2. _____

3. Add all of your nontaxable combat pay (and your spouse's if filing jointly) if you elect to include it in earned income.** Also enter this amount on Form 1040, line 66b. See Combat pay, Nontaxable on this page. . . 3. _____

4. **EARNED INCOME** . . . . . . . . . . . . . 4. ___26,100_

\* **Church Employees**. Determine how much of the amount on Form 1040, line 7, was also reported on Schedule SE, line 5a. Subtract that amount from the amount on Form 1040, line 7, and enter the result on line 1.

\*\* The election cannot be made on the return of a taxpayer whose tax year ended before October 5, 2005, due to his or her death. **Clergy.** The following instructions apply to ministers, members of religious orders who have not taken a vow of poverty, and Christian Science practitioners. If you are filing Schedule SE and the amount on line 2 of that schedule includes an amount that was also reported on Form 1040, line 7:

1. Determine how much of the amount on Form 1040, line 7, was also reported on Schedule SE, line 2.
2. Subtract that amount from the amount on Form 1040, line 7. Enter the result on line 1.

MONTGOMERY, AL 36101

| | 5 Medicare wages and tips 2870.00 | 6 Medicare tax withheld 41.6 |
|---|---|---|
| | 7 Social security tips | 8 Allocated tips |

**d** Employee's social security number
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

| | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|

**e** Employee's name, address, and ZIP code
DARRELL        HINSON

P.O BOX 9951
MONTGOMERY, AL 36108

| 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|
| 13 Statutory employee ☐  Retirement plan ☐  Third-party sick pay ☐ | 12b |
| 14 Other | 12c |
| | 12d |

| 15 State AL | Employer's state ID number 1.89040-9 | 16 State wages, tips, etc. 2870.00 | 17 State income tax 99.88 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|

Form **W-2** Wage and Tax Statement        **2004**

Copy C—For EMPLOYEE'S RECORDS. (See Notice to Employee on back of Copy B.)

Department of the Treasury—Internal Revenue Service

Safe, accurate, FAST! Use **irs e-file**

---

## - Instant Money -

Send A Friend to H&R Block for tax preparation, and we'll thank you both with cash! Look in your tax return packet or contact your H&R Block Tax Professional for more details. (at participating locations only)

 **H&R BLOCK**

---

TRUTH IN LENDING ACT (TILA) DISCLOSURES

(faded, largely illegible text)

ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| | **$908.35 |
| | ***$29.95 |
| | ***$156.00 |
| | ***$0.00 |
| | ***$0.00 |
| | **$1094.30 |
| | **$50.70 |

1. Amount Financed (the amount of credit provided to me or on my behalf)  **$1094.30
2. FINANCE CHARGE (the dollar amount the credit will cost me.)  ****$50.70
3. Total of Payments (the amount I will have paid after I have made all payments as scheduled.)  **$1145.00
4. ANNUAL PERCENTAGE RATE (the cost of my credit as a yearly rate.)  140.923%
"e" = Estimate

HSBC/TFS Customer Service 1-800...