IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DARRELL HINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 2:05cv971-ID |
| | ) |
| CHELSEA INDUSTRIES, INC., | ) |
| | ) |
| Defendant. | ) |

**CHELSEA INDUSTRIES, INC. AND WEBSTER INDUSTRIES, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant Chelsea Industries, Inc. and Webster Industries, Inc.[1], (hereinafter collectively referred to as "Webster"), and submits this Memorandum of Law in Support of its Motion for Summary Judgment filed in the above styled cause of action.

**I.    INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff Darrell Hinson filed this lawsuit against Webster on or about October 11, 2005, alleging that Webster had discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. Section 1981. Specifically, Hinson argues that he was wrongfully terminated for committing safety violations while a Caucasian employee that committed the same violations was not discharged. Webster vehemently denies any liability with respect to these purported claims and as demonstrated below is entitled to judgment as a matter of law with respect to all of them.

---

[1]Chelsea Industries, Inc., is the proper party to this action. The original Complaint named Webster Industries.

II.   **STATEMENT OF UNDISPUTED FACTS**

On November 28, 2001, Hinson applied for a truck driver's position with Webster. [See Affidavit of William Barton, attached hereto as Exhibit A; see also Driver's Application, attached hereto as Exhibit "B"]. Hinson began employment with Webster as a local truck driver on March 18, 2002. [Exh. A, ¶ 5].

On April 11, 2004, Hinson drove a trailer away from the loading dock without performing the mandatory tasks required of a Webster truck driver before he or she can pull the truck away from the loading dock. [Exh. A, ¶ 9, 12]. Hinson's failure to perform the mandatory procedures resulted in him leaving the loading dock with an employee on a forklift inside his trailer. [Exh. A, ¶ 9, 12]. After learning that a co-employee was in the trailer, Hinson continued to operate the vehicle. [Exh. A, ¶ 10].

Webster's safety procedures require all drivers to perform certain tasks before leaving the loading dock.[Exh. A, ¶ 11] Specifically, a truck driver must: (1) go inside the trailer and pull the dock plate; and (2) then place safety chains across the dock doors. [Exh. A, ¶ 11]. Hinson violated Webster's safety procedures by leaving the loading dock before pulling the dock plate and before placing the safety chains across the dock doors. [Exh. A, ¶ 12]. He also continued to operate his vehicle after learning that an employee was on a forklift inside his trailer. [Exh. A, ¶ 13]

On April 14, 2004, Hinson was suspended while the incident was investigated. [Exh. A, ¶ 16; see also Personnel Documentation for Employee Progressive Disciplinary Action, attached hereto as Exhibit "C"; see also Complaint, attached hereto as Exhibit "D"]. On April 20, 2004, Webster terminated Hinson. [Exh. A, ¶ 16; see also Exh. D; see also Personnel Documentation for Employee Progressive Disciplinary Action, attached hereto as Exhibit "E"]. Alvin Pugh, an African

2

American male, was awarded Hinson's position following his termination. [Exh. A, ¶ 18].

### III.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). Mere allegations in a pleading are not enough to create a genuine issue of material fact as against a showing of evidence contrary to the allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)("mere existence of some alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment. . .") (emphasis in the original). Once the moving party has made a showing that there is no genuine issue of material fact, the non-moving party must then present specific facts creating such an issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("summary judgment is not a disfavored procedural shortcut but an integral part of the Federal Rules").

Federal courts have confirmed the specific and proper application of the Supreme Court's summary judgment standard to cases involving allegations of employment discrimination. For example, in *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568 (7th Cir. 1989), the court expressly stated:

> The workload crisis of the federal courts, and realization that Title VII is occasionally or perhaps more than occasionally used by plaintiffs as a substitute for principles of job protection that do not yet exist in American law, have led the courts to take a critical look at efforts to withstand . . . summary judgment. A district court judge faced with such a motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed.

