IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **DARRELL HINSON,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )    Civil Case No. 2:05-cv-971-ID |
| | ) |
| **CHELSEA INDUSTRIES, INC.,** | ) |
| | ) |
|     **Defendant.** | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**

COMES NOW Plaintiff, in the above styled cause, by and through their counsel of record, and respond to Defendant's Motion for Summary Judgment as follows:

**I.    STATEMENT OF THE CASE**

Plaintiff Darrell Hinson brings this action against Defendant Chelsea Industries, Inc., Plaintiff's former employer, because of his opposition to unlawful employment practices arising under 42 U.S.C. § 2000e or under 42 U.S.C. § 1981. Defendant has subjected Mr. Hinson to an adverse employment action by firing him for mistakenly pulling his truck away from a loading dock while a forklift and its operator were inside, but Defendant merely suspended another driver who caused several accidents resulting in harm to property and injury to others.

**II.    STATEMENT OF FACTS**

On April 11, 2004, Darrell Hinson was working the night shift for Defendant and was responsible for driving trucks that would deliver freight back and forth between Defendant's warehouse and plant locations. (Ex. 1 ¶ 3, Hinson Aff.) Defendant's procedure requires drivers

to go inside and pull the dock plate and place a safety chain across the dock door. (Ex. 1 ¶ 4, Hinson Aff.)

Mr. Hinson was preparing to haul freight from the plant to the warehouse. (Ex. 1 ¶ 6, Hinson Aff.) He followed Defendant's procedure by pulling the dock plate and placing a safety chain across the dock door. (Ex. 1 ¶ 6, Hinson Aff.) Next, Mr. Hinson went outside to pull the trailer away from the dock. (Ex. 1 ¶ 7, Hinson Aff.) Because two trucks were sitting side by side, he mistakenly entered the wrong truck and pulled away from the dock. (Ex. 1 ¶ 7, Hinson Aff.)

When Mr. Hinson pulled the trailer away from the dock a forklift and its operator were inside. (Ex. 1 ¶ 8, Hinson Aff.) Hinson did not know the forklift or its operator was inside because ordinarily, when a forklift is loading a trailer, the trailer will rock due to the movement of the heavy forklift. (Ex. ¶ 8, Hinson Aff.) Hinson did not feel any movement because the forklift operator was talking on the phone and had stopped the forklift inside of the trailer. (Ex. 1 ¶ 8, Hinson Aff.) Mr. Hinson pulled the truck only as far as necessary to close the trailer door. (Ex. 1 ¶ 9, Hinson Aff.) That is when he discovered the forklift and operator were inside of the trailer. (Ex. 1 ¶ 9, Hinson Aff.)

A safety light located outside of the plant should change from red to green to tell a driver that the safety chain has been placed across the dock door. (Ex. 1 ¶ 10, Hinson Aff.) The safety light is the only way a driver can know that the safety chain has been placed across the dock door. (Ex. 1 ¶ 10, Hinson Aff.) The safety light was not working on April 11, 2004 and had been broken for some time prior to that date. (Ex. 1 ¶ 10, Hinson Aff.) Defendant had no procedure for what to do under such circumstances so Mr. Hinson backed up the trailer to the dock. (Ex. 1 ¶ 11, Hinson Aff.) The forklift operator was not injured, and the forklift was not

damaged. (Ex. 1 ¶ 12, Hinson Aff.)

Afterward, Mr. Hinson was placed on suspension and then fired. (Ex. 1 ¶ 13, Hinson Aff.) Defendant stated the reason for his dismissal was because he violated safety procedures, the operator could have been injured, and the fork lift could have been damaged when he pulled the trailer away from the loading dock (Ex. 1 ¶ 13, Hinson Aff.) Under similar circumstances, Chelsea fired Tommy (LNU), an African American truck driver. (Ex. 1 ¶ 14, Hinson Aff.)

Under similar circumstances, Chelsea did not fire Paul Walden a white truck driver. (Ex. 1 ¶ 15, Hinson Aff.) Walden was working as a local truck driver for Chelsea on April 11, 2004. (Ex. 1 ¶ 16, Hinson Aff.) On three separate occasions Walden pulled away from the dock without following procedure, twice prior and once subsequent to Mr. Hinson's termination. (Ex. 1 ¶ 17, Hinson Aff.) Walden has done this at both the plant and warehouse locations. (Ex. 1 ¶ 17, Hinson Aff.) On one such occasion Walden pulled the truck away from the warehouse dock while the forklift was actively moving cargo into the trailer. (Ex. 1 ¶ 18, Hinson Aff.) This caused the forklift to fall over and the driver to go flying. (Ex. 1 ¶ 18, Hinson Aff.) The forklift was badly damaged. (Ex. 1 ¶ 18, Hinson Aff.) Bill Barton's office is at the warehouse location. (Ex. 1 ¶ 19, Hinson Aff.) Bill Barton is the Fleet Manager for Defendant. (Ex. 4 ¶ 2, Barton Aff)

