IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL HINSON,               )
                              )
        Plaintiff,            )
                              )
v.                            )    CIVIL ACTION NO.:  2:05cv971-ID
                              )
CHELSEA INDUSTRIES, INC.,     )
                              )
        Defendant.            )

CHELSEA INDUSTRIES, INC. AND WEBSTER INDUSTRIES, INC.'S
REPLY MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Chelsea Industries, Inc. and Webster Industries, Inc.[1],

(hereinafter collectively referred to as "Webster"), and replies to Plaintiff's Opposition to

Defendants' Motion for Summary Judgment as follows.

---

[1] Chelsea Industries, Inc., is the proper party to this action.  The original Complaint named Webster Industries.

# TABLE OF CONTENTS

I. TABLE OF AUTHORITIES

II. PRELIMINARY STATEMENT

III. STATEMENT OF UNDISPUTED FACTS

      a. Hinson-Webster Employment Relationship

      b. April 11, 2004 Incident

      c. Safety Procedures

      d. Investigation of April 11, 2004 Incident

      e. Disciplinary Action

      f. Kenco Logistics

      g. Kenco Logistics' Incident

      h. Traffic Accidents

IV. SUMMARY JUDGMENT STANDARD

V. ARGUMENT

      a. Plaintiff's Prima Facie Case

          (1) Similarly Situated Factor

          a. Hinson's Misconduct

          b. Paul Walden

             1. Traffic Incidents

             2. Safety Compliance

          c. Kenco Logistics' Incident

      b. Defendant's Legitimate Non-Discriminatory Reason

c. Plaintiff's Evidence of Pretext

VI.   CONCLUSION

## I.     TABLE OF AUTHORITIES

### a.     Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................9

*Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319 (11th Cir. 2006) ........................17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................10

*Chapman v. AI Transp.*, 229 F.3d 1012 (11th Cir. 2000) ........................................25, 26

*Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997) .....................................29

*Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354 (11th Cir. 1999) ...........28

*Dartmouth Review v. Dartmouth College*, 889 F.2d 13 (1st Cir. 1989) ...........................17

*Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir. 1990) ...............................10

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991) ................................11

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993 ...........................................11

*Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123 (M.D. Ala. 2003) ...........................13, 15

*Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355 (S.D. Fla. 2001) ...............13, 26

*Grigsby v. Reynolds Metals Co.*, 821 F.2d 590 (11th Cir. 1987) ..................................11

*Hughes v. Amerada Hess Corp.*, 187 F.R.D. 682 (M.D. Fla. 1999) ...........................20, 24

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396

    (1977) ..................................................................................................13

*Johnson v. Scotty's Inc.*, 119 F. Supp. 2d 1276 (M.D. Fla. 2000) ..................................19

*Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306 (11th Cir. 1998).................21, 24

*Jones v. Gerwens*, 874 F.2d 1534 (11th Cir. 1989) .......................................................14

*Lathem v. Dept. of Children & Youth Servs.*, 172 F.3d 786 (11th Cir. 1999) .................22

*Lewis-Calhoun v. City of Jackson*, 977 F. Supp. 1148 (S.D. Ala. 1997)........................................29

*McCollum v. Bolger*, 794 F.2d 602 (11th Cir. 1986)....................................................................11

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973) .........6, 9, 10,11, 13, 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...................................10

*Mayfield v. Patterson Pump Co.*, 101 F.3d 1371 (11th Cir. 1996)...............................................29

*Moreland v. Miami-Dade County*, 255 F. Supp. 2d 1304 (S.D. Fla. 2002)............................25, 26

*Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181 (11th Cir. 1984) .................................10, 25

*Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568 (7th Cir. 1989)..................................................10

*Peterson v. BMI Refractories*, 132 F.3d 1405 (11th Cir. 1998).....................................................13

*Pritchard v. Southern Company Services*, 92 F.3d 1130 (11th Cir. 1996)....................................12

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105

    (2000)...........................................................................................................................25

*Rojas v. State of Florida*, 285 F.3d 1339 (11th Cir. 2002) ......................................................27, 28

*St. Mary's Honor Ctr. v. Hicks*, 113 S. Ct. 2742 (1993)..............................................10, 11, 12, 26

*Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253 (11th Cir. 2001) ............................................15

*Smith v. Int'l Paper Co.*, 160 F. Supp. 2d 1335 (M.D. Ala. 2001) ................................................14

*Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318 (11th Cir. 1998).................................................13

*Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089

    (1981)...................................................................................................................11, 12, 26

*Tolbert v. Briggs and Stratton Corp.*, 510 F. Supp. 2d 549 (M.D. Ala. 2007)..............................13

*Williams v. Motorola, Inc.*, 303 F.3d 1284 (11th Cir. 2002) ........................................................13

*Wright v. Sanders Lead Co.*, 217 Fed. App'x. 925 (11th Cir. 2007) .........................................15, 17

5

b.    Statutes

42 U.S.C. § 1981 ........................................................................................6, 12, 25, 30

American with Disabilities Act.............................................................................12, 30

Title VII of the Civil Rights Act of 1964....................................................................6

Federal Rules of Civil Procedure 56(c) ......................................................................9

Federal Rules of Civil Procedure 56(e) ...............................................................20, 24

## II.    PRELIMINARY STATEMENT

Plaintiff Darrell Hinson filed this lawsuit against Webster on or about October 11, 2005, alleging that Webster had discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981.   Specifically, Hinson argues that he was wrongfully terminated for committing safety violations while a Caucasian employee that committed the same violations was not discharged. Webster vehemently denies any liability with respect to these purported claims and as demonstrated below is entitled to judgment as a matter of law with respect to all of them.

Specifically, Darrell Hinson attempts to survive summary judgment by stating that Paul Walden's traffic accidents and the misconduct of an employee for a third party service provider involving Mr. Walden's trailer constitutes similar conduct. Mr. Hinson argues that Webster's failure to fire Mr. Walden for those incidents solidifies its discriminatory treatment toward Mr. Hinson. Further, Mr. Hinson attempts to establish Webster's proffered reasons that Mr. Hinson's violation of safety procedures endangering the lives of employees and property were pretextual by reiterating that Webster should have fired Mr. Walden.  Mr. Hinson's circular arguments do not meet the requisite standards set forth in *McDonnell Douglas/Burdine* analysis. As set forth

below, Mr. Hinson cannot establish a prima facie case of discriminatory conduct nor can he offer sufficient admissible evidence that Webster's reasoning for its' employment decision was pretextual.

