# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DARRELL HINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 2:05-cv-971-ID |
| | ) | |
| CHELSEA INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

AFFIDAVIT OF DARRELL HINSON

STATE OF ALABAMA )
MONTGOMERY COUNTY )

1. My Name is Darrell Hinson. I am over the age of nineteen.

2. I was hired by Chelsea Industries, Inc. (hereinafter "Chelsea") as a full-time truck driver on or about March 18, 2002.

3. On April 11, 2004, I was working the night shift and was responsible for driving trucks that would deliver freight back and forth between Chelsea's warehouse and plant locations.

4. Chelsea's procedure requires drivers to go inside and pull the dock plate and place a chain across the dock door.

5. At the plant location, the driver can push a button and a mechanical device will lift the dock plate. At the warehouse location, a forklift driver must lift the dock plate.

6. I was preparing to haul freight from the plant location to the warehouse. I followed procedure by pulling the dock plate and placing a safety chain across the dock door.





7. Next, I went outside to pull the trailer. Both trucks were sitting side by side, and I accidently entered the wrong truck and pulled away from the dock.

8. When I pulled away from the dock a forklift and its operator were inside. I did not know the forklift or its operator was inside. Ordinarily, when a forklift is loading a trailer the trailer will rock due to the movement of the heavy forklift. I did not feel any movement because the forklift's operator was talking on the phone and had stopped the forklift inside of the trailer.

9. I pulled the truck only as far as necessary to close the trailer door. That is when I discovered the forklift and operator were in the trailer.

10. A safety light located outside of the plant should change from red to green to tell a driver that the safety chain has been placed across the dock door. The safety light is the only way to know that the safety chain has been placed across the dock door. The safety light was not working on April 11, 2004 and had been broken for some time prior to that date.

11. I backed up the trailer to the dock. Chelsea had no procedure for what to do under these circumstances.

12. The forklift operator was not injured, and the forklift was not damaged.

13. Afterward, I was placed on suspension and then fired. Chelsea stated the reason for my dismissal was because I violated safety procedures, the operator could have been injured, and the fork lift could have been damaged when I pulled the trailer away from the loading dock

14. Under similar circumstances, Chelsea fired Tommy (LNU), an African American truck driver.

15. Under similar circumstances, Chelsea did not fire Paul Walden (hereinafter "Paul") a white truck driver.

16. Paul was working as a truck driver for Chelsea on April 11, 2004.

17. On three separate occasions Paul pulled away from the dock without following procedure, twice prior and once subsequent to my termination. Paul has done this at both the plant and warehouse locations.

18. On one such occasion Paul pulled the truck away from the warehouse dock while the forklift was actively moving cargo into the trailer. This caused the forklift to fall over and the driver to go flying. The forklift was badly damaged. The details of this event were common knowledge at Chelsea.

19. Bill Barton's office is at the warehouse location.

20. While driving Chelsea's truck on public roads Paul was involved in two separate accidents with cars while he was hauling freight between Chelsea's warehouse and plant locations. Paul showed me the accident report from his first accident, which read that Paul was at fault.

21. Chelsea suspended Paul for two months due to accidents while he was driving Chelsea's trucks between the plant and warehouse locations.

22. Chelsea's policy regarding auto accidents is to put a report in the driver's file.

Dated this 14th day of December 2007.

DARRELL HINSON, Affiant

SWORN TO and SUBSCRIBED before me this 14 day of December 2007.

NOTARY PUBLIC, Alabama at Large

My commission expires 11/15/08

Case 2:05-cv-00971-ID-CSC Document 42-2 Filed 12/17/2007 Page 1 of 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DARRELL HINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 2:05-cv-971-ID** |
| | ) | |
| **CHELSEA INDUSTRIES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**AFFIDAVIT OF DARRELL HINSON**

STATE OF ALABAMA )
MONTGOMERY COUNTY )

1. My Name is Darrell Hinson. I am over the age of nineteen.

2. I was hired by Chelsea Industries, Inc. (hereinafter "Chelsea") as a full-time truck driver on or about March 18, 2002.

3. On April 11, 2004, I was working the night shift and was responsible for driving trucks that would deliver freight back and forth between Chelsea's warehouse and plant locations.

4. Chelsea's procedure requires drivers to go inside and pull the dock plate and place a chain across the dock door.

5. At the plant location, the driver can push a button and a mechanical device will lift the dock plate. At the warehouse location, a forklift driver must lift the dock plate.

6. I was preparing to haul freight from the plant location to the warehouse. I followed procedure by pulling the dock plate and placing a safety chain across the dock door.





7. Next, I went outside to pull the trailer. Both trucks were sitting side by side, and I accidently entered the wrong truck and pulled away from the dock.

8. When I pulled away from the dock a forklift and its operator were inside. I did not know the forklift or its operator was inside. Ordinarily, when a forklift is loading a trailer the trailer will rock due to the movement of the heavy forklift. I did not feel any movement because the forklift's operator was talking on the phone and had stopped the forklift inside of the trailer.

9. I pulled the truck only as far as necessary to close the trailer door. That is when I discovered the forklift and operator were in the trailer.

