IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL HINSON,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )    CIVIL ACTION NO. 2:05cv971-ID
                                   )              (WO)
CHELSEA INDUSTRIES, INC.,          )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

In this lawsuit, Plaintiff Darrell Hinson ("Plaintiff"), an African-American male,

alleges that Defendant Chelsea Industries, Inc., ("Defendant") terminated his employment

based upon his race.  Plaintiff brings his claims pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 ("Title VII"), and 42 U.S.C. § 1981

("§ 1981").  Before the court are three motions: (1) Defendant's motion for summary

judgment (Doc. No. 35); (2) Defendant's motion to strike seven paragraphs of Plaintiff's

affidavit which was submitted in opposition to the summary judgment motion (Doc. No.

47); and (3) Plaintiff's motion for leave to file a surreply.  (Doc. No. 49.)  The parties

have submitted briefs and evidence in support of and in opposition to the motion for

summary judgment.  (Doc. Nos. 36, 42, 48.)  Plaintiff "concedes" that Defendant's

motion to strike is due to be granted in part, but otherwise objects to the motion to strike.

(Doc. No. 53.)  Defendant objects to Plaintiff's motion for leave to a file surreply.  (Doc.

No. 52.)  After careful consideration of the arguments of counsel, the relevant law, and

the record as a whole, the court finds that Defendant's motion for summary judgment is due to be granted, that Defendant's motion to strike is due to be granted in part and denied as moot in part, and that Plaintiff's motion for leave to file a surreply is due to be denied.

## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).  Personal jurisdiction and venue are adequately pleaded and not contested.

## III.  STANDARD OF REVIEW

A court considering a motion for summary judgment must construe the evidence and make factual inferences in the light most favorable to the nonmoving party.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citations omitted).

Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-23, 325. The burden then shifts to the nonmoving party, which "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Summary judgment will not be entered unless the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. See id. at 587.


## IV. FACTS[1]

Plaintiff, an African-American male, began work for Defendant as a full-time local truck driver on March 18, 2002. He was fired on April 20, 2004. The alleged infractions which resulted in Plaintiff's termination occurred on April 11, 2004, and are as follows.

Plaintiff was working the night shift and was preparing to haul freight on a tractor-trailer truck from one of Defendant's plant locations to the warehouse. (Pl. Aff. ¶ 3 (Doc.

---

[1] The facts are presented in the light most favorable to Plaintiff. When pertinent for purposes of establishing which facts are the summary judgment facts, the court discusses the motion to strike.

No. 42-2).)  Defendant's safety procedures required all drivers to "(1) go inside [the trailer] and pull the dock plate[] and (2) then place safety chains across the dock doors before departing the loading dock."  (Barton Aff. ¶ 12)[2]; (Pl. Aff. ¶ 4); (Def. Reply at 7-8 (Doc. No. 48).)  At the plant location, the driver can push a button and a mechanical device will lift the dock plate.  At the warehouse location, a forklift driver must lift the dock plate.  (Pl. Aff. ¶¶ 3-5.)

Plaintiff pulled the dock plate connected to his trailer and placed the safety chains across the dock doors.  Next, he went outside to pull the trailer.  There were two tractor-trailer rigs sitting side by side, one of which was Plaintiff's, but Plaintiff "accidentally" entered the wrong truck cab.  (Id. ¶¶ 6-7.)  Plaintiff does not dispute that the dock plate had not been pulled and the safety chains had not been secured for the trailer connected to the tractor cab he mistakenly entered and drove.  Plaintiff, however, says that he had no way of knowing that the safety chains had not been secured because Defendant's alternating red and green safety light was broken and not functioning.  The safety light changes from red to green when the safety chain has been secured so as to notify the driver that it is safe to drive away from loading dock.  (Id. ¶ 10.)

Plaintiff pulled the tractor-trailer slightly away from the dock in order to give him enough room to close the trailer door.  When Plaintiff went to close the trailer door, he

---

[2] Barton was Plaintiff's supervisor.  (Barton Aff. ¶ 20 (Doc. No. 36-2).)  Barton submitted two affidavits in support of Defendant's summary judgment motion.  (See Doc. Nos. 36-2, 48-2.)  Barton's second affidavit includes five new paragraphs submitted in rebuttal to Plaintiff's response to the summary judgment motion.  (See Barton Aff. ¶¶ 25-29.)  Otherwise, the affidavits are the same.

discovered that a forklift and its operator were in the trailer.  Plaintiff backed up the

trailer to the dock.  The forklift operator was not injured, and the forklift was not

damaged.  (Id. ¶¶ 9, 11, 12.)

