IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED 2008 FEB 29 P 2:54
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

DARRELL HINSON, Pro SE :
       Plaintiff, :
v. :  Civil Action No. 05-971
CHELSEA INDUSTRIES., :
       Defendant. :

## MOTION TO EXTEND TIME TO APPEAL
## MOTION TO RECONSIDER FINAL ORDER

COMES NOW Plaintiff Darrell Hinson, and submits his Motion To Extend Time to Appeal and Motion to Reconsider Final Order, on the grounds that there was ommitted evidence.

1. The Law office of Jay Lewis was retained to represent Plaintiff in the above matter. Plaintiff, Motion For Default Judgement was set aside "in part" because of a said to exist company policy that permits only seniour members of Chelsea In. to receive certified mail. This was the first knowingly untrue statement giving under Oath by Chelsea In. to deceive the Court.

2. The Incident at the warehouse where defendants say Paul followed procesure by chaining and pulling the dock plate has one intentional ommited step, the very first step requires going into the office and looking at a board that has small sticky notes on it, each sticky note has one trailer number on it. Drivers pull the sticky notes off the board and take to the dock and matches the trailer number on the dock to the sticky note making sure they have the right trailer, chaining and pulling the dock plate is step #two. Step one makes it impossible for defendants to have investigated and releaved Paul of liability as they say. Another conflick comes into play is that Paul's brother Peter worked in upper management at the warehouse, also ommited. I believe Paul received favoratizm because of this. I believe had the Human Resourees Department suspended Paul and investigated the incident in the same manner as Plaintiff, the blame would be on Paul.

3. Just because a driver completes all the steps, does not mean that he is releaved of liability if something happen, because <u>after step #two time begans to run</u>, a driver must pull the trailer right away or repeat step #2. "Example" if a driver completes step #two at

10:00 a.m. and is called to move a trailer at another warehouse/plant location, returns at 11:00 a.m with trailer #5 to be pulled and polls them without repeating step #2, then the driver would be at fault because the same trailers that needed to be moved earlier are now needed to load for delivery to the customer, the driver would be at fault not the forklift driver.

4. Plaintiff disagrees that he was gross negligent because defendants policy did not state what to do if you pulled the wrong trailer, or if you pulled the right trailer and the forklift driver or ect. was not loading/unloading the right trailer, what to do. Further more, after plaintiff discovered the forklift driver in the trailer talking on her cell phone, he asked if she was O.K. and informed her that he was returning the trailer to the loading dock, so he put the truck in reverse and backed to the dock. Defendants wording of the event is large enough to cause an eclispe. If the forklift was fully on the trailer and had not fallen in the incident with Paul, Paul would have had to return the trailer to the dock just as plaintiff did.

5. To clear up any misunderstanding about plaintiff geting into the wrong truck does not mean that plaintiff didn't have permission to drive both trucks at night when both day shift/split shift drivers went home. Plaintiff had driven both truck the two-plus years of his employment, also ommited evidence, depending on the circumstance so have Paul and the other local drivers. Because an employer can fire for any reason, except discrimination, and plaintiff had committed a fireable offense by pulling the wrong trailer "no matter with what truck" the other allegations were unnesary to argue at that time, however in this proceeding, this COURT had been asked indirectly to ommit this because of no written company policy stating what to do if you pull the wrong trailer.

6. Based upon the unclear langue in the driver quai-fication of Chelsea In., there is a possibility that Paul was not qualified to drive at the time of the incident or even qualified to be hired in the first place, given the incident at the warehouse a whole new meaning. (document attached) - Driver Qualifications

## CONCLUSION

Plaintiff request that this COURT grant the above Motions or grant any relief it deems just and fair in that the above reasons given in this Motion is evidence that plaintiff was not equally suspendent, not equally investigated, and not equally punished as required by LAW. Confussing Apples and Oranges from a distance is O.K., but not when they are right in front of you. For the reasons stated above Plaintiff is entitled to relief. Respectfully

*/s/ Darrell Hinson*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document have been served on below named counsel, by U.S. mail this 28 day of February.

Mr. Thomas T. Gallion, III
305 S. Lawrence St.
P.O. Box 4660
Montgomery, Alabama 36103

*/s/ Darrell Hinson*
Darrell Hinson Pro SE
P.O. Box 9951
Montgomery Al 36108