# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL HINSON,                          )
                                         )
          Plaintiff,                     )
                                         )
v.                                       )  CIVIL ACTION NO.:  2:05cv971-ID
                                         )
CHELSEA INDUSTRIES, INC.,                )
                                         )
          Defendant.                     )

## AFFIDAVIT OF WILLIAM BARTON

STATE OF ALABAMA          )

COUNTY OF MONTGOMERY   )

1.     My name is Bill Barton. I am over the age of nineteen.

2.     I am employed by Chelsea Industries, Inc., (hereinafter referred to as "Webster") and currently hold the position of Fleet Manager.

3.     I am familiar with the circumstances surrounding the above litigation.

4.     On November 28, 2001, Darrell Hinson applied for a truck driver's position with Webster.

5.     Mr. Hinson began his employment with Webster on March 18, 2002 as a local truck driver.

6.     In 2004, Mr. Hinson was stabbed in his neighborhood. Mr. Hinson, while undergoing medical treatment, received short term disability benefits in accordance with Webster's policies.

7.     Mr. Hinson returned to his employment with Webster, according to his medical documentation, without any limitation.



8.     I did not perceive Mr. Hinson as being disabled as a result of the stabbing otherwise, I would not have let him operate his vehicle

9.     On April 11, 2004, Mr. Hinson drove a trailer away from a loading dock without first pulling the dock plate and without placing the safety chains on the dock doors. Mr. Hinson pulled the trailer off the loading dock while a Webster employee was on a forklift inside Mr. Hinson's trailer.

10.    After learning that a co-employee was on a forklift inside the trailer, Mr. Hinson continued to drive the vehicle.

11.    Webster's safety procedures require all drivers to (1) go inside and pull the dock plate; and (2) then place safety chains across the dock doors before departing the loading dock.

12.    Mr. Hinson violated Webster's safety procedures by leaving the loading dock before pulling the dock plate and before placing the safety chains across the dock doors. Mr. Hinson's failure to perform these tasks resulted in him driving off with an employee on a forklift inside the trailer.

13.    Additionally, Mr. Hinson violated safety procedures by continuing to operate the trailer while knowing someone was inside the trailer on a forklift.

14.    Mr. Hinson could have seriously injured or killed the co-employee inside the trailer.

15.    Mr. Hinson could have caused significant damage to Webster's forklift and facilities as a result of his actions.

16.    On April 14, 2004, Mr. Hinson was suspended while the incident was investigated. On April 20, 2004, Webster terminated Mr. Hinson based on the violation of the above safety procedures.

2

17.    After Mr. Hinson was terminated, Webster internally posted Mr. Hinson's position.

18.    Alvin Pugh, an African American male, was awarded Mr. Hinson's position.

19.    Paul Walden, a Caucasian male, began his employment with Webster on March 19, 2003 as a local truck driver. I was Mr. Hinson's supervisor during his employment with Webster.

20.    Mr. Walden, to my knowledge and according to my review of his personnel file, has never failed to pull the dock plate and place the safety chains on the dock doors before pulling away from the loading dock. Further, Mr. Walden has never knowingly driven his truck with an employee on a forklift inside his trailer.

21.    Webster also employed Nels Paul Jacobson. Mr. Jacobson was an over the road truck driver for Webster. He is Caucasian. To my knowledge as Fleet Manager and my review of his personnel file, Mr. Jacobson never pulled away from the loading dock without first pulling the dock plate and then placing the safety chains on the dock doors. Mr. Jacobson, to my knowledge, never operated a truck knowing a co-employee was still inside the trailer on a forklift.

22.    Any employee committing the same or similar safety violations that Hinson did would be subjected to termination.

Further Affiant sayeth not.

3

Dated this 20th day of November 2007.

_William Barton_
**WILLIAM BARTON**

STATE OF ALABAMA               *

COUNTY OF MONTGOMERY           *

I, _Amanda Thomson_, a Notary Public, in and for the said County in said State, hereby certify that BILL BARTON, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing instrument, executed the same voluntarily or/and as the act of said corporation.

SWORN TO and SUBSCRIBED before me this 20th day of November 2007.

_Amanda_
Notary Public
My Commission Expires: _8/4/2010_

NOTARY SEAL

4

# EXHIBIT "B"

# DRIVER'S
# APPLICATION FOR EMPLOYMENT

*web*

Company _Webster Industries_
Address _5402 Lamco St_
City _Montgomery_          State _AL_    Zip _36117_

(answer all questions - please print)

In compliance with Federal and State equal employment opportunity laws, qualified applicants are considered for all positions without regard to race, color, religion, sex, national origin, age, marital status, or non-job related disability.

Position(s) Applied for _Driver (local)_          Date of application _11-28-1_
Name _Hinson_ Last   _Darrell_ First   _Dewayne_ Middle   Social Security No. _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_

List your addresses of residency for the past 3 years.
Current Address _P.O. Box 9951_ Street   _Montgomery_ City
_AL_ State   _36108_ Zip Code   Phone _201-4718_   How Long? _1 Year_
Previous Addresses _3220 Margarette Ann Dr. Montgomery AL 36108_   How Long? _4 years_
Street    City    State & Zip Code

Street    City    State & Zip Code    How Long?
Street    City    State & Zip Code    How Long?

Do you have the legal right to work in the United States? _Yes_
Date of Birth _10 / 05 / 72_ (Required for Truck Drivers)   Can you provide proof of age? _Yes_
Have you worked for this company before? _No_   Where? ___
Dates: From ___ To ___   Rate of Pay ___   Position ___
Reason for leaving ___
Are you now employed? _Yes_  If not, how long since leaving last employment? ___
Who referred you? _Walk-In_   Rate of pay expected _$10.00/hr._

Is there any reason you might be unable to perform the functions of the job for which you have applied [as described in the attached job description]? _NO_

If yes, explain if you wish. ___

EXHIBIT B

© Copyright 1995 J. J. KELLER & ASSOCIATES, INC., Neenah, WI • USA • (800) 327-6   15F (Rev. 10/95)

ACCIDENT RECORD FOR PAST 3 YEARS OR MORE (ATTACH SHEET IF MORE SPACE IS NEEDED) IF NONE, WRITE NONE

| DATES | NATURE OF ACCIDENT (HEAD-ON, REAR-END, UPSET, ETC.) | FATALITIES | INJURIES |
|---|---|---|---|
| LAST ACCIDENT | | | |
| NEXT PREVIOUS | | | |
| NEXT PREVIOUS | | | |

TRAFFIC CONVICTIONS AND FORFEITURES FOR THE PAST 3 YEARS (OTHER THAN PARKING VIOLATIONS) IF NONE, WRITE NONE

| LOCATION | DATE | CHARGE | PENALTY |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

(ATTACH SHEET IF MORE SPACE IS NEEDED)

## EDUCATION

CIRCLE HIGHEST GRADE COMPLETED: 1 2 3 4 5 6 7 8    HIGH SCHOOL: 1 2 3 (4)    COLLEGE: 1 2 3 4

LAST SCHOOL ATTENDED  _Calhoun High School_        _Letohatchee_
                           (NAME)                           (CITY)

## EXPERIENCE AND QUALIFICATIONS – DRIVER

| | STATE | LICENSE NO. | TYPE | EXPIRATION DATE |
|---|---|---|---|---|
| DRIVER LICENSES | Al | 5721461 | Commercial | 2-18-2 |
| | | | | |

A.  Have you ever been denied a license, permit or privilege to operate a motor vehicle?    YES _____ NO ✓

B.  Has any license, permit or privilege ever been suspended or revoked?    YES _____ NO ✓

   IF THE ANSWER TO EITHER A OR B IS YES, ATTACH STATEMENT GIVING DETAILS

## DRIVING EXPERIENCE IF NONE, WRITE NONE

| CLASS OF EQUIPMENT | TYPE OF EQUIPMENT (VAN, TANK, FLAT, ETC.) | DATES FROM | TO | APPROX. NO. OF MILES (TOTAL) |
|---|---|---|---|---|
| STRAIGHT TRUCK | | | | |
| TRACTOR AND SEMI-TRAILER | Van | 1993 | Present | 500000 |
| TRACTOR - TWO TRAILERS | | | | |
| OTHER | | | | |

LIST STATES OPERATED IN FOR LAST FIVE YEARS  _Approx 25_

SHOW SPECIAL COURSES OR TRAINING THAT WILL HELP YOU AS A DRIVER: _None_

WHICH SAFE DRIVING AWARDS DO YOU HOLD AND FROM WHOM?  _None._

## EXPERIENCE AND QUALIFICATIONS – OTHER

SHOW ANY TRUCKING, TRANSPORTATION OR OTHER EXPERIENCE THAT MAY HELP IN YOUR WORK FOR THIS COMPANY

*None*

LIST COURSES AND TRAINING OTHER THAN SHOWN ELSEWHERE IN THIS APPLICATION

*None*

LIST SPECIAL EQUIPMENT OR TECHNICAL MATERIALS YOU CAN WORK WITH (OTHER THAN THOSE ALREADY SHOWN)

*None*

## TO BE READ AND SIGNED BY APPLICANT

This certifies that this application was completed by me, and that all entries on it and information in it are true and complete to the best of my knowledge.

I authorize you to make such investigations and inquiries of my personal, employment, financial or medical history and other related matters as may be necessary in arriving at an employment decision. (Generally, inquiries regarding medical history will be made only if and after a conditional offer of employment has been extended.) I hereby release employers, schools, health care providers and other persons from all liability in responding to inquiries and releasing information in connection with my application.

In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in discharge. I understand, also, that I am required to abide by all rules and regulations of the Company.

11-28-1
Date

Applicant's Signature

## PROCESS RECORD

APPLICANT HIRED _____ REJECTED _____

DATE EMPLOYED _____ POINT EMPLOYED _____

DEPARTMENT _____ CLASSIFICATION _____
(IF REJECTED, SUMMARY REPORT OF REASONS SHOULD BE PLACED IN FILE)

### THIS SECTION TO BE FILLED IN BY RESPONSIBLE OFFICER OR COMPANY REPRESENTATIVE

| | SUPERIOR | GOOD | FAIR | BELOW AVERAGE | POOR | WRITTEN RECORD ON FILE |
|---|---|---|---|---|---|---|
| 1. APPLICATION | | | | | | |
| 2. INTERVIEW | | | | | | |
| 3. PAST EMPLOYMENT | | | | | | |
| 4. WRITTEN EXAM | | | | | | |
| 5. ROAD TEST | | | | | | |
| 6. CRIMINAL AND TRAFFIC CONVICTIONS | | | | | | |

SIGNATURE OF INTERVIEWING OFFICER _____

## TRANSFERS

FROM: _____ TO: _____
DATE: _____
REASON FOR TRANSFER _____

FROM: _____ TO: _____
DATE: _____
REASON FOR TRANSFER _____

FROM: _____ TO: _____
DATE: _____
REASON FOR TRANSFER _____

FROM: _____ TO: _____
DATE: _____
REASON FOR TRANSFER _____

## TERMINATION OF EMPLOYMENT

DATE TERMINATED _____ DEPARTMENT RELEASED FROM _____

DISMISSED _____ VOLUNTARILY QUIT _____ OTHER _____

TERMINATION REPORT PLACED IN FILE _____ SUPERVISOR _____

PAGE 4 1SF (Rev. 10/95)

## EMPLOYMENT HISTORY

All driver applicants to drive in interstate commerce must provide the following information on all employers during the preceding 3 years. List complete mailing address, street number, city, state and zip code.