879 F.2d at 1572-73. "Summary judgments for defendants are not rare in employment discrimination cases." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). This

case is one where summary judgment should be granted because, at best, Mr. Hinson's evidence is "merely colorable"—not "significantly probative."

At all times, a plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. See *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2747-48 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). The Supreme Court has established the basic allocation of burdens and order of proof in a Title VII case where the plaintiff is alleging disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981).[2]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a prima facie case of discrimination. Second, once the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination. *McDonnell Douglas*, 93 S. Ct. at 1824-25; *Burdine*, 101 S. Ct. at 1093-94. Because the plaintiff bears the initial burden of proof with respect to the prima facie elements, summary judgment in favor of the defendant is appropriate when the plaintiff fails to adduce evidence to establish each element, or where the moving party showed the absence of facts to support each element of the claims that she is asserting. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993).

---

[2]The *McDonnell Douglas/Burdline* allocation scheme is only applicable in cases, such as this one, where there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

4

If the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory justification for the adverse employment decision, thereby rebutting the prima facie case. See *Hicks*, 113 S. Ct. at 2747. The Eleventh Circuit has emphasized, however, that in determining whether the plaintiff has refuted the employer's articulated legitimate reason, the "court does not sit as a super-personnel department that re-examines an entity's business decision . . . no matter how mistaken a firm's managers." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986), cert. denied, 479 U.S. 1034 (1987).

Once a defendant meets its light burden of production, the plaintiff's prima facie case is "rebutted, destroyed, and no longer relevant." *Hicks*, 113 S. Ct. at 2747; *Burdine*, 101 S. Ct. at 1095. The plaintiff can then only survive the defendant's motion for summary judgment if she can establish sufficient, concrete and affirmative evidence to show that the defendant's reason was a pretext for discrimination, by showing "both that the reason was false, and that discrimination was the real reason." *Hicks*, 113 S. Ct. at 2752 (emphasis in original).

## IV.   ARGUMENT

### (1)   Plaintiff's Prima Facie Case[3]

---

[3] Hinson's Complaint is limited to alleged race discrimination claims. However, in his Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), Hinson claims he was discriminated against because of a disability in violation of American with Disabilities Act ("ADA"). Although Hinson does not make a claim of discrimination in violation of the ADA in his Complaint filed with this Court, he does reference in his interrogatory responses that he is relying upon witnesses who will testify that Webster has terminated other employees due to disabilities. [Exh. F, p. 6]. Briefly, Hinson was stabbed in his neighborhood. [Exh. A, ¶ 6]. As a result of the stabbing underwent medical treatment.[Exh. A, ¶ 6]. In accordance with Webster's short term disability policy, Hinson received nearly two months of disability benefits. [Exh. A, ¶ 6]. Thereafter, Hinson returned to his employment with Webster without any limitations. [Exh. B, ¶ 7]. In order to maintain an ADA claim, Hinson must establish that he was disabled, qualified to perform

Hinson alleges 'disparate treatment' based on race, in violation of Title VII and Section 1981[4]. The elements of a claim of race discrimination under 42 U.S.C. §1981 are the same as a Title VII disparate treatment claim in the employment context. *Gaston v. Home Depot USA, Inc.*, 129 F.Supp.2d 1355 (S.D. Fla. 2001)(citing *Peterson v. BMI Refractories*, 132 F.3d 1405, 1412 n.13 (11th Cir.1998)). Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment because of such person's race, color, religion, sex or national origin." *Tolbert v. Briggs and Stratton Corporation*, 510 F.Supp.2d 549, 552 (M.D.Ala.2007)(quoting 42