While driving Defendant's truck on public roads Walden was involved in two separate accidents on public roads while he was hauling freight between Defendant's warehouse and plant locations. (Ex. 1 ¶ 20, Hinson Aff; Ex. 2; Ex. 3.) On June 2, 2003, Walden was involved in an accident on a public road while driving Defendant's truck. (Ex. 3 at 1.) A witness stated that Walden caused the accident by running a stop sign. (Ex. 3 at 2.) The driver of the other car was injured and taken to the hospital. (Ex. 3 at 2.) The other car was disabled and was towed away.

(Ex. 3 at 1.) On August 5, 2003, Walden was involved in another accident on a public road while driving Defendant's truck. (Ex. 2 at 1.) A witness stated that Walden caused the accident, while executing a right-hand turn from the left lane, by cutting off the other vehicle that was traveling in the same direction in the right-hand lane. (Ex. 2 at 2.) Chelsea suspended Walden for two months due to accidents while he was driving Chelsea's trucks between the plant and warehouse locations, but he was reinstated. (Ex. 1 ¶ 21, Hinson Aff.)

### III.   STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleading, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions answers to interrogatories and admission on file,' designate 'specific facts showing that there is a genuine

issue for trial'". *Id* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there si some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby , Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must gant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c).

"Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment or for judgment as a matter of law simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 964-65 (11th Cir. 1997).

IV.  **ARGUMENT**

This Court should deny Defendant's Motion for Summary Judgement because Plaintiff offers sufficient facts to show genuine issues of material fact are at issue.

    A.  **<u>Plaintiff demonstrates sufficient facts for a prima facie showing of discrimination.</u>**

In order to prove racial discrimination a plaintiff must show that 1) he was a qualified member of a protected class, and 2) he was subjected to an adverse employment action in contrast with similarly situated employees outside of the protected class. *Wilson v. B/E*

*Aerospace, Inc.*, 367 F.3d 1079, 1087 (11th Cir. 2004).

      **1.     Defendant's employee Paul Walden is a proper comparator.**

Mr. Hinson is a member of a protected class: African American. Defendant's employee Paul Walden is white thus outside of Hinson's protected class.

Paul Walden is similarly situated to Mr. Hinson. Both men worked as local truck drivers for Defendant. Defendant's local truck drivers are responsible for carrying freight between Defendant's plant and warehouse locations. (Ex. 1 ¶ 3, Hinson Aff.) Defendant concedes that Walden is a "similarly situated local truck driver."[1] (Def.'s Mem. in Supp. of Summ. J. 8.) Thus, Plaintiff's response uses Walden as a comparator without further discussion.

      **2.     Paul Walden's accidents on public roads qualify as similar misconduct.**

Walden's road accidents are apposite because Defendant's local drivers use public roads in the course of their duties. While Defendant may argue that Walden's road accidents should not apply, Title VII does not require Hinson and Walden's conduct to be identical; instead, they must have "engaged in the same or <u>similar</u> <u>misconduct</u> but did not receive similar discipline." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1336 (11th Cir. 2000) (emphasis added).

Walden's misconduct on public roads is similar to Mr. Hinson's accident at the loading dock. Under the scope of their employment, Defendant's local drivers do more than merely pull trucks away from the docks; they haul freight on public roads between the plant and warehouse locations. (Ex. 1 ¶ 3, Hinson Aff.) Thus, in order to reasonably determine whether its local

---

[1]Defendant's brief states "[t]here is only one non African-American similarly situated local truck driver named 'Paul' employed by Webster as of April 20, 2005, the date Hinson was terminated. That person's full name is Paul Hugh Walden." (Def.'s Mem. in Supp. of Summ. J. 8.)

drivers act in accordance with procedures and regulations, Defendant cannot base its determinations solely on conduct that occurred at the docks.  Driver misconduct on public roads is certainly important to such a determination and arguably should be more important due to potential insurance liability and public safety.

### 3. Defendant gave Paul Walden favorable treatment.

To establish a prima facie case a plaintiff must demonstrate that a similarly situated person outside the protected class received more favorable treatment.  *Gaddis v. Russell Corp.*, 242 F.Supp.2d 1123, 1139-40 (M.D. Ala. 2003).  Defendant treated Walden more favorably than Hinson because Walden's accidents while driving were more often and harmful, but his punishment was much less severe.