## III.    STATEMENT OF UNDISPUTED FACTS

### a.    Hinson-Webster Employment Relationship

On November 28, 2001, Hinson applied for a truck driver's position with Webster. [See Affidavit of William Barton, attached hereto as Exhibit A; see also Driver's Application, attached hereto as Exhibit "B"]. Hinson began employment with Webster as a local truck driver on March 18, 2002. [Exh. A, ¶ 5].

### b.    April 11, 2004 Incident

On April 11, 2004, Hinson drove a trailer away from the loading dock without performing the mandatory tasks required of a Webster truck driver before he or she can pull the truck away from the loading dock. [Exh. A, ¶ 9, 12; see Affidavit of Darrell Hinson, offered in Opposition to Defendants' Motion for Summary Judgment and attached hereto as Exhibit "I", ¶4]. Hinson's failure to perform the mandatory procedures resulted in him leaving the loading dock with an employee on a forklift inside his trailer. [Exh. A, ¶ 9, 12; Hinson Affidavit, ¶8]. After learning that a co-employee was in the trailer, Hinson continued to operate the vehicle. [Exh. A, ¶ 10; Hinson Affidavit ¶11].

### c.    Safety Procedures

Webster's safety procedures require all drivers to perform certain tasks before leaving the loading dock. [Exh. A, ¶ 11; Hinson Affidavit, ¶4]. Specifically, a truck driver must: (1) go inside the trailer and pull the dock plate; and (2) then place safety chains across the dock doors.

[Exh. A, ¶ 11; Hinson Affidavit, ¶4].

      d.     **Investigation of April 11, 2004 Incident**

On April 14, 2004, Hinson was suspended while the incident was investigated. [Exh. A, ¶ 16; see also Personnel Documentation for Employee Progressive Disciplinary Action, attached hereto as Exhibit "C"; see also Complaint, attached hereto as Exhibit "D"; Hinson Affidavit ¶13].

The investigation confirmed Hinson violated Webster's safety procedures by leaving the loading dock before pulling the dock plate and before placing the safety chains across the dock doors. [Exh. A, ¶ 12; Hinson Affidavit ¶8]. Hinson also committed additional safety violations by continuing to operate his vehicle after learning that an employee was on a forklift inside his trailer. [Exh. A, ¶ 13, Hinson Affidavit ¶11].

      e.     **Disciplinary Action**

On April 20, 2004, Webster terminated Hinson. [Exh. A, ¶16; see also Exh. D; see also Personnel Documentation for Employee Progressive Disciplinary Action, attached hereto as Exhibit "E"; Hinson Affidavit ¶13]. Alvin Pugh, an African American male, was awarded Hinson's position following his termination. [Exh. A, ¶18].

      f.     **Kenco Logistics**

Webster contracted with Kenco Logistics, a third party service company, to assist in the loading and unloading process. [See Second Affidavit of Bill Barton, attached hereto as Exhibit "F"; see also Affidavit of Joe Thomas, attached hereto as Exhibit "G"]. Kenco Logistics maintained its own employees, implemented its own personnel rules, and retained the authority to impose its own discipline with regard to its employees. [Exh. G, ¶3].

g.    **Kenco Logistics' Incident**

Kenco Logistics employed Sedrick Bowman as a forklift operator. [Exh. G, ¶4].

In 2004, Mr. Bowman improperly entered Mr. Walden's trailer after Mr. Walden properly pulled the dock plate and secured the safety chains on his trailer. [Exh. F ¶25; Exh. G, ¶6,8]. Kenco Logistics and Webster separately investigated the incident. [Exh. F, ¶27; Exh. G, ¶8]. Both investigations confirmed that Mr. Walden properly pulled the dock plate and secured the safety chains on his trailer prior to departing the loading dock. [Exh. F, ¶27; Exh. G, ¶8]. The investigations revealed that Mr. Bowman, without the knowledge or permission of his employer, Kenco Logistics, and Mr. Walden, entered Mr. Walden's trailer. [Exh. F,¶27; Exh. G, ¶8]. Mr. Walden properly performed the mandated safety procedures for securing a load prior to departure. [Exh. F, ¶27; Exh. G, ¶8].

h.    **Traffic Accidents**

Webster's disciplinary procedures for handling traffic incidents are different than those for loading/unloading rule violations. [Exh. F, ¶28]. Traffic related disciplinary procedures are based on fleet safety policy. [Exh. F, ¶28]

IV.    **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). Mere allegations in a pleading are not enough to create a genuine issue of material fact as against a showing of evidence contrary to the allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ("mere existence of some alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment . . .") (emphasis in the original). Once the moving party

9

has made a showing that there is no genuine issue of material fact, the non-moving party must then present specific facts creating such an issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("summary judgment is not a disfavored procedural shortcut but an integral part of the Federal Rules").

Federal courts have confirmed the specific and proper application of the Supreme Court's summary judgment standard to cases involving allegations of employment discrimination. For example, in *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572-73 (7th Cir. 1989), the court expressly stated:

> The workload crisis of the federal courts, and realization that Title VII is occasionally or perhaps more than occasionally used by plaintiffs as a substitute for principles of job protection that do not yet exist in American law, have led the courts to take a critical look at efforts to withstand . . . summary judgment. A district court judge faced with such a motion must decide . . . whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed.

*Palucki*, 879 F.2d at 1572-73. "Summary judgments for defendants are not rare in employment discrimination cases." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). This case is one where summary judgment should be granted because, at best, Mr. Hinson's evidence is "merely colorable"—not "significantly probative."