10. A safety light located outside of the plant should change from red to green to tell a driver that the safety chain has been placed across the dock door. The safety light is the only way to know that the safety chain has been placed across the dock door. The safety light was not working on April 11, 2004 and had been broken for some time prior to that date.

11. I backed up the trailer to the dock. Chelsea had no procedure for what to do under these circumstances.

12. The forklift operator was not injured, and the forklift was not damaged.

13. Afterward, I was placed on suspension and then fired. Chelsea stated the reason for my dismissal was because I violated safety procedures, the operator could have been injured, and the fork lift could have been damaged when I pulled the trailer away from the loading dock

14. Under similar circumstances, Chelsea fired Tommy (LNU), an African American truck driver.

15. Under similar circumstances, Chelsea did not fire Paul Walden (hereinafter "Paul") a white truck driver.

16. Paul was working as a truck driver for Chelsea on April 11, 2004.

17. On three separate occasions Paul pulled away from the dock without following procedure, twice prior and once subsequent to my termination. Paul has done this at both the plant and warehouse locations.

18. On one such occasion Paul pulled the truck away from the warehouse dock while the forklift was actively moving cargo into the trailer. This caused the forklift to fall over and the driver to go flying. The forklift was badly damaged. The details of this event were common knowledge at Chelsea.

19. Bill Barton's office is at the warehouse location.

20. While driving Chelsea's truck on public roads Paul was involved in two separate accidents with cars while he was hauling freight between Chelsea's warehouse and plant locations. Paul showed me the accident report from his first accident, which read that Paul was at fault.

21. Chelsea suspended Paul for two months due to accidents while he was driving Chelsea's trucks between the plant and warehouse locations.

22. Chelsea's policy regarding auto accidents is to put a report in the driver's file.

Dated this 14th day of December 2007.

DARRELL HINSON, Affiant

SWORN TO and SUBSCRIBED before me this 14 day of December 2007.

NOTARY PUBLIC, Alabama at Large

My commission expires 11/15/08

# EXHIBIT J

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

**DARRELL HINSON,**

**Plaintiff,**

**v.** ) **CIVIL ACTION NO.: 2:05cv971-ID**

**CHELSEA INDUSTRIES, INC.,**

**Defendant.**

**CHELSEA INDUSTRIES, INC. AND WEBSTER INDUSTRIES, INC.'S MOTION TO STRIKE**

COMES NOW Defendant Chelsea Industries, Inc. and Webster Industries, Inc.[1], (hereinafter collectively referred to as "Webster"), and submits this Motion to Strike certain portions of the Affidavit of Darrell Hinson ("Hinson's Affidavit") in opposition to Webster's properly supported and well-taken Motion for Summary Judgment. As is shown below, paragraphs 14, 15, 17, 18, 20-22 are due to be stricken because they are not based on Hinson's personal knowledge, contain inadmissible hearsay and are conclusory statements.

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Darrell Hinson filed this lawsuit against Webster on or about October 11, 2005, alleging that Webster had discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, and 42 U.S.C. Section 1981. Specifically, Hinson argues that he was wrongfully terminated for committing safety violations while a Caucasian employee that committed the same violations was not discharged. Webster vehemently denies any liability with respect to these purported claims and as demonstrated below is entitled to judgment as a matter of law with respect to all of them.

[1]Chelsea Industries, Inc., is the proper party to this action. The original Complaint named Webster Industries.



On November 21, 2007, Webster filed a Motion for Summary Judgment which demonstrates that Hinson cannot bear his burden of proof to establish that the adverse employment decision, Hinson's termination, was made because of intentional discrimination. *See St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2747-48 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). In a attempt to bear his burden of proof, Hinson filed an Opposition to Webster's Motion for Summary Judgment which relied heavily on the Hinson's flawed and impermissible affidavit. Hinson's Affidavit is replete with hearsay and legal conclusions. In addition, Hinson's Affidavit is not based on personal knowledge; thus, those sections of Hinson's affidavit must be stricken and disregarded by this Court when ruling on Webster's Motion for Summary Judgment.

## II. ARGUMENT

### A. RELEVANT STANDARD

It cannot be disputed that Federal Rule of Civil Procedure 56(e), that affidavits offered to overcome a motion for summary judgment, "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein." *Hawthorne v. Sears Termite & Pest Control, Inc.*, 309 F.Supp.2d 1318, 1334 (M.D. Ala. 2003). Further, "the requirements of Rule 56 make it plain that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper. *Id., (citing Story v. Sunshine Foliage World, Inc.*, 120 F.Supp.2d 1027, 1030 (M.D.Fla.2000). *Accord, Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir.2000). If an affidavit fails to meet the standards set forth in Federal Rule of Civil Procedure 56(e), the affidavit is subject to a motion to strike. *Id. See also Givhan v. Electronic Eng'rs, Inc.*, 4 F.Supp.2d 1331, 1334 (M.D.Ala.1998). Moreover, a court has the authority to

strike certain portions of an affidavit that fails to comport with the Rule 56(e) requirements. *Johnson v. Scotty's, Inc.*, 119 F.Supp.2d 1276, 1281 (M.D. Fla. 2000).