Defendant found that the explanation given by Plaintiff that he mistakenly drove

the wrong truck, after having followed the safety procedures as to his truck, compounded,

not alleviated, "the problem."  (Ex. E to Doc. No. 36.)  From Defendant's vantage point,

Plaintiff violated company safety procedures, set out above, because he drove the tractor-

trailer at issue away from the loading dock before pulling the dock plate and before

placing the safety chains across the dock doors.  As a result of Plaintiff's actions, Plaintiff

drove a truck while a forklift and its operator were inside the trailer, thereby placing the

operator at risk for serious injury or death.  Plaintiff also could have caused significant

damage to Defendant's forklift and facilities.  Furthermore, Defendant concluded that

Plaintiff violated safety procedures by operating the trailer once he learned that the

forklift and its operator were inside the trailer.  (Barton Aff. ¶¶ 11-15.)

As a result of Plaintiff's actions, Plaintiff was suspended on April 14 while the

incident was investigated.  (Id. ¶ 16.)  The "Personnel Documentation for Employee

Progressive Disciplinary Action," a written document which Plaintiff received, states:

> On 4/11/2004, you drove your truck and pulled a trailer away from a
> loading dock while a forklift driver was inside your trailer.  You violated
> several safety procedures that required you to check your trailer before
> driving away from the loading dock.  This is a serious safety violation that
> could have severely injured the forklift driver and/or destroyed a Webster
> forklift.  Therefore, you are being suspended while this incident is under
> investigation.

(Ex. C to Doc. No. 36.)

On April 20, 2004, Defendant terminated Plaintiff, concluding that he violated the safety procedures outlined above.  (Barton Aff. ¶ 17.)  The "Personnel Documentation for Employee Progressive Discipline Action" memorializes in writing Defendant's termination decision as follows:

> On 4/11/2004, you pulled a trailer away from the loading dock without following the prescribed safety procedures.  This action was compounded by the fact that a Webster employee in the process of loading the trailer was actually inside the trailer when you pulled it away.  Further, when you discovered that an employee was inside the trailer, you returned it to the loading dock with the forklift driver still inside.  The fact that it was not the trailer you were supposed to pull away in the first place just adds to the problem.  You have committed several serious safety violations[,] the result of which could have been serious injury or death, not to mention a destroyed forklift.  Therefore, you were suspended while this incident was under investigation.
>
> After completing our investigation, we have concluded that based on the serious[ness] of these safety violations, your employment with Webster Industries has been terminated.

(Ex. E to Doc. No. 36.)  After Plaintiff was terminated, Defendant internally posted Plaintiff's position and awarded the position to an African-American male.  (Barton Aff. ¶¶ 18-19.)

Plaintiff contends that Paul Walden ("Walden"), also a local truck driver for Defendant, is a similarly-situated Caucasian employee who committed similar infractions, but who was not fired.  Walden is a Caucasian male and began his employment with Defendant on March 19, 2003.  (Id. ¶ 20.)  A discussion of the *admissible* facts surrounding Walden's alleged infractions is helpful at this point.  The alleged infractions can be placed into two categories.

The first category pertains to Walden's traffic accidents in 2003. Relying on paragraph 20 in his affidavit and two Alabama Uniform Traffic Accident Reports, Plaintiff says that on June 2, 2003, and August 5, 2003, Walden was operating a truck owned by Defendant and was involved in accidents on public roadways while transporting freight between Defendant's warehouse and plant locations. (Doc. No. 42 at 2-4.) Plaintiff also states that on both occasions, as reported in the Alabama Uniform Traffic Accident Reports, witnesses said that Walden was at fault. (Id.) Furthermore, relying on paragraph 21 of his affidavit, Plaintiff states that Walden received a two-month suspension as a result of his role in these two accidents. (Id. at 4.)