Applicants to drive a commercial motor vehicle* in intrastate or interstate commerce shall also provide an additional 7 years' information on those employers for whom the applicant operated such vehicle.
(NOTE: List employers in reverse order starting with the most recent. Add another sheet as necessary.)

| EMPLOYER | DATE |
|---|---|
| NAME *AMX* | FROM MO. 0 YR. 0 — TO MO. 11 YR. |
| ADDRESS *1350 Emory Folmar Blvd,* | POSITION HELD *Driver* |
| CITY *Montgomery*  STATE *AL*  ZIP *36110* | SALARY/WAGE *$9.50 hr* |
| CONTACT PERSON  PHONE NUMBER | REASON FOR LEAVING *Lay-off* |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR. — TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY  STATE  ZIP | SALARY/WAGE |
| CONTACT PERSON  PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR. — TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY  STATE  ZIP | SALARY/WAGE |
| CONTACT PERSON  PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR. — TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY  STATE  ZIP | SALARY/WAGE |
| CONTACT PERSON  PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR. — TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY  STATE  ZIP | SALARY/WAGE |
| CONTACT PERSON  PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR. — TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY  STATE  ZIP | SALARY/WAGE |
| CONTACT PERSON  PHONE NUMBER | REASON FOR LEAVING |

| EMPLOYER | DATE |
|---|---|
| NAME | FROM MO. YR. — TO MO. YR. |
| ADDRESS | POSITION HELD |
| CITY  STATE  ZIP | SALARY/WAGE |
| CONTACT PERSON  PHONE NUMBER | REASON FOR LEAVING |

*Includes vehicles having a GVWR of 26,001 lbs. or more, vehicles designed to transport 15 or more passengers, or any size vehicle used to transport hazardous materials in a quantity requiring placarding.

NOV-27-01 12:41 FROM-

T-639  P.01/06  F-283

# EMPLOYMENT RECORD FOR PAST 10

Hinson
8 pages
11/27/01
334-281-6462

Begin with your present or most recent job and work backward in order, listing your employers for a1
...ployment. All time must be accounted for, including military service, self-employment, and periods of une... time
necessary.

## CURRENT EMPLOYER

| | |
|---|---|
| From: 10/18/99 To: 7/31/00 | Company Name: MCC |
| Phone Number: 334 262-1021 | Address: P.O Box 4306 City: Montgomery State: AL Zip: 36101 |
| Type of Equipment Driven: Tractor Trailer - Van | Position Held: Driver    Salary: .23% |
| | Reason For Leaving: too little work   Areas in which you drove: appox 15 states |

## SECOND LAST EMPLOYER

| | |
|---|---|
| From: 3/3/99 To: 8/20/99 | Company Name: Southern Pallet |
| Phone Number: 334 265-4807 | Address: 4596 Washington Ferry Rd City: Montgomery State: AL Zip: 36108 |
| Type of Equipment Driven: Tractor Trailer - Van - Flat Bed | Position Held: Driver    Salary: $8.00 hr. |
| | Reason For Leaving: accused of running light and ect   Areas in which you drove: Alabama |

## THIRD LAST EMPLOYER

| | |
|---|---|
| From: 8/25/99 To: 10/31/99 | Company Name: Santez Sand + Gravel |
| Phone Number: 334 228-3171 | Address: 220 Hwy 80 West City: Lowndesboro State: AL Zip: 36752 |
| Type of Equipment Driven: Tractor Trailer Dump | Position Held: Driver    Salary: $9.00 hr |
| | Reason For Leaving: Rain-No Work   Areas in which you drove: Alabama |

## FOURTH LAST EMPLOYER

| | |
|---|---|
| From: 10/26/98 To: 2/2/99 | Company Name: Multi Staffing |
| ...ne Number: 334 271-0430 | Address: 111 Market Place City: Montgomery State: AL Zip: 36117 |
| ...pe of Equipment Driven: None | Position Held: Temp    Salary: $7-8.00 hr |
| | Reason For Leaving: Temp Work   Areas in which you drove: None |

## FIFTH LAST EMPLOYER

| | |
|---|---|
| From: 10/15/95 To: 1/14/97 | Company Name: Piknik Products |
| Phone Number: 334 265-1567 | Address: 3806 Day St City: Montgomery State: AL Zip: 36108 |
| Type of Equipment Driven: Tractor Trailer Van | Position Held: Driver    Salary: $7.75 |
| | Reason For Leaving: Had to go to trp. for State - assult   Areas in which you drove: Alabama |

## SIXTH LAST EMPLOYER

| | |
|---|---|
| From: 1/16/95 To: 10/10/95 | Company Name: Builders Transport |
| Phone Number: (None) No longer in business | Address: 2099 W. Dekalb St. City: Camden State: SC Zip: 29020 |
| Type of Equipment Driven: Tractor Trailer Van | Position Held: Driver    Salary: 21¢ mile |
| | Reason For Leaving: Vied to be home at time   Areas in which you drove: appox 30 states |

## SEVENTH LAST EMPLOYER

| | |
|---|---|
| From: 7/5/94 To: 1/12/95 | Company Name: American Freightways |
| Phone Number: 334 284-8486 | Address: Hwy 331 South City: Montgomery State: AL Zip: 36105 |
| Type of Equipment Driven: Tractor Trailer Van, Forklift | Position Held: Spotter    Salary: $9.45 hr |
| | Reason For Leaving: laid off   Areas in which you drove: only spotted |

*Use separate sheet for additional employment history, if necessary.*

2

Rev. 02/2000

NOV-27-01  12:47    FROM-

J. P. Teck (Driving School)
3920 Troy Hwy.
Montgomery AL. 36116
(334) 288-1080
From: 11-93  To: 1-94

Unemployed
From: 5-15-93  To: 10-28-93

Winn Dixie
1550 Jackson Ferry Rd.
Montgomery AL. 36104 (334) 265-5240
From: 6-3-92  To: 5-15-93
Job: Select food products and operate fork lift
Reason Left: company would not train me
to drive truck as their rep. R. Knight
promised me.

Calhoun High School
8213 Co. Rd. 33
Letohatchee AL. 36047
(334) 227-4515
Finished School: May 29, 1992

# Medical Examination Report
## FOR COMMERCIAL DRIVER FITNESS DETERMINATION

**1. DRIVER'S INFORMATION**  Driver completes this section.

Driver's Name (Last, First, Middle)  Hinson, Darrell

Address  P.O. Box 7951

City, State, Zip Code  Montgomery, Al  36108

Social Security No.  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

Birthdate  10-23-70  M/D/Y

Age  69

Sex  ☑ M  ☐ F

Work Tel: ( )

Home Tel: 334 201-4908

Driver License No.  522-461

☐ New Certification  ☐ Recertification  ☐ Follow Up

Date of Exam  3-18-2

License Class  ☑ A  ☐ C  ☐ B  ☐ D  ☐ Other

State of Issue  Al

**2. HEALTH HISTORY**  Driver completes this section, but medical examiner is encouraged to discuss with driver.

Yes No
- ☐ ☐ Any illness or injury in last 5 years?
- ☐ ☐ Head/Brain injuries, disorders or illnesses
- ☑ ☐ Seizures, epilepsy
- ☐ medication
- ☑ ☐ Eye disorders or impaired vision (except corrective lenses)
- ☑ ☐ Ear disorders, loss of hearing or balance
- ☑ ☐ Heart disease or heart attack; other cardiovascular condition
- ☐ medication
- ☐ ☐ Heart surgery (valve replacement/bypass, angioplasty, pacemaker)
- ☑ ☐ High blood pressure ☐ medication
- ☑ ☐ Muscular disease
- ☑ ☐ Shortness of breath

Yes No
- ☑ ☐ Lung disease, emphysema, asthma, chronic bronchitis
- ☑ ☐ Kidney disease, dialysis
- ☑ ☐ Liver disease
- ☑ ☐ Digestive problems
- ☑ ☐ Diabetes or elevated blood sugar controlled by:
  - ☐ diet
  - ☐ pills
  - ☐ insulin
- ☑ ☐ Nervous or psychiatric disorders, e.g., severe depression
- ☐ medication
- ☑ ☐ Loss of, or altered consciousness

Yes No
- ☐ ☐ Fainting, dizziness
- ☐ ☐ Sleep disorders, pauses in breathing while asleep, daytime sleepiness, loud snoring
- ☑ ☐ Stroke or paralysis
- ☑ ☐ Missing or impaired hand, arm, foot, leg, finger, toe
- ☐ ☐ Spinal injury or disease
- ☐ ☐ Chronic low back pain
- ☑ ☐ Regular, frequent alcohol use
- ☑ ☐ Narcotic or habit forming drug use

For any YES answer, indicate onset date, diagnosis, treating physician's name and address, and any current limitation. List all medications (including over-the-counter medications) used regularly or recently.

I certify that the above information is complete and true. I understand that inaccurate, false or missing information may invalidate the examination and my Medical Examiner's Certificate.

Driver's Signature  Darrell Hinson    Date  3-18-2

**Medical Examiner's Comments on Health History** (The medical examiner must review and discuss with the driver any "yes" answers and potential hazards of medications, including over-the-counter medications, while driving.)

# TESTING (Medical Examiner completes Section 3 through 7)

## 3. VISION

**Standard:** At least 20/40 acuity (Snellen) in each eye with or without correction. At least 70° peripheral in horizontal meridian measured in each eye.

The use of corrective lenses should be noted on the Medical Examiner's Certificate.

**INSTRUCTIONS:** When other than the Snellen chart is used, give test results in Snellen-comparable values. In recording distance vision, use 20 feet as normal. Report visual acuity as a ratio with 20 as numerator and the smallest type read at 20 feet as denominator. If the applicant wears corrective lenses, these should be worn while driving, sufficient evidence of good tolerance and adaptation to their use must be obvious. Monocular drivers are not qualified.

Numerical readings must be provided.

| ACUITY | UNCORRECTED | CORRECTED | HORIZONTAL FIELD OF VISION |
|---|---|---|---|
| Right Eye | 20/ | 20/ 30 | Right Eye  90 ° |
| Left Eye | 20/ | 20/ 30 | Left Eye  110 ° |
| Both Eyes | 20/ | 20/ 15 | |

Applicant can recognize and distinguish among traffic control signals and devices showing standard red, green and amber colors? ☒Yes ☐ No

Applicant meets visual acuity requirement only when wearing:
☒Corrective Lenses

Monocular Vision: ☐ Yes ☒No

Complete next line only if vision testing is done by an ophthalmologist or optometrist.