---

with reasonable accommodation, and he was terminated because of his disability. *See Pritchard v. Southern Company Services,* 92 F.3d 1130, 1132 (11th Cir.1996). The ADA defines a 'disability' as one that is substantially limited in one or more major life activities due to a physical or mental impairment or he is regarded as having such an impairment. Hinson provided Webster with medical documentation that he was fully recovered and able to return to his employment without any limitation. Accordingly, Hinson neither suffered from a disability nor was he perceived to have suffered a disability. [Exh. A, ¶ 8]. Therefore, Hinson is unable to establish a prima facie case of ADA discrimination. To the extent Hinson seeks to recover under an ADA charge, Webster is entitled to a judgment as a matter of law based upon the absence of a disputed material fact and the fact Hinson cannot establish the necessary elements of an ADA claim sufficient to defeat summary judgment. Further, even if we assume Hinson can establish a prima facie case, Webster has offered a legitimate non-discriminating explanation for Hinson's termination. As set forth herein, Hinson cannot show that Webster's explanation is pretxtual.

[4]The Complaint only asserts a disparate treatment theory – that Hinson received more severe treatment than a similarly situated non-African-American. However, in Hinson's discovery responses, he cites to witnesses who will provide testimony concerning Alvin Pugh. [Exh. F, p. 7]. Mr. Pugh replaced Hinson after he was terminated. Mr. Pugh is an African-American male. [Exh. A, ¶ 18]. To the extent, Hinson seeks to allege race discrimination upon a theory that he was qualified for a position, yet replaced with a non-African-American, he cannot. After Hinson was terminated for committing serious safety violations, Webster internally posted the position and ultimately awarded the position to Mr. Pugh. [Exh. A., ¶ 17-18]. Accordingly, Hinson cannot maintain a race discrimination charge based upon a theory he was replaced by a non-African-American in violation of Title VII. Furthermore, even if Hinson could establish a prima facie case under such a theory, he cannot establish that Webster's proffered reason for termination (failure to pull dock plate and failure to place safety chains on dock doors before leaving a loading dock **and** operating a vehicle knowing an employee was inside the trailer on a forklift) are pretextual.

U.S.C. §2000e-2).

In a disparate-treatment case, "the plaintiff must prove that the employer acted with discriminatory purpose, motive or intent." *Id.* (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir.2002). If the plaintiff seeks to establish a disparate treatment case by circumstantial evidence, the court is guided by the burden shifting framework set forth in *McDonnell Douglas, supra.* and *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Pursuant to *McDonnell Douglas*, in order to establish a prima facie case of disparate treatment in violation of Title VII or Section 1981, Hinson must first establish that (1) he belongs to a protected class; (2) he has engaged in conduct similar to that of persons outside of the protected class; and (3) similarly situated persons outside of the protected class received more favorable treatment. *Gaddis v. Russell Corporation*, 242 F.Supp.2d 1123 (M.D.Ala.2003)(citing *Smith v. Int'l Paper Co.*, 160 F.Supp.2d 1335, 1340 (M.D.Ala.2001)).

It is undisputed that Hinson is in a protected class and that he was subjected to termination. However, Webster strongly denies that Hinson engaged in conduct similar to that of a white employee and Hinson received less favorable treatment. Employees are similarly situated when they are involved in or accused of similar misconduct yet disciplined in different ways; however, the burden remains with the plaintiff to show the similarity between his conduct and that of other employees who were treated differently, and not on the defendant to disprove their similarity. *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989).

In order for Hinson to establish this aspect of a prima facie case, he must show that his misconduct (failure to follow the procedures for pulling a trailer from the loading dock **and**

knowingly and intentionally driving a truck with an employee on a forklift inside the trailer), was similar to that of a non-African-American employee who committed the same or similar violations, and that Webster imposed more severe discipline on Hinson than that imposed on the non-African-American employee for similar violations. Further, in order to establish a case of discriminatory motive in a disparate disciplinary case, a plaintiff must show that middle and upper managers were aware of, and consciously overlooked, similar violations by other employees when plaintiff was disciplined. *Jones*, 874 F.2d at 1541-42 (11th Cir. 1989).