Paul Walden's negligence caused multiple accidents; on the other hand, Mr. Hinson's mistake was largely due to Defendant's negligence.  Within a little more than two months, Walden was at fault for two separate accidents while driving on public roads between Defendant's plant and warehouse locations.  (Ex. 2 at 1-2; Ex. 3 at 1-2.)  On three separate occasions Walden pulled away from the dock without following procedure, twice prior and once subsequent to Mr. Hinson's termination.  (Ex. 1 ¶ 17, Hinson Aff.)  Additionally, it was common knowledge that Walden pulled away from the dock at the warehouse while a forklift was loading a truck, which caused both the forklift and its operator to fall.  (Ex. 1 ¶ 18, Hinson Aff.)

Conversely, Mr. Hinson was fired for a mistake that was both unintentional and largely due to the Defendant's failure maintain its own safety equipment.  Before pulling away from the dock Mr. Hinson followed Defendant's procedure by pulling the dock plate and placing the safety chain across the back door, but when he went outside to move the truck he mistakenly

entered a truck that was parked next to it.  (Ex. 1 ¶ 6, Hinson Aff.)  Had Defendant's safety lights been working, Mr. Hinson could have seen that the safety chain was not in place for that truck; however, the safety lights were broken.  (Ex. 1 ¶ 10, Hinson Aff.)

Paul Walden's negligence injured someone and damaged property; on the other hand, Mr. Hinson's mistake caused no harm.  Paul Walden's accident on June 2, 2003 injured the other driver, who was sent to the hospital.  (Ex. 3 at 2, Hinson Aff.)  Walden's two accidents on public roads certainly must have damaged Defendant's trucks and others' property.  Additionally, it was common knowledge that Walden's pull off at the warehouse dock caused significant damage to Defendant's forklift.  (Ex. 1 ¶ 18, Hinson Aff.)  Conversely, when Mr. Hinson mistakenly pulled away from Defendant's dock in the wrong truck, no one was injured and no property was damaged.

Defendant disciplined Mr. Hinson more severely than it did Walden.  Defendant fired Mr. Hinson for his mistake.  Conversely, Defendant merely suspended Walden for two months.  (Ex. 1 ¶ 21, Hinson Aff.)

   **4.**  **Management consciously overlooked similar violations by Paul Walden**

Defendant incorrectly asserts that Plaintiff admits management had no knowledge of Paul Walden's accident at the docks.  Defendant's memorandum argues that "[Plaintiff] admits in his responses to interrogatories that Bill Barton was not aware of 'Paul' pulling away from the loading dock."  (Def.'s Mem. in Supp. of Summ. J. 11 n.6.)  However, Plaintiff's response regarding Barton's knowledge states "I asked [Bill Barton] why Paul was not written up for pulling the trailer off the dock at the plant.  Bill <u>said</u> that he did not know about the incident. . . ."

(Pl. Resp. to Def.'s Interrog. # 4) (emphasis added). Plaintiff's response indicates only what Barton told him and is clearly neither an admission nor a claim to know the breadth of Barton's knowledge in the matter.

Bill Barton is the Fleet Manager for Defendant. (Ex. 4 ¶ 2, Barton Aff.) Thus, Barton should have knowledge of Paul Walden's accidents. Additionally, Barton either has or should have copies of Walden's other accidents in his files. Bill Barton's office is at Defendant's warehouse location. (Ex. 1 ¶ 19, Hinson Aff.) Therefore, even if there is nothing in the file Barton should have knowledge of the accident because Walden's pull off that damaged Defendant's forklift occurred at the warehouse location. (Ex. 1 ¶ 18, Hinson Aff.)

### B. Mr. Hinson was fired for a discriminatory reason.

Once the defendant has offered a nondiscriminatory purpose, the burden then shifts back to Plaintiff to provide evidence sufficient for a reasonable fact finder to conclude that the defendant's reason was pretext for retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 802 (1973). Defendant offered the following three reasons for firing Mr. Hinson: 1) failure to follow procedure, 2) risk of harm to others, and 3) risk of harm to property. (Ex. 4 ¶¶ 12-15, Barton Aff.) An analysis of the facts demonstrate that Defendant's three reasons are mere pretext for discrimination.

#### 1. Defendant citing failure to follow procedure is pretextual.

A reasonable investigation would have uncovered that Mr. Hinson did not fail to follow Defendant's procedure. As noted above, Mr. Hinson followed procedure by pulling the dock plate and placing the safety chain across the back door, but when he went outside to move the truck he mistakenly entered a truck that was parked next to it. (Ex. 1 ¶ 6, Hinson Aff.)

Ordinarily, Mr. Hinson would have known he was in the wrong truck because the movement of the forklift would cause the truck to shake, but the forklift operator had stopped the forklift inside of the trailer to talk on the phone. Thus, the only way of knowing the safety chain had not been put in place for that particular dock would have been Defendant's safety lights. (Ex 1 ¶ 10, Hinson Aff.) Had Defendant's safety lights been working, Mr. Hinson could have seen that the safety chain was not in place for that truck; however, the safety lights were broken. (Ex. 1 ¶ 10, Hinson Aff.) Thus, Mr. Hinson did not fail to follow Defendant's procedure.