At all times, a plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. See *St. Mary's Honor Ctr. v. Hicks*, 113 S. Ct. 2742, 2747-48 (1993); *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1184 (11th Cir. 1984). The Supreme Court has established the basic allocation of burdens and order of proof in a Title VII case where the plaintiff is alleging disparate treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

10

S. Ct. 1817 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981).[2]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a prima facie case of discrimination. Second, once the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination. *McDonnell Douglas*, 93 S. Ct. at 1824-25; *Burdine*, 101 S. Ct. at 1093-94. Because the plaintiff bears the initial burden of proof with respect to the prima facie elements, summary judgment in favor of the defendant is appropriate when the plaintiff fails to adduce evidence to establish each element, or where the moving party showed the absence of facts to support each element of the claims that she is asserting. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993).

If the plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory justification for the adverse employment decision, thereby rebutting the prima facie case. See *Hicks*, 113 S. Ct. at 2747. The Eleventh Circuit has emphasized, however, that in determining whether the plaintiff has refuted the employer's articulated legitimate reason, the "court does not sit as a super-personnel department that re-examines an entity's business decision . . . no matter how mistaken a firm's managers." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991); *McCollum v. Bolger*, 794

---

[2]The *McDonnell Douglas/Burdline* allocation scheme is only applicable in cases, such as this one, where there is no direct evidence of discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

F.2d 602, 610 (11th Cir. 1986), cert. denied, 479 U.S. 1034 (1987).

Once a defendant meets its light burden of production, the plaintiff's prima facie case is "rebutted, destroyed, and no longer relevant." *Hicks*, 113 S. Ct. at 2747; *Burdine*, 101 S. Ct. at 1095. The plaintiff can then only survive the defendant's motion for summary judgment if she can establish sufficient, concrete and affirmative evidence to show that the defendant's reason was a pretext for discrimination, by showing "both that the reason was false, and that discrimination was the real reason." *Hicks*, 113 S. Ct. at 2752 (emphasis in original).

## V.    ARGUMENT

### a.    Plaintiff's Prima Facie Case[3]

Hinson alleges 'disparate treatment' based on race, in violation of Title VII and Section 1981[4]. The elements of a claim of race discrimination under 42 U.S.C. § 1981 are the same as a

---

[3] Hinson's Complaint is limited to alleged race discrimination claims. However, in his Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), Hinson claims he was discriminated against because of a disability in violation of American with Disabilities Act ("ADA"). Although Hinson does not make a claim of discrimination in violation of the ADA in his Complaint filed with this Court, he does reference in his interrogatory responses that he is relying upon witnesses who will testify that Webster has terminated other employees due to disabilities. [Exh. F, p. 6]. Briefly, Hinson was stabbed in his neighborhood. [Exh. A, ¶ 6]. As a result of the stabbing underwent medical treatment.[Exh. A, ¶ 6]. In accordance with Webster's short term disability policy, Hinson received nearly two months of disability benefits. [Exh. A, ¶ 6]. Thereafter, Hinson returned to his employment with Webster without any limitations. [Exh. B, ¶ 7]. In order to maintain an ADA claim, Hinson must establish that he was disabled, qualified to perform with reasonable accommodation, and he was terminated because of his disability. *See Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996). The ADA defines a 'disability' as one that is substantially limited in one or more major life activities due to a physical or mental impairment or he is regarded as having such an impairment. Hinson provided Webster with medical documentation that he was fully recovered and able to return to his employment without any limitation. Accordingly, Hinson neither suffered from a disability nor was he perceived to have suffered a disability. [Exh. A, ¶ 8]. Therefore, Hinson is unable to establish a prima facie case of ADA discrimination. To the extent Hinson seeks to recover under an ADA charge, Webster is entitled to a judgment as a matter of law based upon the absence of a disputed material fact and the fact Hinson cannot establish the necessary elements of an ADA claim sufficient to defeat summary judgment. Further, even if we assume Hinson can establish a prima facie case, Webster has offered a legitimate non-discriminating explanation for Hinson's termination. As set forth herein, Hinson cannot show that Webster's explanation is pretextual. Lastly, and most importantly, Hinson does not allege any violation of ADA in his reply brief.

---

[4] The Complaint only asserts a disparate treatment theory – that Hinson received more severe treatment than a similarly situated non-African-American. However, in Hinson's discovery responses, he cites to witnesses who will provide testimony concerning Alvin Pugh. [Exh. H, p. 7]. Mr. Pugh replaced Hinson after he was terminated. Mr. Pugh is an African-American male. [Exh. A, ¶ 18]. To the extent, Hinson seeks to allege race discrimination upon a theory that he was qualified for a position, yet replaced with a non-African-American, he cannot. After Hinson was terminated for committing serious safety violations, Webster internally posted the position and ultimately awarded the position to Mr. Pugh. [Exh. A., ¶ 17-18]. Accordingly, Hinson

Title VII disparate treatment claim in the employment context. *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355 (S.D. Fla. 2001) (citing *Peterson v. BMI Refractories*, 132 F.3d 1405, 1412 n.13 (11th Cir.1998)). Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment because of such person's race, color, religion, sex or national origin." *Tolbert v. Briggs and Stratton Corp.*, 510 F. Supp. 549, 552 (M.D. Ala. 2007) (quoting 42 U.S.C. § 2000e-2).

In a disparate-treatment case, "the plaintiff must prove that the employer acted with **discriminatory purpose, motive or intent.**" *Id.* (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977); *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002) (emphasis added). If the plaintiff seeks to establish a disparate treatment case by circumstantial evidence, the court is guided by the burden shifting framework set forth in *McDonnell Douglas, supra.* and *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

Pursuant to *McDonnell Douglas*, in order to establish a prima facie case of disparate treatment in violation of Title VII or Section 1981, Hinson must first establish that (1) he belongs to a protected class; (2) he has engaged in conduct similar to that of persons outside of the protected class; and (3) similarly situated persons outside of the protected class received more favorable treatment. *Gaddis v. Russell Corporation*, 242 F. Supp. 2d 1123 (M.D. Ala. 2003)

---

cannot maintain a race discrimination charge based upon a theory he was replaced by a non-African-American in violation of Title VII. Furthermore, even if Hinson could establish a prima facie case under such a theory, he cannot establish that Webster's proffered reason for termination (failure to pull dock plate and failure to place safety chains on dock doors before leaving a loading dock **and** operating a vehicle knowing an employee was inside the trailer on a forklift) are pretextual. Hinson does not dispute Webster's position with regard to Alvin Pugh in his Reply Brief offered in opposition to Webster's Motion for Summary Judgment.