**B. PARAGRAPHS 14, 15, 17-18, 20-22 OF HINSON'S AFFIDAVIT SHOULD BE STRICKEN**

The following paragraphs of Hinson's Affidavit do not comply with the mandates of Rule 56(e) and should be stricken:

> 14. Under similar circumstances, Chelsea fired Tommy (LNU), an African American truck driver.
>
> 15. Under similar circumstances, Chelsea did not fire Paul Walden (hereinafter "Paul") a white truck driver.
>
> 17. On three separate occasions Paul pulled away from the dock without following procedure, twice prior and once subsequent to my termination. Paul has done this at both the plant and warehouse locations.
>
> 18. On one such occasion Paul pulled the truck away from the warehouse dock while the forklift was actively moving cargo into the trailer. This caused the forklift to fall over and the driver to go flying. The forklift was badly damaged. The details of this event were common knowledge at Chelsea.
>
> 20. While driving Chelsea's truck on the public roads Paul was involved in two separate accidents with cars while he was hauling freight between Chelsea's warehouse and plant locations. Paul showed me the accident report from his first accident, which read that Paul was at fault.
>
> 21. Chelsea suspended Paul for two months due to accidents while he was driving Chelsea's trucks between the plant and warehouse locations.
>
> 22. Chelsea's policy regarding auto accident is to put a report in the driver's file.

Paragraphs 14-15 should be stricken because they contain conclusory statements and are not statements of fact. Courts routinely strike conclusory statements of facts, legal conclusions and improper lay opinion testimony from affidavits and the same should hold true here. *See, e.g., HomeBingo Network, Inc. v. Chayevsky*, 428 F.Supp.2d 1232, 1239 (S.D. Ala. 2006) ("Another black-letter requirement of affidavits is that they must be rooted in facts, rather than

conclusory remarks."); *Burger King Corp. v. Lumbermens Mut. Cas. Co.*, 410 F.Supp.2d 1249, 1255 (S.D. Fla. 2005) ("An affidavit has no probative value and must be stricken when it contains conclusions rather than statements of fact."); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir 1998) (affidavit testimony containing inferences and opinions without factual basis, bold assertions and conclusory assertions should be disregarded); *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (same); *Spice v. Puyallup Housing Authority*, 33 F.3d 59 (Table) *1, n. 2 (9th Cir. 1994) (same); *Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254-55 (9th Cir.1982) (same); *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir.1985)(same).

Paragraphs 17-18, 20-22 should be stricken because they are not based on the personal knowledge of Hinson, which is made clear by the statement: "The details of this event were common knowledge at Chelsea." To establish personal knowledge in a Rule 56(e) context Hinson much show that he: "was in a physical position to see, hear, or otherwise perceive the matters to which the testimony relates." *Johnson v. Scotty's, Inc.*, 119 F.Supp.2d 1276, 1281 (M.D. Fla. 2000). Clearly, these paragraphs should be stricken because Hinson does not state that he saw, heard or otherwise perceived the events contained in these paragraphs.

In addition, Paragraphs 14-15 should be stricken because they are also not based on Hinson's personal knowledge. Hinson was not in a "managerial position and did not have the personal knowledge of other individuals being disciplined." *Id.* at 1282. Hinson would have to rely on the statements of others to know what these other employees did and how they were disciplined.

Further, all of these paragraphs should be stricken as impermissible hearsay. Rule 56(e) also requires information submitted, both in support of and in opposition to summary judgment, to be admissible in evidence. *See Bush v. Barnett Bank of Pinellas County*, 916 F.Supp. 1244,

1256 (M.D.Fla.1996); F.R.C.P. 56(e). Statements that constitute hearsay are not admissible. *See Hughes v. Amerada Hess Corp,*, 187 F.R.D. 682, 687-88 (M.D. Fla. 1999). "Absent a showing of admissibility...[a party] may not rely on rank hearsay...to oppose proper motions for summary judgment." *Bush,* 916 F.Supp. at 1256 (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)).The statements contained in these paragraphs are not evidence before this Court and Hinson has not made any attempt to demonstrate that these statements would be admissible.

## III. CONCLUSION

For the reasons set forth above, the Court should strike Paragraphs 14-15, 17-18, 20-22 of the Hinson's Affidavit because these statements contain improper legal conclusions, inadmissible hearsay and are not based on the personal knowledge of Hinson.

Respectfully submitted,

/s/ Thomas T. Gallion, III

Thomas T. Gallion, III
Jamie A. Johnston
Attorneys for the Defendant

OF COUNSEL:

Haskell Slaughter Young & Gallion, L.L.C.
305 South Lawrence Street
P.O. Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573 Telephone
(334) 264-7945 Facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing document upon the following by causing a true and complete copy of same via CM/ECF and in the United States Mail, sufficient first class postage prepaid, on this the 8th day of January 2008, addressed as follows:

Fred Clements, Esq.
Jay Lewis, Esq.
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103

/s/ Thomas T. Gallion, III

Thomas T. Gallion, III
Jamie A. Johnston
Attorneys for the Defendant

#30178
83562-023