Defendant submits evidence, in the form of Barton's affidavit, that disciplinary procedures for traffic accidents are grounded in its "fleet safety policy and are entirely different [from] [its] procedures for handling safety violations in the loading and unloading process." (Barton Aff. ¶ 29.) Defendant also moves to strike paragraphs 20 and 21 of Plaintiff's affidavit, arguing that these paragraphs are lacking personal knowledge and are hearsay. (Doc. No. 47 at 4.) Plaintiff "concedes," and the court finds, that paragraph 21 is due to be stricken. (Doc. No. 53 at 2.) Consequently, there are no *admissible* facts in the record specifying the type of discipline, if any, imposed upon Walden. Construing the inferences in Plaintiff's favor, however, the court will assume that any discipline fell short of termination, given that Walden's traffic accidents occurred in 2003, and, as discussed below, Walden remained in Defendant's employ in 2004.

Turning to paragraph 20 of Plaintiff's affidavit which also is subject to the motion to strike, the court finds that this paragraph is hearsay. Plaintiff essentially agrees by his silence, arguing instead that paragraph 20 is cumulative because he also has submitted the accident reports and these reports fall within the public records exception to the hearsay rule. See Fed. R. Evid. 803(8); (Doc. No. 53 at 3.) The court, though, cannot agree in full with Plaintiff's argument. For instance, in the second sentence of paragraph 20, Plaintiff states that Walden was at fault in both of the accidents, but to reach that conclusion Plaintiff relies on the eyewitnesses' statements, as documented in the accident reports, not on any factual finding made by the police officer who did not charge Walden with committing any offense  See Colony Ins. Co. v. Griffin, No. 3:06cv555-MEF, 2007 WL 4181738, at *4-*5 (M.D. Ala. 2007) (Fuller, Chief J.) (assuming without deciding that police records were admissible, witness statements in those records would only be admissible if they too fell within a hearsay exception and rejecting plaintiff's argument (in circumstances similar to this case) that the witnesses' statements were not excepted from the hearsay rule under Rule 803(8)(C)). Nonetheless, in the context of this case, the court can assume, without deciding, that the accident reports otherwise are admissible, because as discussed in the next section, the court finds that Plaintiff has failed to demonstrate that his alleged misconduct and Walden's traffic accidents are comparable misconduct under the governing legal standards. The motion to strike, thus, is due to be granted as to the second sentence of paragraph 20, but as to the first sentence of paragraph 20, the motion is due to be denied as moot.

8

The second category of Walden's conduct upon which Plaintiff relies revolves around an incident in 2004 at the loading dock.  In an affidavit, Plaintiff attests that on one unspecified occasion, Walden "pulled the truck away from the warehouse dock while the forklift was actively moving cargo into the trailer.  This caused the forklift to fall over and the driver to go flying.  The forklift was badly damaged.  The details of this event were common knowledge" at the workplace.  (Pl. Aff. ¶ 18.)  Defendant moves the court to strike paragraph 18 of Plaintiff's affidavit, arguing in part that it constitutes "impermissible hearsay."  (Doc. No. 47 at 4.)  Plaintiff does not challenge Defendant's hearsay argument, stating that Defendant "may properly assert that ¶ 18 is based on hearsay"; however, Plaintiff contends that his concession is inconsequential because Defendant has admitted "that a similar accident involving Paul Walden did in fact occur at Defendant's warehouse."[3]  (Doc. No. 53 at 3.)  The court finds, as Plaintiff essentially concedes, that paragraph 18 is due to be stricken.  Plaintiff's affidavit does not set forth facts establishing that Plaintiff "was in a physical position to see, hear, or otherwise perceive the matters to which the testimony relates."  Johnson v. Scotty's, Inc., 119 F. Supp.2d 1276, 1281 (M.D. Fla. 2000).  The statements also are hearsay because Plaintiff is attempting to offer the statements, which obviously were relayed to him by third parties, see Fed. R. Evid. 801(c), for the truth of the matter asserted, and Plaintiff has not

---

[3] The fact that the court quotes Plaintiff's argument does not mean that the court agrees that the summary judgment facts support the argument.  Whether the "accident" was similar under the governing legal standards, a conclusion which Defendant disputes, is discussed later in this opinion

9

demonstrated that the statements fall within an exception to the hearsay rule.  See

Macuba v. DeBoer, 193 F.3d 1316, 1322-254 (11th Cir. 1999) (holding that district court

erred in considering "rank hearsay" in ruling on summary judgment motion); Fed. R. Civ.