Date of Examination _____  Name of Ophthalmologist or Optometrist (print) ____ Tel. No. ____ License No./State of Issue ____ Signature ____

N/A

## 4. HEARING

**Standard: a)** Must first perceive forced whispered voice ≥ 5 ft., with or without hearing aid, or b) average hearing loss in better ear ≤ 40 dB

☐ Check if hearing aid used for tests. ☐ Check if hearing aid required to meet standard.

**INSTRUCTIONS:** To convert audiometric test results from ISO to ANSI, -14 dB from ISO for 500 Hz, -10 dB for 1,000 Hz, -8.5 dB for 2,000 Hz. To average, add the readings for 3 frequencies tested and divide by 3.

Numerical readings must be recorded.

**a)** Record distance from individual at which forced whispered voice can first be heard.

| Right Ear | Left Ear |
|---|---|
| 20 Feet | 20 Feet |

**b)** If audiometer is used, record hearing loss in decibels. (acc. to ANSI Z24.5-1951)

| | Right Ear | | | | Left Ear | | |
|---|---|---|---|---|---|---|---|
| | 500 Hz | 1000 Hz | 2000 Hz | | 500 Hz | 1000 Hz | 2000 Hz |
| | | | Average: | | | | Average: |

## 5. BLOOD PRESSURE / PULSE RATE

Numerical readings must be recorded.

| Blood Pressure | Systolic | Diastolic |
|---|---|---|
| | 110 | X |

Driver qualified if ≤ 160/90 on initial exam.

| Pulse Rate | ☒ Regular  ☐ Irregular |
|---|---|

**GUIDELINES FOR BLOOD PRESSURE EVALUATION**

*Medical examiner should take at least 2 readings to confirm blood pressure.*

**On initial exam**

**Within 3 months**
If ≤ 160 and/or 90, qualify for 1 yr. Document Rx & control the 3rd month.

If 161-180 and/or 91-104, qualify 3 mos. only.

**Within 3 months**
If ≤ 160 and/or 90, qualify for 6 mos. Document Rx & control the 3rd month.

If > 180 and/or 104, not qualified until reduced to < 181/105. Then qualify for 3 mos. only.

**Certify**
Annually if acceptable BP is maintained

Biannually

## 6. LABORATORY AND OTHER TEST FINDINGS

Urinalysis is required. Protein, blood or sugar in the urine may be an indication for further testing to rule out any underlying medical problem.

Other Testing (Describe and record)

| URINE SPECIMEN | SP. GR. | PROTEIN | BLOOD | SUGAR |
|---|---|---|---|---|
| | 1.030 | trace | No | No |

# 7. PHYSICAL EXAMINATION    Height: 5' 11" (in.)    Weight: 254 (lbs.)

The presence of a certain condition may not necessarily disqualify a driver, particularly if the condition is controlled adequately, is not likely to worsen or is readily amenable to treatment. Even if a condition does not disqualify a driver, the medical examiner may consider deferring the driver temporarily. Also, the driver should be advised to take the necessary steps to correct the condition as soon as possible particularly if the condition, if neglected, could result in more serious illness that might affect driving.

Check YES if there are any abnormalities. Check NO if the body system is normal. Discuss any YES answers in detail in the space below, and indicate whether it would affect the driver's ability to operate a commercial motor vehicle safely. Enter applicable item number before each comment. If organic disease is present, note that it has been compensated for.
See *Instructions to the Medical Examiner for guidance.*

| BODY SYSTEM | CHECK FOR: | YES* | NO | BODY SYSTEM | CHECK FOR: | YES* | NO |
|---|---|---|---|---|---|---|---|
| 1. General Appearance | Marked overweight, tremor, signs of alcoholism, problem drinking, or drug abuse. | | | 7. Abdomen and Viscera | Enlarged liver, enlarged spleen, masses, bruits, hernia, significant abdominal wall muscle weakness. | | |
| 2. Eyes | Pupillary equality, reaction to light, accommodation, ocular motility, ocular muscle imbalance, extraocular movement, nystagmus, exophthalmos, strabismus uncorrected by corrective lenses, retinopathy, cataracts, aphakia, glaucoma, macular degeneration. | | | 8. Vascular System | Abnormal pulse and amplitude, carotid or arterial bruits, varicose veins. | | |
| 3. Ears | Middle ear disease, occlusion of external canal, perforated eardrums. | | | 9. Genito-urinary System | Hernias. | | |
| 4. Mouth and Throat | Irremediable deformities likely to interfere with breathing or swallowing. | | | 10. Extremities - Limb impaired. Driver may be subject to SPE certificate if otherwise qualified. | Loss or impairment of leg, foot, toe, arm, hand, finger. Perceptible limp, deformities, atrophy, weakness, paralysis, clubbing, edema, hypotonia. Insufficient grasp and prehension in upper limb to maintain steering wheel grip. Insufficient mobility and strength in lower limb to operate pedals properly. | | |
| 5. Heart | Murmurs, extra sounds, enlarged heart, pacemaker. | | | 11. Spine, other musculoskeletal | Previous surgery, deformities, lim tation of motion, tenderness. | | |
| 6. Lungs and chest, not including breast examination. | Abnormal chest wall expansion, abnormal respiratory rate, abnormal breath sounds including wheezes or alveolar rales, impaired respiratory function, dyspnea, cyanosis. Abnormal findings on physical exam may require further testing such as pulmonary tests and/or xray of chest. | | | 12. Neurological | Impaired equilibrium, coordination or speech pattern; paresthesia, asymmetric deep tendon reflexes, sensory or positional abnormalities, abnormal patellar and Babinski's reflexes, ataxia. | | |

**\*COMMENTS:** _____

_____

_____

Note certification status here. See <u>Instructions to the Medical Examiner</u> for guidance.

☒ Meets standards in 49 CFR 391.41; qualifies for 2 year certificate
☐ Does not meet standards
☐ Meets standards, but periodic evaluation required
☐ Due to _____ driver qualified only for:
   ☐ 3 months  ☐ 1 year
   ☐ 6 months  ☐ Other
☐ Temporarily disqualified due to (condition or medication): _____
   Return to medical examiner's office for follow up on _____

☒ Wearing corrective lenses
☐ Wearing hearing aid
☐ Accompanied by a _____ waiver/exemption
☐ Skill Performance Evaluation (SPE) Certificate
☐ Driving within an exempt intracity zone
☐ Qualified by operation of 49 CFR 391.64

Medical Examiner's Signature _____

Medical Examiner's Name (print) __Dr. Scobbw MD__

Address __601 N.E. Blvd. Mtg. AL 36117__

Telephone Number __314-273-6171__

If meets standards, complete a Medical Examiner's Certificate according to 49 CFR 391.43(h). (Driver must carry certificate when operating a commercial vehicle.)

# BUREAU OF MOTOR CARRIER SAFETY
# WRITTEN EXAMINATION FOR DRIVERS

Applicant _Darrell Hibsan_                    Date _3-11-9_

Examiner _____

1. 390.32  A motor carrier who is also a driver (owner-operator):
1. (   ) is not covered by the safety regulations.
2. (   ) must obey only those parts of the regulations which cover drivers.
3. (   ) must obey only those parts of the regulations which cover motor carriers.
4. ( ✓ ) must obey both the parts covering drivers and the parts covering motor carriers.

2. 391.11 (b)(1)  With only a few exceptions, the Federal Motor Carrier Safety Regulations say a driver must be:
1. (   ) at least 18 years old.
2. (   ) at least 19 years old.
3. (   ) at least 20 years old.
4. ( ✓ ) at least 21 years old.

3. 391.15 (c)(2)(3)  A driver cannot drive a motor vehicle:
1. (   ) For one year after a first offense conviction for a felony involving a commercial motor vehicle he was driving.
2. (   ) For one year after a first offense conviction for driving a commercial vehicle under the influence of alcohol or narcotics.
3. (   ) For one year after a first offense conviction for leaving the scene of an accident which resulted in personal injury or death.
4. ( ✓ ) For one year after a first offense conviction for any of the above.

4. 391.21 (b)(7)(8)(10)  Every driver applicant must fill out an application form giving:
1. (   ) a list of all vehicle accidents he was in during the previous 3 years.
2. (   ) a list of all of his motor vehicle violation convictions and bond forfeits (except for parking) during the previous 3 years.
3. (   ) a list of names and addresses of all of his employers during the previous 3 years.
4. ( ✓ ) all of the above.

5. 391.27 (a)(b)  At least once a year, a driver must fill out a form listing all motor vehicle violations (except parking) which he had during the previous 12 months. He must fill out the form:
1. ( ✓ ) even if he had no violations.
2. (   ) only if he was convicted.
3. (   ) only if he was convicted or forfeited bond or collateral.
4. (   ) only if the carrier requires it.

6. 391.33 (a)(2)  If a driver applicant has a valid certificate showing he passed a driver's road test:
1. (   ) the carrier must accept it.
2. ( ✓ ) the carrier may still require the applicant to take a road test.
3. (   ) the carrier cannot accept it.
4. (   ) the carrier may request a road test waiver from the Bureau of Motor Carrier Safety.

7. 391.41 (b)(5)  Persons with breathing problems which may affect safe driving:
1. (   ) cannot drive.
2. (   ) cannot drive unless the vehicle has an emergency oxygen supply.
3. (   ) cannot drive unless another driver is along.
4. (   ) cannot drive except on short runs.

8. 391.41(b)(7)  Persons with arthritis, rheumatism, or any such condition which may affect safe driving:
1. (   ) cannot drive unless they are checked by a doctor before each trip.
2. (   ) cannot drive.
3. (   ) cannot drive except when they are free of pain.
4. (   ) cannot drive unless another driver is along.

9. 391.41(b)(8)  Persons who have ever had epilepsy:
1. (   ) cannot drive unless another driver is along.
2. (   ) cannot drive.
3. (   ) cannot drive on long runs.
4. (   ) cannot drive without monthly medical examinations.

10. 391.41(b)(9)(12)(13)  In order to be able to drive, a person:
1. (   ) must not have any mental, nervous or physical problem likely to affect safe driving.
2. (   ) must not use an amphetamine, narcotic or any habit-forming drug.
3. (   ) must not have a current alcoholism problem.
4. ( ✓ ) must not have or use any of the above.

11. 391.45(c)  Any driver who gets an injury or illness serious enough to affect his ability to perform his duties:
1. (   ) must report it at his next scheduled physical.
2. (   ) cannot drive again.
3. ( ✓ ) must take another physical and be recertified before driving again.
4. (   ) must wait at least 1 month after recovery before driving again.

12. 392.2  A driver may not drive faster than posted speed limits:
1. (   ) unless he is sick and must complete his run quickly.
2. ( ✓ ) at any time.
3. (   ) unless he is passing another vehicle.
4. (   ) unless he is late and must make a scheduled arrival.