Hinson alleges that Webster permitted "Paul", a white employee, to pull "the trailer off the dock at the plant" without suffering termination of his employment. [See Hinson's Responses to Interrogatories and Request for Production of Documents, attached hereto as Exhibit "F", p. 2]. Although Hinson does not specify who "Paul" is and which department "Paul" may have worked in at Webster, we will assume for discussion purposes that "Paul" is also a local truck driver with Webster and that "Paul" is non African-American. There is only one non African-American similarly situated local truck driver named "Paul" employed by Webster as of April 20, 2005, the date Hinson was terminated. That person's full name is Paul Hugh Walden. (hereinafter referred to as "Mr. Walden"). [Exh. A, ¶ 19].[5] Mr. Walden began his employment with Webster on March 19, 2003. [Exh. A, ¶ 19]. Mr. Walden worked for Webster as a local truck driver. [Exh. A, ¶ 19].

---

[5]Nels Paul Jacobson is also a white male employed by Webster at the time of Hinson's termination. [Exh. A, ¶ 21]. Although he too was a truck driver, he was not similarly situated as Mr. Jacobson was an over the road driver (classified as TRU), while Hinson was a local driver (classified as local delivery only - LDO). [Exh. A, ¶ 21]. Under Eleventh Circuit precedent, two employees must be similarly situated because if they are not, then the different application of rules does not constitute illegal discrimination. *Gaddis, supra.* (citing *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir.1999)). Further, Webster denies that Mr. Jacobson ever committed any safety violation similar to those committed by Hinson. [Exh. A, ¶ 21].

8

In order to determine whether employees are similarly situated for purposes of a prima facie case of disparate treatment, a court must consider whether the employees are involved in the same or similar conduct and are treated in different ways. *Gaddis, supra* (citing *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir.2001)). Further, the individual being compared to the complainant must be "**nearly identical** to the plaintiff's so that courts will not second-guess an employer's reasonable decisions." *Id.*(emphasis added).

Hinson was terminated because he failed to follow the safety procedures for pulling a trailer from the loading dock. Before a truck driver can pull away from the loading dock, a truck driver must pull the dock plate and then the driver must place safety chains across the dock doors. [Exh. A, ¶ 11]. Hinson failed to pull the dock plate before leaving the loading dock. [Exh. A, ¶ 12]. Hinson failed to place the safety chains across the dock doors before leaving the loading dock. [Exh. A, ¶ 12]. Hinson intentionally operated his vehicle **knowing** a co-employee was on a forklift inside his trailer. [Exh. A, ¶ 13]. Hinson's conduct is egregious and could have killed the co-employee. [Exh. A, ¶ 14]. It further could have caused significant property damage to the forklift. [Exh. A, ¶ 15].

In support of his discrimination claim, Hinson argues that Mr. Walden was not "written up for pulling the trailer off the dock at the plant." [Exh. F, p. 2]. Webster denies that Mr. Walden committed similar safety violations as those of Hinson. [Exh. A, ¶ 20]. Mr. Walden has never not followed the safety procedures outlined above. [Exh. A, ¶ 20]. Mr. Walden has never failed to pull the dock plate before leaving the loading dock. [Exh. A, ¶ 20]. Mr. Walden has never failed to place the safety chains across the dock doors before leaving the loading dock.[Exh. A, ¶ 20]. Further, Mr. Walden has never intentionally driven a truck away from a loading dock knowing there was an employee inside the trailer on a forklift. [Exh. A, ¶ 20]. Further, Hinson's comparative example,

9

assuming it occurred, is not similar to that of the serious infractions committed by Hinson. Simply pulling a trailer from the dock does not necessarily constitute a safety violation. Further, Hinson was not terminated for simply pulling a trailer from the dock – rather, he was terminated for failure to pull the dock plate and place the safety chains across the dock doors before leaving the loading dock (which resulted in having an employee inside the trailer on a forklift) and for continuing to operate the truck with the knowledge that someone was inside the trailer on a forklift. [Exh. A, ¶¶ 9-16]. Accordingly, Hinson has failed to establish that a similarly situated employee received more favorable treatment. Specifically, Hinson has failed to establish that a non African-American in the same position as himself committed nearly identical safety violations and received more favorable treatment.