A reasonable investigation would have uncovered that Mr. Hinson acted reasonably. Defendant had no procedure for what to do when a driver has mistakenly pulled away from the dock with a forklift and its operator inside of the truck under the conditions mentioned in the previous paragraph. (Ex. 1 ¶ 11, Hinson Aff.) Since Mr. Hinson had only moved the truck the distance necessary to close the trailer door, he backed up the truck the small distance to the dock to enable the forklift to exit the truck. (Ex. 1 ¶¶ 10-11, Hinson Aff.)

If true that Defendant would fire someone for failure to adhere to policy under Mr. Hinson's circumstances, then Paul Walden's driving record should have resulted in his termination. Although unmentioned in its brief, Defendant must have a policy regarding its truck drivers causing auto accidents while driving on public roads. Within a short period of time Walden caused two accidents on public roads one resulting in injury to the other driver. (Ex. 2; Ex. 3.) Walden caused these accidents; conversely, Hinson's mistake was due in large part to Defendant's negligent failure to maintain its own safety lights. If Defendants adherence to policy is so strict that it fired Hinson under conditions where Defendant was largely to blame, then it stands to reason that Defendant should have fired Walden under conditions where he carried all

of the blame. Additionally, if true that Walden pulled away from the dock and caused the forklift and its operator to fall, then Walden would have to be guilty of failing to adhere to Defendant's safety policies.

### 2.     Defendants citing risk of injury of death to others is pretextual.

Defendant states a second reason it fired Mr. Hinson was because he could have seriously injured or killed someone.[2]  (Ex. 4 ¶ 14, Barton Aff.)  If true that Defendant would fire someone for risk of harm to others, then Paul Walden's driving record should have resulted in his termination.  Paul Walden was involved in two road accidents, which certainly put people at risk of harm.  Most notably Paul Walden's accident on June 2, 2003 in fact sent someone to the hospital. (Ex. 3 at 2.)  Additionally, knocking a forklift operator off the forklift while pulling off the dock certainly risked harm to its operator.  Thus, if Mr. Hinson's mistake on April 11, 2004 warranted his termination, then Defendant should have fired Walden as well.

### 3.     Defendants citing risk of damage to company property is pretextual.

Defendant states a third reason it fired Mr. Hinson was because he could have damaged Defendant's property.[3]  (Ex. 4 ¶ 14, Barton Aff.)  If true that Defendant would fire someone for a risk of damage to its property, then Paul Walden's driving record should have resulted in his termination.  Walden's two accidents on public roads certainly must have caused some equipment damage.  The impact of Defendant's truck hitting other vehicles would certainly cause

---

[2] While Defendant states "Mr. Hinson could have seriously injured or killed the co-employee inside the trailer," Plaintiff's argument assumes that Defendant does not value the lives of its employees over the lives of non-employees.

[3] Defendant states "Mr. Hinson could have caused significant damage to Webster's forklift and facilities as a result of his actions" Plaintiff's argument assumes that Defendant places some value on its other property as well.

damage to its property not to mention the property of others.  Additionally, the number of accidents incurred by Defendant's drivers must have an effect on insurance costs.  Finally, it was common knowledge that Walden's pull off caused significant damage to Defendant's forklift. (Ex. 1 ¶ 18, Hinson Aff.)  Conversely, Mr. Hinson's mistake could have caused damage to Defendant's equipment, but no equipment was in fact damaged.  Thus, if Mr. Hinson's mistake on April 11, 2004 warranted his termination, then Defendant should have fired Walden as well.

## V.   CONCLUSION

WHEREFORE, the premises considered, Plaintiff prays this Court will deny Defendant's motion for summary judgment.

RESPECTFULLY SUBMITTED on this the 17th day of December, 2007.

/s/ FRED CLEMENTS
Fred Clements
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)
FredClements@JayLewisLaw.com
ASB-5682-R39C

**CERTIFICATE OF SERVICE**

      I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties or counsel, or by hand delivery, or by facsimile, or by placing a copy of the same in the United States mail, properly addressed and first-class postage prepaid on this 17th day of December, 2007.

Jamie Austin Johnston
Thomas T. Gallion, III
Haskell Slaughter Young & Gallion LLC
PO Box 4660
Montgomery, AL 36103-4660

                                         /s/ FRED CLEMENTS
                                         Fred Clements
                                         Law Offices of Jay Lewis, LLC
                                         P.O. Box 5059
                                         Montgomery, AL 36103
                                         (334) 263-7733 (Voice)
                                         (334) 832-4390 (Fax)
                                         FredClements@JayLewisLaw.com
                                         ASB-5682-R39C