(citing *Smith v. Int'l Paper Co.*, 160 F. Supp. 2d 1335, 1340 (M.D. Ala. 2001)).

It is undisputed that Hinson is in a protected class and that he was subjected to termination. However, Webster strongly denies that Hinson engaged in conduct similar to that of a white employee and Hinson received less favorable treatment.

### (1) Similarly Situated Factor

Employees are similarly situated when they are involved in or accused of similar misconduct yet disciplined in different ways; however, the burden remains with the plaintiff to show the similarity between his conduct and that of other employees who were treated differently, and not on the defendant to disprove their similarity. *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).

In order for Hinson to establish this aspect of a prima facie case, he must show that his misconduct (failure to follow the procedures for pulling a trailer from the loading dock **and** knowingly and intentionally driving a truck with an employee on a forklift inside the trailer), was nearly identical to that of a non-African-American employee who committed the same or similar violations, and that Webster imposed more severe discipline on Hinson than that imposed on the non-African-American employee for similar violations.

Further, in order to establish a case of discriminatory motive in a disparate disciplinary case, a plaintiff must show that middle and upper managers were aware of, and consciously overlooked, similar violations by other employees when plaintiff was disciplined. *Jones*, 874 F.2d at 1541-42 (11th Cir. 1989).

In order to determine whether employees are similarly situated for purposes of a prima facie case of disparate treatment, a court must consider whether the employees are involved in

14

the same or similar conduct and are treated in different ways. *Gaddis, supra* (citing *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)).  Further, the individual being compared to the complainant must be "**nearly identical** to the plaintiff's so that courts will not second-guess an employer's reasonable decisions." *Id.* (emphasis added).

In *Wright v. Sanders Lead Co.*, 217 Fed. App'x. 925 (11th Cir. 2007), the Eleventh Circuit confirmed that the district court properly granted summary judgment for the employer because the two comparative employees in that case were not engaged in similar acts of misconduct.  Specifically, the evidence in *Wright* suggested that the plaintiff was terminated for asking a guard not to report his employee for a rule violation (act of dishonesty) while the comparative employee was fired for smoking on company premises.  The Eleventh Circuit held that the acts of misconduct for which the two men were disciplined were substantially different.  It stated that "if two employees are not similarly situated, then the different application of workplace rules to them does not constitute illegal discrimination." *Wright*, 217 Fed. App'x. at 930.

a.    **Hinson's Misconduct**

Hinson was terminated because he failed to follow the safety procedures for pulling a trailer from the loading dock and for continuing to operate the vehicle while knowing an employee and forklift were inside.  Before a truck driver can pull away from the loading dock, a truck driver must pull the dock plate and then the driver must place safety chains across the trailer of the driver's truck. [Exh. A, ¶ 11; Hinson Affidavit ¶4].  Hinson failed to pull the dock plate <u>for the truck he drove</u> before leaving the loading dock. [Exh. A, ¶ 12; Hinson Affidavit ¶7].  Hinson failed to place the safety chains across the trailer of the <u>truck he drove</u> before leaving the

loading dock. [Exh. A, ¶ 12; Hinson Affidavit ¶7]. Hinson intentionally operated his vehicle **knowing** a co-employee was on a forklift inside his trailer. [Exh. A, ¶ 13; Hinson Affidavit ¶11].

Hinson in his reply brief argues that he pulled the dock plate and safety chains, he simply got in the wrong truck. By his own affidavit, Hinson therefore acknowledges that he failed to pull the dock plate on the truck he drove. [Hinson Affidavit, ¶7]. Further, Hinson admits he failed to place safety chains on the truck he drove. [Hinson Affidavit,¶7]. Hinson's conduct is egregious and could have killed the co-employee. [Exh. A, ¶ 14]. It further could have caused significant property damage to the forklift. [Exh. A, ¶ 15].[5]

### b.     Paul Walden

In support of his discrimination claim, Hinson relies upon two allegedly similar incidents. First, in his response to the Motion for Summary Judgment, Hinson asserts that "Paul Walden's accidents on public roads qualify as similar misconduct". [Hinson's Response Brief, p.6]. Later in his response, Hinson asserts that Mr. Walden "pulled away from the dock without following procedure, twice prior and once subsequent to Mr. Hinson's termination." [Hinson's Response Brief, p.7]. Also, in his response to discovery requests, Hinson argues that Mr. Walden was not "written up for pulling the trailer off the dock at the plant." [Exh. H, p. 2].

### 1.     Traffic Incidents

We will address Hinson's first attempt to establish similar conduct. Hinson claims that two traffic incidents on the public road constitute similar conduct. Hinson is simply incorrect. A traffic incident does not qualify as similar conduct in driving a truck from a loading dock without

---

[5]Hinson argues that he did not harm the employee or the forklift driver. Hinson is correct; however, he was not terminated because he injured an employee or damaged property, Hinson was terminated for failure to follow safety procedures. Hinson admits he drove off with an employee and a forklift in his trailer. He further admits he did not pull the dock plate for the truck he drove and further he did not put the safety chains on the truck he drove prior to leaving the dock. [Hinson Affidavit, ¶¶ 7, 11].

pulling the proper dock plate and securing the load and driving the truck intentionally after knowing the an employee was inside the trailer.[6] *See Wright, supra.* The comparative conduct must "be <u>nearly identical</u> [to the plaintiff's] to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges." *Wright, supra* (quoting *Burke-Fowler v. Orange County, Fla.,* 447 F.3d 1319, 1323 (11th Cir. 2006)) (emphasis added). Similarly here, comparing Mr. Walden's traffic accidents with Hinson's leaving a dock in a truck that he did not pull the dock plate or secure the load, then returning the vehicle to the dock knowing an employee was inside it on a forklift is akin to comparing apples to oranges.