P. 56(e).  The court, therefore, has not considered paragraph 18.  The court turns to the

admissible facts submitted by Defendant.

On an unspecified day in 2004, Walden pulled his trailer away from the loading

dock while a forklift operator was inside.  Barton and Joe Thomas ("Thomas"), a Kenco

Logistics supervisor, conducted an investigation and concluded that Walden had pulled

the dock plate and secured the chains prior to pulling his trailer away from the loading

dock and that, thereafter, a Kenco Logistics employee (Sedrick Bowman) improperly had

entered Walden's trailer without permission from Defendant, without knowledge of

Walden, and without the authority of Kenco Logistics.[4]  (Barton Aff. ¶¶ 25-27); (Joe

Thomas Aff. ¶¶ 3-8 (Doc. No. 48-2).)

It is undisputed that Walden was not disciplined as result of this incident.  (See

Doc. No. 48 at 16); (Barton Aff. ¶ 27.)  Barton attests that, "to [his] knowledge and

according to [his] review of [Walden's] personnel file, Walden has never failed to pull

the dock plate and place the safety chains on the dock doors before pulling away from the

---

[4] In 2004, Thomas was Bowman's supervisor.  (Thomas Aff. ¶¶ 2, 5.)  Kenco
Logistics contracted with Defendant to assist in the loading and unloading process, and
Kenco Logistics, not Defendant, imposed discipline on Bowman.  (Barton Aff. ¶¶ 24,
28); (Thomas Aff. ¶¶ 3, 8.)

loading dock." (Barton Aff. ¶ 21.)  Walden also "has never knowingly driven his truck with an employee on a forklift inside his trailer." (Id.)

Seeking relief for an allegedly discriminatory termination, Plaintiff filed the instant lawsuit on October 11, 2005, against his former employer, alleging violations of Title VII and § 1981.  Plaintiff filed an amended complaint which, other than correcting the name of Defendant, is substantially identical to the original complaint.[5]  (Am. Compl. (Doc. No. 33).)  Plaintiff requests a declaratory judgment, a permanent injunction, compensatory damages, costs and attorney's fees.  (Id. at 6.)

# V.  DISCUSSION

## A. Defendant's Motion to Strike

Plaintiff filed an affidavit in opposition to Defendant's motion for summary judgment.  (See Doc. No. 42-2.)  As indicated, Defendant filed a motion to strike paragraphs 14, 15, 17, 18, 20, 21 and 22 of Plaintiff's Affidavit.  (Doc. No. 47.)  Plaintiff "concedes" (Doc. No. 53 at 1-2), and the court finds, that the motion to strike is due to be granted as to paragraphs 14, 17 and 21.  Additionally, Defendant's motion to strike paragraph 22 is due to be denied as moot because Plaintiff states that he does not rely on this paragraph of his affidavit in opposing summary judgment.  (Id. at 2.)  Paragraph 15 of Plaintiff's affidavit – in which Plaintiff argues that "[u]nder similar circumstances,

---

[5] Plaintiff sued Webster Industries, but Defendant maintained in its answer that Chelsea Industries, Inc., was its proper name.  Apparently, Webster Industries is a division of Chelsea Industries.

11

Defendant did not fire Paul Walden . . . a white truck driver" – is conclusory and states

an impermissible legal conclusion which invades the province of the court.  See, e.g.,

HomeBingo Network, Inc. v. Chayevsky, 428 F. Supp.2d 1232, 1239 (S.D. Ala. 2006)

("Another black-letter requirement of affidavits is that they must be rooted in facts, rather

than conclusory remarks.").  Moreover, in the preceding section, the court discussed and

found that Defendant's motion to strike paragraph 18 was well taken and that

Defendant's motion to strike paragraph 20 was due to be granted in part and denied as

moot in part.  Accordingly, overall, the court finds that Defendant's motion to strike is

due to be granted in part and denied in part as moot.

B.  Defendant's Motion for Summary Judgment

Because this is not a direct evidence case, Plaintiff's Title VII/§ 1981 racial

discrimination claims are governed by the familiar McDonnell Douglas burden-shifting

framework.[6]  McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  In the first

McDonnell Douglas phase, the employee must produce evidence sufficient to make out a

prima facie case, thus giving rise to a presumption that the employer unlawfully

discriminated or retaliated against him in taking the alleged adverse employment action.