13. 392.3  When a driver's physical condition while on a trip requires that he stop driving, but stopping would not be safe, the driver:
1. (   ) must stop anyway.
2. (   ) may try to complete his trip, but as quickly as possible.
3. (   ) may continue to drive to his home terminal.
4. ( ✓ ) may continue to drive, but must stop at the nearest safe place.

14. 392.5(a)(1)  A driver may not drink or be under the influence of any alcoholic beverage (regardless of alcoholic content):
1. ( ✓ ) within 4 hours before going on duty or driving.
2. (   ) within 6 hours before going on duty or driving.
3. (   ) within 8 hours before going on duty or driving.
4. (   ) within 12 hours before going on duty or driving.

15. 392.7  A driver must satisfy himself that service and parking brakes, tires, lights and reflectors, mirrors, coupling and other devices are in good working order:
1. (   ) at the end of each trip.
2. ( ✓ ) before the vehicle may be driven.
3. (   ) only when he considers it necessary.
4. (   ) according to schedules set by the carrier.

© Copyright 1976 & Published By:
J. J. KELLER & ASSOCIATES, INC.
145 W. Wisconsin Ave. • Neenah, Wisconsin 54956
(414) 722-2848
"International Technical Publishers"

Page 2

16. 392.8  Which of the following must be in place and ready for use before a vehicle can be driven?
1.  ( ✓ ) at least one spare fuse or other overload pro-
          tector of each type used on the vehicle.
2.  (   ) a tool kit containing a specified list of hand
          tools.
3.  (   ) at least one spare tire for every four wheels.
4.  (   ) a set of spark plugs.

17. 392.9(a) (3)  If any part of the cargo or anything else blocks a driver's front or side views, his arm or leg movements, or his access to emergency equipment, the driver:
1.  (   ) can drive the vehicle, but must report the
          problems at the end of the trip.
2.  ( ✓ ) cannot drive the vehicle.
3.  (   ) can drive the vehicle, but only at speeds un-
          der 40 miles per hour.
4.  (   ) can drive the vehicle, but only on secondary
          roads.

18. 392.9(a)  Any driver who needs glasses to meet the minimum visual requirements:
1.  (   ) must drive only during daylight hours.
2.  ( ✓ ) must always wear his glasses when driving.
3.  (   ) must always carry a spare pair of glasses.
4.  (   ) must not drive a motor vehicle.

19. 392.9(b)  A driver may drive with a hearing aid:
1.  (   ) if he always has it turned on while he is
          driving.
2.  (   ) if he always carries a spare power source for
          it.
3.  (   ) if he can meet the hearing requirements when
          he has it turned on.
4.  ( ✓ ) if all of the above requirements are met.

20. 392.10(a)  A driver required to stop at a rail-road crossing should bring his vehicle to a stop no closer to the tracks than:
1.  (   ) 5 feet.
2.  ( ✓ ) 10 feet.
3.  (   ) 15 feet.
4.  (   ) 20 feet.

21. 392.10(a)  Shifting gears is not permitted:
1.  (   ) when traveling faster than 35 miles per hour.
2.  (   ) when moving across any bridge.
3.  ( ✓ ) when crossing railroad tracks.
4.  (   ) when traveling down a hill steeper than 10
          degrees.

22. 392.13  Drivers of motor vehicles not required to stop at drawbridges without signals:
1.  ( ✓ ) must drive at a rate of speed which will permit
          a stop before reaching the lip of the draw.
2.  (   ) must sound their horn before crossing.
3.  (   ) can proceed across without reducing speed.
4.  (   ) must slow down only if directed to by an atten-
          dant.

23. 392.15(a)  A driver turning his vehicle should be-gin flashing his turn signal:
1.  (   ) at least 50 feet before turning.
2.  (   ) at least 60 feet before turning.
3.  (   ) at least 75 feet before turning.
4.  ( ✓ ) at least 100 feet before turning.

24. 392.16  Which of the following is true?
1.  ( ✓ ) if a seat belt is installed in the vehicle, a
          driver must have it fastened before beginning
          to drive.
2.  (   ) a driver may or may not use the seat belt, de-
          pending on his judgment.
3.  (   ) seat belts are not necessary on heavier vehicles.
4.  (   ) a driver must use his seat belt only if re-
          quired to by the carrier.

25. 392.21  When a motor vehicle cannot be stopped off the traveled part of the highway, the driver:
1.  (   ) must keep driving.
2.  (   ) may stop, but shall get as far off the traveled
          part of the highway as possible.
3.  (   ) may stop, but shall make sure that the vehicle
          can be seen as far as possible to its front and
          rear.
4.  ( ✓ ) may stop if he has to, but should do both 2 and
          3 above.

26. 392.22(b)(1)  If a vehicle has a breakdown the driv-er must place one emergency signal:
1.  (   ) 100 feet in front of the vehicle in the center
          of the lane it occupies.
2.  (   ) 100 feet in back of the vehicle in the center
          of the lane it occupies.
3.  (   ) 10 feet in front or back of the traffic side.
4.  ( ✓ ) at all of the above locations.

27. 392.22(b)(1)(i)  If a vehicle has a breakdown on a poorly-lit street or highway, the driver shall place on the traffic side:
1.  (   ) a reflective triangle.
2.  (   ) a lighted red electric lantern.
3.  (   ) a red reflector.
4.  ( ✓ ) any one of the above.

28. 392.22(b)(2)(iii)  No emergency signals are required for a vehicle with a breakdown if the street or highway lighting is bright enough so it can be seen at a distance of:
1.  (   ) 100 feet.
2.  (   ) 200 feet.
3.  (   ) 500 feet.
4.  (   ) 750 feet.

29. 392.22(b)(2)(v)  If a vehicle has a breakdown and stops on a poorly-lit divided or one way highway, the driver must place one emergency signal:
1.  (   ) 200 feet in back of the vehicle in the center of
          the lane it occupies.
2.  (   ) 100 feet in back of the vehicle on the traffic
          side of the vehicle.
3.  (   ) 10 feet in back of the vehicle on the traffic
          side of the vehicle.
4.  ( ✓ ) at all of the above locations.

30. 392.25  Lighted flame-producing emergency signals, including fusees:
1.  (   ) may not be used with vehicles carrying Class A
          or B explosives.
2.  (   ) may not be used with tank vehicles, loaded or
          empty, which are used to carry flammable li-
          quids or gas.
3.  (   ) may not be used with any vehicle using com-
          pressed gas as a fuel.
4.  ( ✓ ) may not be used with any of the above.

31. 392.30(a)  A driver is required to have his lights on:
1.  (   ) from one-half hour before sunset to one-half
          hour before sunrise.
2.  (   ) from one-half hour before sunset to sunrise.
3.  (   ) from one-half hour after sunset to one-half
          hour before sunrise.
4.  (   ) from sunset to one-half hour before sunrise.

32. 392.32(a)(b)  When lights are required on the open highway, a driver shall use the high beam:
1.  (   ) except when within 500 feet of an on-coming ve-
          hicle or a vehicle he is following.
2.  (   ) except when within 400 feet of an on-coming ve-
          hicle or a vehicle he is following.
3.  ( ✓ ) except when within 200 feet of an on-coming ve-
          hicle or a vehicle he is following.
4.  (   ) except when within 100 feet of an on-coming ve-
          hicle or a vehicle he is following.

33. 392.32(a) When lights are required, drivers may use lower beam lights:
1. (  ) when fog, dust or other such conditions exist.
2. (  ) when approaching tunnels or bridges.
3. (  ) when driving on one way highways.
4. (  ) when within 1,000 feet of business areas or where people live.

34. 392.40 Every driver involved in an accident must follow the Safety Regulation procedures whenever an injury or death is involved or if:
1. (  ) the accident is caused by the driver and property damage of over $250.00 results.
2. (  ) property damage of over $250.00 results, no matter who is at fault.
3. (  ) property damage of over $100.00 results.
4. (  ) property damage of any kind results.

35. 392.41 If a driver strikes a parked vehicle, he should first:
1. (  ) stop and call the local police.
2. (  ) stop and call his carrier.
3. (  ) stop and try to find the driver or owner of the parked vehicle.
4. (  ) stop and estimate the damage.

36. 392.42 When a driver receives notice that his operator's license or permit has been revoked, suspended, or withdrawn, he must:
1. (  ) notify his carrier within 72 hours.
2. (  ) notify his carrier within one week.
3. (  ) notify his carrier before the end of the next business day.
4. (  ) take no action since his carrier will also get a notice.

37. 392.61 Except in emergencies, no driver shall allow his vehicle to be driven by any other person:
1. (  ) except those he knows can drive it.
2. (  ) except on roads with little or no traffic.
3. (  ) except those allowed by the carrier to do it.
4. (  ) unless he goes along with the person driving.

38. 392.64 A person may ride inside a vehicle's closed body or trailer:
1. (  ) only on short runs.
2. (  ) only if there is an easy way to get out from the inside.
3. (  ) only if the inside of the body or trailer is lighted.
4. (  ) only if there is no cargo in it.

39. 392.66 If carbon-monoxide is inside a vehicle or if a mechanical problem may produce a carbon-monoxide danger, the vehicle:
1. (  ) may be sent out and driven so long as the windows are left open.
2. (  ) may not be sent out or driven.
3. (  ) may be sent out and driven only if the carrier decides the vehicle has to be used.
4. (  ) may be sent out and driven on short runs.

40. 392.68 No motor vehicle shall be operated out of gear:
1. (  ) except when fuel may be saved.
2. (  ) except on hills which are less than 20 degrees.
3. (  ) except when it is necessary for stopping or shifting gears.
4. (  ) except when the vehicle's speed is under 25 miles per hour.

41. 393.1(a) Under the Federal Motor Carrier Safety Regulations, no vehicle may be driven:
1. (  ) until a list of all missing or defective equipment has been prepared and given to the carrier.
2. (  ) until all equipment has been inspected and replacements for defective parts have been ordered.
3. (  ) unless all missing equipment is to be replaced no later than the end of the vehicle's next run.
4. (  ) until it meets all of the equipment requirements of the Regulations.

42. 393 various Minimum requirements for lighting, reflecting and electrical equipment and devices on buses and trucks:
1. (  ) are set by the vehicle makers.
2. (  ) are set by the National Safety Council.
3. (  ) are specified in the Safety Regulations.
4. (  ) are set by the trucking associations.

43. 393.18(a)(b) Every motor vehicle which has a load sticking out over its sides must be specifically marked with flags and lamps. Additional flags and lamps must be added if the load or tailgate sticks out beyond the rear of the vehicle by more than:
1. (  ) 2 feet.
2. (  ) 4 feet.
3. (  ) 6 feet.
4. (  ) 8 feet.