In the present case, there is no record of Mr. Walden committing similar safety violations, much less nearly identical, to those committed by Hinson.[Exh. A, p. 20]. Even if Hinson's recollection that Mr. Walden pulled away from the dock is accurate, the simple act of pulling away from the loading dock is not even remotely comparable to the continuous violations committed by Hinson. Hinson pulled away from the loading dock without first pulling the dock plate and then placing the safety chains across the dock doors resulting in the fact an employee was left in the trailer on a forklift. To further exacerbate matters, once Hinson became aware of the co-employee's presence in the trailer Hinson intentionally continued to operate his vehicle with the co-employee still inside the trailer. [Exh. A, ¶¶ 9-16]. Webster requires its truck drivers to verify the load is complete, pull the dock plate, place the safety chains across the dock doors before leaving the loading dock. [Exh. A, ¶ 11]. Hinson failed to properly evaluate the load jeopardizing the safety of a co-employee inside the trailer on a forklift and continued to risk the safety of his co-employee by

continuing to drive with the employee inside the trailer. [Exh. A, ¶ 9-16]. Mr. Walden has no similar violation within his personnel file. [Exh. A, ¶ 20]. Mr. Walden has never not performed the safety procedures mandated on truck drivers before they can leave the loading dock. [Exh. A, ¶ 20]. Mr. Walden has never driven his truck while knowing a co-employee is on a forklift inside the trailer. [Exh. A, ¶ 20]. Violation of these safety procedures subjects all employees to termination. [Exh. A, ¶ 22].

Moreover, Hinson has failed to present evidence that Webster consciously overlooked violations by "Paul" when Webster disciplined Hinson more severely. In summary, taking all the evidence in the light most favorable to Hinson, it is impossible to identify any non-African-American employee that Webster disciplined more favorably for failure to pull the dock plate before leaving the loading dock **and** failure to place the safety chains on the dock doors before leaving the loading dock **and** for continuing to operate the trailer after knowing that a co-employee was inside the trailer on a forklift. Further, even if we assume the existence of "Paul" and assume he committed a similar violation, which is denied, Hinson fails to show that Webster knew that "Paul", a purported comparator, committed misconduct similar to Hinson.[6] Furthermore, even if Webster knew about the presumed other violations, the evidence does not show that Webster consciously overlooked those violations when Webster disciplined Hinson more severely. See *Jones*, 874 F.2d at 1541-42. There is no evidence that establishes Webster decided to impose harsher discipline on Hinson because of his race. Based upon the foregoing, it is clear Hinson is unable to meet the elements of a 'disparate treatment' prima facie case. Therefore, summary judgment is due in favor of Webster.

---

[6]Hinson admits in his responses to interrogatories that Bill Barton was not aware of "Paul" pulling away from the loading dock. [Exh. F, p.2].

### (2) Defendant's Legitimate, Non-Discriminatory Reason

Even if Hinson had established a prima facie case of disparate treatment in violation of Title VII and 42 U.S.C. §1983, Webster has demonstrated a legitimate, non-discriminatory reason for terminating Hinson. See *Moreland v. Miami-Dade County*, 255 F.Supp.2d1304 (S.D. Fla. 2002)(citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105(2000) "(explaining the burden at this stage is one of production, not persuasion, and employer need only point to admissible evidence from which a fact-finder could reasonably conclude that the challenged action was taken for legitimate, non-discriminatory response)".