Although Hinson claims he was similarly situated to Walden, key differences in Hinson's position are readily apparent. First, traffic accidents on the roadway cannot be compared to failure to follow procedures for leaving a loading dock improperly. The nature of the compared offenses is entirely different. Further, the nature of the punishments imposed is different as each has different disciplinary guidelines. While exact correlation is unlikely and not necessary, the comparative conduct must be fair congeners. *See Dartmouth Review v. Dartmouth College,* 889 F. 2d 13, 19 (1st Cir. 1989). In the present case, the suggested conducted offered to satisfy the similar offenses prong, the comparator's misconduct is not <u>nearly identical</u>; therefore, this Court should find summary judgment is proper for Webster.

### 2.    Safety Compliance

With regard to Hinson's second attempt to establish nearly identical conduct, Webster denies that Mr. Walden committed similar safety violations as those of Hinson. [Exh. A, ¶ 20].

---

[6] Safety guidelines for operating a vehicle on the public roadway are different than those imposed upon the loading/unloading process. Further, punishment imposed for violation of traffic incidents is significantly different that than imposed upon internal loading/unloading safety violations. [Exh F, ¶ 28].

Mr. Walden has never failed to follow the safety procedures outlined above. [Exh. A, ¶ 20]. Mr. Walden has never failed to pull the dock plate before leaving the loading dock. [Exh. A, ¶ 20]. Mr. Walden has never failed to place the safety chains across his trailer before leaving the loading dock.[Exh. A, ¶ 20]. Further, Mr. Walden has never intentionally driven a truck away from a loading dock knowing there was an employee inside the trailer on a forklift. [Exh. A, ¶ 20].

Further, Hinson's comparative example is not similar to that of the serious infractions committed by Hinson. Simply pulling a trailer from the dock does not necessarily constitute a safety violation. Further, Hinson was not terminated for simply pulling a trailer from the dock – rather, he was terminated for failure to pull the dock plate and place the safety chains across the trailer of the truck he drove before leaving the loading dock (which resulted in having an employee being inside the trailer on a forklift) and for continuing to operate the truck with the knowledge that someone was inside the trailer on a forklift.[7] [Exh. A, ¶¶ 9-16]. Accordingly, Hinson has failed to establish that a similarly situated employee received more favorable treatment. Specifically, Hinson has failed to establish that a non African-American in the same position as himself committed nearly identical safety violations and received more favorable treatment.

In the present case, there is no record of Mr. Walden committing similar safety violations, much less nearly identical, to those committed by Hinson.[Exh. A, ¶20]. Even if Hinson's recollection that Mr. Walden pulled away from the dock is accurate, the simple act of

---

[7]Hinson states that he did not violate any safety violations he just got in the wrong truck. By getting in the wrong truck, Hinson acknowledges that he did not pull the dock plate for that truck and he failed to secure the load on the truck he drove.

pulling away from the loading dock is not even remotely comparable to the continuous violations committed by Hinson. Hinson pulled away from the loading dock without first pulling the dock plate and then placing the safety chains across the trailer of the truck he drove resulting in the fact an employee was left in the trailer on a forklift. To further exacerbate matters, once Hinson became aware of the co-employee's presence in the trailer Hinson intentionally continued to operate his vehicle with the co-employee still inside the trailer. [Exh. A, ¶¶ 9-16; Hinson Affidavit ¶11]. Webster requires its truck drivers to verify the load is complete, pull the dock plate, and place the safety chains across the trailer before leaving the loading dock. [Exh. A, ¶ 11; Hinson Affidavit ¶4]. Hinson failed to properly evaluate the load jeopardizing the safety of a co-employee inside the trailer on a forklift and continued to risk the safety of his co-employee by continuing to drive with the employee inside the trailer. [Exh. A, ¶ 9-16; Hinson Affidavit ¶7,8].

Mr. Walden has no similar violation within his personnel file. [Exh. A, ¶ 20]. Mr. Walden has never failed to perform the safety procedures mandated on truck drivers before they can leave the loading dock. [Exh. A, ¶ 20]. Mr. Walden has never driven his truck while knowing a co-employee is on a forklift inside the trailer. [Exh. A, ¶ 20]. Violation of these safety procedures subjects all employees to termination. [Exh. A, ¶ 22].

c.    **Kenco Logistics' Incident**

Hinson alleges that Mr. Walden pulled away from the dock while his vehicle was being loaded.[8] Hinson does not identify the date, time or any specifics of the incident. Further, he does

---

[8]Hinson's Affidavit with regard to the alleged other incidents is due to be stricken as addressed in Webster's pending Motion to Strike. "Absent a showing of admissibility.. [a party] may not rely on rank hearsay.. to oppose proper motions for summary judgment." *Johnson v. Scotty's, Inc.*, 119 F.Supp. 2d 1276, 1281 (M.D. Fla. 2000). Webster's Motion to Strike is attached hereto as Exhibit "J".

not offer any evidence, other than a self supporting affidavit[9]. Nonetheless, we presume Hinson is relying upon a 2004 incident involving the misconduct of a service provider's employee. [Exh. F, ¶ 25]. Hinson alleges this is a similar incident to the incident forming the basis of this litigation. Hinson is incorrect in his recollection of a separate event and his reliance on the premise that it was a <u>nearly identical</u> incident. First, Mr. Walden has never failed to pull the proper dock plate and place the chains on a trailer before leaving the dock. [Exh. F, ¶¶ 21, 26; Exh. G, ¶8]. Further, Mr. Walden has never driven a truck while knowing an employee was inside the trailer. [Exh. F, ¶ 21].