See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).  To establish a prima facie

---

[6] The McDonnell Douglas analysis applies not only to Title VII claims, but also to § 1981 claims, alleging discriminatory treatment in employment.  Turnes v. Amsouth Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994).  Consequently, Plaintiff's Title VII and § 1981 claims rise or fall together.

case of discriminatory discharge, involving an employer's alleged racial animus in disciplining employees for violations of work rules, an employee must show the following: (1) that he is a member of a protected class; (2) that he was qualified for the job; (3) that he suffered an adverse employment action; (4) that he "has engaged – either (a) disputedly or (b) admittedly – in misconduct similar to persons outside the protected class"; and (5) "that similarly situated nonminority employees (that is, persons outside the protected class) received more favorable treatment."[7] Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 n.6 (11th Cir.), modified on other grounds on denial of reh'rg, 151 F.3d 1321 (11th Cir. 1998); Lathem v. Department of Children & Youth Servs., 172 F.3d 786, 792 (11th Cir. 1999); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Next, the employer must rebut this presumption by producing evidence that the negative employment action was motivated instead by a legitimate, nondiscriminatory reason. St. Mary's Honor Ctr., 509 U.S. at 509. Finally, to avoid summary judgment, the employee must respond with evidence, which may include previously produced evidence establishing a prima facie case, which would allow a reasonable jury to conclude that the reason given by the employer was not the real reason for the adverse employment decision. See Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1528

---

[7] An employee can circumvent the "similarly situated" prong by demonstrating instead that he was replaced by someone outside of his protected class. See Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003). It is undisputed, however, that Plaintiff's position was filled by another African-American employee; thus, an inference of racial discrimination cannot arise from this act.

(11th Cir. 1997); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

Attacking Plaintiff's prima facie case, Defendant asserts that Plaintiff has not demonstrated that a similarly-situated employee outside of his protected class engaged in nearly identical conduct.[8]  Plaintiff disagrees, asserting that Walden is a proper comparator.  For the reasons to follow, the court agrees with Defendant.

Under the similarly-situated requirement of the prima facie case, Plaintiff bears the burden of demonstrating that Walden was "similarly situated in all relevant respects." Holifield, 115 F.3d at 1562.  "In determining whether employees are similarly situated . . ., it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id.  A "similarly-situated" employee is one who "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish [his] conduct or the employer's treatment of [him] for it." Anderson v. Twitchell-A-Tyco, 76 F. Supp.2d 1279, 1286 (M.D. Ala. 1999) (citation omitted).  Although Walden need not be identically situated to Plaintiff, the "quantity and quality of [Walden's] misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing

---

[8] All other prima facie elements are not in dispute.

14

apples with oranges."[9]  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999); see

also Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001).  For

purposes of the prima facie showing, "[t]he most important factors in the disciplinary

context are the nature of the offenses committed and the nature of the punishments

imposed."  Maniccia, 171 F.3d at 1368.

There is no dispute that Plaintiff and Walden had the same job title and had similar

job responsibilities.  Walden, like Plaintiff, was employed as a local truck driver for

Defendant and was responsible for transporting freight between Defendant's plant and

warehouse locations.  Plaintiff cites the incident at the loading dock in 2004 and

Walden's traffic accidents in 2003 as providing the bases of his argument that Walden

engaged in conduct similar to Plaintiff.  The court, thus, turns to a discussion of the

proposed comparable conduct engaged in by Walden.

Plaintiff argues that in 2004 Walden committed an infraction similar to Plaintiff's

because Walden drove a truck and trailer away from a loading dock while a forklift

---

[9] In Burke-Fowler v. Orange County, Florida, the Eleventh Circuit observed that a
prior panel "called into question" the "nearly identical" requirement.  447 F.3d 1319,
1323 n.2 (11th Cir. 2006) (citing Alexander v. Fulton County, 207 F.3d 1303, 1334 (11th
Cir. 2000)).  The Eleventh Circuit in Burke-Fowler, however, noted that it was "bound to
follow Maniccia's 'nearly identical' standard rather than the standard articulated in
Alexander because when a later panel decision contradicts an earlier one, the earlier panel
decision controls."  Id. (citing Walker v. Mortham, 158 F.3d 1177, 1188-89 (11th Cir.
1998)); see also Eggleston v. Bieluch, 203 Fed. Appx. 257, 264 n.5 (11th Cir. 2006)
(holding that Burke-Fowler clarified the "confusion in the law of this circuit about the
degree of similarity necessary for a valid comparator").  Herein, the court has applied the
"nearly identical" standard, but notes that its findings would be the same even under the
less stringent standard set forth in Alexander, *supra*.