44. 393.41(a) Every vehicle shall have a parking brake system which will hold it, no matter what its load:
1. (  ) on any grade on which it is operated which is free from ice and snow.
2. (  ) on all grades under 15 degrees which are free from ice and snow.
3. (  ) on all grades under 20 degrees which are free from ice and snow.
4. (  ) on all grades under 25 degrees which are free from ice and snow.

45. 393.77(b)(6) A portable heater may not be used in any vehicle cab:
1. (  ) unless it is secured.
2. (  ) unless it is of the electric filament type.
3. (  ) at any time.
4. (  ) without approval from the carrier.

46. 395.3(a) Drivers are not generally allowed to drive for more than:
1. (  ) 6 hours following 8 straight hours off duty.
2. (  ) 8 hours following 8 straight hours off duty.
3. (  ) 10 hours following 8 straight hours off duty.
4. (  ) 12 hours following 8 straight hours off duty.

47. 395.3(a) Most drivers of large vehicles are not allowed to drive:
1. (  ) after they have been on duty for 16 hours.
2. (  ) after they have been on duty for 15 hours.
3. (  ) after they have been on duty for 14 hours.
4. (  ) after they have been on duty for 12 hours.

48. 395.3(b) Generally, a driver may not be "on duty":
1. (  ) for more than 40 hours in any 7 straight days.
2. (  ) for more than 50 hours in any 7 straight days.
3. (  ) for more than 60 hours in any 7 straight days.
4. (  ) for more than 70 hours in any 7 straight days.

49. 395.7 When a driver is riding in a vehicle, but is not driving and has no other responsibility, such time shall be counted as:
1. (  ) on-duty time.
2. (  ) on-duty time unless he is allowed 8 straight hours off duty when he gets to the destination.
3. (  ) on-duty time unless he is allowed 6 straight hours off duty when he gets to the destination.
4. (  ) on-duty time unless he is allowed 4 straight hours off duty when he gets to the destination.

50. 395.8(b) Every driver must prepare an original and one copy of a daily log which he must keep current by updating it:
1. (  ) every time he changes a duty status.
2. (  ) every 24 hours.
3. (  ) every 8 hours.
4. (  ) at the end of each trip.

51. 395.8(c) Except for the name and main address of the carrier, all entries in a log:
1. (  ) must be printed in ink or typed.
2. (  ) must be made by the carrier dispatcher.
3. (  ) must be made in front of a witness.
4. (  ) must be written in the driver's own handwriting.

Page 4

52. 395.8(1)(p)(q)  Which of the following is *not* to be in a driver's log?
1.  (    ) Time spent in a sleeper berth.
2.  (    ) Total hours in each duty status.
3.  (    ) The name of the carrier or carriers.
4.  (    ) The name and make of his vehicle.

53. 395.11  If an emergency delays a run which could normally have been completed within hours of service limits, the driver:
1.  (    ) must still stop driving when the hours of service limit is reached.
2.  (    ) may drive for 1 extra hour.
3.  (    ) may drive for 2 extra hours.
4.  (    ) may finish his run without being in violation.

54. 395.13  Any driver declared "Out of Service":
1.  (    ) must take a road test before driving again.
2.  (    ) must wait 72 hours before driving again.
3.  (    ) must appeal to the Director of the Bureau of Motor Carrier Safety to drive again.
4.  (    ) can drive again only after hours of service requirement are met.

55. 396.4  If a vehicle on a trip is in a condition likely to cause an accident or breakdown:
1.  (    ) the driver should report it at the end of his run so repairs can be made.
2.  (    ) the driver should drive at lower speeds for the rest of the run.
3.  (    ) the driver should stop immediately unless going on to the nearest repair shop is safer than stopping.
4.  (    ) the driver should change his route so as to get away from heavily traveled roads.

56. 396.5(c)  If authorized Federal inspectors find a vehicle which is likely to cause an accident or breakdown:
1.  (    ) it will be reported to the carrier for repair as soon as the vehicle is not scheduled.
2.  (    ) it will be reported to the carrier for repair at the end of the trip.
3.  (    ) it will be marked with an "Out of Service Vehicle" sticker and not driven until repairs are made.
4.  (    ) the driver will be held responsible and declared "Out of Service."

57. 396.5(c)(4)  If the driver makes his own repairs on an "Out of Service" vehicle:
1.  (    ) his work must be approved by a mechanic.
2.  (    ) he must complete and sign a "Certification of Repairman" form himself.
3.  (    ) his work must be approved by his supervisor.
4.  (    ) his work must be approved by a Federal inspector.

## The following questions must be answered by Drivers involved in the transportation of Hazardous Materials.

58. 397.3  Department of Transportation Regulations covering the driving and parking of vehicles containing hazardous materials:
1.  (    ) replace State and local laws.
2.  (    ) prevent States and cities from having their own laws.
3.  (    ) must be obeyed even if State or local laws are less strict or disagree.
4.  (    ) should not be obeyed if State or local laws disagree.

59. 397.5(c)  A vehicle which contains hazardous materials other than Class A or B explosives must be attended at all times:
1.  (    ) by the driver.
2.  (    ) by the driver except when he is involved in something else necessary to his duties as a driver.
3.  (    ) by the driver or a person chosen by the driver.
4.  (    ) by the driver or a police officer.

60. 397.5(d)(1)  A vehicle containing Class A or B explosives or other hazardous materials on a trip is "attended":
1.  (    ) when the person in charge is anywhere within 100 feet of it.
2.  (    ) as long as the driver can see it from 200 feet away.
3.  (    ) when the person in charge is within 100 feet and has a clear view of it.
4.  (    ) when the person in charge is resting in the berth.

61. 397.7(a)(3)  Except for short periods when operations make it necessary, trucks carrying Class A or B explosives cannot be parked any closer to bridges, tunnels, building or crowds of people than:
1.  (    ) 50 feet.
2.  (    ) 100 feet.
3.  (    ) 200 feet.
4.  (    ) 300 feet.

62. 397.13(a)  Smoking or carrying a lighted cigarette, cigar or pipe near a vehicle which contains explosives, oxidizing or flammable materials is not allowed:
1.  (    ) except in the closed cab of the vehicle.
2.  (    ) except when the vehicle is moving.
3.  (    ) except at a distance of 25 feet or more from the vehicle.
4.  (    ) except when approved by the carrier.

63. 397.15(a)(b)  When a vehicle containing hazardous materials is being fueled:
1.  (    ) no person may remain in the cab.
2.  (    ) a person must be in control of the fueling process at the point where the fuel tank is filled.
3.  (    ) the area within 50 feet of the vehicle must be cleared.
4.  (    ) the person who controls the fueling process must wear special clothes.

64. 397.17(a)  If a vehicle carrying hazardous materials is equipped with dual tires on any axle, the driver must examine the tires:
1.  (    ) at all fueling stops only.
2.  (    ) only at the end of each day or tour of duty.
3.  (    ) at the beginning of each trip and each time the vehicle is parked.
4.  (    ) at the beginning of each trip only.

65. 397.17(c)  If a driver of a vehicle carrying hazardous materials finds a tire which is overheated, he must:
1.  (    ) wait for the overheated tire to cool before going on.
2.  (    ) remove and replace the overheated tire, store it on the vehicle and drive on.
3.  (    ) remove the tire, place it a safe distance from the vehicle and not drive the vehicle until the cause of the overheating is fixed.
4.  (    ) drive slowly to the nearest repair shop and have the cause of the overheating fixed.

66. 177.823(a)(3)  When required, specified hazardous materials markings or signs must be placed:
1.  (    ) wherever they can be seen clearly.
2.  (    ) on the sides and rear of the vehicle.
3.  (    ) on the front, rear and sides of the vehicle.
4.  (    ) on the front and rear bumpers of the vehicle.

FORM NO. 14F

05/02/2003  18:14    3342626105                ALABAMA FOOD SERV                    PAGE  02/02

FROM : KENCO MONTGOMERY MONTGOMERY,AL  PHONE NO. : 3342688090          May. 01 2003 09:50AM P2

REQUEST FOR INFORMATION FROM PREVIOUS EMPLOYER

COMPANY: *ALABAMA Food Service*

ADDRESS: *401 Pac R.L*

CITY&STATE: *Montgomery, AL*    ZIP: *36108*

YOU ARE HEARBY AUTHORIZED TO GIVE:
WEBSTER INDUSTRIES
5402 LAMCO STREET
MONTGOMERY,AL. 36117

All information regarding my services,character and conduct while in your employment.You are
released from any libility which may result from furnishing such information to the named company.

DATE: *4-11-03*    EMPLOYEE'S SIGNATURE: _____

WORK HABITS: DATES OF EMPLOYMENT  from: *12-6-01*  to: *3-15-02*

1.  Did the applicant drive a motor vehicle for you ?---- *yes*
2.  Tractor-semi trailer?-------other?------
3.  Was the applicant a safe and efficient driver ?-- *yes*
4.  Was the driver involved in any accidents ?-- *no*
5.  Where they chargeable------------
6.  Reason for leaving your employment ?discharged---- layoff---- resigned---- other- *Another Job*
7.  Are you willing to rehire the applicant ? yes--- *no*---           *Went to Webster 3-15-02*

SUBSTANCE .ABUSE  INVESTIGATIVE  REPORT:

1.Did the driver have any alcohol test with results of 0.04 alcohol concentration or greater ? yes--- no *✓*
2.did driver have any verified positive controlled substance test results (check one) Yes----no *✓*
3.Did driver ever refused to be tested :yes---no *✓*

Signature of the person completing this form : _____    date: *5-1-03*

FMSCR 391.23 required an investigation into the driver's past employment record. This investigation must
be completed within 30 days of employment, and may be by personal interviews , telephone interviews ,
letters or any other method that the carrier deems appropriate. A written record must include the past
employer's name ,address and the date of contact and comments made as to the driver's past record. The
written record shall be retained in the driver's qualification file.

Please furnish this information as soon as possible according to FMSCR 382.413 which is required. Please
set this regulation for futher information if needed.

REQUEST FOR INFORMATION FROM PREVIOUS EMPLOYER

COMPANY: *ALABAMA Food Service*

ADDRESS: ------------------------------------------------

CITY&STATE: *MonTgomery , AL*    ZIP-------------------

YOU ARE HEARBY AUTHORIZED TO GIVE:
WEBSTER INDUSTRIES
5402 LAMCO STREET
MONTGOMERY, AL. 36117

　　All information regarding my services,character and conduct while in your employment.You are released from any libility which may result from furnishing such information to the named company.