In the present case, Webster has stated that Hinson was terminated because he committed several safety violations which endangered the safety of a co-employee and Webster's property. Even if Webster's finding that Hinson committed these safety violations and that he should be terminated because of those violations was wrong, it is a legitimate, non-discriminatory explanation for Webster's decision to terminate Hinson. See *Moreland, supra.* (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1030-31 (11th Cir.2000)(holding that defendant may terminate an employee for good or bad reason without violation of federal law); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984)(holding that an employee may be fired "for good reason, bad reason, reason based on erroneous facts, or no reason at all, so long as its action is not for a discriminatory reason")). It is clear that Webster has established a legitimate, non-discriminatory reason for terminating Hinson.

### (3) Plaintiff's Evidence of Pretext

Because Webster has offered a legitimate, non-discriminatory reason for terminating Hinson, the burden returns to Hinson to show that the proffered reason was in fact a pretext for intentional

discrimination based upon Hinson's race. Further, the presumption of discriminatory conduct created by a prima facie case "drops" from the case. *Moreland, supra* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed. 2d 207 (1981)).

"In otherwords, the plaintiff must show that 'a discriminatory reason more likely than not motivated [Webster] to terminate [Hinson]." *Gaston v. Home Depot USA, Inc.*, 129 F.Supp.2d 1355 (S.D.Fla.2001)(quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. At 1095))". "In examining the employer's proffered reasons, the court does not sit as a super-personnel department, and must accept the employer's stated reasons as given. As stated by the Eleventh Circuit recently, 'provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.'" *Gaston, supra* (quoting *Chapman*, 229 F.3d at 1030).

In the present case, Hinson does not offer any evidence casting any doubt on the believability of Webster's explanation for their decision to terminate Hinson. Generally, Hinson relies upon anticipated testimony that is expected to establish "other employees were threatened and/or discriminated against Paul's attitude towards other blacks; knows safety equipment not working properly, knows of other employees being terminated due to disabilities; knows false testimony was given about Alvin Pugh taking my position after termination; knows company did not follow its own policies; Paul's comments about not being able to pass drug testing." [Exh. F, p.7]. Nothing hypothecated by Hinson addresses the proffered explanation of Webster that Hinson was terminated because he committed several safety violations. Even if Hinson's arguments and anticipated testimony he relies upon are fully accepted, admissible and could be found to cast doubt on

Webster's explanation, Webster remains entitled to summary judgment because Hinson has not presented any evidence to indicate that Webster discriminated against him because of his race. Hinson's case is primarily a semantic one and includes little and no probative evidence addressing the fact Hinson failed to pull the dock plate, failed to place the chains on the trailer door and operated a vehicle knowing an employee was on a forklift inside the trailer. Hinson has not presented any independent evidence in his argument of pretext that Webster acted with discriminatory intent in Hinson's discharge. Without such evidence, Webster is entitled to summary judgment as a matter of law.

## V.  CONCLUSION

It is undisputed Hinson committed serious safety violations in the operation of his truck which resulted in his termination. Hinson pulled away from the loading dock without first pulling a dock plate and without placing safety chains on the dock doors. Hinson further continued to operate the vehicle with the knowledge that a co-employee was inside a trailer on a forklift. These series of events jeopardized the safety of the co-employee and the condition of Webster's forklift and property. The seriousness of these infractions resulted in the dismissal of Hinson from Webster's employ. The termination of Hinson from Webster was not in violation of Title VII, 42 U.S.C. §1981, or the American with Disabilities Act. For the reasons stated above, Webster is entitled to a judgment as a matter of law on all counts.

Respectfully submitted,

s/ Thomas T. Gallion, III

---

Thomas T. Gallion, III
Jamie A. Johnston
Attorneys for the Defendant

OF COUNSEL:

Haskell Slaughter Young & Gallion, L.L.C.
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama  36103-4660
(334) 265-8573       Telephone
(334) 264-7945       Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document upon the following by causing a true and complete copy of same via CM/ECF and in the United States Mail, sufficient first class postage prepaid, on this the 20th day of November 2007, addressed as follows:

Jay Lewis, Esq.
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL  36103

s/ Thomas T. Gallion, III
_____
OF COUNSEL

#29280
83562-023