The incident apparently discussed in Hinson's Reply Brief is presumed to be an event that occurred in 2004 involving a Kenco Logistics' employee, Sedrick Bowman. Kenco Logistics was a service provider used by Webster to assist Webster in the loading process. [Exh F, ¶ 25; Exh. G, ¶4]. Again, in 2004, after Mr. Walden pulled his dock plate and secured the chains on his trailer, Sedrick Bowman improperly pulled the safety chains and entered Mr. Walden's trailer. [Exh. F, ¶ 27; Exh. G, ¶8]. This incident was separately investigated by management for both Kenco Logistics and Webster. [Exh. F, ¶27; Exh. G, ¶8]. The investigations confirmed that Mr. Walden pulled the correct dock plate and properly placed the safety chains on his vehicle prior to departure. [Exh. F, ¶27; Exh. G,¶8]. Mr. Walden did not commit any safety violations. [Exh F, ¶ 27; Exh G, ¶ 8].

Rather, the misconduct causing the incident was committed by Mr. Bowman, a Kenco Logistics' employee. Mr. Bowman's punishment was handled by his employer, Kenco Logistics. [Exh F, ¶23; Exh G, ¶8]. Based upon the foregoing, Hinson is unable to establish

---

[9]Hinson admits in his responses to interrogatories that Bill Barton was not aware of "Paul" pulling away from the loading dock. [Exh. H, p.2].

20

nearly identical conduct committed by Mr. Walden. Hinson committed several severe safety violations while Mr. Walden did not commit any procedural violation, rather a separate person, not within Webster's employment, committed an error. Accordingly, Hinson's attempt to establish similar conduct and dissimilar punishment must fail as a matter of law.

The Eleventh Circuit has stated that "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Wright*, supra (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)). Hinson was accused of failure to pull the dock plate and place safety chains on the trailer of the truck he drove prior to leaving the loading dock and continuing to operate the vehicle while knowing an employee was inside the trailer. Hinson acknowledges he drove a vehicle for which he did not pull the dock plate and did not secure the safety chains. [Hinson Affidavit, ¶8]. He further admits he continued to operate the vehicle after he knew the employee was inside the trailer. [Hinson Affidavit ¶11]. Hinson's gross safety violations resulted in his termination. Mr. Hinson's argument that he was similarly situated to that of Mr. Walden is flawed.

Mr. Walden and Hinson were not "similarly situated in all relevant respects". *Wright, supra.* First, the subject employees did not engage in similar acts of misconduct. Hinson has failed to establish that Mr. Walden committed nearly identical safety violations and was permitted to continue his employment. The evidence is undisputed that Mr. Walden has not committed any safety violations with regard to the loading and unloading process at Webster. Because there is no evidence that a white employee committed similar safety violations to that of Mr. Hinson, Mr. Hinson is unable to maintain a prima facie case of discrimination.

The comparator's misconduct must be "nearly identical" to that of the plaintiff. In the present case, Mr. Walden did not commit any misconduct much less "nearly identical" misconduct. Because Hinson and Walden are not similarly situated Hinson's prima facie case fails as a matter of law. *See Lathem v. Dept. of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999). Additionally, Hinson has failed to offer any additional circumstantial evidence of racial discrimination, other than the simple fact he was terminated for a safety violation and a white employee continued his employment. In light of the absence of the requisite evidence, Hinson failed to establish valid comparators and presented no other circumstantial evidence suggesting racial discrimination; therefore, he has not established a prima facie case of discrimination. Accordingly, summary judgment is proper for Webster.

Hinson cannot depend upon an act of misconduct of a separate corporation's employee. Webster did not employ Sedrick Bowman. [Exh. G, ¶4]. Mr. Bowman was employed by Kenco Logistics. [Exh. G, ¶4]. Kenco Logistics was retained by Webster to assist in the loading and unloading of Webster's warehouse and other operations. [Exh. F, ¶24; Exh. G, ¶3]. Webster did not control Kenco Logistics' employees. [Exh. F, ¶28; Exh. G, ¶3]. Kenco Logistics handled its own enforcement of policy and procedures with regard to its employees. [Exh. F, ¶28; Exh. G, ¶3]. Human resource decision making for Kenco Logistics employees working on the Webster premises was handled by Kenco Logistics, not Webster. [Exh. G, ¶3]. Mr. Bowman, also an African American, committed a loading error and violated Kenco Logistics' imposed loading procedures. [Exh. G, ¶8]. Kenco Logistics investigated the incident and imposed punishment in accordance with Kenco Logistics' policies and procedures. [Exh. G, ¶8]. Both Webster and Kenco Logistics' managers confirmed Mr. Walden properly pulled his dock plate and placed

safety chains on his trailer <u>prior</u> to departing the dock. [Exh. F, ¶27 ; Exh. G, ¶8].

In order for Hinson to satisfy the similar incident aspect of *prima facie* case, he must establish with substantial admissible evidence that a Caucasian Webster employee failed to pull his/her dock plate prior to departure, failed to place safety chains on his/her trailer prior to departure <u>and</u> continued to operate the vehicle after knowing that an individual was inside the trailer. Hinson has not met his burden nor can he.

Moreover, Hinson has failed to present any admissible evidence that Webster consciously overlooked violations by Mr. Walden when Webster disciplined Hinson more severely. In summary, taking all the evidence in the light most favorable to Hinson, it is impossible to identify any non-African-American Webster employee that Webster disciplined more favorably for failure to pull the dock plate before leaving the loading dock **and** failure to place the safety chains on the dock doors before leaving the loading dock **and** for continuing to operate the trailer after knowing that a co-employee was inside the trailer on a forklift. Further, even if we assume Mr. Walden committed a similar violation, which is denied, Hinson fails to show that Webster knew that Mr. Walden committed misconduct similar to that of Hinson's misconduct.[10] Furthermore, even if Webster knew about the presumed other violations, the evidence does not show that Webster consciously overlooked those violations when Webster disciplined Hinson.