operator was inside the trailer.  (Doc. No. 42 at 7.)  Plaintiff accurately describes the

similarities which exist between Walden's and Plaintiff's conduct, as Plaintiff also drove

a truck and trailer away from a loading dock while a forklift operator was inside the

trailer.  The court finds that Plaintiff's level of comparison, though, is too imprecise

under the precedential authorities cited above.  The court also finds that the Sixth

Circuit's decision in Clayton v. Meijer, Inc., 281 F.3d 605 (6th Cir. 2002), is instructive as

to the degree of similarity required between Plaintiff's conduct and the proposed

comparative conduct.

In Clayton, the plaintiff brought suit under Title VII, arguing that he was

terminated from his job as a truck driver on the basis of race.  Id. at 607.  The district

court granted summary judgment in the employer's favor, and the plaintiff appealed.  The

Sixth Circuit held that the plaintiff failed to identify a non-minority employee who was

similar "in all relevant respects" and, thus, failed to establish a prima facie case of

discrimination.  Id. at 611.  The Sixth Circuit recognized that, like the plaintiff, "[a]ll

three white co-workers were truck drivers for the defendant[,]" and "[a]ll three admittedly

pulled a rig away from a loading dock without insuring that the back doors were closed

and that the dock plate had been removed."  Id.  The court concluded, though, that these

similarities were "superficial[]."  Id.  The court held that there was a crucial distinction

between the plaintiff's and his comparator's conduct, namely, that only the plaintiff

"seriously injured a coworker[.]"  Id.  The Sixth Circuit reasoned:

> In this case, the employer discharged an African-American employee who
> had engaged in a serious act of misconduct which resulted in injury to a

coworker who was rendered totally disabled.  While other white employees
may have engaged in the same acts of negligence, the employer is not
precluded from considering the harm resulting from the conduct of its
employees.  In this case, only [the plaintiff's] negligence caused serious
injury to a coworker.  This is precisely "such differentiating or mitigating
circumstance" that distinguishes [the plaintiff's] conduct from those of the
three white coworkers.  The fact that an employer discharged an
African-American employee who seriously injured a coworker, but did not
discharge white employees who engaged in the same conduct without injury
to fellow employees, does not give rise to an inference of discrimination.

Id. at 612 (internal citation and footnote omitted).

Here, as in Clayton, in making his comparison, Plaintiff omits several critical

distinctions.  The additional facts, omitted by Plaintiff, are that Defendant cited Plaintiff

for failing to pull the dock plate connected to the trailer at issue and to place safety chains

across the dock doors prior to pulling the occupied trailer.  (Barton Aff. ¶ 11.)  The

admitted failure of Plaintiff to complete these two safety tasks as to the trailer he actually

pulled resulted in Plaintiff driving the trailer away from the dock while a forklift operator

was inside the trailer.  There, however is no evidence that Walden was accused of

committing these same safety violations.  The evidence establishes that Walden pulled the

dock plate and secured the safety chains as to the trailer which Walden then pulled away

from the dock.  (Id. ¶¶ 25-27.)  There is no evidence that Walden transported the forklift

operator in the trailer as a consequence of his failure to adhere to safety procedures, but,

17

rather, the evidence establishes that the forklift operator entered the trailer *after* Walden had pulled the dock plate and secured the safety chains.[10]

Plaintiff, though, argues that his punishment was too severe because he provided a reasonable justification for his alleged misconduct: he merely made a mistake by getting into the wrong truck and once in the wrong truck there was no way for him to know that the dock plate had not been pulled and the chains had not been secured on that trailer because Defendant's safety lights had malfunctioned. (See Doc. No. 42 at 7-8.) Plaintiff's argument misses the mark. To hurdle the similarly-situated prong of the prima facie case, Plaintiff must do more than offer an excuse. Cf. Jones, 137 F.3d at 1311 n.6 ("[N]o plaintiff can make out a prima facie case by showing just that she belongs to a protected class and that she did not violate her employer's work rule."). Plaintiff "must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better." Id. Plaintiff, though, has not identified a similarly-situated Caucasian local truck driver who, after pulling the dock plate and securing the chains of his assigned trailer, claimed that he mistakenly entered the wrong tractor-trailer for which these safety procedures had not been performed and unknowingly pulled the trailer away from a dock with a forklift and its operator inside, but who was not fired.