DATE: *4-11-03*   EMPLOYEE'S SIGNATURE: *[signature]*

---

WORK HABITS: DATES OF EMPLOYMENT   from-------------- to:------------------------------

1.　Did the applicant drive a motor vehicle for you ?----------
2.　Tractor-semi trailer?----------other?-----
3.　Was the applicant a safe and efficient driver ?------
4.　Was the driver involved in any accidents ?-----
5.　Where they chargeable--------------
6.　Reason for leaving your employment ?discharged---- layoff----- resigned------ other---------
7.　Are you willing to rehire the applicant ? yes---no----

SUBSTANCE ABUSE INVESTIGATIVE REPORT:

1.Did the driver have any alcohol test with results of 0.04 alcohol concentration or greater ? yes--- no----
2.did driver have any verified positive controlled substance test results (check one) Yes----no-----
3.Did driver ever refused to be tested :yes---no----

Signature of the person completing this form :
-------------------------------------------------- date---------------------------

FMSCR391-23 required an investigation into the driver's past employment record. This investigation must be completed withen 30 days of employment, and may be by personal interviews , telephone interviews , letters or any other method that the carrier deems appropriate. A written record must include the past employer's name ,address and the date of contact and comments made as to the driver's past record. The written record shall be retained in the driver's qualification file.

Please furnish this information as soon as possible according to FMSCR 382.413 which is required. Please see this regulation for futher information if needed.

*5-1-03 spoke to Nancy faxed Copy to her boss Joe McGuire at 9:35 Am*

# AFFIDAVIT OF DARRELL HINSON OFFERED IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# EXHIBIT "I"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL HINSON,                     )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        Civil Case No. 2:05-cv-971-ID
                                    )
CHELSEA INDUSTRIES, INC.,           )
                                    )
        Defendant.                  )

AFFIDAVIT OF DARRELL HINSON

STATE OF ALABAMA          )
MONTGOMERY COUNTY         )

1.   My Name is Darrell Hinson.  I am over the age of nineteen.

2.   I was hired by Chelsea Industries, Inc. (hereinafter "Chelsea") as a full-time truck driver

     on or about March 18, 2002.

3.   On April 11, 2004, I was working the night shift and was responsible for driving trucks

     that would deliver freight back and forth between Chelsea's warehouse and plant

     locations.

4.   Chelsea's procedure requires drivers to go inside and pull the dock plate and place a chain

     across the dock door.

5.   At the plant location, the driver can push a button and a mechanical device will lift the

     dock plate.  At the warehouse location, a forklift driver must lift the dock plate.

6.   I was preparing to haul freight from the plant location to the warehouse.  I followed

     procedure by pulling the dock plate and placing a safety chain across the dock door.

1 of 4



7.    Next, I went outside to pull the trailer. Both trucks were sitting side by side, and I accidently entered the wrong truck and pulled away from the dock.

8.    When I pulled away from the dock a forklift and its operator were inside. I did not know the forklift or its operator was inside. Ordinarily, when a forklift is loading a trailer the trailer will rock due to the movement of the heavy forklift. I did not feel any movement because the forklift's operator was talking on the phone and had stopped the forklift inside of the trailer.

9.    I pulled the truck only as far as necessary to close the trailer door. That is when I discovered the forklift and operator were in the trailer.

10.    A safety light located outside of the plant should change from red to green to tell a driver that the safety chain has been placed across the dock door. The safety light is the only way to know that the safety chain has been placed across the dock door. The safety light was not working on April 11, 2004 and had been broken for some time prior to that date.

11.    I backed up the trailer to the dock. Chelsea had no procedure for what to do under these circumstances.

12.    The forklift operator was not injured, and the forklift was not damaged.

13.    Afterward, I was placed on suspension and then fired. Chelsea stated the reason for my dismissal was because I violated safety procedures, the operator could have been injured, and the fork lift could have been damaged when I pulled the trailer away from the loading dock

14.    Under similar circumstances, Chelsea fired Tommy (LNU), an African American truck driver.

15.     Under similar circumstances, Chelsea did not fire Paul Walden (hereinafter "Paul") a white truck driver.

16.     Paul was working as a truck driver for Chelsea on April 11, 2004.

17.     On three separate occasions Paul pulled away from the dock without following procedure, twice prior and once subsequent to my termination. Paul has done this at both the plant and warehouse locations.

18.     On one such occasion Paul pulled the truck away from the warehouse dock while the forklift was actively moving cargo into the trailer. This caused the forklift to fall over and the driver to go flying. The forklift was badly damaged. The details of this event were common knowledge at Chelsea.

19.     Bill Barton's office is at the warehouse location.

20.     While driving Chelsea's truck on public roads Paul was involved in two separate accidents with cars while he was hauling freight between Chelsea's warehouse and plant locations. Paul showed me the accident report from his first accident, which read that Paul was at fault.

21.     Chelsea suspended Paul for two months due to accidents while he was driving Chelsea's trucks between the plant and warehouse locations.

22.     Chelsea's policy regarding auto accidents is to put a report in the driver's file.

Dated this 14th day of December 2007.

_____
DARRELL HINSON, Affiant


SWORN TO and SUBSCRIBED before me this _14_ day of _December_ 2007.

_____
NOTARY PUBLIC, Alabama at Large

My commission expires _11/15/08_

# EXHIBIT "C"

*5 mailed 4/26/04 AH*

# Personnel Documentation
## For
## Employee Progressive Disciplinary Action

**Today's Date** 4/14/2004    **Employee Name** Darrell Hinson

**Employee Clock #** 6314

**Employee Assigned Shift** Local Driver

**Employee Assigned Department** 85

**Employee's Supervisor** Bill Barton

**Disciplinary Action being taken:** Suspension

**Describe Reason for Discipline:**
On 4/11/2004, You drove your truck and pulled a trailer away from a loading dock while a forklift driver was in side your trailer. You violated several safety procedures that required you to check your trailer before driving away from the loading dock. This is a serious safety violation that could have severely injured the forklift driver and/or destroyed a Webster forklift. Therefore, you are being suspended while this incident is under investigation.

**Previous Discipline Given:**
**Verbal - Date**_____    **1ˢᵗ Written - Date**_____
**Suspension – Date**
**Suspension # Days**_____ **to be taken on the following day(s)**_____
**Termination - Date** *Barney Stewart*
**Supervisor's Signature**_____    **Employee's Signature** *Refused to sign*
(check if employee refused to sign)
**HR Representative Signature** *James C. Gore* 4/14/04
**Shop Steward Signature** *Charles Janson*
Copies: Employee, Employee's Supervisor, Operations Manager, HR Representative, HR Manager, Shop Steward, Union Business Representative, Employee File



EXHIBIT
C

# EXHIBIT "D"

Dbt f !3;16.dw 11: 82 .E. DTD!!!!!Epdvn f ou2!!!!!Gjfhe!21022203116!!!!!Qbhf !2!pg7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

DARRELL HINSON,                )
        Plaintiff,             )
                               )
        v.                     )      Civil Action No. __2 : 05cv 971 · D__
                               )
WEBSTER INDUSTRIES,            )      *JURY TRIAL DEMANDED*
        Defendant.             )

## COMPLAINT

COMES NOW Plaintiff Darrell Hinson against the above-captioned defendant and would show unto the Court as follows:

### JURISDICTION AND VENUE

1.    Plaintiff files this Complaint and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §1331 and §1343 to obtain compensatory damages and equitable relief. Defendant violated Plaintiff's rights as guaranteed by the Constitution of the United States and by Federal law, particularly 42 U.S.C. § 2000e, et seq., and 42 U.S.C. §1981.

2.    The violations of Plaintiff's rights as alleged herein occurred in Montgomery County, Alabama and were committed within the Middle District of the State of Alabama.

### PARTIES

3.    Plaintiff Darrell Hinson (hereinafter referred to as "Plaintiff"), who is over the age of 19 years, is and at all times material hereto was a member of a protected class, Black, and a citizen of the United States and the State of Alabama, residing in Montgomery County,



EXHIBIT
D

Dbtf!3;16.dw.11:.82..E.DTD!!!!!Epdvn f ou2!!!!!Gjfhe!210220116!!!!!Qbhf!3!pg7

Alabama.

4.  Defendant Webster Industries (hereinafter referred to as "the employer" or "the

defendant") is a business entity located in or doing business in Montgomery County,

Alabama, whose further identity is presently unknown to Plaintiff.

### NATURE OF PROCEEDINGS

5.  This is a proceeding for a declaratory judgment as to Plaintiff's rights and for a permanent

injunction, restraining the defendant from maintaining a policy, practice, custom or usage

of discrimination against Plaintiff or others similarly situated because of race and from

retaliating against Plaintiff or others similarly situated because of their opposition to

unlawful employment practices or participation in proceedings arising under 42 U.S.C. §

2000e or under 42 U.S.C. § 1981. The Complaint also seeks restitution to Plaintiff of all

rights, privileges, benefits, and income that would have been received by Plaintiff but for

the defendant's unlawful and discriminatory practices. Further, Plaintiff seeks

compensatory and punitive damages for his suffering as a consequence of the wrongs

alleged herein. Further, Plaintiff seeks such equitable relief, including back pay and a

reasonable amount of front pay in lieu of reinstatement, as to which he may be entitled.

Plaintiff avers that the defendant acted to deny Plaintiff his rights under the laws of the

United States of America and such action was designed to intentionally discriminate

against Plaintiff who is a member of a protected class, Black.

6.  Plaintiff avers that the defendant's actions were designed to prevent him and others

similarly situated from obtaining an equality with non-protected group members in

obtaining employment opportunities such as promotions and continued employment.

-2-

Dbt'f !3; 16. dw 11: 82. .E. DTD!!!!!Epdvn f ou2!!!!!Gjrhe!2102203116!!!!!Qbhf !4!pg7

Further, Plaintiff avers that the defendant has maintained a pattern of discrimination against Blacks in hiring, retention, and promotions.

7.   As a proximate result of the illegal actions alleged above, Plaintiff has been damaged in that he has been deprived of an opportunity for continued employment, job advancement and increases in pay, as well as caused to suffer great humiliation and mental anguish from then until now.

8.   Plaintiff avers that the defendant acted intentionally to deprive Plaintiff of his rights as alleged above and to cause Plaintiff mental anguish and to discriminate against him because of his race and because of his opposition to unlawful employment practices. Plaintiff filed a charge of discrimination with the EEOC.  Plaintiff timely files this action after receiving his right to sue letter from the U.S. Department of Justice dated August 4, 2005.

## FACTS

9.   Plaintiff expressly adopts as if fully set forth herein the allegations in each of the foregoing paragraphs.

10.  Plaintiff is a Black male.

11.  Plaintiff was initially hired by the defendant on or about March 18, 2002, as a full-time local truck driver.

12.  On or about April 14, 2004, Plaintiff was suspended from his job because of an error that constituted a safety violation.

13.  On or about April 20, 2004, Plaintiff's employment was terminated as a result of the said safety violation.

-3-

Dbt f !3;16.dw11: 82..E.DTD!!!!!Epdvn f ou2!!!!!Gjfhe!21022031116!!!!!Qbhf !5!pg7

14.  At least one White employee committed the same violation.

15.  The White employee was similarly situated to Plaintiff in all material respects.

16.  The White employee was not terminated.

17.  Plaintiff lost pay and benefits as a result of the discharge.

18.  The adverse employment action was taken against him by a member of a non-protected
     group, a White male.

19.  Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity
     Commission, complaining of the adverse employment action taken against him.