---

[10] As detailed in the separately filed Motion to Strike, Hinson's affidavit is due to be stricken in part, based upon hearsay and other applicable Federal Rules of Evidence. Affidavits which do not comply with Rule 56(e) of the Federal Rules of Civil Procedure are subject to a motion to strike. See *Hughes v. Amerada Hess Corp.*, 187 F.R.D. 682, 684-86 (M.D. Fla. 1999). An affidavit based on a conclusory argument rather than a statement of fact or an affidavit not based on personal knowledge must be stricken. See *Hughes*, 187 F.R.D. at 686. Rule 56(e) of the Federal Rules of Civil Procedure requires evidence submitted either in support of or in opposition to a summary judgment motion be admissible. Statements that constitute hearsay are not admissible. Hinson solely depends on his own affidavit to oppose Webster's Motion for Summary Judgment. As set forth in the separately filed Motion to Strike, several statements within his affidavit are conclusory and/or not within his personal knowledge of Walden's discipline, Webster's investigations and findings of other incidents and other individuals being disciplined. Hinson is not qualified to testify as to whether other individuals were permitted the same benefits or preferences or whether other individuals were (or were not) disciplined for infractions of policy.

23

See *Jones*, 874 F.2d at 1541-42. There is no evidence that establishes Webster decided to impose harsher discipline on Hinson because of his race. Based upon the foregoing, it is clear Hinson is unable to meet the elements of a 'disparate treatment' prima facie case. Therefore, summary judgment is due in favor of Webster.

In sum, the misconduct was committed by a <u>Kenco Logistics'</u> employee.[11] The misconduct was not similar in nature – Mr. Bowman improperly entered a trailer after the dock plate was pulled and the chains were in place while Mr. Hinson failed to pull a dock plate for the truck he drove, failed to secure the chains on the trailer he drove, and operated his vehicle after knowing an employee on a forklift was inside the trailer. With regard to Mr. Walden's conduct, the management investigating the incident confirmed Mr. Walden properly pulled the dock plate for the truck he operated prior to departure and likewise properly placed the security chains on the trailer he operated, prior to departure. Also, the misconduct in question was not committed by a non-African American. Based upon the foregoing, Hinson is unable to offer substantial admissible evidence of a similarly situated incident wherein Webster intentionally imposed harsher punishment toward Hinson because of his race, while a non-African American Webster employee intentionally received more favorable treatment. The absence of such evidence mandates summary judgment in favor of Webster.

---

[11] Hinson was not a member of management for either Webster or Kenco Logistics, a wholly separate organization. Accordingly, he is not permitted to testify concerning lack of discipline for any actions, including whether discipline should have been imposed for other non-African American employees, such as Mr. Walden. Affidavits which do not comply with Rule 56(e) of the Federal Rules of Civil Procedure are subject to a motion to strike. See *Hughes v. Amerada Hess Corp.*, 187 F.R.D. 682, 684-86 (M.D. Fla. 1999). An affidavit based on a conclusory argument rather than a statement of fact or an affidavit not based on personal knowledge must be stricken. See *Hughes*, 187 F.R.D. at 686. Rule 56(e) of the Federal Rules of Civil Procedure requires evidence submitted either in support of or in opposition to a summary judgment motion be admissible. Statements that constitute hearsay are not admissible. Hinson solely depends on his own affidavit to oppose Webster's Motion for Summary Judgment. As set forth in the separately filed Motion to Strike, several statements within his affidavit are conclusory and/or not within his personal knowledge of Walden's discipline, Webster's investigations and findings of other incidents and other individuals being disciplined. Hinson is not qualified to testify as to whether other individuals were permitted the same benefits or preferences or whether other individuals were (or were not) disciplined for infractions of policy.

b.    **Defendant's Legitimate, Non-Discriminatory Reason**

If we assume for discussion purposes only, Hinson established a prima facie case of

disparate treatment in violation of Title VII and 42 U.S.C. § 1981, Webster has demonstrated a

legitimate, non-discriminatory reason for terminating Hinson. See *Moreland v. Miami-Dade*

*County*, 255 F. Supp. 2d 1304 (S.D. Fla. 2002) (citing *Reeves v. Sanderson Plumbing Products,*

*Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105(2000) (explaining the burden at this

stage is one of production, not persuasion, and employer need only point to admissible evidence

from which a fact-finder could reasonably conclude that the challenged action was taken for

legitimate, non-discriminatory response).

In the present case, Webster has stated that Hinson was terminated because he committed

several safety violations which endangered the safety of a co-employee and Webster's property.

Even if Webster's finding that Hinson committed these safety violations and that he should be

terminated because of those violations was wrong, it is a legitimate, non-discriminatory

explanation for Webster's decision to terminate Hinson. See *Moreland, supra.* (citing *Chapman*

*v. AI Transport*, 229 F.3d 1012, 1030-31 (11th Cir. 2000) (holding that defendant may terminate

an employee for good or bad reason without violation of federal law); *Nix v. WLCY Radio/Rahall*

*Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (holding that an employee may be fired "for

good reason, bad reason, reason based on erroneous facts, or no reason at all, so long as its action

is not for a discriminatory reason")). It is clear that Webster has established a legitimate, non-

discriminatory reason for terminating Hinson.

c.    **Plaintiff's Evidence of Pretext**

Because Webster has offered a legitimate, non-discriminatory reason for terminating

Hinson, the burden returns to Hinson to show that the proffered reason was in fact a pretext for
intentional discrimination based upon Hinson's race. Further, the presumption of discriminatory
conduct created by a prima facie case "drops" from the case. *Moreland, supra* (citing *St. Mary's
Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Texas Dept. Of
Comm. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

        "In otherwords, the plaintiff must show that 'a discriminatory reason more likely than not
motivated [Webster] to terminate [Hinson].' *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d
1355 (S.D. Fla. 2001)(quoting *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095))" (emphasis added).
"In examining the employer's proffered reasons, the court does not sit as a super-personnel
department, and must accept the employer's stated reasons as given. As stated by the Eleventh
Circuit recently, "provided that the proffered reason is one that might motivate a reasonable
employer, an employee must meet that reason head on and rebut it, and the employee cannot
succeed by simply quarreling with the wisdom of that reason.'" *Gaston, supra* (quoting
*Chapman*, 229 F.3d at 1030).