---

[10] In this regard, the court notes that it has reviewed the affidavit submitted by Plaintiff in his proposed surreply, but finds that the affidavit does not create a factual issue as to whether Defendant honestly believed that Walden pulled the dock plate and secured the chains prior to Bowman's entry. There is more discussion on Plaintiff's proposed surreply later in this opinion.

The end result may have been the same in that forklift operators were inside the trailers when Walden and Plaintiff pulled the trailers away from the loading dock.  Unlike Walden, however, Plaintiff failed to pull the dock plate and secure the chains on the trailer at issue, and the court finds that this conduct – mistaken or not – presents a "'differentiating . . . circumstance'" which Defendant properly could consider and which materially distinguishes Plaintiff's conduct from Walden's.  Clayton, 281 F.3d at 612. Plaintiff also has not presented any evidence that, like Plaintiff, Walden drove the trailer after learning that the forklift operator was inside, additional conduct which Defendant found warranted termination and yet another factor which distinguishes Walden's conduct from Plaintiff's.

Plaintiff also argues that Walden's 2003 traffic accidents on public roads, as documented in the Uniform Traffic Accident Reports, are "similar to" Plaintiff's "accident at the loading dock."  (Doc. No. 42 at 6.)  Plaintiff says that Defendant's local truck drivers are required not only to "pull trucks away from the docks," but also to "haul freight on public roads between the plant and warehouse," and that compliance with "procedures and regulations" on public roads is just as "important," if not more important, than compliance with procedures and regulations at the loading docks.  (Id. at 6-7.)  Plaintiff essentially contends that all driving infractions committed by Defendant's local drivers should be treated the same and punished alike, but again the court finds that Plaintiff makes the comparison in terms much too general for purposes of demonstrating nearly identical misconduct.  Cf. Richardson v. Newburgh Enlarged City

Sch. Dist., 984 F. Supp. 735, 746 (S.D.N.Y. 1997) ("The level of generality at which [plaintiff] attempts to compare the various instances of misconduct – *i.e.*, 'poor judgment'– is contrary to case law and would render disparate treatment analysis meaningless."). Above, the court set out what it takes for Plaintiff to show nearly identical conduct. Plaintiff's comparisons to Walden's traffic accidents lack the necessary similarities, even more so than Walden's 2004 incident at the loading dock, and, thus, do not satisfy Plaintiff's burden.[11]

Moreover, Defendant argues that it does not treat all driving improprieties the same (Def. Mem. of Law at 17 (Doc. No. 48)), and the record supports its argument. Defendant has submitted undisputed evidence, in the form of Barton's affidavit, that it has a separate policy called the "fleet safety policy" which applies to traffic accidents and that the disciplinary procedures outlined in that policy are "entirely different" from its procedures for handling safety violations in the loading and unloading process. (Barton Aff. ¶ 29.) Walden's involvement in the two traffic accidents at issue breached a policy different from the policy violated by Plaintiff at the loading dock, and this distinction further illustrates why the misconduct for which Plaintiff was discharged is not nearly identical to Walden's. See Smith v. Wal-Mart Stores (No. 471), 891 F.2d 1177, 1180 (5th Cir. 1990) (finding that employees who engage in different violations of company policy are not similarly situated).

---

[11] The court also notes that, as discussed in the preceding section, Plaintiff's arguments premised on an assertion that Walden's conduct was more egregious than his because Walden's alleged negligence caused two traffic accidents are based upon inadmissible hearsay.