20.  Plaintiff was issued a Notice of Right to Sue from the EEOC dated August 4, 2005, and
     therefore files this suit in a timely manner.

21.  Plaintiff has suffered economic loss and severe emotional distress and mental anguish as
     a result of his treatment at the hands of the defendant.

## CAUSES OF ACTION

22.  Plaintiff expressly adopts with respect to each cause of action as if fully set forth in each
     claim the allegations contained in each and all of the foregoing paragraphs.

## COUNT ONE - DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981

23.  Plaintiff is a member of a protected class, Black.

24.  Plaintiff was subjected to adverse and discriminatory treatment sufficient to alter the
     terms, conditions and privileges of his employment, and the treatment to which he was
     subjected was because of his race, Black.

25.  Plaintiff was subjected to an adverse employment action, termination.

22.  Members of non-protected classes were not and would not have been subjected to the

-4-

Dbt f !3;16.dw 11: 82. E. DTD!!!!!Epdvn f ou2!!!!!Gjfhe!21@2@3116!!!!!Qbhf !6!pg7

employment actions visited upon Plaintiff.

23.. Plaintiff has been injured thereby.

### COUNT TWO - DISCRIMINATION IN VIOLATION OF TITLE VII

24. Plaintiff is a member of a protected class, Black.

25. Plaintiff was subjected to adverse and discriminatory treatment sufficient to alter the
terms, conditions and privileges of his employment, and the treatment to which he was
subjected was because of his race, Black.

26. Plaintiff was subjected to an adverse employment action, termination.

27. Members of non-protected classes were not and would not have been subjected to the
employment actions visited upon Plaintiff.

28. Plaintiff has been injured thereby.

### PRAYER FOR RELIEF

WHEREFORE THE PREMISES CONSIDERED, the Plaintiff requests the Court to:

a)      Enter a declaratory judgment that the discriminatory practices complained of
here-in are unlawful and violative of 42 U.S.C. §1981 and 42 U.S.C. § 2000e, et seq.;

b)      Permanently enjoin the defendant, his agents, successors, officers, employees,
attorneys and those action in concert with it or them from engaging in each of the unlawful
prac-tices, policies, customs, and usages set forth herein, and from continuing any and all other
prac-tices shown to be in violation of applicable law;

c)      Order modification or elimination of practices, policies, customs, and usages set
forth herein and all other such practices shown to be in violation of applicable law that they do
not discriminate on the basis of sex, race or disability;

-5-

Dbt f !3;16.dw 11: 82.E.DTDl!!!!Epdvn f ou2!!!!!Gjrne!21©2©3116!!!!!Qbhf !7!pg7

    d)      Grant Compensatory damages of three hundred thousand dollars as against the defendant under Title VII and three hundred thousand dollars as against the defendant under 42 USC § 1981;

    e)      Grant Plaintiff the cost of this action including reasonable attorney's fees;

    f)      Enjoin the defendant from retaliation.

    g)      Grant such other, further and different relief as this Court may deem just and proper to include back pay, front pay, reinstatement, and all other equitable and legal relief as to which Plaintiff may be entitled.

    RESPECTFULLY SUBMITTED on this the 11th day of October, 2005.

JAY LEWIS (LEW031)

LAW OFFICES OF JAY LEWIS, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

-6-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **DARRELL HINSON,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 2:05-cv-971-ID-CSC** |
| ) | |
| **CHELSEA INDUSTRIES, INC.,** ) | ***JURY TRIAL DEMANDED*** |
| **Defendant.** ) | |

### FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Darrell Hinson against the above-captioned defendant and would

show unto the Court as follows:

### JURISDICTION AND VENUE

1.    Plaintiff files this Complaint and invokes the jurisdiction of this Court under and by

virtue of 28 U.S.C. §1331 and §1343 to obtain compensatory damages and equitable

relief.   Defendant violated Plaintiff's rights as guaranteed by the Constitution of the

United States and by Federal law, particularly 42 U.S.C. § 2000e, et seq., and 42 U.S.C.

§1981.

2.    The violations of Plaintiff's rights as alleged herein occurred in Montgomery County,

Alabama and were committed within the Middle District of the State of Alabama.

### PARTIES

3.    Plaintiff Darrell Hinson (hereinafter referred to as "Plaintiff"), who is over the age of 19

years, is and at all times material hereto was a member of a protected class, Black, and a

citizen of the United States and the State of Alabama, residing in Montgomery County,

-1-

Alabama.

4.      Defendant Chelsea Industries, Inc. (hereinafter referred to as "the employer" or "the

defendant") is a business entity located in or doing business in Montgomery County,

Alabama, whose further identity is presently unknown to Plaintiff.

## NATURE OF PROCEEDINGS

5.      This is a proceeding for a declaratory judgment as to Plaintiff's rights and for a permanent

injunction, restraining the defendant from maintaining a policy, practice, custom or usage

of discrimination against Plaintiff or others similarly situated because of race and from

retaliating against Plaintiff or others similarly situated because of their opposition to

unlawful employment practices or participation in proceedings arising under 42 U.S.C. §

2000e or under 42 U.S.C. § 1981. The Complaint also seeks restitution to Plaintiff of all

rights, privileges, benefits, and income that would have been received by Plaintiff but for

the defendant's unlawful and discriminatory practices. Further, Plaintiff seeks

compensatory and punitive damages for his suffering as a consequence of the wrongs

alleged herein. Further, Plaintiff seeks such equitable relief, including back pay and a

reasonable amount of front pay in lieu of reinstatement, as to which he may be entitled.

Plaintiff avers that the defendant acted to deny Plaintiff his rights under the laws of the

United States of America and such action was designed to intentionally discriminate

against Plaintiff who is a member of a protected class, Black.

6.      Plaintiff avers that the defendant's actions were designed to prevent him and others

similarly situated from obtaining an equality with non-protected group members in

obtaining employment opportunities such as promotions and continued employment.

-2-

Further, Plaintiff avers that the defendant has maintained a pattern of discrimination against Blacks in hiring, retention, and promotions.

7.   As a proximate result of the illegal actions alleged above, Plaintiff has been damaged in that he has been deprived of an opportunity for continued employment, job advancement and increases in pay, as well as caused to suffer great humiliation and mental anguish from then until now.

8.   Plaintiff avers that the defendant acted intentionally to deprive Plaintiff of his rights as alleged above and to cause Plaintiff mental anguish and to discriminate against him because of his race and because of his opposition to unlawful employment practices. Plaintiff filed a charge of discrimination with the EEOC. Plaintiff timely files this action after receiving his right to sue letter from the U.S. Department of Justice dated August 4, 2005.

## FACTS

9.   Plaintiff expressly adopts as if fully set forth herein the allegations in each of the foregoing paragraphs.

10.   Plaintiff is a Black male.

11.   Plaintiff was initially hired by the defendant on or about March 18, 2002, as a full-time local truck driver.

12.   On or about April 14, 2004, Plaintiff was suspended from his job because of an error that constituted a safety violation.

13.   On or about April 20, 2004, Plaintiff's employment was terminated as a result of the said safety violation.

-3-

14.   At least one White employee committed the same violation.

15.   The White employee was similarly situated to Plaintiff in all material respects.

16.   The White employee was not terminated.

17.   Plaintiff lost pay and benefits as a result of the discharge.

18.   The adverse employment action was taken against him by a member of a non-protected

      group, a White male.

19.   Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity

      Commission, complaining of the adverse employment action taken against him.

20.   Plaintiff was issued a Notice of Right to Sue from the EEOC dated August 4, 2005, and

      therefore files this suit in a timely manner.

21.   Plaintiff has suffered economic loss and severe emotional distress and mental anguish as

      a result of his treatment at the hands of the defendant.

**CAUSES OF ACTION**

22.   Plaintiff expressly adopts with respect to each cause of action as if fully set forth in each

      claim the allegations contained in each and all of the foregoing paragraphs.

**COUNT ONE - DISCRIMINATION IN VIOLATION OF 42 U.S.C. §1981**

23.   Plaintiff is a member of a protected class, Black.

24.   Plaintiff was subjected to adverse and discriminatory treatment sufficient to alter the

      terms, conditions and privileges of his employment, and the treatment to which he was

      subjected was because of his race, Black.

25.   Plaintiff was subjected to an adverse employment action, termination.

22.   Members of non-protected classes were not and would not have been subjected to the

-4-

employment actions visited upon Plaintiff.

23.    Plaintiff has been injured thereby.

### COUNT TWO - DISCRIMINATION IN VIOLATION OF TITLE VII

24.    Plaintiff is a member of a protected class, Black.

25.    Plaintiff was subjected to adverse and discriminatory treatment sufficient to alter the

terms, conditions and privileges of his employment, and the treatment to which he was

subjected was because of his race, Black.

26.    Plaintiff was subjected to an adverse employment action, termination.

27.    Members of non-protected classes were not and would not have been subjected to the

employment actions visited upon Plaintiff.

28.    Plaintiff has been injured thereby.

### PRAYER FOR RELIEF

WHEREFORE THE PREMISES CONSIDERED, the Plaintiff requests the Court to:

a)    Enter a declaratory judgment that the discriminatory practices complained of

herein are unlawful and violative of 42 U.S.C. §1981 and 42 U.S.C. § 2000e, et seq.;

b)    Permanently enjoin the defendant, his agents, successors, officers, employees,

attorneys and those action in concert with it or them from engaging in each of the unlawful

practices, policies, customs, and usages set forth herein, and from continuing any and all other

practices shown to be in violation of applicable law;

c)    Order modification or elimination of practices, policies, customs, and usages set

forth herein and all other such practices shown to be in violation of applicable law that they do

not discriminate on the basis of sex, race or disability;

-5-

d)    Grant Compensatory damages of three hundred thousand dollars as against the

defendant under Title VII and three hundred thousand dollars as against the defendant under 42

USC § 1981;

e)    Grant Plaintiff the cost of this action including reasonable attorney's fees;

f)    Enjoin the defendant from retaliation.

g)    Grant such other, further and different relief as this Court may deem just and

proper to include back pay, front pay, reinstatement, and all other equitable and legal relief as to

which Plaintiff may be entitled.

RESPECTFULLY SUBMITTED on this the 3rd day of March, 2007.

/s/ JAY LEWIS
Jay Lewis
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)
J-Lewis@JayLewisLaw.com
ASB-2014-E66J

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on the following counsel or
parties, by CM/ECF, by placing a copy of such in the United States mail, properly addressed and
first class postage prepaid, or by hand delivery, on this the 3rd day of March, 2007.

Hon. Thomas T. Gallion, III
Hon. Jamie A. Johnston

/s/JAY LEWIS
Jay Lewis
LAW OFFICES OF JAY LEWIS, LLC.
P.O. Box 5059
Montgomery, AL 36103
Phone: (334) 263-7733

-6-

Fax: (334) 832-4390
J-lewis@jaylewislaw.com
ASB-2014-E66J
Counsel for Plaintiff

## _PLAINTIFF DEMANDS TRIAL BY STRUCK JURY_

-7-

# EXHIBIT "E"

## Personnel Documentation
## For
## Employee Progressive Disciplinary Action

**Today's Date** 4/20/2004      **Employee Name** Darrell Hinson
**Employee Clock #** 6314
**Employee Assigned Shift** Local Driver
**Employee Assigned Department** 85
**Employee's Supervisor** Bill Barton

**Disciplinary Action being taken:** Termination

**Describe Reason for Discipline:**
On 4/11/2004, You pulled a trailer away from the loading dock without following the prescribed safety procedures. This action was compounded by the fact that a Webster employee in the process of loading the trailer was actually inside the trailer when you pulled it away. Further, when you discovered that an employee was inside the trailer, you returned it to the loading dock with the forklift driver still inside. The fact that it was not the trailer you were supposed to pull away in the first place just adds to the problem. You have committed several serious safety violations the result of which could have been serious injury or death, not to mention a destroyed forklift. Therefore, you were suspended while this incident was under investigation.

After completing our investigation, we have concluded that based on the serious of these safety violations, your employment with Webster Industries has been terminated.

**Previous Discipline Given:**
**Verbal - Date**_____    **1st Written - Date**_____
**Suspension – Date**
**Suspension # Days**_____ **to be taken on the following day(s)**_____
**Termination - Date**
**Supervisor's Signature** BWBarton **Employee's Signature** Darrell Hinson
(check if employee refused to sign)
**HR Representative Signature** Jamie C. Gunn 4/20/04

**Shop Steward Signature** May Hickerson
**Copies: Employee, Employee's Supervisor, Operations Manager, HR Representative, HR Manager, Shop Steward, Union Business Representative, Employee File**



EXHIBIT
E

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DARRELL HINSON,                              )
                                             )
            Plaintiff,                       )
                                             )
v.                                           )  CIVIL ACTION NO.:  2:05cv971-ID
                                             )
WEBSTER INDUSTRIES,                          )
                                             )
            Defendant.                       )

### AFFIDAVIT OF BRUCE LINSON

STATE OF ALABAMA          )
MONTGOMERY COUNTY         )

I, Bruce Linson, being over the age of nineteen, and first duly deposed and sworn,

state that the following is based on my personal knowledge of the facts contained herein:

1.      My name is Bruce Linson. I am General Manager of Webster Industries.

2.      Upon information and belief, Marvin Leef retired as the Executive Vice-
President of the Montgomery operations of Chelsea Industries, Inc. on October 31, 2005.

3.      In his capacity as the Executive Vice President, Mr. Leef was responsible
for coordinating legal matters with legal counsel.

4.      I, as General Manager, was unaware a lawsuit had been filed by Mr.
Hinson as his file was not brought to my office upon service of the Complaint.

5.      I was unaware of the lawsuit until receipt of the Entry of Default on
August 22, 2006. The Defendant would have answered the Complaint had it known of its
existence.

6.      Webster's policy during Mr. Leef's tenure was for only Senior
Management to sign for certified mail.

7.    Mr. Leef handled the coordination of legal counsel when we received the Hinson EEOC filing. I was aware the EEOC dismissed Hinson's claim and assumed the matter was resolved. I further assumed that if it was not resolved our corporate office in Massachusetts handled it as they handle trucking matters from their office.

Further, the affiant saith not.

**BRUCE LINSON**

Sworn and subscribed before me on this the _24_ day of August, 2006.

Notary Public

My commission expires _____

**My Commission Expires 10/20/2009**

2

# EXHIBIT "F"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DARRELL HINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:05cv971-ID |
| | ) | |
| CHELSEA INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## SECOND AFFIDAVIT OF WILLIAM BARTON

STATE OF ALABAMA          )

COUNTY OF MONTGOMERY    )

1.    My name is Bill Barton. I am over the age of nineteen.

2.    I am employed by Chelsea Industries, Inc., (hereinafter referred to as "Webster") and currently hold the position of Fleet Manager.

3.    I am familiar with the circumstances surrounding the above litigation.

4.    On November 28, 2001, Darrell Hinson applied for a truck driver's position with Webster.

5.    Mr. Hinson began his employment with Webster on March 18, 2002 as a local truck driver.

6.    In 2004, Mr. Hinson was stabbed in his neighborhood.  Mr. Hinson, while undergoing medical treatment, received short term disability benefits in accordance with Webster's policies.

7.    Mr. Hinson returned to his employment with Webster, according to his medical documentation, without any limitation.

8.    I did not perceive Mr. Hinson as being disabled as a result of the stabbing otherwise I would not have let him operate his vehicle

9.    On April 11, 2004, Mr. Hinson drove a trailer away from a loading dock

without first pulling the dock plate and without placing the safety chains on the dock doors. Mr. Hinson pulled the trailer off the loading dock while a Webster employee was on a forklift inside Mr. Hinson's trailer.

10.    After learning that a co-employee was on a forklift inside the trailer, Mr. Hinson continued to drive the vehicle.

11.    Webster's safety procedures require all drivers to (1) go inside and pull the dock plate; and (2) then place safety chains across the dock doors before departing the loading dock.    12.    Mr. Hinson violated Webster's safety procedures by leaving the loading dock before pulling the dock plate and before placing the safety chains across the dock doors. Mr. Hinson's failure to perform these tasks resulted in him driving off with an employee on a forklift inside the trailer.

13.    Additionally, Mr. Hinson violated safety procedures by continuing to operate the trailer while knowing someone was inside the trailer on a forklift.

14.    Mr. Hinson could have seriously injured or killed the co-employee inside the trailer.

15.    Mr. Hinson could have caused significant damage to Webster's forklift and facilities as a result of his actions.

16.    On April 14, 2004, Mr. Hinson was suspended while the incident was investigated.

17.    On April 20, 2004, Webster terminated Mr. Hinson based on the violation of the above safety procedures.

18.    After Mr. Hinson was terminated, Webster internally posted Mr. Hinson's

2

position.

19.    Alvin Pugh, an African American male, was awarded Mr. Hinson's position.

20.    Paul Walden, a Caucasian male, began his employment with Webster on March 19, 2003 as a local truck driver. I was Mr. Hinson's supervisor during his employment with Webster.

21.    Mr. Walden, to my knowledge and according to my review of his personnel file, has never failed to pull the dock plate and place the safety chains on the dock doors before pulling away from the loading dock. Further, Mr. Walden has never knowingly driven his truck with an employee on a forklift inside his trailer.

22.    Webster also employed Nels Paul Jacobson. Mr. Jacobson was an over the road truck driver for Webster. He is Caucasian. To my knowledge as Fleet Manager and my review of his personnel file, Mr. Jacobson never pulled away from the loading dock without first pulling the dock plate and then placing the safety chains on the dock doors. Mr. Jacobson, to my knowledge, never operated a truck knowing a co-employee was still inside the trailer on a forklift.

23.    Any employee committing the same or similar safety violations that Hinson did would be subjected to termination.

24.    Webster contracted with Kenco Logistics, a third party service company, to assist in the loading and unloading process.

25.    In 2004, Sedrick Bowman, a forklift driver for Kenco Logistics, improperly entered Mr. Walden's trailer after Mr. Walden properly pulled the dock plate and secured the safety chains on his trailer.

3

26.    Immediately following the incident involving Mr. Bowman, Webster investigated the incident.

27.    As manager for Webster, I led the investigation and confirmed that Mr. Walden properly pulled the dock plate and secured the trailer prior to pulling away from the loading dock. My investigation confirmed that Mr. Bowman improperly entered Mr. Walden's trailer without permission of Webster, knowledge of Mr. Walden, and authority of Kenco Logistics.

28.    Webster could not impose disciplinary actions on Kenco Logistics' emplo yees.

29.    Disciplinary procedures for traffic accidents are based on Webster's fleet safety policy and are entirely different than Webster's procedures for handling safety violations in the loading and unloading process.

Further Affiant sayeth not.

Dated this ____ day of January 2008.

_____
**WILLIAM BARTON**

STATE OF ALABAMA                    *

COUNTY OF MONTGOMERY        *

I, _Deborah Beasley_____, a Notary Public, in and for the said County in said State, hereby certify that WILLIAM BARTON, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing instrument, executed the same voluntarily or/and as the act of said corporation.

SWORN TO and SUBSCRIBED before me this _4_ day of _Jan_____ 2008.

NOTARY SEAL

_____
Notary Public
My Commission Expires: _____

My Commission Expires June 06, 2010

4

# EXHIBIT "G"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DARRELL HINSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 2:05cv971-ID |
| | ) |
| CHELSEA INDUSTRIES, INC., | ) |
| | ) |
|     Defendant. | ) |

## AFFIDAVIT OF JOE THOMAS

STATE OF ALABAMA    )

COUNTY OF MONTGOMERY  )

1. My name is Joe Thomas, I am an adult over the age of nineteen.

2. In 2004, I was employed as a manager for Kenco Logistics.

3. Kenco Logistics was at that time a service provider for Webster Industries. Kenco Logistics maintained its own employees, implemented its own personnel rules, and retained the authority to impose its own discipline with regard to its employees.

4. In 2004, Sedrick Bowman was employed by Kenco Logistics as a forklift operator.

5. During his employment with Kenco Logistics, I was Mr. Bowman's supervisor.

6. During that employment, in 2004, Mr. Bowman improperly opened and entered Mr. Paul Walden's trailer.

7. Prior to leaving the dock, Mr. Walden followed the proper procedure. He pulled the dock plate. Then he placed the safety chains on his trailer and proceeded to enter his truck cab and leave the loading dock. After securing the trailer, while Mr. Walden was entering his cab,

1

Mr. Bowman improperly entered the trailer. Without knowledge of Mr. Bowman's entrance into the trailer, Mr. Walden proceeded to leave the loading dock.

8.    I investigated this incident and confirmed that Mr. Walden had pulled the correct dock plate and correctly placed the safety chains on his trailer prior to leaving the dock. My investigation confirmed that Mr. Walden committed no safety violation. Mr. Bowman should not have been inside Mr. Walden's trailer. He did not have Kenco Logistics' permission to do so nor did he have the permission of Mr. Walden. Mr. Walden was not aware nor could he have been aware that Mr. Bowman was inside his trailer when he left the dock. Kenco Logistics handled Mr. Bowman's discipline as a result of the above described incident.

Further Affiant sayeth not.

Dated this __4__ day of January 2008.

_____
JOE THOMAS

STATE OF ALABAMA              *

COUNTY OF MONTGOMERY          *

I, _____, a Notary Public, in and for the said County in said State, hereby certify that JOE THOMAS, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing instrument, executed the same voluntarily or/and as the act of said corporation.

SWORN TO and SUBSCRIBED before me this __4__ day of __January__ 2008.

_____
NOTARY SEAL                   Notary Public
My Commission Expires: _____

My Commission Expires June 06, 2010

2