        In the present case, Hinson does not offer any admissible evidence casting any doubt on
the believability of Webster's explanation for their decision to terminate Hinson. Generally,
Hinson relies upon anticipated testimony that is expected to establish "other employees were
threatened and/or discriminated against Paul's attitude towards other blacks; knows safety
equipment not working properly, knows of other employees being terminated due to disabilities;
knows false testimony was given about Alvin Pugh taking my position after termination; knows
company did not follow its own policies; Paul's comments about not being able to pass drug
testing." [Exh. H, p.7]. Further, he relies upon his own affidavit and states that Mr. Walden's

26

alleged misconduct in traffic accidents and other incidents should have caused Mr. Walden's termination.[12]  Hinson argues Webster's refusal to fire Mr. Walden establishes pretext in the firing of Mr. Hinson. Nothing hypothecated by Hinson addresses the proffered explanation of Webster that Hinson was terminated because he committed several safety violations.

Even if Hinson's arguments and anticipated testimony he relies upon are fully accepted, admissible and could be found to cast doubt on Webster's explanation, Webster remains entitled to summary judgment because Hinson has not presented any evidence to indicate that Webster discriminated against him because of his race.  Hinson's case is primarily a semantic one and includes little and no probative evidence addressing the fact Hinson failed to pull the dock plate for the truck he drove, failed to place the chains on the trailer door on the truck he drove and operated a vehicle knowing an employee was on a forklift inside the trailer. Hinson has not presented any independent evidence in his argument of pretext that Webster acted with discriminatory intent in Hinson's discharge.   Without such evidence, Webster is entitled to summary judgment as a matter of law.

The court in reviewing a discrimination claim is cloaked with the duty of determining whether the employment decision was an honest one, not a correct one.  In Title VII cases where pretext is an issue, the question is whether the employer's proffered reasons were "a cover-up for a .... discriminatory decision." *Rojas v. State of Florida,* 285 F.3d 1339 (11th Cir. 2002) (citing *McDonnell Douglas,* 93 S. Ct. at 1826)).  Courts are not "in the business of adjudging whether employment decisions are prudent and fair. Instead, [the court's] sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Rojas, supra*

---

[12] As addressed previously herein, a Motion to Strike remains pending seeking to have the inadmissible aspects of Hinson's Affidavit stricken.

27

(quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)).

Hinson has failed to establish a prima facie case of discrimination and further if one is assumed Hinson has not presented any evidence that Webster's decision to terminate Hinson was based upon his race. Hinson has not presented any evidence that is remotely persuasive in establishing pretext – he has not offered any evidence other than a self-serving affidavit and a reiteration of his vague attempt to present a prima facie case of race discrimination. The undisputed evidence is that Hinson did not pull the dock plate for the truck he drove – a safety violation. Hinson did not place the safety chains on the truck he drove – a second safety violation. The evidence is undisputed that Hinson continued to operate his vehicle while knowing an employee was inside the trailer – another safety violation.

Hinson attempts to establish that Mr. Walden is a similarly situated employee that committed similar safety violations and received more favorable treatment. The evidence is however undisputed that Mr. Walden has not committed any of the safety violations committed by Hinson. Mr. Walden has in his employment with Webster properly pulled the dock plates and placed safety chains on vehicles he operated. There is no admissible evidence Webster's management overlooked any similar safety violations nor is there any evidence Webster had an unlawful discriminatory animus which motivated their decision to terminate Hinson. The reality is that Hinson committed gross safety violations and received appropriate punishment from Webster. Hinson's attempt to establish pretext fails.

The Eleventh Circuit explained that "a plaintiff may prove pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

28

Because the plaintiff bears the burden of establishing pretext for discrimination, he must present significant probative evidence on the issue to avoid summary judgment. Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Lewis-Calhoun v. City of Jackson,* 977 F. Supp. 1148 (S.D. Ala. 1997) (quoting *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376).

Furthermore, as recognized in *Lewis-Calhoun,* the Eleventh Circuit also explained in *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997), that "when deciding a motion by the defendant for summary judgment in a discrimination case in which the defendant has proffered nondiscriminatory reasons for its actions, the district court's task is a highly focused one. The district court must, in view of all of the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered "legitimate reasons were not what actually motivated its conduct." The district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibility, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable fact finder could find them unworthy of credence."

Accordingly, Hinson must offer **substantial** admissible evidence from which a jury could find that Webster's reasons are pretextual, either through evidence of discriminatory motive or through evidence that the proffered nondiscriminatory reasons were false. Hinson has failed to offer any evidence of discriminatory motive or that the reasons for the termination were false. Hinson has not offered any evidence of discriminatory motive. Further, Hinson has admitted that

he drove a truck that he did not pull the dock plate for and did not place the safety chains on. He further acknowledges that he continued to drive the vehicle after knowing the employee was inside the trailer. Based upon the foregoing, Hinson is unable to establish any admissible, much less substantial evidence, that Webster's proffered reasons for its employment decision were pretextual. Summary judgment is therefore due in favor of Webster.

## VI.    CONCLUSION

It is undisputed Hinson committed serious safety violations in the operation of his truck which resulted in his termination. Hinson pulled away from the loading dock without first pulling a dock plate and without placing safety chains on the dock doors on the vehicle he drove. Hinson further continued to operate the vehicle with the knowledge that a co-employee was inside a trailer on a forklift. These series of events jeopardized the safety of the co-employee and the condition of Webster's forklift and property. The seriousness of these infractions resulted in the dismissal of Hinson from Webster's employ. The termination of Hinson from Webster was not in violation of Title VII, 42 U.S.C. § 1981, or the Americans with Disabilities Act. For the reasons stated above, Webster is entitled to a judgment as a matter of law on all Counts.

Respectfully submitted,

s/ Thomas T. Gallion, III

Thomas T. Gallion, III
Jamie A. Johnston
Attorneys for the Defendant

OF COUNSEL:

Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama  36103-4660
(334) 265-8573          Telephone
(334) 264-7945          Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document upon the following by causing a true and complete copy of same via CM/ECF and in the United States Mail, sufficient first class postage prepaid, on this the 8th day of January 2008, addressed as follows:

Fred L. Clements, Jr., Esq
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL  36103

s/ Thomas T. Gallion, III
_____
OF COUNSEL