In sum, Plaintiff fails to make out a prima facie case of racial discrimination because he has not met his burden of showing that the "quantity and quality" of Walden's conduct was "nearly identical" to his conduct.  Maniccia, 171 F.3d at 1368.  The fact, therefore, that Defendant fired Plaintiff, but not Walden, does not give rise to an inference of racial discrimination.  Unfair discipline, absent any evidence from which racial animosity can be inferred, is not an unlawful employment practice which violates Title VII or § 1981.  As the Eleventh Circuit has stated on more than one occasion, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."  Abel v. Dubberly, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000) (per curiam) (quoting Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984)).  Accordingly, the court finds that Defendant's motion for summary judgment on Plaintiff's wrongful termination claim, brought pursuant to Title VII and § 1981, is due to be granted.[12]

## C.  Plaintiff's Motion for Leave to File a Surreply

In response to Defendant's motion for summary judgment, Plaintiff submitted an affidavit, stating that Walden was involved in an accident at the loading dock similar to Plaintiff's.  (Pl. Aff. ¶ 18.)  As set out above, Defendant moved to strike paragraph 18 as

---

[12] Even if Plaintiff had established a prima facie case, the court would find, as argued by Defendant, that Defendant's articulated nondiscriminatory reasons for Plaintiff's termination rebut any inference of discrimination presented by a prima facie case and that Plaintiff fails to show a genuine issue of material fact regarding pretext.

constituting inadmissible hearsay, and the court granted Defendant's motion to strike this paragraph. In addition to moving to strike paragraph 18, Defendant filed a reply brief and introduced Thomas' affidavit and a second affidavit from Barton to rebut Plaintiff's (hearsay) arguments concerning the incident at the loading dock involving Walden. (Barton Aff. ¶¶ 25-29 (Doc. No. 48-2).) Because the court's briefing order on the summary judgment motion did not permit a surreply (see Order (Doc. No. 38)), Plaintiff filed a motion for leave to submit one. In his proposed surreply, Plaintiff argues that Barton's and Thomas' affidavits are not proper rebuttal evidence. Therein, Plaintiff does not move to strike Barton's and Thomas' affidavits, but rather submits a supplemental affidavit which he says offers an interpretation of Defendant's rebuttal evidence which raises an issue of material fact on his termination claim. The court finds that Plaintiff's motion for leave to file a surreply is due to be denied for at least three reasons.

First, the court finds that the evidence to which Plaintiff objects – i.e., Barton's supplemental affidavit and Thomas' affidavit – is not new evidence. See Rayon-Terrell v. Contra Costa County, 232 Fed. Appx. 626, 629 n.2 (9th Cir. 2007) (reply evidence is not new when employer's reply brief "addressed the same set of facts supplied in [employee's] opposition to the motion but provides the full context to [employee's] selected recitation of the facts"). Second, Defendant submitted Barton's second affidavit and Thomas' affidavit in rebuttal to Plaintiff's statement in paragraph 18 of his affidavit, but, as discussed earlier in this opinion, the court has stricken paragraph 18 as hearsay.

22

Defendant's evidence, therefore, is no longer needed for the purpose for which Defendant offered the affidavits. Because Plaintiff has not submitted any admissible evidence that at the loading dock Walden engaged in conduct nearly identical to Plaintiff's, the court would resolve the summary judgment motion in Defendant's favor even if it had not considered Defendant's supplemental affidavits. See E.E.O.C. v. Go Daddy Software, No. CV-04-02062 PHX (DGC), 2006 WL 1791295, at *10 (D. Ariz. June 27, 2006) (denying motion to strike evidence in reply as moot where court "did not rely on these exhibits in resolving the issues addressed in this order"). Third, assuming that Plaintiff was correct that Barton's supplemental affidavit and Thomas' affidavit constituted new evidence, the court would deny as moot Plaintiff's motion for leave to file a surreply because, even if considered by the court, Plaintiff's supplemental affidavit would not alter the court's conclusion that no triable issues of fact remain as to whether Walden is a proper comparator. See, e.g., supra, footnote 10; Infantino v. Waste Mgmt., Inc., 980 F. Supp. 262, 266 n.1 (N.D. Ill. 1997) (noting that "even if the court were to have . . . fully considered the facts argued in plaintiff's surreply, the outcome of the court's ruling on defendants' motion for summary judgment would have been the same").

## VI. ORDER

Accordingly, it is CONSIDERED and ORDERED that Defendant Chelsea Industries, Inc.'s motion for summary judgment (Doc. No. 35) be and the same is hereby

GRANTED, that Defendant's motion to strike (Doc. No. 47) be and the same is hereby GRANTED in part and DENIED as moot in part, and that Plaintiff Darrell Hinson's motion for leave to file a surreply (Doc. No. 49) be and the same is hereby DENIED.

A final judgment shall be entered separately.

Done this 14th day of February, 2008.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE